# EXHIBIT C

US008560046B2

(12) **United States Patent**
Kumar et al.

(10) **Patent No.:** **US 8,560,046 B2**
(45) **Date of Patent:** **Oct. 15, 2013**

(54) **DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION**

(75) Inventors: **Uday N. Kumar**, San Francisco, CA (US); **Peter H. Livingston**, San Francisco, CA (US); **Mark J. Day**, San Francisco, CA (US); **Shena H. Park**, San Francisco, CA (US); **William F. Willis**, Lake Forest, IL (US); **William H. Righter**, Hillsboro, OR (US)

(73) Assignee: **iRhythm Technologies, Inc.**, San Francisco, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 21 days.

(21) Appl. No.: **13/106,750**

(22) Filed: **May 12, 2011**

(65) **Prior Publication Data**
US 2011/0279963 A1    Nov. 17, 2011

**Related U.S. Application Data**

(60) Provisional application No. 61/334,081, filed on May 12, 2010.

(51) **Int. Cl.**
*A61B 5/04* (2006.01)

(52) **U.S. Cl.**
USPC ............ **600/392**; 600/382; 600/393; 600/301

(58) **Field of Classification Search**
USPC .................. 600/372, 382, 391, 392, 393, 509
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,215,136 A | 11/1965 | Holter et al. |
| 3,547,107 A | 12/1970 | Chapman et al. |
| 4,123,785 A | 10/1978 | Cherry et al. |
| 4,274,420 A | 6/1981 | Hymes |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 01/16607 A2 | 3/2001 |
| WO | WO 2007/049080 A1 | 3/2007 |
| WO | WO 2007/036748 A2 | 4/2007 |
| WO | WO 2007/072069 A2 | 6/2007 |

OTHER PUBLICATIONS

Scapa Medical product listing and descriptions (2008) available at http://www.caapana.com/productlist.jsp and http://www.metplus.co.rs/pdf/prospekti/Samoleplivemedicinsketrake.pdf; retrieved via WayBack Machine Sep. 24, 2012.*

(Continued)

*Primary Examiner* — Lee S Cohen
*Assistant Examiner* — Erin M Cardinal
(74) *Attorney, Agent, or Firm* — Knobbe, Martens, Olson & Bear LLP

(57) **ABSTRACT**

An electronic device for long-term adhesion to a mammal includes a housing with an electronic component. The electronic device may include a first wing and a second wing, each being integrally formed with the housing. An electrode is positioned on a bottom surface of each of the wings, the electrodes electrically connected to the electronic component. An adhesive layer is provided for adhesion to a surface of the mammal. The adhesive layer may cover a portion of the bottom surfaces of the wings but generally does not cover the electrode or a bottom surface of the housing. A method of applying an electronic device to a mammal includes removing first and second adhesive covers from first and second wings of the electronic device to expose an electrode and an adhesive coated on a bottom surface of each wing.

**44 Claims, 11 Drawing Sheets**



## US 8,560,046 B2
Page 2

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,333,475 | A | 6/1982 | Moreno et al. |
| 4,535,783 | A | 8/1985 | Marangoni |
| 4,736,752 | A | 4/1988 | Munck et al. |
| 4,981,141 | A | 1/1991 | Segalowitz |
| 5,027,824 | A | 7/1991 | Dougherty et al. |
| 5,086,778 | A | 2/1992 | Mueller et al. |
| 5,205,295 | A | 4/1993 | Del Mar et al. |
| 5,228,450 | A | 7/1993 | Sellers |
| 5,483,967 | A | 1/1996 | Ohtake |
| 5,489,624 | A | 2/1996 | Kantner et al. |
| 5,511,553 | A | 4/1996 | Segalowitz |
| 5,536,768 | A | 7/1996 | Kantner et al. |
| 5,626,140 | A | 5/1997 | Feldman et al. |
| 5,634,468 | A | 6/1997 | Platt et al. |
| 5,645,068 | A | 7/1997 | Mezack et al. |
| 5,730,143 | A | 3/1998 | Schwarzberg |
| 5,749,365 | A | 5/1998 | Magill |
| 6,093,146 | A | 7/2000 | Filangeri |
| 6,102,856 | A | 8/2000 | Groff et al. |
| 6,117,077 | A | 9/2000 | Del Mar et al. |
| 6,134,480 | A | 10/2000 | Minogue |
| 6,161,036 | A * | 12/2000 | Matsumura et al. .......... 600/509 |
| 6,169,915 | B1 | 1/2001 | Krumbiegel et al. |
| 6,178,357 | B1 * | 1/2001 | Gliner et al. ................. 607/142 |
| 6,200,265 | B1 | 3/2001 | Walsh et al. |
| 6,232,366 | B1 | 5/2001 | Wang et al. |
| 6,238,338 | B1 | 5/2001 | DeLuca et al. |
| 6,385,473 | B1 | 5/2002 | Haines et al. |
| 6,416,471 | B1 | 7/2002 | Kumar et al. |
| 6,454,708 | B1 | 9/2002 | Ferguson et al. |
| 6,456,872 | B1 | 9/2002 | Faisandier |
| 6,580,942 | B1 | 6/2003 | Willshire |
| 6,585,707 | B2 * | 7/2003 | Cabiri et al. ................. 604/307 |
| 6,589,187 | B1 | 7/2003 | Dirnberger et al. |
| 6,605,046 | B1 | 8/2003 | Del Mar |
| 6,690,959 | B2 | 2/2004 | Thompson |
| 6,701,184 | B2 | 3/2004 | Henkin |
| 6,801,802 | B2 | 10/2004 | Sitzman et al. |
| 6,881,191 | B2 | 4/2005 | Oakley et al. |
| 6,893,396 | B2 | 5/2005 | Schulze et al. |
| 6,954,163 | B2 | 10/2005 | Toumazou et al. |
| 7,072,708 | B1 | 7/2006 | Andresen et al. |
| 7,072,709 | B2 | 7/2006 | Xue |
| 7,076,283 | B2 | 7/2006 | Cho et al. |
| 7,076,287 | B2 | 7/2006 | Rowlandson |
| 7,076,288 | B2 | 7/2006 | Skinner |
| 7,076,289 | B2 | 7/2006 | Sarkar et al. |
| 7,079,977 | B2 | 7/2006 | Osorio et al. |
| 7,082,327 | B2 | 7/2006 | Houben |
| 7,193,264 | B2 | 3/2007 | Lande |
| 7,266,361 | B2 | 9/2007 | Burdett |
| 8,116,841 | B2 * | 2/2012 | Bly et al. ....................... 600/391 |
| 2002/0082491 | A1 * | 6/2002 | Nissila ........................... 600/391 |
| 2003/0069510 | A1 | 4/2003 | Semler |
| 2003/0083559 | A1 | 5/2003 | Thompson |
| 2004/0032957 | A1 | 2/2004 | Mansy et al. |
| 2004/0215091 | A1 | 10/2004 | Lohman et al. |
| 2005/0101875 | A1 | 5/2005 | Semler et al. |
| 2005/0165323 | A1 | 7/2005 | Montgomery et al. |
| 2005/0277841 | A1 | 12/2005 | Shennib |
| 2006/0030781 | A1 | 2/2006 | Shennib |
| 2006/0030782 | A1 | 2/2006 | Shennib |
| 2006/0047215 | A1 | 3/2006 | Newman et al. |
| 2006/0084883 | A1 | 4/2006 | Linker |
| 2006/0142648 | A1 | 6/2006 | Banet et al. |
| 2006/0142654 | A1 | 6/2006 | Rytky |
| 2006/0149156 | A1 | 7/2006 | Cochran et al. |
| 2006/0155173 | A1 | 7/2006 | Anttila et al. |
| 2006/0155183 | A1 | 7/2006 | Kroecker et al. |
| 2006/0155199 | A1 | 7/2006 | Logier et al. |
| 2006/0155200 | A1 | 7/2006 | Ng et al. |
| 2006/0161064 | A1 | 7/2006 | Watrous et al. |
| 2006/0161065 | A1 | 7/2006 | Elion |
| 2006/0161066 | A1 | 7/2006 | Elion |
| 2006/0161067 | A1 | 7/2006 | Elion |
| 2006/0161068 | A1 | 7/2006 | Hastings et al. |
| 2006/0224072 | A1 | 10/2006 | Shennib |
| 2006/0264767 | A1 | 11/2006 | Shennib |
| 2007/0003695 | A1 | 1/2007 | Tregub et al. |
| 2007/0225611 | A1 | 9/2007 | Kumar et al. |
| 2007/0240946 | A1 | 10/2007 | Kumar et al. |
| 2007/0255153 | A1 | 11/2007 | Kumar et al. |
| 2007/0270678 | A1 * | 11/2007 | Fadem et al. ................. 600/372 |
| 2008/0091089 | A1 | 4/2008 | Guillory et al. |
| 2008/0139953 | A1 * | 6/2008 | Baker et al. ................. 600/509 |
| 2008/0275327 | A1 * | 11/2008 | Faarbaek et al. ............ 600/382 |
| 2008/0288026 | A1 * | 11/2008 | Cross et al. ................. 607/60 |
| 2010/0056881 | A1 * | 3/2010 | Libbus et al. ................ 600/301 |
| 2010/0081913 | A1 * | 4/2010 | Cross et al. ................. 600/386 |

OTHER PUBLICATIONS

Del Mar et al.; the history of clinical holter monitoring; A.N.E.; vol. 10; No. 2; pp. 226-230; Apr. 2005.

Enseleit et al.; Long-term continuous external electrocardiographic recording: a review; Europspace; vol. 8; pp. 255-266; 2006.

Hoefman et al.; Optimal duration of event recording for diagnosis of arrhythmias in patients with palpitations and light-headedness in the general practice; Family Practice; Dec. 7, 2006.

Kennedy et al.; The history, science, and innovation of hotter technology; A.N.E.; vol. 11; No. 1; pp. 85-94; 2006.

Reiffel et al.; Comparison of autotriggered memory loop recorders versus standard loop recorders versus 24-hour holter monitors for arrhythmia detection; Am. J. Cardiology; vol. 95; pp. 1055-1059; May 1, 2005.

Ward et al.; Assessment of the diagnostic value of 24-hour ambulatory electrocardiographic monitoring; Biotelemetry Patient monitoring; vol. 7; 1980.

Ziegler et al.; Comparison of continuous versus intermittent monitoring of atrial arrhythmias; Heart Rhythm; vol. 3; No. 12; pp. 1445-1452; Dec. 2006.

Zimetbaum et al.; The evolving role of ambulatory arrhythmia monitoring in general clinic practice; Ann. Intern. Med.; vol. 130; pp. 848-8556; 1999.

Zimetbaum et al.; Utility of patient-activated cardiac event recorders in general clinical practice; The Amer. J. Of Cardiology; vol. 79; Feb. 1, 1997.

* cited by examiner



FIG. 1



FIG. 1A



FIG. 1B

FIG. 1C



FIG. 1D

FIG. 1E



FIG. 1F



FIG. 2A

FIG. 2B

FIG. 2C



FIG. 3

FIG. 4A

FIG. 4B



FIG. 5A



FIG. 5B



FIG. 5C

U.S. Patent          Oct. 15, 2013          Sheet 8 of 11          US 8,560,046 B2

100

607

124          156   126

108

614   616

FIG. 6A



100   124          126

108

FIG. 6B



FIG. 7A

FIG. 7B

FIG. 8A

FIG. 8B



FIG. 9A

FIG. 9B



FIG. 10A

FIG. 10B



FIG. 11

FIG. 12

FIG. 13A

FIG. 13B

US 8,560,046 B2

**1**

## DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims priority to U.S. Provisional Patent Application No. 61/334,081, filed May 12, 2010, entitled "Device Features and Design Elements for Long-Term Adhesion," which is incorporated by reference as if fully set forth herein.

### INCORPORATION BY REFERENCE

All publications and patent applications mentioned in this specification are herein incorporated by reference to the same extent as if each individual publication or patent application was specifically and individually indicated to be incorporated by reference.

### FIELD OF THE INVENTION

This application relates to devices worn on a body for monitoring, recording, reporting and/or treating the person wearing the device, improvements in the device design elements and functionality are disclosed for maintaining the device in contact with and operational for extended periods of time, typically longer than 24 hours.

### BACKGROUND OF THE INVENTION

The ability to adhere a medical device to a human body for a long-period of time is dependent on a variety of factors. In addition to the type and nature of the adhesive chosen, another factor is the mechanical design of the device. By design, this refers to, but is not limited to, the device shape, size, weight, flexibility, and rigidity. These design elements are influenced by a number of additional factors, including, but not limited to, where on the body the device will attach and the duration of the attachment, moisture conditions in that area, movement conditions in that area, stretching and contraction in that area, interactions with external factors in that area such as clothing, and purposeful and/or inadvertent interaction between the person wearing the device and the device.

As many devices are typically used on the body for less than 24 hours, devices have not been designed that can withstand longer-term adhesion. Hence, there is a need to implement device features and design elements that have the ability to enhance the likelihood of adhesion of a device to a human body for 24 hours or more, while accommodating the functionality, shape, size, weight, flexibility, and rigidity of a given device.

### SUMMARY

In one aspect of the invention, there is an electronic device for long-term adhesion to a mammal. The device has a housing containing an electronic component with a first wing and a second wing integrally formed with the housing. There is an electrode positioned on a bottom surface of each of the wings with the electrodes electrically connected to the electronic component. An adhesive layer is provided for adhesion to a surface of the mammal. The adhesive layer is coated on a portion of the bottom surface of the wings. The adhesive layer is not coated on the electrode or on a bottom surface of the housing.

**2**

The electronic component in any of the devices described herein may include a processor having a memory with computer readable instructions to record signals from the first and second electrodes while the electronic device is attached to the mammal. The processor may be configured to only convert signals from the electrodes to digital signals, filter those signals and then store the signals in memory.

In another aspect, the device includes a flap connected to each of the wings. The flaps may extend below the housing. Additionally or alternatively, the adhesive layer is coated on a bottom surface of the flaps.

In another aspect, the device includes a connector segment. In one aspect, the connector segment configured to connect the flaps together. In other aspects, the connector segment is located at least partially below the housing. Still further, the connector segment is not attached to the housing.

In one alternative, the adhesive layer is coated on a bottom surface of the flap.

In still another aspect, the adhesive for adhesion to a surface of the mammal is an adhesive that can absorb fluids. In another aspect, the adhesive that can absorb fluids is a hydrocolloid adhesive. In another aspect, the adhesive for adhesion to a surface of the mammal is a pressure-sensitive adhesive. The pressure sensitive adhesive is selected from the group consisting of: a polyacrylate, polyisobutlene, and a polysiloxane. In one alternative, the device includes a diffusion barrier between the adhesive layer and each of the wings. The device may also include an additional adhesive layer and material layer between the wing and the adhesive layer for adhesion to the mammal. The material layer is configured to prevent diffusion of adhesive components from the adhesive layer to the wing. The diffusion barrier may be made from polyester or other suitable synthetic material.

In one aspect of the device, all or substantially all of the electronic components are within the housing. In another aspect, the wing is free from electronic components. In one aspect, the wing is more flexible than the housing. In one alternative, the wings and the housing are made from the same material. In another aspect, the wings and the housing are made from different materials. In another, the wings are made from a fabric. In still another aspect, the material used to make the wings includes a synthetic fiber. In another alternative, the wing and the flap are composed of the same material.

In another alternative, the device includes a hinge portion between the housing the wing. The hinge portion is configured to allow the device to bend between the housing and the wing. In one aspect, the hinge portion exists between a rigid portion of the device and a flexible portion of the device. In one alternative, the rigid portion of the device corresponds to the portion of the housing including the electronics and the flexible portion of the device includes a wing.

In one aspect, the bottom surface of the wing and the bottom surface of the flap are contiguous. In another aspect, the bottom surfaces of the wings, the flap, and the connectors are contiguous. In still other aspects, the flaps and the connector are contiguous.

In another aspect, the connector has at least one hole extending it. The hole may have any of a number of shapes such as circular, oval, round, or triangular.

In one aspect, the housing is thicker at a center of the housing than at edges of the housing.

In another aspect of the device, the housing is unattached to the mammal when the electrodes are in contact with the mammal.

In another alternative aspect of a device for long-term adhesion to a mammal, the device includes a housing with a first wing extending laterally from the housing and a second

US 8,560,046 B2

**3**

wing extending laterally from the housing without overlapping the first wing. There is a first electrode positioned on a bottom surface of the first wing and a second electrode positioned on a bottom surface of the second wing. An electronic memory is positioned within the housing. The electronic memory is configured to receive and store electronic signals from the first and second electrodes while the electronic device is attached to the mammal. There is also an adhesive layer on a portion of a bottom surface of the first wing and the second wing. The adhesive is not on a bottom surface of the housing. When the device is worn on the mammal, only the adhesive layer(s) are attached to the mammal.

In one aspect, the portion of the bottom surface of the first wing and the second wing does not include the first and second electrodes. In one device aspect, the first wing, the second wing, and the housing are formed from the same material. In still another, the first wing, the second wing and the housing integrally form a monolithic structure. In other aspects, an angle formed by the first wing, the second wing, and the housing is between approximately 90° and 180°. In one variation, the angle is approximately 180°. In another variation, the angle is approximately 135°.

In still other embodiments, there is a first hinged portion between the first electrode and the processor and a second hinged portion between the second electrode and the housing.

In a further aspect, at least a portion of the body uncovered is not adhered to the mammal when signals from the electrodes are being recorded in memory.

In another aspect, the device includes a first flap connected to the first wing medial to the first electrode and a second flap connected to the second wing medial to the second electrode. Each flap may extend below the housing.

The device may also include a connector segment configured to connect the flaps together. In one aspect, the connector segment is located at least partially below the housing, but is not attached to the housing.

In another aspect, there is an electronic device that has a patch including a housing containing an electronic component. There is an electrode positioned on a bottom surface of the patch, the electrode electrically connected to the electronic component. There is a first adhesive strip extending around the perimeter of the patch and a second adhesive strip extending around the perimeter of the first adhesive strip. In one aspect, the first adhesive cover over the first adhesive strip and a second adhesive cover over the second adhesive strip. The first and second adhesive covers may be configured to be separably removed from the first and second adhesive strips. In one alternative, the first adhesive strip extends between the first and second adhesive covers. In another alternative, the adhesive in the first and the second adhesive strips is an adhesive that can absorb fluids. In still another aspect, the adhesive that can absorb fluids is a hydrocolloid adhesive. In one alternative, the adhesive in the first and the second adhesive is a pressure-sensitive adhesive. In some aspects, the pressure-sensitive adhesive is a polyacrylate, a polyisobutylene, or a polysiloxane.

In one alternative, the second adhesive strip partially overlaps the first adhesive strip. In another aspect, the second adhesive strip is attached to a shell, the shell overlapping the first adhesive strip.

In still another alternative device for long-term adhesion to a mammal, the device includes a patch having a housing with an electronic component contained therein. There is an electrode positioned on a bottom surface of the patch. The electrode electrically connected to the electronic component. There is a porous foam pad configured to be positioned between the electronic component and the mammal. In one

**4**

aspect, the porous foam pad comprises a biocompatible foam material. In one variation, the porous foam pad can absorb fluids. In still another aspect, the porous foam pad is attached to the housing. In another, the porous foam pad is configured to be attached to the mammal. In another request, the porous foam pad can absorb fluids.

In one aspect of a method applying an electronic device, there is a step of removing a first adhesive cover from the first wing of the electronic device to expose an electrode and an adhesive coated on a bottom surface of a first wing. There is a step of placing the exposed electrode into contact with the mammal by adhering the adhesive coated bottom of the first wing to the mammal. There is also a step of removing a second adhesive cover from the second wing of the electronic device to expose an adhesive coated on a bottom surface of the second wing and another exposed electrode. There is also a step of placing the another exposed electrode into contact with the mammal by adhering the adhesive coated bottom of the second wing to the mammal. After performing, the removing and the placing steps, the housing is unattached to the mammal, but is held in position on the mammal using the adhesive coated bottoms of the first and the second wings.

In one alternative method of attaching a device, the electronic device includes a first flap connected to the first wing and a second flap connected to the second wing. The first and second flaps each extend below the housing. The step of removing a first adhesive cover from the first wing may also include exposing an adhesive coated on a bottom surface of the first flap. The step of removing a second adhesive cover from the second wing may also include exposing an adhesive coated on a bottom surface of the second flap.

In another alternative method of attaching a device, after performing the removing and the placing steps, the housing is held in position on the mammal using only the adhesive coated bottoms of the first wing, the second wing, the first flap and the second flap.

In an alternative aspect of a method of applying an electronic device to a mammal for tong-term adhesion, the method includes removing a first adhesive cover from the first wing of the electronic device to expose an electrode and an adhesive coated on a bottom surface of the first wing. There is also a step of removing a second adhesive cover from the second wing of the electronic device to expose an adhesive coated on a bottom surface of the second wing and another exposed electrode. There is a step of placing the exposed electrodes into contact with the mammal by adhering the adhesive coated on the bottom of the first and the second wings to the mammal. After performing the removing and the placing steps, the housing is unattached to the mammal, but is held in position on the mammal using the adhesive coated bottoms of the first and the second wings.

There is also provided a method of applying an electronic device to a mammal for long-term adhesion wherein the electronic device includes a patch. The patch includes an electronic component along with an electrode positioned on a bottom surface of the patch and electrically connected to the electronic component. There is a first adhesive strip extending around the perimeter of the patch and a second adhesive extending around the perimeter of the first adhesive strip. One aspect of a method of applying the device includes a step of removing an adhesive cover from the second adhesive strip of the electronic device. There is a step of applying pressure to the second adhesive strip to adhere the second adhesive strip to the mammal such that the electrode is in contact with the mammal. Then, after a period of time, removing an adhesive cover from the first adhesive strip of the electronic device. Next, there is the step of applying pressure to the first adhe-

US 8,560,046 B2

5
6

sive strip to adhere the first adhesive strip to the mammal such that the electrode remains in contact with the mammal.

In another alternative method of applying an electronic device to a mammal for long-term adhesion, the electronic device includes a patch, an electronic component, and an electrode positioned on a bottom surface of the patch and electrically connected to the electronic component. There is a first adhesive strip extending around the perimeter of the patch. The method includes a step of applying pressure to a first adhesive strip to adhere the first adhesive strip to the mammal such that the electrode is in contact with the mammal. After a period of time, placing a second adhesive strip around the perimeter of the first adhesive strip. Then there is the step of applying pressure to the second adhesive strip to adhere the second adhesive strip to the mammal such that the electrode remains in contact with the mammal.

Any of the above described devices may include additional aspects. A device may also include a first wire connecting the first electrode and the processor or an electronic memory and a second wire connecting the second electrode and the processor or an electronic memory. The first and second wires extend within the body and the first and second wings. In one aspect, the first and second wires extend within and are completely encapsulated within the body and the first and second wings. In one aspect, a conduit is provided within the body and the wings and the wires pass through the conduit. In one alternative, the conduit extends from the processor or electronic memory to an electrode so that the wire is completely within the conduit. In still other aspects of the devices described above, the first and second wires connecting the electrodes to the processor or electronics each include slack between the electrode and the processor. In one aspect, the slack is located in a portion of each wing that is configured to bend or flex. In another aspect, the slack is a portion of the wire within the wing and at least partially coiled about the first or the second electrode. In still other aspects, the slack is provided by a portion of the wire formed into a coil, a wave pattern, or a sinusoidal pattern along its length the connection point on the electronics to the connection point on the electrode.

In still other alternatives, the devices described above may be applied to any of a wide variety of conventional physiological data monitoring, recording and/or transmitting devices. Any of the improved adhesion design features and aspects may also be applied to conventional devices useful in the electronically controlled and/or time released delivery of pharmacological agents or blood testing, such as glucose monitors or other blood testing devices. Additional alternatives to the devices described may include the specific components of a particular application such as electronics, antenna, power supplies or charging connections, data ports or connections for down loading or off loading information from the device, adding or offloading fluids from the device, monitoring or sensing elements such as electrodes, probes or sensors or any other component or components needed in the device specific function. In still other aspects, the electronic component in any of the above devices is an electronic system configured for performing, with the electronic signals of the mammal detected by the electrodes, one or more of any combination of or the following electronic functions: monitoring, recording, analyzing, or processing using one or more algorithms electronic signals from the mammal. Still further, any of the devices described may include appropriate components such that the device is used to detect, record, process or transmit signals or information related to signals generated by a mammal to which the device is attached including but not limited to signals generated by one or more of EKG, EEG and/or EMG.

BRIEF DESCRIPTION OF THE DRAWINGS

The novel features of the invention are set forth with particularity in the claims that follow. A better understanding of the features and advantages of the present invention will be obtained by reference to the following detailed description that sets forth illustrative embodiments, in which the principles of the invention are utilized, and the accompanying drawings of which:

FIG. **1** is a top view of a patch having two wings;

FIG. **1**A is a representative cross-section of an embodiment of the patch in FIG. **1**;

FIG. **1**B is a representative cross-section of another embodiment of the patch in FIG. **1**;

FIG. **1**C is a representative cross-section of another embodiment of the patch in FIG. **1**;

FIG. **1**D is a representative cross-section of another embodiment of the patch in FIG. **1**;

FIG. **1**E is a representative cross-section of another embodiment of the patch in FIG. **1**;

FIG. **1**F is a top view of a patch having three wings illustrating an alternative electrode-electronics-electrode orientation;

FIG. **2**A is a schematic drawing of the electronics contained within a patch;

FIG. **2**B is a schematic drawing of a patch with wiring having slack in the form of undulations between electronics and electrodes;

FIG. **2**C is a schematic drawing of a patch with wiring having slack in the form of a coil between electronics and electrodes;

FIG. **3** is the bottom view of a patch having adhesive thereon;

FIG. **4**A shows a patch as worn by a person rolled to the side;

FIG. **4**B shows a patch as worn by a person playing golf;

FIG. **5**A shows a patch in response to a concave bend of the skin;

FIGS. **5**B and **5**C show a patch in response to a convex bend of the skin;

FIG. **6**A is a bottom view of a patch having a connector between two flaps;

FIG. **6**B is a cross-section of the patch of FIG. **6**A;

FIG. **7**A is a bottom view of a patch having multiple covers forming strips of adhesive;

FIG. **7**B is a cross-section of the patch of FIG. **7**A;

FIG. **8**A is a bottom view of a patching having multiple covers forming strip of adhesive around each electrode;

FIG. **8**B is a cross-section of the patch of FIG. **8**A;

FIGS. **9**A and **9**B show a patch having multiple layers formed thereon;

FIGS. **10**A and **10**B show a patching having multiple layers formed thereon, each layer having multiple patches of adhesive;

FIG. **11** shows a patch having an open cell support;

FIG. **12** shows a patch having an annular open cell support;

FIG. **13**A shows a patch having a protective shell thereon; and

FIG. **13**B shows a cross-section of the patch of FIG. **13**A.

DETAILED DESCRIPTION

The following device features and design elements can be implemented into any device being adhered to the human

US 8,560,046 B2

7

body for a long-period of time, typically greater than 24 hours. As an example, the following device features and design elements can be used for long-term adhesion of a cardiac rhythm monitoring patch ("patch") to the chest of a person.

Referring to FIGS. **1** and **1A**, a patch **100** for long term adhesion includes a housing **102**. The housing **102** can be formed from any flexible, durable material, such as a biocompatible polymer, for example silicone. The housing **102** can include electronic components **108** therein. As shown in FIG. **2**, the electronics **108** can include a printed circuit board **220**, a battery **225**, and a communications port mounted on the printed circuit board **220**. The printed circuit board **220** can include analog circuits **210**, digital circuits **215**, and an activation or event notation button or switch **130**. The electronics **108** can be used, for example, to record continuous physiological signals from a mammal wearing the patch **100**. A system for continuously recording data is described further in co-owned U.S. application Ser. No. 11/703,428, filed Feb. 6, 2007, the entire contents of which are incorporated by reference herein.

As shown in FIGS. **1** and **1A**, wings **104**, **106** can be connected to the housing **102**. The wings **104**, **106** can be integral with the housing **102** and, in some embodiments, can be formed of the same material as the housing **102**. The wings **104**, **106** can be more flexible than the electronic components **108**, which can be substantially rigid. An electrode **124**, **126** can extend through a bottom surface of each wing **104**, **106**. The electrodes can be positioned to detect an ECG of a mammal wearing the patch **100** for processing by the electronics **108**. For example, the electrodes can be more than 2 cm apart, such as more than 3 cm apart, for example at least 6 cm apart. The electrodes **124**, **126** can be integral with the wings **104**, **106** so as to be inseparable from the wings **104**, **106** when the patch is in use.

For a patch **100** that is entirely flexible and can conform, stretch, and adapt to the movement and conditions of the chest underneath the device, adhesive can be placed over the entire surface of the device that is in contact with the body, except for areas where sensors, electronics, or others elements such as electrodes are interacting with the body related to the functioning of the device may be incorporated. Thus, as shown in FIG. **3**, an adhesive layer **164**, **166** can coat the bottom of the patch **100** for attachment to the skin. For a patch **100** in which there may be some areas that are not completely flexible and may not be able to stretch or contract (e.g., the electronics **108**), adhesive may be excluded from the portion of the patch **100** underneath these areas. Thus, for example, the bottom surface **302** of the housing **102**, which contains the electronics, can remain free from adhesive. As shown in FIG. **1A**, by not coating adhesive on a bottom surface of the housing **102**, the housing **102** can float above the adhered portions, allowing for increased flexibility of the patch, as will be discussed further below. Further, as shown in FIG. **3** the bottom surface of the electrodes **124**, **126** can remain free of adhesive. For example, a ring **362** without adhesive can be formed around each electrode **124**, **126** to separate the electrodes from the adhesive **164**. The adhesive can be, for example, a pressure-sensitive adhesive, such as polyacrylate, polyisobutlene, or a polysiloxane. Alternatively, the adhesive can be a hydrocolloid which advantageously absorbs water.

The wings **104**, **106** and the housing **102** can form a smooth, contiguous outer surface to the patch **100**. As shown in FIG. **1A**, when viewed from the top, the housing **102** and wings **104**, **106** can together form an oblong substantially oval shape. Further, the housing **102** can have a thickness that is greater than the thickness of the wings **104**, **106**. The

8

housing **102** and each of the wings **104**, **106** when viewed in profile, can each form a dome with a height that is greater at the center than at the ends of the respective component, i.e., some or all of the components can be tapered at the ends and/or sides.

The electronics **108** can extend along only a portion of the distance between the electrodes **104**, **106**. For example, the electronics can occupy less than 90% of the distance between the electrodes, for example less than 80%. By having the electronics **108** in a relatively limited space between the electrodes **124**, **126**, the flexibility of the patch **100** can be increased.

The housing **102** can provide a watertight enclosure **110** for electronic components **108** of the patch **100**. The electronics **108** can be unattached to the housing **102** such that the electronics **108** are free to move within the watertight enclosure **110**. Allowing the relatively rigid electronics **108** to move freely within the flexible housing **102** advantageously enhances the overall flexibility of the patch **100**. The wings **104**, **106** can each have a watertight enclosure **114**, **116** formed therein, which can be contiguous with the watertight enclosure **110** of the housing **102**.

Wiring **120** or other suitable electrical connections can connect the electrodes **124**, **126** with the electrical components **108** of the housing. In some embodiments, as shown in FIGS. **1B-1E**, the contiguous nature of the enclosure **110** and the enclosures **114**, **116** allows the wiring **120** to extend within the patch **100** from the electrodes **124**, **126** to the electronic components **108**. In other embodiments, one or more channels, tubes, or conduits are provided between the housing **102** and the wings **104**, **106**, to provide space for the wiring **120**. The tube or channel may be straight or curved. In use, the wire **120** positioned in the enclosures **110**, **114**, **116** or in the tube or channel may move relative thereto in order to remain flexible within the housing. In one aspect, the flexible channels or tubes are formed within the device housing so that the housing, as it is being stretched, does not affect the ability of the components, such as wires, that may connect more rigid structures, to move or elongate.

As shown in FIG. **1**, the wire **120** is straight with a direct line of connection between the electrodes **124**, **126** and the electronics **108**. FIG. **1** illustrates an embodiment where the length of the wires **120** connecting the electrodes **124**, **126** to electronics **108** are about the same distance as the spacing between the electrode connection point on electronics **108** and the electrodes **124**, **126**. FIG. **1F** also illustrates a straight line type connection where wire **120** length is nearly the same as the spacing between the electronics **108** and the electrodes **124**, **126**. However, as a patient moves, the patch **100** flexes along with patient movement. As shown in FIGS. **4**B and **5**C, patch flexion may be severe and is likely to occur during long term monitoring. In order to address the possible dislocation or breakage of the wire **120**, the length or shape of the wire **120** may be selected to permit patch flexion to occur with little risk of wire **120** pulling from the electrode or electronics. Numerous alternatives are possible to compensate for patch flexion. Exemplary confirmations include undulations or zig-zags **231** as shown in FIG. **2**B, coils **233** as shown in FIG. **2**C, or a configuration that partially or fully wraps around an electrode. In some embodiments, other components, such as the circuit board or electrodes, can alternatively or additionally contain additional length to help accommodate stretch or displacement. When the patch **100** is attached to a mammal, the slack in the wiring **120** allows the patch **100** to flex while not placing stress on the wiring **120**.

While the illustrated embodiments of FIGS. **1A-1D** show only two wings and show the electrodes and electronics in a

US 8,560,046 B2

**9**

direct line in a approximate 180 degree alignment of electrode **124** to electronics **108** to electrode **126**), other configurations are possible. For example, as shown in FIG. **1**F, the wings **104**, **106** are arranged in an orientation less than 180 degrees. In the illustrated embodiment, the angle formed by the electrodes and the electronics is about 135 degrees. Other ranges are possible so long as electrode spacing is provided to permit ECG monitoring. The orientation of the wings **104**, **106** to the housing **102** also illustrates the use of an additional adhesive tab **105**. Tab **105** is shown as a semicircular extension of the body **102**. The bottom of tab **105** can include adhesives as described herein and is used to provide additional anchoring of the patch to the patient. The tab **105** may be formed in any of a number of different shapes such as rectangles, ovals, loops or strips. Further, in some embodiments, the tab **105** can function similar to a wing, e.g., include an electrode therethrough that connects to the electronics **108**.

Referring to FIGS. **1**A-**1**D and **2**B-**2**C, a wiring layer **194**, **196** in the patch **100** can extend between each electrode **124**, **126** and the electronics **108**. The hinge portions **194**, **196** can have a thickness less than the thickness of surrounding portions of the patch **100**. For example, if the hinge portions **194**, **196** are in the wings **104**, **106**, then the thickness can be less than adjacent portions of the wings. Likewise, the hinge portions **194**, **196** can have a width less than adjacent portions of the patch **100**, e.g., less than adjacent portions of the wings **104**, **106**. Alternatively, the hinged portion can be formed by the adjunct between a rigid portion, i.e. the electronics **108**, and amore flexible portion. The hinged portion allows the patch **100** to bend between the housing **102** and wings **104**, **106** to compensate for any movement caused by the patient. As shown in FIGS. **2**B and **2**C, the slack in the wiring **120** can be placed at or proximal to the hinge portions **194**, **196** to allow for bending at the hinge portions **194**, **196** without pulling or breaking the wiring **120**.

Referring to FIGS. **4**A and **4**B, having adhesive on the bottom of the patch **100** except in the areas substantially around the electrodes and directly underneath the housing **102** can create a floating section **455** over the skin of the mammal to which the patch **100** is attached. The floating section **455** can house the more rigid or less flexible electronic components while the flexible wings **104**, **106** can be adhered to the skin and provide the flexibility necessary to hold the patch **100** in place. As a result of this selective use of adhesive areas and non-adhesive areas, the limitation on device flexibility imposed by the less flexible floating section can be mitigated or reduced by bounding the floating section with one or more adhered flexible areas. The flexible sections can thus adhere to the body if the underlying portion of the body is stretched and/or contracted while the floating section is free to move above the skin, for example if the person wearing the device rolls over (as shown in FIG. **4**A) or is involved in activities that can otherwise cause movement of the skin (as shown in FIG. **4**B).

Referring back to FIGS. **1**B-**1**E, each wing **104**, **106** can include a material layer **214**, **216** between the adhesive **164**, **166** and the wings **104**, **106**. The material layer **214**, **216** can be, for example, a polyester layer. The material layer **214**, **216** can be attached to the patch **100** with a layer of adhesive **204**, **206**. The adhesive **204**, **206** can be the same as the adhesive **164**, **166** or different. For example, the adhesive **204**, **206** could be a silicone adhesive. The material layer **214** can serve as a barrier to prevent diffusion or migration of adhesive components, such as a tackifier, from the adhesive **164**, **166** into the wings **104**, **106** or housing **102**. The material layer **214** can thus advantageously serve to maintain the strength of the adhesive **104**, **106** over time.

**10**

Referring still to FIGS. **1**B-**1**E, the patch **100** can further include a first flap **154** connected to the first wing **104** and a second flap **156** connected to the second wing **106**. The flaps **154**, **156** can both extend from a position on the wings **104**, **106** medial to the electrodes to a position below the housing **102**, such as below the electronics **108**. The flaps **154**, **156** can remain unattached to the housing **102**. As a result, gaps **144**, **146** can be formed between the flaps **154**, **156** and the housing **102**. The gaps can provide additional "floating" for the housing **102** and the relatively rigid components **108** contained therein.

In some embodiments, shown in FIG. **1**B, the flaps **154**, **156** can be attached to the wings **104**, **106** with adhesive **134**, **136**. The adhesive **134**, **136** can be the same as the adhesive **164**, **166** or different. For example, the adhesive **134**, **136** could be a silicone adhesive. In other embodiments, shown in FIGS. **1**C-**1**E, the flaps **154**, **156** can be integral with the wings **104**, **106**. For example, the flaps **154**, **156** can be solvent welded to and/or formed during the molding process of the wings **104**, **105** such that hinges **194**, **196** form below the wings **104**, **106**. Additionally or alternatively, one or more of the flaps **154**, **156** may be separably attached to the wings **104**, **106**. In some embodiments, shown in FIGS. **1**B and **1**C, the materials making up the flaps **154**, **156** can extend all the way to the lateral edge of the patch **100**. In other embodiments, shown in FIG. **1**D, a flap can extend on each side of the electrodes, i.e. one flap can extend medially and the other laterally. In some embodiments, the lateral and medial—extending flaps are part of the same annular flap. In other embodiments, shown in FIG. **1**E, the flaps and materials making up the flaps extend only from a position medial to the electrodes underneath the housing.

The flaps **154**, **156** may be positioned in virtually any relationship to the adhered flexible area such that, when attached in use, the attachment of the flap or flaps effectively counteracts the expected external forces acting on the device, specifically those forces that may dislodge the adhered flexible areas. Further, in embodiments such as that shown in FIG. **1**F where there are more than two wings, there can be a flap corresponding to each additional wing.

The adhesive layers **164**, **166** can coat all or a portion of the bottom of each of the flaps **154**, **156**. In some embodiments, the adhesive **164**, **166** extends continuously from the bottom surface of the wings **104**, **106** to the bottom surface of the flaps **154**, **156**, except for areas proximate to the electrodes **124**, **126**. Further, the top surface of the flaps **154**, **156**, i.e. the surface closest to the housing **102**, can remain free of adhesive to ensure that the housing **102** remains floating. In some embodiments, the only portion of the patch **100** including adhesive for adhesion to the skin can be the flaps **154**, **156**.

Referring to FIGS. **5**A-**5**C, the flaps **154**, **156**, can provide hinge-like behavior for the patch **100**. Thus, as shown in FIG. **5**A, if the skin **501** is stretched or bent in a concave manner, the gaps **144**, **146** between the flaps **154**, **156** and the housing **102** can approach zero such that the patch **100** can sit substantially flat on the skin **501**. As shown, the hinge portions **194**, **196** between the housing **102** and wings **104**, **106** can provide additional flexibility for concave bends by flattening as the patch **100** is stretched. In contrast, as shown in FIGS. **5**B and **5**C, as the skin **501** is bent in an increasingly convex manner, the gaps **144**, **146** between the flaps **154**, **156** and the housing **102** can increase, thereby allowing the flexible wings **104**, **106** to remain adhered to the skin and the rigid housing **102** to float above skin. As shown, the hinge portions **194**, **196** between the housing and the wings **104**, **106** can provide additional flexibility for convex bends by folding inward as the patch **100** is bent.

US 8,560,046 B2

**11**

When placed substantially flat on the skin **501**, the patch **100** can have a height that extends no more than 2 cm off of the skin, such as no more than 1.5 cm off of the skin, when lying flat on the patient and no more than 4 cm, such as no more than cm off of the skin when floating above the skin. The relatively low height of the patch **100** can enhance long-term adhesion by reducing the potential for the patch **100** to snag or rip off of the skin.

Advantageously, the flaps **154**, **156** can function as anchors for adhesion that mitigates shear force. The flaps **154**, **156** can provide a different direction for the acute and chronic forces being experienced by the device due to stretching, contraction, or torsion to be spread out over both the flap as well as the flexible adhesive areas. Further, by pre-aligning the orientation of the floating section, adhered flexible area and the flaps, the device may be better able to tolerate (i.e., remain attached to the body and in use) and/or tailor the interaction with the forces acting on the device in order to better withstand the acute or chronic forces being experienced by the device. Tailoring the response of the device to the expected forces is one factor in improving the likelihood of long-term device adhesion.

Because the flaps can be used to counteract forces acting on a particular device, it is to be appreciated that the dimensions, flexibility, attachment technique, and/or orientation between a flap and another component may vary depending upon the purpose of a particular flap. Accordingly, a flap may have the same or different characteristics from another flap or component of the device. In one aspect, at least one flap is more flexible that the other flaps in a particular device. In another aspect, each of the flaps has similar flexibility. In still another aspect, at least one flap is more flexible than the device component to which it is attached or from which it originates. In still another aspect, at least one flap is less flexible than the device component to which it is attached or from which it originates.

Referring to FIGS. **6**A and **6**B, in one embodiment, the flaps **154**, **156** may be augmented by a connector segment **607** used to join the flaps together. The connector segment **607** can extend below the housing **102**, but remain unattached to the housing **102**. As shown in FIG. **6**A, the flaps **154**, **156** and the connector **607** can together form a butterfly shape. In one embodiment, the connector segment **607** and the flaps **154**, **156** are formed from a single piece of material. The connector segment **607** can be made of the same material as the flaps **154**, **156** or of different material. In one embodiment, the bottom surface of the connector is covered with adhesive. In another embodiment, the bottom surface of the connector does not include any adhesive. Further, as shown in FIG. **6**B, the connector segment **607** can be thicker in the middle, under the housing **102**, than near the edges, i.e., closer to the electrodes. The variable thickness can help prevent the connector segment **607** from capturing moisture thereunder. The connector segment **607** can advantageously prevent the device from flipping when attached to the patient.

The connector segment **607** can include one or more holes **614**, **616**. In some configurations, the connector segment may trap moisture and/or inadvertently stick to the body. The holes **614**, **616** can advantageously minimize the potential for undesired sticking or moisture collection. The size, shape and placement of the holes mitigate or reduce the collection of moisture and/or undesired adhesive still providing a connector with sufficient structural integrity (i.e. the connector allows the flaps to be connected to one another in order to prevent them from folding). Additionally or alternatively, the connector holes could also be made to preferentially allow forces to be distributed along certain axes of the connector in

**12**

order to further maximize the ability of the device to adhere tong-term in the face of significant acute and chronic forces due to stretching, contraction, and torsion.

Adhesive can be selectively applied to the connector and/or flaps to provide the desired body attachment locations depending upon the specific use of the device. For example, one piece of material including flaps and the connector can be adhered along two or more edges and/or with adhesive only covering certain areas. In another aspect, at least a portion of the skin-contacting surface of the unitary flap connector structure does not include any adhesive. Additionally or alternatively, the connector segment incorporating the flaps may be integral parts of the larger device housing (e.g. could be molded as part of the device housing or enclosure).

In some embodiments, the patch **100** can include one or more release liners to cover parts of the adhesive prior to adhesion. As is particular to devices having multiple adhesive areas and/or multiple adhesive components (i.e., flaps and flexible sections), the manner of applying the device may be specifically detailed in order to ensure that the device and the adhesive portions are properly engaged. In one particular aspect, the release liners are removed in a particular order to minimize the likelihood that the device adhesive is misapplied. For example, a portion of the adhesive may be exposed first and used to affix the device to the body. Thereafter, a second set of adhesive liners may be removed to expose and affix one or more flaps to the body. A stepwise adhesive exposure method may be implemented during device application such that elements, such as the one or more flaps do not fold on themselves, for example.

Breaking up the areas in which the adhesive is used to adhere the device, whether it be splitting it up to rigid areas, to create flaps, to create connector segments with holes, of any of the other techniques described above may also have benefits in terms of preventing moisture bridges that could act as conducting pathways between electrical sensing elements, such as electrodes. Bridges of moisture could short-circuit electrical connections and/or prevent the proper functioning of the device, particularly if the device has an electrical function, such as sensing via electrodes.

In some applications, a long-duration patch may experience excessive forces due to acute (quick and/or rapid) or chronic (slow and/or prolonged) contraction, stretching, or torsion. In such applications, the hinge points between a floating rigid section and flexible adhered sections may be modified in order to align with and counteract or mitigate the predominant direction of the force acting on the patch. In some device situations or configurations, the strength and direction of the acute or chronic force may be so strong that the forces imparted on the device adhesive surfaces or components may be distributed differently in addition to or as an alternative to the hinge described above.

Further, the device construction can be made in such a way that the housing is fashioned so that the axes of the housing are structured and placed along or against the direction of various forces, possibly during certain states, such as sleeping, so that the device itself can help counteract these forces and improve long-term adhesion.

Advantageously, the patch described herein can provide long-term adhesion to the skin. Having the various flexible portions and/or hinged portions can compensate for stressed caused as the skin stretches or bends, while allowing the rigid portion to float about the skin. As a result, the devices described herein can adhere to the skin substantially continuously for more than 24 hours, such as greater than 3 days, for example, greater than 7 days, greater than 14 days, or greater than 21 days.

13

14

Another mechanism for adhering a patch to the skin long-term is described with respect to FIGS. **7**-**10**. As shown in the embodiments of FIGS. **7**-**10**, one or more parts of the patch are used in a temporary fashion in order to improve adhesion. The adhesive used in the embodiments described below can include a hydrocolloid or a pressure-sensitive adhesive, such as polyacrylate, polyisobutylenes, or polysiloxane.

In one embodiment, shown in FIGS. **7**A and **7**B, the patch **700** can be surrounded with an adhesive **760** having multiple covers **701**, **703**, **705** thereon that can be peeled away in a sequence to expose strips of adhesive **760** underneath. The covers **701**, **703**, **705** can be concentric with one another and be configured to be pulled off separately and sequentially starting from the inside of the patch **700**. Each additional exposed area of adhesive **760** can increase the adhesion life of the patch **700**. Although only three covers are shown in FIG. **7**A, other numbers, such as 2, 4, 5, or more are possible. Further, each electrode **124**, **126** of the patch **700** can include a barrier **714**, **716** to protect the electrodes **124**, **126** from shortage.

In another embodiment, shown in FIGS. **8**A and **8**B, each electrode **124**, **126** can be surrounded by a patch of adhesive **864**, **866**. Accordingly, a set of covers **801**, **803**, **805**, **807** can be positioned sequentially around each of the electrodes **124**, **126** over the adhesive **864**, **866**. The covers **801**, **803**, **805**, **807** can be concentric with one another and be configured to be pulled off sequentially starting from the inside. Each additional exposed strip of adhesive **864**, **866** can increase the adhesion life of the patch **100**. Although only four covers are shown in FIG. **8**A, other numbers, such as 2, 3, 5, or more are possible. Further, each electrode **124**, **126** of the patch **800** can include a barrier **814**, **816** to protect from shortage.

Referring to FIGS. **9**A-**9**B, in other embodiments, shells or layers **901**, **902**, **903** can extend over all or a portion of the patch **900**. Each layer **901**, **902**, **903** can include a strip of adhesive **962** on the bottom surface and an adhesion guard **982** protecting the adhesive. As shown in FIG. **9**B, as the patch **900** is worn over a period of time, the layers **901**, **902**, **903** can be sequentially removed. As a new layer is exposed, the adhesive guard **982** of that layer can be peeled away such that the adhesive **962** of the new layer can be used to adhere the patch **900** to the skin. In a similar embodiment, referring to FIGS. **10**A-**10**B, each of the layers **1001**, **1002**, **1003** can include multiple portions of adhesive to help adhere the layer to both the skin and the patch itself. As with the embodiments of FIGS. **7**-**8**, the number of layers in the embodiments of FIGS. **9** and **10** can vary. For example, there can be 2, 3, 4, or 5 or more layers.

In some embodiments, the layers or covers of the embodiments described herein can be added to the device over time to improve adhesion. Further, the multiple layers or covers of the embodiments described herein can be partially overlapped. Further, in some embodiments, the strips of adhesive can be overlapped.

Advantageously, the use of multiple covers or layers can assist in the adhesive performance of a base or core device because the added surface area or adhesive force of the combined outer layer aids in preventing layer pull away and/or may act to spread forces being experienced away from the core device by spreading those forces over a larger area

Referring to FIGS. **11** and **12**, an open cell structured support **1330** or porous foam can be used to support a more rigid or less flexible portion **1302** of the patch **1300**. As shown in FIG. **11**, the open cell structured support **1330** can fully fill an area below the rigid portion **1302**. Alternatively, as shown in FIG. **12**, the open cell structured support **1330** can be an annular shape or have some other configuration that includes spaces between adjacent portions of the support. The open cell structured support **1302** may be attached to both the skin and to the rigid portion, to only the rigid portion, or to only the skin. Because of the open cell structure of the support, the flexible movement of the skin can be absorbed by the structure entirely or partially such that the rigid portion does not impact or has a reduced impact on the ability of the device to accommodate movement and remain affixed. In addition, the open cell support may have a thickness selected to enhance patient comfort so that the more rigid portion of a device does not push against the skin. In one aspect, the open cell structure is a biocompatible foam material. In another aspect, the open cell material is positioned between an electronics module on the device and the skin when worn by a patient. The open cell support can advantageously absorb fluids to keep the electrodes from shorting.

Referring to FIG. **13**, the patch can have a shell design. Adhesive can be placed on the perimeter edge of the bottom ring. The circuit board and electrode unit can be dropped into the bottom ring, and a shell can be dropped on top of the circuit board and electrode. The perimeter adhesive can create a watertight chamber therein.

The shape of a particular electronic device embodiment may vary. The shape, footprint, perimeter or boundary of the device may be a circle or circular (see FIG. **13**A), an oval (see FIG. **1**A, **2**A), a triangle or generally triangular (see FIG. **1**F) or a square. Examples of a device embodiments having a compound curve shape are shown in FIGS. **2**B, **2**C, **3**, **6**A, **7**A and **8**A. In some embodiments, the compound curve includes one or more concave curves and one or more convex curves. FIG. **3** illustrates a device having a convex surface along the top (where reference **102** indicates), a concave surface along the bottom and convex shaped edges around the electrodes **124**, **126**. FIGS. **2**B and **2**C illustrate a device embodiment having a convex shape on either side of the electronics **108** and around the electrodes **124**, **126**. The convex shapes are separated by a concave portion. The concave portion is between the convex portion on the electronics and the convex portion on the electrodes. In some embodiments, the concave portion corresponds at least partially with a hinge, hinge region or area of reduced thickness between the body and a wing.

While described in the context of a heart monitor, the device adhesion improvements described herein are not so limited. The improvement described in this application may be applied to any of a wide variety of conventional physiological data monitoring, recording and/or transmitting devices. The improved adhesion design features may also be applied to conventional devices useful in the electronically controlled and/or time released delivery of pharmacological agents or blood testing, such as glucose monitors or other blood testing devices. As such, the description, characteristics and functionality of the components described herein may be modified as needed to include the specific components of a particular application such as electronics, antenna, power supplies or charging connections, data ports or connections for down loading or off loading information from the device, adding or offloading fluids from the device, monitoring or sensing elements such as electrodes, probes or sensors or any other component or components needed in the device specific function. In addition or alternatively, devices described herein may be used to detect, record, or transmit signals or information related to signals generated by a body including but not limited to one or more of EKG, EEG and/or EMG.

What is claimed is:

**1**. An electronic device for long-term adhesion to a mammal, the device comprising:

US 8,560,046 B2

**15**

a housing forming a watertight enclosure;

an electronic component contained within the watertight enclosure of the housing;

at least two flexible wings integral with and extending from the housing, wherein each wing comprises an electrical connection and a mechanical connection;

at least two electrodes integral with the wings so as to be inseparable from the wings during use of the device, wherein each of the electrodes extends through a bottom surface of one of the wings;

an adhesive layer covering at least a portion of the bottom surface of each of the wings for adhesion of the device to skin of the mammal, wherein the adhesive layer does not cover a bottom surface of the housing;

wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal; and,

wherein the electrical connections are not relied upon for mechanical support.

**2**. The electronic device of claim **1**, wherein the electronic component includes a processor, the processor having a memory with computer readable instructions to record signals from the electrodes while the electronic device is attached to the mammal.

**3**. The electronic device of claim **1**, further comprising a flap connected to each wing and extending below the housing, wherein the adhesive layer covers at least a portion of a bottom surface of each flap.

**4**. The electronic device of claim **3**, further comprising a connector segment configured to connect the flaps together.

**5**. The electronic device of claim **4**, wherein the connector segment is located at least partially below the housing, but is not directly attached to the bottom surface of the housing.

**6**. The electronic device of claim **4**, wherein the adhesive layer covers at least a portion of a bottom surface of the connector segment.

**7**. The electronic device of claim **1**, further comprising a hinge portion between the housing and each wing, wherein each of the hinge portions is configured to allow the device to bend between the housing and each wing.

**8**. The electronic device of claim **1**, wherein the adhesive layer is configured to absorb fluids.

**9**. The electronic device of claim **8**, wherein the adhesive layer comprises a hydrocolloid adhesive.

**10**. The electronic device of claim **1**, wherein the wings and the housing are made from one type of material.

**11**. The electronic device of claim **1** wherein the wings and the housing are made from different materials.

**12**. The electronic device of claim **11** wherein the wings are made from a fabric.

**13**. The electronic device of claim **11** wherein the material used to make the wings includes a synthetic fiber.

**14**. The electronic device of claim **1**, wherein the wings are more flexible than the housing.

**15**. The electronic device of claim **1**, wherein the adhesive layer comprises a pressure-sensitive adhesive.

**16**. The electronic device of claim **15** wherein the pressure sensitive adhesive is selected from the group consisting of: a polyacrylate, a polyisobutlene, and a polysiloxane.

**17**. The electronic device of claim **1**, wherein the housing is thicker at a center of the housing than at edges of the housing.

**18**. The electronic device of claim **1**, further comprising a diffusion barrier between the adhesive layer and each of the wings.

**19**. The electronic device of claim **18** further comprising a polyester diffusion barrier.

**16**

**20**. The electronic device of claim **1**, further comprising a material layer between the bottom surfaces of the wings and the adhesive layer, wherein the material layer is configured to prevent diffusion of adhesive components from the adhesive layer to the wing.

**21**. The electronic device of claim **1**, wherein the bottom surface of the housing is not directly attached to the mammal when the electrodes are in contact with the mammal.

**22**. The electronic device of claim **1**, wherein the electronic component is housed within, but is unattached to, the watertight enclosure such that it can move freely within the housing.

**23**. An electronic device for long-term adhesion to a mammal, the device comprising:

a housing forming a watertight enclosure;

a first flexible wing integral with and extending laterally from the housing;

a second flexible wing integral with and extending laterally from the housing without overlapping the first wing;

wherein each wing comprises an electrical and a mechanical connection;

a first electrode integral with the first wing so as to be inseparable from the first wing during use of the device, wherein the first electrode extends through a bottom surface of the first wing;

a second electrode integral with the second wing so as to be inseparable from the second wing during use of the device, wherein the second electrode extends through a bottom surface of the second wing;

an electronic component contained within the watertight enclosure of the housing, the electronic component comprising an electronic memory configured to receive and store an electronic signal from the first and second electrodes while the electronic device is attached to the mammal; and

an adhesive layer on a portion of a bottom surface of the first wing and the second wing and not on a bottom surface of the housing,

wherein, when the device is worn on the mammal, only the adhesive layer is directly attached to the mammal and the bottom surface of the housing is not directly attached to the mammal;

wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal; and,

wherein the electrical connections are not relied upon for mechanical support.

**24**. The electronic device of claim **23**, wherein the portion of the bottom surface of the first wing and the second wing does not include the first and second electrodes.

**25**. The electronic device of claim **23**, wherein the first wing, the second wing, and the housing are formed from the same material.

**26**. The electronic device of claim **23**, wherein the first wing, the second wing and the housing integrally form a monolithic structure.

**27**. The electronic device of claim **23**, wherein an angle formed by the first wing, the second wing, and the housing is between approximately 90° and 180°.

**28**. The electronic device of claim **27**, wherein the angle is approximately 180°.

**29**. The electronic device of claim **27**, wherein the angle is approximately 135°.

**30**. The electronic device of claim **23**, wherein the electrical connection comprises:

US 8,560,046 B2

17

a first wire connecting the first electrode and the electronic memory; and

a second wire connecting the second electrode and the electronic memory.

**31**. The electronic device of claim **30**, wherein each of the first and second wires includes slack between the electrode to which it is attached and the electronic memory.

**32**. The electronic device of claim **31**, wherein the slack is located in a portion of each wing that is configured to bend or flex.

**33**. The electronic device of claim **23**, wherein the first wing includes a first hinged portion adjacent a junction between the first wing and the housing, and wherein the second wing includes a second hinged portion adjacent a junction between the second wing and the housing.

**34**. The electronic device of claim **23**, wherein at least the bottom surface of the housing is not adhered to the mammal when signals from the electrodes are being recorded in the electronic memory.

**35**. The electronic device of claim **23**, further comprising a first flap connected to the first wing medial to the first electrode and a second flap connected to the second wing medial to the second electrode, wherein each flap extends below the housing.

**36**. The electronic device of claim **35**, further comprising a connector segment configured to connect the flaps together.

**37**. The electronic device of claim **36**, wherein the connector segment is located at least partially below the housing, but is not directly attached to the bottom surface of the housing.

**38**. The electronic device of claim **23**, wherein the electronic component is housed within, but is unattached to, the watertight enclosure such that it can move freely within the housing.

**39**. A method of applying an electronic device having a housing including a watertight enclosure, an electronic component housed within the watertight enclosure, a first wing integral with the housing, and a second wing integral with the housing to a mammal for long-term adhesion, the method comprising:

removing a first adhesive cover from the first wing of the electronic device to expose a first electrode and an adhesive on a bottom surface of the first wing;

placing the exposed first electrode into contact with skin of the mammal by adhering the adhesive on the bottom surface of the first wing to the skin;

removing a second adhesive cover from the second wing of the electronic device to expose a second electrode and an adhesive on a bottom surface of the second wing; and

placing the second exposed electrode into contact with the skin of the mammal by adhering the adhesive on the bottom surface of the second wing to the skin;

wherein the electrodes are integral with the wings so as to be inseparable from the wings during use of the device;

wherein each wing comprises an electrical and a mechanical connection;

wherein the electrodes are configured to move toward and away from each other, causing the housing to move

18

toward and away from the mammal's body in response to movement of the mammal;

wherein the electrical connections are not relied upon for mechanical support; and

wherein, after performing the removing and the placing steps, the housing is not directly attached to the skin but is held in position on the mammal only by the adhesive on the first and the second wings.

**40**. The method of claim **39**, wherein the electronic device comprises a first flap connected to the first wing and a second flap connected to the second wing, the first and second flaps each extending below the housing, wherein the step of removing the first adhesive cover from the first wing further comprises exposing an adhesive on a bottom surface of the first flap, and wherein the step of removing the second adhesive cover from the second wing further comprises exposing an adhesive on the bottom surface of a second flap.

**41**. The method of claim **40**, wherein, after performing the removing and the placing steps, the housing is held in position on the mammal using only the adhesive on the first wing, the second wing, the first flap and the second flap.

**42**. The method of claim **39**, further comprising, after placing the second exposed electrode into contact with the skin, wearing the device on the skin continuously without removal for greater than 7 days.

**43**. A method of applying an electronic device having a housing including a watertight enclosure, an electronic component housed completely within the watertight enclosure, a first wing integral with the housing, and a second wing integral with the housing to a mammal for long-term adhesion, the method comprising:

removing a first adhesive cover from the first wing of the electronic device to expose a first electrode and an adhesive on a bottom surface of the first wing;

removing a second adhesive cover from the second wing of the electronic device to expose a second electrode and an adhesive on a bottom surface of the second wing; and

placing the exposed electrodes into contact with skin of the mammal by adhering the adhesive to the skin;

wherein the electrodes are integral with the wings so as to be inseparable from the wings during use of the device;

wherein each wing comprises an electrical and a mechanical connection;

wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal;

wherein the electrical connections are not relied upon for mechanical support; and

wherein, after performing the removing and the placing steps, the housing is not directly attached to the mammal but is held in position on the mammal only by the adhesive on the first and the second wings.

**44**. The method of claim **43**, further comprising, after placing the exposed electrodes into contact with the skin, wearing the device on the skin continuously without removal for greater than 7 days.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

| | | |
|---|---|---|
| PATENT NO. | : 8,560,046 B2 | Page 1 of 1 |
| APPLICATION NO. | : 13/106750 | |
| DATED | : October 15, 2013 | |
| INVENTOR(S) | : Kumar et al. | |

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page, Item (56)

In column 2 at line 39, Under Other Publications, change "hotter" to --holter--.

In the Specification

In column 1 at line 26, Change "device, improvements" to --device. Improvements--.

In column 2 at line 25, Change "polyisobutlene," to --a polyisobutylene,--.

In column 4 at line 7, Change "method" to --method of--.

In column 4 at line 38, Change "tong-term" to --long-term--.

In column 7 at line 60, Change "polyisobutlene," to --polyisobutylene,--.

In column 9 at line 1, Change "in" to --(i.e., in--.

In column 9 at line 29, Change "amore" to --a more--.

In column 11 at line 62, Change "still" to --while still--.

In column 12 at line 2, Change "tong-term" to --long-term--.

In column 13 at line 60, Change "area" to --area.--.

In the Claims

In column 15 at line 5, In Claim 1, change "wind" to --wing--.

In column 15 at line 60, In Claim 16, change "polyisobutlene," to --polyisobutylene,--.

Signed and Sealed this
Third Day of June, 2014

*Michelle K. Lee*

Michelle K. Lee
*Deputy Director of the United States Patent and Trademark Office*

**Application No.:**    16/723208
**Filing Date:**        December 20, 2019

## REMARKS

The foregoing amendments and the following remarks are responsive to the April 16, 2020 Office Action (the "Office Action"). Applicant thanks the Examiner for the courteous and helpful interview conducted on October 15, 2020 (the "Interview").

Applicant canceled claims, amended the claims, and added new claims as shown above. Applicant submits that the amendments and new claims are supported by the originally filed claims, the specification, and the figures as filed, explained in more detail below. Accordingly, no new matter is being introduced by these amendments and new claims. Entry of these amendments and new claims is respectfully requested.

In view of the foregoing amendments and the following remarks, Applicant respectfully submits that the present application is in condition for allowance.

### *Communications and Input*

Applicant welcomes any suggestions from the Examiner regarding potential claim amendments or new claims that may aid in overcoming the cited art. Applicant further welcomes any suggestions from the Examiner as to potentially patentable subject matter disclosed in the pending application, but not presented in the pending claims. Applicant is open to the possibility of an Examiner's amendment, and invites the Examiner to call the undersigned directly at (949) 721-6386 as appropriate.

### *Claim Objections*

Applicant amended Claim 21 as recommended by the Examiner, for at least this reason, Applicant respectfully requests that the Objection be withdrawn.

### *Claim Rejections – 35 USC § 103*

Claims 21-27 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over U.S. Patent 6,385,473 to Haines et al. in view of U.S. Patent 5,511,553 to Segalowitz. Claims 28 and 29 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over U.S. Patent 6,385,473 to Haines et al. in view of U.S. Patent 5,511,553 to Segalowitz and in further view of published U.S. Patent Application 2001/0056262 to Cabiri et al. Claims 30-36 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over US Patent 6,385,473 to Haines et al. in

**Application No.:**     16/723208
**Filing Date:**     December 20, 2019

view of U.S. Patent 5,511,553 to Segalowitz and in further view of published US Patent Application 2009/0048556 to Durand. Applicant respectfully disagrees.

### *Claim 21 is Patentable*

Applicant amended Claim 21 to further clarify the distinctions between Claim 21 and the prior art. Support for the amendment to Claim 21 may be found at least in paragraphs [0008], [0012], [0014], and [0077]-[0080] of the PG Pub and Figures 1 and 6A-6B (shown below). As explained during the Interview, the device of Haines includes a multi-layer adhesive construction on the three sensor areas, 20, 22, and 26 which are connected via webs 24, 28 and conductive tracks 48. (*See* Figure 3 below). The electrical connections 48 of Haines take a meandering path to get to each sensor, potentially introducing artifacts to the data collection. Further, the sensor regions are connected to the circuit board via webs 28, 24 and as explained in col. 9, ll. 5-17 "the webs preferably do not adhere to a wearer's skin." Lastly, Haines does not disclose the use of synthetic fibers. For at least these reasons, Applicant respectfully requests that the present rejection be withdrawn.



FIG. 6A

FIG. 1

FIG. 6B

**Application No.:**    16/723208
**Filing Date:**    December 20, 2019



*FIG. 3*

### Claim 30 is Patentable

Claim 30 was not discussed during the Interview; however, Claim 30 has been amended to incorporate at least some of the subject matter claimed in application 16/138,819 which issued as US10517500, *inter alia*, "wherein the wing comprises a second adhesive layer positioned over and adhered to the wing." Applicant respectfully submits that the cited references, considered either alone or in combination, do not disclose or suggest all the features of amended Claim 30. For at least these reasons, Applicant respectfully requests that the present rejection be withdrawn.

### Dependent Claims are Patentable

Applicant submits that the dependent claims are allowable not only because each of these claims depend from an allowable base claim, but also because each recites limitations not taught or suggested by the prior art. For at least these reasons, Applicant respectfully requests withdrawal of the present rejections.

### New Claims 37-40 are Patentable

Applicant added new Claims 37-40 to further clarify the distinctions between the present application and the cited references. New claim 37 is supported at least by paragraphs [0008] and [0077] of the PG Pub and Figures 1D and 1E (shown below). Applicant respectfully submits that the cited references, considered either alone or in combination, do not disclose, suggest, or

**Application No.:**    **16/723208**
**Filing Date:**        **December 20, 2019**

render obvious all the features of the new claims. For at least these reasons, Applicant respectfully submits that the new claims are patentable over the cited references.



FIG. 1D



FIG. 1E

### *New Dependent Claims are Patentable*

Applicant submits that the new dependent claims are allowable not only because each of these claims depend from an allowable base claim, but also because each recites limitations not taught or suggested by the prior art. For at least these reasons, Applicant respectfully requests withdrawal of the present rejections.

### *Claim Rejections – Nonstatuatory Double Patenting*

Claims 30-35 are rejected on the grounds of nonstatuatory double patenting as being unpatentable over claims 1 and 8-11 of U.S. Patent No. 8,538,503. Claims 30-32 are rejected on the grounds of nonstatuatory double patenting as being unpatentable over claims 8 and 9 of U.S. Patent No. 9,241,649. Claims 30, 33, 34, and 36 are rejected on the grounds of nonstatuatory double patenting as being unpatentable over claims 1, 9, 10, and 13 of U.S. Patent No. 10,405,799. Claims 30 and 32 are rejected on the grounds of nonstatuatory double patenting as being unpatentable over claims 13 and 16 of U.S. Patent No. 10,517,500. Applicant respectfully disagrees. However, since Applicant amended Claim 30 and Claims 31-36 depend from Claim 30, Applicant respectfully requests that these instant double patenting rejections be removed or

**Application No.:**    16/723208
**Filing Date:**        December 20, 2019

held in abeyance until an indication of patentable subject matter is made in this application. Applicant is open to a terminal disclaimer as needed to advance prosecution once allowable subject matter is identified.

_No Disclaimers or Disavowals_

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application. Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 16, 2020              By: /David R. Schmidt/ _____
                                         David R. Schmidt
                                         Registration No. 73,126
                                         Registered Practitioner
                                         (949) 760-0404

32816414

Application No.:    16/723208
Filing Date:        December 20, 2019

# AMENDMENTS TO THE CLAIMS

1-20. (Canceled)

21. (**Currently Amended**) An electronic device for long-term adhesion to a mammal, the device comprising:

a housing comprising a physiologic data collection circuit, the housing positioned over a flexible layer comprising synthetic fibers, the flexible layer extending from beneath the housing and comprising an electrode positioned on the underside of the flexible layer distal from the housing, wherein the flexible layer comprises:[[;]]

~~a wing extending from the housing, the wing comprising:~~

a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the data collection circuit to the electrode when viewed from above the electronic device,

an [[top]] upper adhesive layer positioned under the polymer [[top]] upper layer, the upper adhesive layer adhering the polymer upper layer to a polymer lower layer underlying the electrical connection,

~~a polymer middle layer positioned below the top adhesive layer,~~
~~a middle adhesive layer positioned below the polymer middle layer,~~
~~a bottom polymer layer positioned below the middle adhesive layer,~~ and

a ~~bottom~~ lower adhesive layer positioned on the underside of the flexible ~~below the bottom polymer~~ layer and extending from beneath the housing to the electrode, the ~~bottom~~ lower adhesive layer configured to provide adhesion to the skin of [[a]] the mammal[[;]] ~~and~~

~~an electrode positioned on a bottom surface of the wing, the electrode electrically connected to the physiologic data collection circuit~~.

22. (**Currently Amended**) The electronic device of Claim 21, wherein the ~~electronic device~~ flexible layer comprises a plurality of wings, each wing extending from the housing.

23. (Previously Presented) The electronic device of Claim 21, wherein the polymer upper layer and the housing are constructed from different materials.

24. (**Currently Amended**) The electronic device of Claim 21, wherein the [[wing]] flexible layer is configured to be more flexible than the housing.

-2-

**Application No.:**    16/723208
**Filing Date:**        December 20, 2019

25. (**Currently Amended**) The electronic device of Claim 21, wherein the ~~bottom~~ lower adhesive layer comprises an adhesive configured to absorb fluids.

26. (**Currently Amended**) The electronic device of Claim 21, wherein the ~~bottom~~ lower adhesive layer comprises a pressure-sensitive adhesive.

27. (Previously Presented) The electronic device of Claim 21, wherein the physiologic data collection circuit is configured to collect cardiac rhythm data from the mammal.

28. (**Currently Amended**) The electronic device of Claim 21, wherein the ~~bottom~~ polymer lower layer comprises a polyester.

29. (**Canceled**)

30. (**Currently Amended**) An electronic device for long-term adhesion to a mammal, the device comprising:

a housing comprising a physiologic data collection circuit;

a wing extending from the housing, the wing comprising a first adhesive layer positioned on a bottom surface of the wing, the first adhesive layer providing adhesion to the skin of the mammal;

an electrode positioned on the bottom surface of the wing, the electrode electrically connected to the physiologic data collection circuit; and

wherein the wing comprises a second adhesive layer ~~functioning as an adhesion guard protecting the first adhesive layer~~ positioned over and adhered to the wing; the second adhesive layer extending horizontally outward beyond a boundary of the wing.

31. (Previously Presented) The electronic device of Claim 30, further comprising a hinge portion adjacent the housing.

32. (Previously Presented) The electronic device of Claim 30, wherein the second adhesive layer adds adhesive surface area to the first adhesive layer to distribute forces over a larger area.

33. (Previously Presented) The electronic device of Claim 30, wherein the first adhesive layer comprises an adhesive that can absorb fluids

34. (Previously Presented) The electronic device of Claim 30, wherein the first adhesive layer comprises a hydrocolloid adhesive.

35. (Previously Presented) The electronic device of Claim 30, wherein the first adhesive layer comprises a pressure-sensitive adhesive.

**Application No.:    16/723208**
**Filing Date:        December 20, 2019**

36. (Previously Presented) The electronic device of claim 30, further comprising a synthetic material layer positioned above the first adhesive layer.

37. (**New**) An electronic device for long-term adhesion to a mammal, the device comprising:

> a housing comprising a physiologic data collection circuit;

> a flexible layer extending from the housing, the flexible layer comprising an electrode positioned on the bottom of the flexible layer at a position distal from the housing;

> an adhesive layer extending at least partially below the housing; and

> wherein the housing is configured to tilt at an angle relative to the adhesive layer in response to movement of the mammal.

38. (**New**) The electronic device of Claim 37, further comprising a flap extending beneath the housing.

39. (**New**) The electronic device of Claim 37, wherein the housing is rigid.

40. (**New**) The electronic device of Claim 37, wherein the housing is configured to remain connected to the flexible layer when the housing is tilted at an angle relative to the adhesive layer in response to movement of the mammal.

IRHYM.002C5                                                               PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| First Inventor | : | Uday N. Kumar |
| App. No. | : | 16/723208 |
| Filed | : | December 20, 2019 |
| For | : | DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION |
| Examiner | : | Cardinal, Erin M |
| Art Unit | : | 3794 |
| Conf. No. | : | 2835 |

## AMENDMENT

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Commissioner:

     In response to the non-final Office Action mailed April 16, 2020, in connection with the above-referenced patent application, please amend the application and consider the remarks that follow.

     **Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

     **Summary of the Interview** begins on page 5 of this paper.

     **Remarks/Arguments** begin on page 6 of this paper.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

20995        7590        06/12/2013

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
| --- |
| CARDINAL, ERIN M |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3739 | |

DATE MAILED: 06/12/2013

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 13/106,750 | 05/12/2011 | Uday N. Kumar | IRHYM.002A | 5971 |

TITLE OF INVENTION: DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 09/12/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**or** <u>Fax</u>  (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

| 20995 | 7590 | 06/12/2013 |
|---|---|---|

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/106,750 | 05/12/2011 | Uday N. Kumar | IRHYM.002A | 5971 |

TITLE OF INVENTION: DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $890 | $300 | $0 | $1190 | 09/12/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CARDINAL, ERIN M | 3739 | 600-391000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s):** (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

PTOL-85 (Rev. 02/11)

5. **Change in Entity Status** (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

<u>NOTE:</u> Absent a valid certification of Micro Entity Status (see form PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

<u>NOTE:</u> If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

<u>NOTE:</u> Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



U̲NITED̲ S̲TATES̲ P̲ATENT̲ AND̲ T̲RADEMARK̲ O̲FFICE̲

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/106,750 | 05/12/2011 | Uday N. Kumar | IRHYM.002A | 5971 |

20995          7590          06/12/2013

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| CARDINAL, ERIN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3739 | |

DATE MAILED: 06/12/2013

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 21 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 21 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 13/106,750 | Applicant(s) KUMAR ET AL. | |
|---|---|---|---|
| | Examiner Erin M. Cardinal | Art Unit 3739 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *applicant's amendments and remarks dated May 28, 2013*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-6,8-15 and 20-49*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

      a) ☐ All  b) ☐ Some  *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

      * Certified copies not received: _____.

    **Interim copies:**

      a) ☐ All  b) ☐ Some  c) ☐ None of the:  Interim copies of the priority documents have been received.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☒ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____.

Application/Control Number: 13/106,750                                                    Page 2
Art Unit: 3739

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with Ronald Schoenbaum on May 31, 2013. The amendments are made to clarify the scope of the claims and make them definite in the sense of 35 U.S.C. 112. The application has been amended as follows:

claim 34 at lines 1-2 to read: The electronic device of claim 27, ~~further comprising~~ wherein the electrical connection comprises: a first wire

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Erin M. Cardinal whose telephone number is (571)270-3148. The examiner can normally be reached on Monday through Thursday 7:30 AM to 6:00 PM EST.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Linda Dvorak can be reached on (571) 272-4764. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 13/106,750                                    Page 3
Art Unit: 3739

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/E. M. C./
Examiner, Art Unit 3739

/Lee S. Cohen/
Primary Examiner, Art Unit 3739
May 31, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/106,750 | 05/12/2011 | Uday N. Kumar | IRHYM.002A | 5971 |

20995        7590        05/29/2013
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| CARDINAL, ERIN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3739 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/29/2013 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

| *Applicant-Initiated Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 13/106,750 | KUMAR ET AL. |
| | Examiner | Art Unit | |
| | Erin M. Cardinal | 3739 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Erin M. Cardinal_.                          (3) _David Schmidt_.

(2) _Mauricio Uribe_.                             (4) _Shena Park_.

Date of Interview: _22 May 2013_.

Type:    ☐ Telephonic    ☐ Video Conference
         ☒ Personal [copy given to: ☐ applicant    ☒ applicant's representative]

Exhibit shown or demonstration conducted:    ☒ Yes    ☐ No.
   If Yes, brief description: _The applicant brought several iterations of the physical device to illustrate the feature of the electrodes being configured to move while the wings flex to allow the housing to "float" on the skin._

Issues Discussed    ☐101  ☐112  ☒102  ☒103  ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _1_.

Identification of prior art discussed: _Oakley (US 6,881,191), Nissila (US 2002/008241), Del Mar (US 6,117,077), Cross (US 2008/028026), and Baker (US 2008/0139953)._

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

   _The examiner agreed that the proposed amendments (attached) would overcome the prior art of record. The Nissila, Del Mar, Cross, and Baker references fail to teach or suggest the feature of the electrodes configured to move toward and away from each other to cause the housing to move toward and away from the body. While the Oakley reference teaches this feature, it fails to further teach or suggest the additional feature of the electrical connections NOT providing mechanical support. The proposed limitations change the scope of the claims, requiring an additional search. However, the examiner agrees that this case is appropriate for the After Final Pilot Program. The applicant's representatives agreed to submit the amendments as an after final amendment with the appropriate pilot program paperwork, and the examiner agreed to enter the case into the program for the additional required search ._

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04. If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☒ Attachment

| /Lee S. Cohen/<br>Primary Examiner, Art Unit 3739 | /E. M. C./<br>Examiner, Art Unit 3739 |
|---|---|

# Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
(The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.
Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

## Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

Attorney Docket No.: 10180-704.100

# UNITED STATES PROVISIONAL PATENT APPLICATION

# DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

**Inventors:**

**Peter H. Livingston**

**Uday N. Kumar**

**Mark J. Day**

**Shena H. Park**

**William F. Willis**

**William H. Righter**

ShayGlennLLP

**2755 Campus Drive, Suite 210**
**San Mateo, CA 94403**
**(650) 212-1700 Main Phone**
**(650) 212-7562 Facsimile**

– 1 of 13 –

**FILED VIA EFS**

Attorney Docket No.: 10180-704.100

# DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

## INCORPORATION BY REFERENCE

[0001]     All publications and patent applications mentioned in this specification are herein incorporated by reference to the same extent as if each individual publication or patent application was specifically and individually indicated to be incorporated by reference.

## FIELD OF THE INVENTION

[0002]     This application relates to devices worn on a body for monitoring, recording, reporting and/or treating the person wearing the device.  Improvements in the device design elements and functionality are disclosed for maintaining the device in contact with and operational for extended periods of time, typically longer than 24 hours.

## BACKGROUND OF THE INVENTION

[0003]     The ability to adhere a medical device to a human body for a long-period of time is dependent on a variety of factors.  In addition to the type and nature of the adhesive chosen, another factor is the mechanical design of the device.  By design, this refers to, but is not limited to, the device shape, size, weight, flexibility, and rigidity.  These design elements are influenced by a number of additional factors, including, but not limited to, where on the body the device will attach and the duration of the attachment, moisture conditions in that area, movement conditions in that area, stretching and contraction in that area, interactions with external factors in that area such as clothing, purposeful and/or inadvertent interaction between the person

FILED VIA EFS

wearing the device and the device.

[0004]      As 24 hours is typically a time frame that many devices are used on the body, the

factors and issues related to device features and design elements required for long-term adhesion

usually start to play a role after 24 hours, which would represent one full daily cycle for a given

person.  Hence, there is a need to implement device features and design elements that have the

ability to enhance the likelihood of adhesion of a device to a human body for 24 hours or more,

while accommodating the functionality, shape, size, weight, flexibility, and rigidity of a given

device.

## DETAILED DESCRIPTION

[0005]      Based on these observations and the clinical need, we have developed the following

device features and design elements that could be implemented into any device being adhered to

the human body for a long-period of time, typically >24 hours.  As an example, we will describe

these device features and design elements as they relate to the long-term adhesion of a cardiac

rhythm monitoring patch ("patch") to the chest of a person.

[0006]      For a patch that is entirely flexible and can conform, stretch, and adapt to the

movement and conditions of the chest underneath the device, adhesive may be able to be placed

over the entire surface of the device that is in contact with the body, except for areas where

sensors or others elements such as electrodes are interacting with the body related to the

functioning of the device may be incorporated. In still other patch configurations, a rigid portion

or less flexible portion of the device is supported by an open cell structured support.  The open

cell structured support may be attached to the skin and to the rigid portion or only to the skin.

Because of the open cell structure of the support, the flexible movement of the skin is absorbed

and by the structure entirely or partially such that the rigid portion does not impact or had a

reduced impact on the ability of the device to accommodate movement and remain affixed. In addition, the open cell support may have a thickness selected to enhance patient comfort so that the more rigid portion of a device does not push against the skin. In one aspect, the open cell structure is a biocompatible foam material. In another aspect, the open cell material is positioned between an electronics module on the device and the skin when worn by a patient. In still another aspect, a flexible adhesive layer is formed into pocket or slipper that encloses the rigid or less flexible portions of a device. The rigid portions of the device are free to move within the pocket thereby permitting greater movement and accommodation by the flexible adhesive layer.

[0007]    For a patch in which there may be some areas that are not completely flexible and may not be able to stretch or contract, adhesive may be excluded from the portion of the device underneath these areas that would normally be in contact with the skin. Removal of adhesive from one area would create a floating section. A floating section may house a more rigid or relatively less flexible component or components such as, for example, printed circuit boards or other electronic components. In one aspect, a portion of the floating section is bounded on at least one side by one or more flexible areas of the device. The flexible areas of the device will provide the adhesive used to affix the device to the body in the appropriate location.

[0008]    As a result of this selective use of adhesive areas and non-adhesive areas, the limitation on device flexibility imposed by the less flexible floating section is mitigated or reduced by bounding the floating section with one or more adhered flexible areas. Put another way, the flexible sections adhere to the body if the underlying portion of the body is stretched and/or contracted while the floating section is free to move above the skin. The adhered flexible areas may provide a hinge behavior allowing the adhered flexible areas to move under the rigid area during contraction and move away during stretching of the underlying body.

FILED VIA EFS

Attorney Docket No.: 10180-704.100

[0009]    In some application, a long duration patch may experience excessive forces due to acute (quick and/or rapid) or chronic (slow and/or prolonged) contraction, stretching, or torsion. In such applications, the hinge points between a floating rigid section and flexible adhered sections may be modified in order to align with and counteract or mitigate the predominate direction of the force acting on the patch.  In some device situations or configurations, the strength and direction of the acute or chronic force may be so strong, that the forces imparted on the device adhesive surfaces or components may be distributed differently in addition to or as an alternative to the hinge described above.

[00010]    In one example of such a configuration, one or more adhered flexible area is extended beyond the hinge point with the floating rigid, non-adhered area to provide a flap. A flap may be positioned in virtually any relationship to the adhered flexible area such that, when attached in use, the attachment of the flap or flaps effectively counteracts the expected external forces acting on the device, specifically those forces that may dislodge the adhered flexible areas.  The flaps, like the flexible adhesive areas, may be physically below the floating rigid area, but are not attached to it.  In addition, the surface of a flap may not include any adhesive.  Alternatively, a suitable adhesive may be provided to all or a portion of a flap surface that will - in use - contact the body.

[00011]    The use of one or more flaps provides a different direction for the acute and chronic forces being experienced by the device due to stretching, contraction, or torsion to be spread out over both the flap as well as the flexible adhesive areas.  Advantageously, by pre-aligning the orientation of the floating section, adhered flexible area and the flaps, the device may be better able to tolerate (i.e., remain attached to the body and in use) and/or tailor the interaction with the forces acting on the device in order to better withstand the acute or chronic force being

FILED VIA EFS

experience by the device. Tailoring the response of the device to the expected forces is one factor in improving the likelihood of long-term device adhesion.

[00012]    Additionally or alternatively, one or more flaps may be separately attached to the device. Additionally or alternatively, one or more flaps may be formed as an integral part of the device housing or a device covering. In one aspect, one or more flaps are formed as part of a molding process used to form the housing or covering of the device.

[00013]    Because flaps are used to counteract forces acting on a particular device, it is to be appreciated that the dimensions, flexibility, attachment technique, and/or orientation between a flap and another component may vary depending upon the purpose of a particular flap. Accordingly, a flap may have the same or different characteristics from another flap or component of the device. In one aspect, at least one flap is more flexible that the other flaps in a particular device. In another aspect, each of the flaps has similar flexibility. In still another aspect, at least one flap is more flexible that the device component to which it is attached or from which it originates. In still another aspect, at least one flap is less flexible that the device component to which it is attached or from which it originates.

[00014]    In one embodiment, one or more flaps may be augmented by a connector segment used to join two or more flaps. In one aspect, the connector segment is made of similar material as the flaps. In another aspect, the connector material is made from a different material than the flaps. In one specific example, the connector material is made from a material that is more flexible than the material used to form the flaps. In one aspect, the connector segment is located at least partially under the floating segment. In another aspect, the connector segment connects at least two flaps and is mostly under the floating section but is not attached to the floating section. In another aspect, at least a portion of the connector surface that will contact the skin is

provided with adhesive. In another alternative aspect, the connector surface that will contact the skin does not include any adhesive.

[00015]    In still another alternative configuration, the connector segment and the one or more flaps are formed from a single piece of material. Adhesive may then be selectively applied to the single piece structure to provide the desired body attachment locations depending upon the specific use of the device. For example, the one piece of material including flaps and the connector is adhered along two or more edges and/or with adhesive only covering certain areas. In another aspect, at least a portion of the skin contacting surface of the unitary flap connector structure does not include any adhesive. Additionally or alternatively, the connector segment incorporating the flaps may be integral parts of the larger device housing. Accordingly, such as configuration need not be additionally attached (e.g. could be molded as part of the device housing or enclosure).

[00016]    In some configurations, the connector segment may trap moisture and/or inadvertently stick to the body. To minimize the potential for undesired sticking or moisture collection, holes are formed in the connector segment to prevent moisture trapping and inadvertent sticking. The size, shape and placement of the holes mitigate or reduce the collection of moisture and/or undesired adhesive while still providing a connector with sufficient structural integrity (i.e. the connector allows the flaps to be connected to one another in order to prevent them from folding).

[00017]    Additionally or alternatively, the connector holes could also be made to also preferentially allow forces to be distributed along certain axes of the connector in order to further maximize the ability of the device to adhere long-term in the face of significant acute and chronic forces due to stretching, contraction, and torsion.

FILED VIA EFS

[00018]    Breaking up the areas in which the adhesive is used to adhere the device, whether it be splitting it up to rigid areas, to create flaps, to create connector segments with holes, of any of the other techniques described above may also have benefits in terms of preventing moisture bridges that could act as conducting pathways between electrical sensing elements, such as electrodes.  Bridges of moisture could short-circuit electrical connections and/or prevent the proper functioning of the device, particularly if the device has an electrical function, such as sensing via electrodes.

[00019]    The device construction can also be made in such a way that the housing is fashioned so that the axes of the housing are structured and placed along or against the direction of various forces, possibly during certain states, such as sleeping, so that the device itself can help counteract these forces and improve long-term adhesion.

[00020]    The components of the device, such as the wiring connecting rigid areas or connecting areas such as a circuit board and electrodes, can be flexible or contain additional length so that during displacement of the flexible portions of the device, the connecting elements can accommodate the stretch or displacement.  Additional length of the component can exist in any of a number of different configurations that permit deflection of adjacent related device components.  Exemplary configurations include coils, zig-zags, undulations, or other configurations that permit movement of the component between stretched and non-stretched configurations.

[00021]    In an additional embodiment, one or more channels, tubes, conduits are provided between a rigid section and a component on a flexible section.  The tube or channel may be formed in the housing or provided by another structure.  The tube or channel may be straight or curved.  In use, the components a positioned in the tube or channel and may move relative

thereto in order to remain flexible within the housing. In one aspect, the flexible channels or tubes are formed within the device housing so that the housing, as it is being stretched, may not affect the ability of the components, such as wires that may connect more rigid structures, to move or elongate.

[00022]    In still another alternative aspect, one or more release liners may be used to cover and then later expose parts of the adhesive. As is particular to devices having multiple adhesive areas and/or multiple adhesive components (i.e., flaps and flexible sections), the manner of applying the device may be specifically detailed in order to ensure that the device and the adhesive portions are properly engaged. In one particular aspect, the release liners are removed in a particular order to minimize the likelihood that the device adhesive is misapplied. For example, a portion of the adhesive may be exposed first and used to affix the device to the body. Thereafter, a second set of adhesive liners may be removed to expose and affix one or more flaps to the body. A stepwise adhesive exposure method may be implemented during device application such that elements, such as the one or more flaps do not fold on themselves, for example.

[00023]    In still another alternative aspect, one or more parts of the device itself is used in a temporary fashion in order to improve adhesion. Consider for example when a number of top layers with various properties, such as better adhesive formulations, different structural elements, and the like are peeled away from or added in a sequence to assist in the adhesion of the underlying core device. Additionally or alternatively, the addition of layers may assist in the adhesive performance of a base or core device because the added surface area or adhesive force of the combined outer layer aids in preventing layer pull away and/or may act to spread forces being experienced away from the core device by spreading those forces over a larger area.

**Attorney Docket No.: 10180-704.100**

[00024]    Various aspects of the above described features and aspects are illustrated and described in FIGs. 1 – 18C.

[00025]    While described in the context of a heart monitor, the device adhesion improvements described herein are not so limited.  The improvement described in this application may be applied to any of a wide variety of conventional physiological data monitoring, recording and/or transmitting devices.  The improved adhesion design features may also be applied to conventional devices useful in the electronically controlled and/or time released delivery of pharmacological agents or blood testing, such as glucose monitors or other blood testing devices.  As such, the description, characteristics and functionality of the components described herein may be modified as needed to include the specific components of a particular application such as electronics, antenna, power supplies or charging connections, data ports or connections for down loading or off loading information from the device, adding or offloading fluids from the device, monitoring or sensing elements such as electrodes, probes or sensors or any other component or components needed in the device specific function.  In addition or alternatively, devices described herein may be used to detect, record, or transmit signals or information related to signals generated by a body including but not limited to one or more of EKG, EEG and/or EMG.

**FILED VIA EFS**

Attorney No.: 10180-704.100

Electrodes adhere independent of but
provide anchoring / attachment point for
a "floating" electronics & storage module

I. IN LINE ELECTRODES

TOP



Detect/store
ELECT

SIDE

ADHESIVE    ELECTRODE

RAISED - NO ADHESION - FLOATING
ELECTRONICS
HOUSING.

II. ELECRODES NOT "IN LINE" & TAB TO ANCHOR

ADHESIVE
REGION

ELECTRONICS
HOUSING

ALSO ON TAB
AND OTHER FLAP

TAB

FLOATING
REGION

FILED VIA EFS

Attorney No.: 10180-704.100

III. ELECTRODE GROUPING WITH ELECTRONICS.



ELECTRONICS

ELECTRODES

ADHESIVE    NO ADHESIVE "FLOAT"    ADHESIVE

STRAIN RELIEF

connectors/lines with slack to permit movement or act as strain relief

ADHESIVE    NO ADHESIVE    ADHESIVE

strain relief

ADHESIVE

\* ORIENTATION OF ONE OR MORE ELECTRODES TO ALIGN WITH A CONFIGURATION THAT (A) ACCOMODATES COMMON MOVEMENTS DURING SLEEP BUT MINIMIZES STRESS ON DEVICE/TISSUE ATTACHMENT AND/OR (B) PROVIDES BEST ELECTRODE PLACEMENT FOR MONITORING.

FILED VIA EFS

Attorney No.: 10180-704.100

IV. SINCE ELECTRONICS WILL FLOAT — MORE MOVEMENT BETWEEN ELECTRODES — ELECTRONICS.

ADD IN STRAIN RELIEF IN WIRING

A.



ADD IN ADDITIONAL WIRING TO ACCOUNT FOR RELATIVE MOVEMENT BETWEEN COMPONENTS

B. (1)    (2)



C. WIRE MOVES WITHIN THE SUBSTRATE PLACE IT IN A CHANNEL SO THAT IT CAN SLIDE AS THE PERSON MOVES AND THE ELECTRODES MOVE TOWARDS/AWAY FROM ELECTRONICS

D. OTHER STRAIN RELIEF CONFIGURATIONS.
BASED ON TYPE OF MOVEMENT
AND AMOUNT OF MOVEMENT —
ie. what sort of stress
do we need to ACCOMODATE IN
the design. based on where device will
be worn and/or operate.

**FILED VIA EFS**

DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION
Attorney No.: 10180-704   FILED VIA EFS   Sheet 1 of 16



FIG. 1



Flap attachment point/region to device
body may be, for example,
solvent welded
at seam.

flaps (same material as housing)

— adhesive (single layer)

device body

FIG. 2

DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION
Attorney No.: 10180-704557    FILED VIA EFS   Sheet 3 of 16



**FIG. 3B**

**FIG. 3A**

Device Body

Connector

Connector Holes

DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION
Attorney No.: 10180-704US1 FILED VIA EFS   Sheet 4 of 16



1 PCBA BOM
2 Desiccant Bead
3 Battery Paper
4 Wire-Snap Assembly
5 Top Housing
6 Back Label
7 Bottom Housing
8 Internal Flap
9 Dermal Adhesive Assembly
10 Silver Chloride Electrode
11 Release Liner Left
12 Release Liner Right
13 Center Release Liner

**FIG. 4B**



**FIG. 4A**



.25

2.81±.02

1.86

FIG. 5A

.03

SYMMETRY LINE

.050

.017

FIG. 5B

DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION
Attorney No.: 10180-704    FILED VIA EFS    Sheet 6 of 16



Connector

FIG. 6A

FIG. 6B



FIG. 7

Adhesive Pattern

Adhesive Pattern

FIG. 8

DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION
Attorney No.: 10180-704US1 FILED VIA EFS   Sheet 8 of 16

Area of each component is related as:

$$A_{OUTER} > A_{MID} > A_{inner} > A_{core}$$



FIG. 9



FIG 10

DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION
Attorney No.: 10180-70450   FILED VIA EFS   Sheet 10 of 16

# FIG. 11

## LAYERED TOP SHELL



PEEL OFF ONE LAYER PER TIME PERIOD STARTING
WITH 1. THIS ENSURES A CLEAN AND GOOD ADHESIVE
BARRIER ON THE OUTER PERIMETER. THE AREA OF EACH
LAYER INCREASES AS YOU MOVE TOWARD THE SURFACE.



FIG. 12

DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION
Attorney No.: 10180-704    FILED VIA EFS    Sheet 12 of 16



FIG 14A

FIG. 14B

FIG 14C

FIG. 14D

top shell

adhesive surface 1

adhesive surface 2

The top shell could be periodically replaced (i.e. weekly) to maintain the integrity and cleanliness of the inner adhesive. This would help with the problem of corners peeling up. Adhesive surface 2 could additionally be a softer adhesive that would be ideal for sensitive skin, so that it could be placed and removed regularly without a problem. Adhesive 1 could be heavier dutis.

FIG. 13

# FIG. 15A



# FIG. 15B



# FIG. 16



**FIGURE 17**



ADHESIVE

FLANGE

FIG. 18A

MOISTURE BARRIER MATERIAL

HOUSING

ELECTRONICS

AIR HOLE

FIG 18 B

ADHESIVE

FLANGE

FLANGE

FIG 18c

MOISTURE BARRIER MATERIAL

AIR HOLE

ELECTRONICS

UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| | **UNITED STATES DEPARTMENT OF COMMERCE**<br>**United States Patent and Trademark Office**<br>Address: COMMISSIONER FOR PATENTS<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450<br>www.uspto.gov |

# NOTICE OF ALLOWANCE AND FEE(S) DUE

20995        7590        05/31/2019
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| CARDINAL, ERIN M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3794 | |

DATE MAILED: 05/31/2019

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/005,854 | 01/25/2016 | Uday N. Kumar | IRHYM.002C3 | 8225 |

TITLE OF INVENTION: DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 09/03/2019 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

20995       7590       05/31/2019

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/005,854 | 01/25/2016 | Uday N. Kumar | IRHYM.002C3 | 8225 |

TITLE OF INVENTION: DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 09/03/2019 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CARDINAL, ERIN M | 3794 | 600-391000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐ Issue Fee ☐ Publication Fee (if required) ☐ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via EFS-Web  ☐ Enclosed check  ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/005,854 | 01/25/2016 | Uday N. Kumar | IRHYM.002C3 | 8225 |

| | | |
|---|---|---|
| 20995         7590         05/31/2019 | | EXAMINER |
| KNOBBE MARTENS OLSON & BEAR LLP | | CARDINAL, ERIN M |
| 2040 MAIN STREET | | |
| FOURTEENTH FLOOR | ART UNIT | PAPER NUMBER |
| IRVINE, CA 92614 | 3794 | |

DATE MAILED: 05/31/2019

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the individual pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | **Application No.**<br>15/005,854 | **Applicant(s)**<br>Kumar et al. | |
|---|---|---|---|
| | **Examiner**<br>Erin M Cardinal | **Art Unit**<br>3794 | **AIA (FITF) Status**<br>No |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>the applicant's amendments and remarks filed 05 March 2019</u>.
   - ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>24-31 and 33-43</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐All     b) ☐ Some     *c) ☐ None of the:
   - 1. ☐ Certified copies of the priority documents have been received.
   - 2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   - 3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file areply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   - ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☑ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☑ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| /emc/<br>Examiner, Art Unit 3794 | /LEE S COHEN/<br>Primary Examiner, Art Unit 3794 |
|---|---|

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

### *Examiner's Amendment*

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in an interview with David Schmidt on May 22, 2019. The amendments are made to clearly recite allowable subject matter, render the claims definite in the sense of 35 U.S.C. 112(b) (pre-AIA 35 U.S.C. 112, second paragraph), correct typographical errors, and update the priority information of the specification. The application has been amended as follows:

*In the claims:*

- Claim 24 at line 12 to replace "over the" with -- over a top of the --

- Claim 25 at line 1 to replace "adhesion" with -- adhesive --

- Claim 32 is cancelled.

- Claim 39 at line 8 to replace "on bottom" with -- on the bottom --

- Claim 39 at line 9 to replace "sections" with -- section --

- Claim 39 at line 13 to replace "over the" with -- over a top of the --

*In the specification*, please amend paragraph [0001] under the heading "CROSS-REFERENCE TO RELATED APPLICATIONS" as follows:

This application is a continuation of U.S. Application No. 13/890,144, filed May 8, 2013, now U.S. Patent No. 9,241,649, titled "Device Features and Design Elements for Long-Term Adhesion" which claims priority to U.S. Application No. 13/563,546, filed July 31, 2012, now U.S. Patent No. 8,538,503 which claims priority to U.S. Patent Application No. 13/106,750, filed May 12, 2011, now U.S. Patent 8,560,046, which claims priority to U.S. Provisional Patent Application No. 61/334,081, filed May 12, 2010, entitled "Device Features and Design Elements for Long-Term Adhesion." The aforementioned applications are all incorporated by reference as if fully set forth herein.

### *Reasons for Allowance*

The following is an examiner's statement of reasons for allowance:

The closest prior art is published US Patent Application 2008/0214901 to Gehman, et al. (hereinafter "Gehman"). Gehman discloses an electronic device (10, Fig. 2) with a housing (12) that contains a physiologic data collection circuit (para. [0024]). A plurality of wings (the edges of the patch; see Fig. 2) extend from the housing. An electrode (14) is positioned on a bottom surface of each wing (Fig. 2, to make the wing), and each electrode is connected to the circuit (via 13). Each wing has a second adhesive layer (20) over a top of the wing, and extending horizontally beyond the boundary of each wing. The electrode elements (14) can be conductive adhesives for adhering to skin (para. [0031]). If the adhesive electrode elements (14) are the electrodes, then Gehman fails to further disclose a first adhesive layer on the bottom surface of each wing. If the adhesive electrode elements (14) are the first adhesive layer, then the electrode (13) is not on a bottom surface of the respective wing. There is insufficient teaching, suggestion, or motivation to replace the conductive adhesive electrode with a separate conductive electrode

Application/Control Number: 15/005,854                                          Page 4
Art Unit: 3794

and adhesive (both on the bottom surface of each wing). Similar designs were known in the art.

Libbus (US 2010/0056881) discloses a device with a center housing (160) and extended wings

(Figs. 1H, 1G, etc) with electrodes (112A) and a first adhesive (116A) on the bottom surface. A

second adhesive (164 on cover 162) extends over the top of the wings. However, the second

adhesive layer does not extend horizontally beyond a boundary of the wing (see Figs. 1I-1J), and

there is insufficient teaching, suggestion, or motivation to modify the second adhesive layer.

Gehman teaches that the top adhesive layer is useful for securing the device to the user, but the

device of Libbus is already secured with the first adhesive.

        As discussed in the prior office action, Oakley (US 2004/0077954), Durand

(2009/0048556) and Axelgaard (US 6,038,464) also teach many of the recited features. The

second adhesive of Durand functions as an adhesion guard and protects the first adhesive while

extending horizontally beyond the first adhesive. However, the second adhesive is not positioned

over the top of the wing, and there is insufficient teaching, suggestion, or motivation to move it

from the bottom surface of the device. Similarly, the second adhesive of Axelgaard also

functions as an adhesive guard and is over the first adhesive. However, this second adhesive does

not extend horizontally outward beyond the boundary of the wing or first adhesive. Moreover,

there is insufficient motivation to modify the second adhesive of Axelgaard to extend beyond the

wing because such a modification would negate the advantages of the design (particularly

controlling the strength of adhesion to the skin).

        Regarding the prior double patenting rejections, US 8,538,503 and US 9,241,649 each

fail to claim that the second adhesive layer is positioned over the wing. As this is not an obvious

modification, the rejections are withdrawn.

Application/Control Number: 15/005,854                                              Page 5
Art Unit: 3794

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Erin M Cardinal whose telephone number is (571)270-3148. The examiner can normally be reached on Monday through Thursday, 8am-6pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Linda Dvorak can be reached on (571)272-4764. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 15/005,854                                                    Page 6
Art Unit: 3794

      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/emc/
Examiner, Art Unit 3794


/LEE S COHEN/
Primary Examiner, Art Unit 3794

**IRHYM.002A**                                                                 **PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Inventor | : | Kumar et al. |
| App. No. | : | 13/106,750 |
| Filed | : | May 12, 2011 |
| For | : | DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION |
| Examiner | : | Cardinal, Erin M. |
| Art Unit | : | 3739 |
| Conf No. | : | 5971 |

## RESPONSE TO FINAL OFFICE ACTION DATED DECEMBER 28, 2012

**Mail Stop AF**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In response to the Final Office Action issued on December 28, 2012, Applicants submit the following:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Summary of Interview** begins on page 10 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

Application No.:    13/106,750
Filing Date:       May 12, 2011

## AMENDMENTS TO THE CLAIMS

1.   (Currently Amended)  An electronic device for long-term adhesion to a mammal, the device comprising:

a housing forming a watertight enclosure;

an electronic component contained within the watertight enclosure of the housing;

at least two flexible wings integral with and extending from the housing, wherein each wing comprises an electrical connection and a mechanical connection;

at least two electrodes integral with the wings so as to be inseparable from the wings during use of the device, wherein each of the electrodes extends through a bottom surface of one of the wings; and

an adhesive layer covering at least a portion of the bottom surface of each of the wings for adhesion of the device to skin of the mammal, wherein the adhesive layer does not cover a bottom surface of the housing;

wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal; and,

wherein the electrical connections are not relied upon for mechanical support.

2.   (Previously Presented)  The electronic device of claim 1, wherein the electronic component includes a processor, the processor having a memory with computer readable instructions to record signals from the electrodes while the electronic device is attached to the mammal.

3.   (Previously Presented)  The electronic device of claim 1, further comprising a flap connected to each wing and extending below the housing, wherein the adhesive layer covers at least a portion of a bottom surface of each flap.

4.   (Previously Presented)  The electronic device of claim 3, further comprising a connector segment configured to connect the flaps together.

**Application No.:**        13/106,750
**Filing Date:**           May 12, 2011

5.  (Previously Presented)  The electronic device of claim 4, wherein the connector segment is located at least partially below the housing, but is not directly attached to the bottom surface of the housing.

6.  (Previously Presented)  The electronic device of claim 4, wherein the adhesive layer covers at least a portion of a bottom surface of the connector segment.

7.  (Canceled)

8.  (Previously Presented)  The electronic device of claim 1, further comprising a hinge portion between the housing and each wing, wherein each of the hinge portions is configured to allow the device to bend between the housing and each wing.

9.  (Previously Presented)  The electronic device of claim 1, wherein the adhesive layer is configured to absorb fluids.

10. (Previously Presented)  The electronic device of claim 9, wherein the adhesive layer comprises a hydrocolloid adhesive.

11. (Previously Presented) The electronic device of claim 1, wherein the wings and the housing are made from one type of material.

12. (Original)   The electronic device of claim 1 wherein the wings and the housing are made from different materials.

13. (Original)   The electronic device of claim 12 wherein the wings are made from a fabric.

14. (Original)  The electronic device of claim 12 wherein the material used to make the wings includes a synthetic fiber.

15. (Previously Presented)  The electronic device of claim 1, wherein the wings are more flexible than the housing.

Application No.:    13/106,750
Filing Date:       May 12, 2011

16. (Canceled)

17. (Canceled)

18. (Canceled)

19. (Canceled)

20. (Previously Presented)  The electronic device of claim 1, wherein the adhesive layer comprises a pressure-sensitive adhesive.

21. (Original)  The electronic device of claim 20 wherein the pressure sensitive adhesive is selected from the group consisting of: a polyacrylate, a polyisobutlene, and a polysiloxane.

22. (Previously Presented)  The electronic device of claim 1, wherein the housing is thicker at a center of the housing than at edges of the housing.

23. (Original)  The electronic device of claim 1, further comprising a diffusion barrier between the adhesive layer and each of the wings.

24. (Previously Presented)  The electronic device of claim 1, further comprising a material layer between the bottom surfaces of the wings and the adhesive layer, wherein the material layer is configured to prevent diffusion of adhesive components from the adhesive layer to the wing.

25. (Previously Presented)  The electronic device of claim 23 further comprising a polyester diffusion barrier.

26. (Previously Presented)  The electronic device of claim 1, wherein the bottom surface of the housing is not directly attached to the mammal when the electrodes are in contact with the mammal.

27. (Currently Amended)  An electronic device for long-term adhesion to a mammal, the device comprising:

a housing forming a watertight enclosure;

-4-

Application No.:      13/106,750
Filing Date:         May 12, 2011

a first flexible wing integral with and extending laterally from the housing;

a second flexible wing integral with and extending laterally from the housing without overlapping the first wing;

wherein each wing comprises an electrical and a mechanical connection;

a first electrode integral with the first wing so as to be inseparable from the first wing during use of the device, wherein the first electrode extends through a bottom surface of the first wing;

a second electrode integral with the second wing so as to be inseparable from the second wing during use of the device, wherein the second electrode extends through a bottom surface of the second wing;

an electronic component contained within the watertight enclosure of the housing, the electronic component comprising an electronic memory configured to receive and store an electronic signal from the first and second electrodes while the electronic device is attached to the mammal; and

an adhesive layer on a portion of a bottom surface of the first wing and the second wing and not on a bottom surface of the housing,

wherein, when the device is worn on the mammal, only the adhesive layer is directly attached to the mammal and the bottom surface of the housing is not directly attached to the mammal;

wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal; and,

wherein the electrical connections are not relied upon for mechanical support.

28. (Original)   The electronic device of claim 27, wherein the portion of the bottom surface of the first wing and the second wing does not include the first and second electrodes.

29. (Original)  The electronic device of claim 27, wherein the first wing, the second wing, and the housing are formed from the same material.

Application No.:        13/106,750
Filing Date:           May 12, 2011

30. (Original) The electronic device of claim 27, wherein the first wing, the second wing and the housing integrally form a monolithic structure.

31. (Original)  The electronic device of claim 27, wherein an angle formed by the first wing, the second wing, and the housing is between approximately 90° and 180°.

32. (Original)  The electronic device of claim 31, wherein the angle is approximately 180°.

33. (Original)  The electronic device of claim 31, wherein the angle is approximately 135°.

34. (Previously Presented)  The electronic device of claim 27, further comprising:
a first wire connecting the first electrode and the electronic memory; and
a second wire connecting the second electrode and the electronic memory.

35. (Previously Presented)  The electronic device of claim 34, wherein each of the first and second wires includes slack between the electrode to which it is attached and the electronic memory.

36. (Previously Presented)  The electronic device of claim 35, wherein the slack is located in a portion of each wing that is configured to bend or flex.

37. (Previously Presented)  The electronic device of claim 27, wherein the first wing includes a first hinged portion adjacent a junction between the first wing and the housing, and wherein the second wing includes a second hinged portion adjacent a junction between the second wing and the housing.

38. (Previously Presented)  The electronic device of claim 27, wherein at least the bottom surface of the housing is not adhered to the mammal when signals from the electrodes are being recorded in the electronic memory.

39. (Original)  The electronic device of claim 27, further comprising a first flap connected to the first wing medial to the first electrode and a second flap connected to the second wing medial to the second electrode, wherein each flap extends below the housing.

Application No.:        13/106,750
Filing Date:             May 12, 2011

40. (Previously Presented)  The electronic device of claim 39, further comprising a connector segment configured to connect the flaps together.

41. (Previously Presented)  The electronic device of claim 40, wherein the connector segment is located at least partially below the housing, but is not directly attached to the bottom surface of the housing.

42. (Currently Amended) A method of applying an electronic device having a housing including a watertight enclosure, an electronic component housed within the watertight enclosure, a first wing integral with the housing, and a second wing integral with the housing to a mammal for long-term adhesion, the method comprising:

removing a first adhesive cover from the first wing of the electronic device to expose a first electrode and an adhesive on a bottom surface of the first wing;

placing the exposed first electrode into contact with skin of the mammal by adhering the adhesive on the bottom surface of the first wing to the skin;

removing a second adhesive cover from the second wing of the electronic device to expose a second electrode and an adhesive on a bottom surface of the second wing; and

placing the second exposed electrode into contact with the skin of the mammal by adhering the adhesive on the bottom surface of the second wing to the skin;

wherein the electrodes are integral with the wings so as to be inseparable from the wings during use of the device[[,]];

wherein each wing comprises an electrical and a mechanical connection;

wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal;

wherein the electrical connections are not relied upon for mechanical support; and

wherein, after performing the removing and the placing steps, the housing is not directly attached to the skin but is held in position on the mammal only by the adhesive on the first and the second wings.

Application No.:        13/106,750
Filing Date:            May 12, 2011

43. (Previously Presented) The method of claim 42, wherein the electronic device comprises a first flap connected to the first wing and a second flap connected to the second wing, the first and second flaps each extending below the housing, wherein the step of removing the first adhesive cover from the first wing further comprises exposing an adhesive on a bottom surface of the first flap, and wherein the step of removing the second adhesive cover from the second wing further comprises exposing an adhesive on the bottom surface of a second flap.

44. (Previously Presented) The method of claim 43, wherein, after performing the removing and the placing steps, the housing is held in position on the mammal using only the adhesive on the first wing, the second wing, the first flap and the second flap.

45. (Currently Amended) A method of applying an electronic device having a housing including a watertight enclosure, an electronic component housed completely within the watertight enclosure, a first wing integral with the housing, and a second wing integral with the housing to a mammal for long-term adhesion, the method comprising:

removing a first adhesive cover from the first wing of the electronic device to expose a first electrode and an adhesive on a bottom surface of the first wing;

removing a second adhesive cover from the second wing of the electronic device to expose a second electrode and an adhesive on a bottom surface of the second wing; and

placing the exposed electrodes into contact with skin of the mammal by adhering the adhesive to the skin;

wherein the electrodes are integral with the wings so as to be inseparable from the wings during use of the device[[,]];

wherein each wing comprises an electrical and a mechanical connection;

wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal;

wherein the electrical connections are not relied upon for mechanical support; and

wherein, after performing the removing and the placing steps, the housing is not directly attached to the mammal but is held in position on the mammal only by the adhesive on the first and the second wings.

**Application No.:**    **13/106,750**
**Filing Date:**        **May 12, 2011**

46. (Previously Presented) The electronic device of claim 1, wherein the electronic component is housed within, but is unattached to, the watertight enclosure such that it can move freely within the housing.

47. (Previously Presented) The electronic device of claim 27, wherein the electronic component is housed within, but is unattached to, the watertight enclosure such that it can move freely within the housing.

48. (Previously Presented) The method of claim 42, further comprising, after placing the second exposed electrode into contact with the skin, wearing the device on the skin continuously without removal for greater than 7 days.

49. (Previously Presented) The method of claim 45, further comprising, after placing the exposed electrodes into contact with the skin, wearing the device on the skin continuously without removal for greater than 7 days.

**Application No.:**    **13/106,750**
**Filing Date:**    **May 12, 2011**

## SUMMARY OF INTERVIEW

<u>Attendees, Date and Type of Interview</u>

Applicants thank Examiner Cardinal for the courteous and helpful in-person interview of May 22, 2013. The interview was attended by Examiner Cardinal, attorney for Applicants Mauricio Uribe, David Schmidt, and Shena Park.

<u>Exhibits and/or Demonstrations</u>

Applicants brought several iterations of a physical device to illustrate the feature of the electrodes being configured to move while the wings flex to allow the housing to "float" on the skin.

<u>Identification of Claims Discussed</u>

Claim 1.

<u>Identification of Prior Art Discussed</u>

U.S. Pat. Nos. 6,881,191 ("Oakley"), 6,117,077 ("Del Mar"); U.S. Pub. Nos. 2008/028026 ("Cross"), 2008/0139953 ("Baker"), and 2002/008241 ("Nissila").

<u>Proposed Amendments</u>

Possible claim amendments relating to distinctions between the pending claims and the prior art were discussed.

<u>Principal Arguments and Other Matters</u>

Applicants argued that the proposed amendments overcome the prior art.

<u>Results of Interview</u>

The Examiner agreed that the proposed amendments overcome the prior art of record. The Nissila, Del Mar, Cross, Baker and Oakley references fail to teach or suggest at least the features of (1) the electrodes being configured to move toward and away from each other to cause the housing to move toward and away from the body, and (2) the electrical connections not providing mechanical support. The proposed amendments changed the scope of the claims, thus

-10-

**Application No.:**    **13/106,750**
**Filing Date:**    **May 12, 2011**

requiring an additional search. However, the Examiner agreed that this case is appropriate for the After Final Pilot Program. Applicants agreed to submit the amendments via an after final amendment with the appropriate pilot program paperwork, and the Examiner agreed to enter the case into the program for the additional required search.

Application No.:        13/106,750
Filing Date:           May 12, 2011

## REMARKS

The foregoing amendments and the following remarks are responsive to the December 28, 2012 Office Action (the "Office Action"). Applicants again thank Examiner Cardinal for the helpful and courteous interview conducted on May 22, 2013. Claims 1-6, 8-15, and 20-49 were pending in this application. Claims 1, 27, 42, and 45 are currently amended. The amendments are substantially identical to those discussed and agreed upon during the interview. Applicants believe that the amendments are fully supported by the application as filed. In view of the foregoing amendments and the following remarks, Applicants respectfully submit that the present application is in condition for allowance.

_Request for Consideration Under the After Final Consideration Pilot Program 2.0_

In view of the results of the interview of May 22, 2013, Applicants respectfully request that the present amendments be considered under the After Final Consideration Pilot Program 2.0. Applicants have submitted the Certificate and Request for Consideration Under the After Final Consideration Pilot Program 2.0.

_Claim Rejections – 35 U.S.C. 102(b)_

Claims 1, 2, 8, 12-15, 20, 26-28, 30-32, and 37-41 were rejected under 35 U.S.C. 102(b) as being anticipated by 2002/0082491 A1 to Nissila (hereinafter "Nissila"). In view of the foregoing amendments to the independent claims, Applicants submit that the rejection is improper.

For example, in contrast to the teachings or suggestions of Nissila, Applicants claim, _inter alia_, a device wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal; and, wherein the electrical connections are not relied upon for mechanical support. Accordingly, in view of the arguments and amendments herein, Applicants respectfully request that the present rejections be withdrawn.

Application No.:        13/106,750
Filing Date:           May 12, 2011


*Claim Rejections – 35 U.S.C. 103(a)*

      Claims 1, 2, 8, 12-15, 20-22, 26-28, 30-32, 34-38, 42-45, 48, and 49 were rejected under 35 U.S.C. 103(a) as being unpatentable over US 6,881,191 to Oakley et al. (hereinafter "Oakley"). Further, Claims 1-3, 8, 11-15, 20, 21, 26-29. 31-33, 37-39, 42-45, 48, and 49 were rejected under 35 U.S.C. 103(a) as being unpatentable over US 6,117,077 to Del Mar et al. (hereinafter "Del Mar"). Claims 1-6, 8-10, 12, 15, 26-28, 31, 38-45, 48, and 49 are rejected under 35 U.S.C. 103(a) as being unpatentable over US 2008/0288026 to Cross et al (hereinafter Cross). Claims 1-6, 11, 20, 22, 26-29, 31-33, and 38-41 were rejected under 35 U.S.C. 103(a) as being an unpatentable over 2008/0139953 to Baker et al (hereinafter "Baker"). Claims 23-25 were rejected under 35 U.S.C. 103(a) as unpatentable over Baker in view of the Scapa Medical product catalog (hereinafter "Scapa"). In view of the foregoing amendments to the independent claims, Applicants submit that the rejection is improper.

      For example, in contrast to the teachings or suggestions of Nissila, Oakley, Del Mar, Cross, and Baker, Applicants claim, *inter alia*, a device <u>wherein the electrodes are configured to move toward and away from each other, causing the housing to move toward and away from the mammal's body in response to movement of the mammal; and, wherein the electrical connections are not relied upon for mechanical support</u>. Accordingly, in view of the arguments and amendments herein, Applicants respectfully request that the present rejections be withdrawn.


*Dependent Claims are Patentable*

      As Applicants respectfully submit that the arguments presented herein in relation to the presently-amended independent claims overcome the present rejections, Applicants also submit that the remaining dependent claims are allowable not only because each depends from an allowable base claim, but also because at least some of the dependent claims recite limitations not taught or suggested by the prior art. Accordingly, withdrawal of the present rejections is respectfully requested.


*No Disclaimers or Disavowals*

      Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicants are not conceding in this

Application No.:    13/106,750
Filing Date:        May 12, 2011

application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application.  Applicants reserve the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicants have made any disclaimers or disavowals of any subject matter supported by the present application.

_Co-Pending Applications of Assignee_

Applicants wish to draw the Examiner's attention to the following co-pending applications of the present application's assignee.

| Docket No. | Serial No. | Title | Filed |
|---|---|---|---|
| IRHYM.002C1 | 13/563,543 6 | Device Features and Design Elements for Long-term Adhesion | 07-21-2012 |
| IRHYM.002C2 | 13/890144 | Device Features and Design Elements for Long-term Adhesion | 05-08-2013 |
| IRHYM.003PR | 61/756326 | Physiological Monitoring Device | 01-24-2013 |

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 28, 2013              By: /Ronald J. Schoenbaum/
                                      Ronald J. Schoenbaum
                                      Registration No. 38,297
                                      Attorney of Record
                                      Customer No. 20995
                                      (949) 721-2950

15479185

Doc Code: A.NE.AFCP
Document Description: After Final Consideration Pilot Program Request

PTO/SB/434 (05-13)

## CERTIFICATION AND REQUEST FOR CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0

| Practitioner Docket No.: IRHYM.002A | Application No.: 13/106,750 | Filing Date: May 12, 2011 |
|---|---|---|
| First Named Inventor: Uday N. Kumar | Title: DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION | |

APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0 (AFCP 2.0) OF THE ACCOMPANYING RESPONSE UNDER 37 CFR 1.116.

1. The above-identified application is (i) an original utility, plant, or design nonprovisional application filed under 35 U.S.C. 111(a) [a continuing application (*e.g.*, a continuation or divisional application) is filed under 35 U.S.C. 111(a) and is eligible under (i)], or (ii) an international application that has entered the national stage in compliance with 35 U.S.C. 371(c).

2. The above-identified application contains an outstanding final rejection.

3. Submitted herewith is a response under 37 CFR 1.116 to the outstanding final rejection. The response includes an amendment to at least one independent claim, and the amendment does not broaden the scope of the independent claim in any aspect.

4. This certification and request for consideration under AFCP 2.0 is the only AFCP 2.0 certification and request filed in response to the outstanding final rejection.

5. Applicant is willing and available to participate in any interview requested by the examiner concerning the present response.

6. This certification and request is being filed electronically using the Office's electronic filing system (EFS-Web).

7. Any fees that would be necessary consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, extension of time fees, are being concurrently filed herewith. [There is no additional fee required to request consideration under AFCP 2.0.]

8. By filing this certification and request, applicant acknowledges the following:

   - Reissue applications and reexamination proceedings are not eligible to participate in AFCP 2.0.
   - The examiner will verify that the AFCP 2.0 submission is compliant, *i.e.*, that the requirements of the program have been met (see items 1 to 7 above). For compliant submissions:
     - The examiner will review the response under 37 CFR 1.116 to determine if additional search and/or consideration (i) is necessitated by the amendment and (ii) could be completed within the time allotted under AFCP 2.0. If additional search and/or consideration is required but cannot be completed within the allotted time, the examiner will process the submission consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, by mailing an advisory action.
     - If the examiner determines that the amendment does not necessitate additional search and/or consideration, or if the examiner determines that additional search and/or consideration is required and could be completed within the allotted time, the examiner will consider whether the amendment places the application in condition for allowance (after completing the additional search and/or consideration, if required). If the examiner determines that the amendment does not place the application in condition for allowance, then the examiner will contact the applicant and request an interview.
       - The interview will be conducted by the examiner, and if the examiner does not have negotiation authority, a primary examiner and/or supervisory patent examiner will also participate.
       - If the applicant declines the interview, or if the interview cannot be scheduled within ten (10) calendar days from the date that the examiner first contacts the applicant, then the examiner will proceed consistent with current practice concerning responses after final rejection under 37 CFR 1.116.

| Signature /Ronald J. Schoenbaum/ | Date May 28, 2013 |
|---|---|
| Name (Print/Typed) Ronald J. Schoenbaum | Practitioner Registration No. 38,297 |

***Note:*** *This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below\*.*

☑ * Total of 1 forms are submitted.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record in this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/723,208 | 12/20/2019 | Uday N. Kumar | IRHYM.002C5 | 2835 |

20995        7590        12/11/2020

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| COHEN, LEE S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3794 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/11/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

efiling@knobbe.com
jayna.cartee@knobbe.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 16/723,208 | Applicant(s) Kumar et al. |
|---|---|---|
| | Examiner LEE S COHEN | Art Unit 3794 | AIA (FITF) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>10/16/20</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☑ This action is **FINAL**.    2b) ☐ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>21-28 and 30-40</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>21-28 and 30-40</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☑ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or  b)☐ objected to by the Examiner.

  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**

  a)☐ All  b)☐ Some**  c)☐ None of the:

  1.☐ Certified copies of the priority documents have been received.

  2.☐ Certified copies of the priority documents have been received in Application No. _____.

  3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 16/723,208                                                    Page 2
Art Unit: 3794

# DETAILED ACTION

## Notice of Pre-AIA or AIA Status

The present application is being examined under the pre-AIA first to invent provisions.

## Specification

The CROSS REFERENCE TO RELATED APPLICATIONS (par. [0001]) should be updated to reflect the patent status of the parent applications.

The disclosure is objected to because of the following informalities: In paragraph [0066], the adhesive is referenced as 166 but shown as 164 in the drawings. In paragraphs [0080] and [0086], the term "naps" is used in lieu of flaps.

Appropriate correction is required.

## Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 30-36 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the enablement requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to enable one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention. These claims recite a device with only a single wing; however, the disclosure only

details devices with two wings. Absent the second wing with adhesive to effect attachment of the housing to the patient, the housing would swing loosely and lack positive securement to the patient and may be inoperable. Accordingly, a single wing embodiment lacks enablement.

Claims 37-40 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the enablement requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to enable one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention. These claims set forth that the housing is configured to tilt; however, the term "tilt" was never set forth in the disclosure. Applicant references paragraphs {0008} and [0077] of the PG Pub to support the limitation, but such support is not seen in those paragraphs or the identified drawing figures. Therefore, the meaning of the term with respect to the capability of the housing is unclear and lacks enablement.

The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 21-28 and 37-40 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor (or for applications subject to pre-AIA 35 U.S.C. 112, the applicant), regards as the invention. Claim 21, line 5 – reference to "the underside" lacks antecedent basis and should read --an underside--. Claim 37, line 5 – reference to "the bottom" lacks antecedent basis and should read --a bottom--.

Application/Control Number: 16/723,208                                             Page 4
Art Unit: 3794

### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. A nonstatutory double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159. See MPEP § 2146 *et seq.* for applications not subject to examination under the first inventor to file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or

Application/Control Number: 16/723,208                                Page 5
Art Unit: 3794

PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may be filled out completely

online using web-screens. An eTerminal Disclaimer that meets all requirements is auto-

processed and approved immediately upon submission. For more information about eTerminal

Disclaimers, refer to www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 21-28 rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 1-17 of U.S. Patent No. 8,538,503, claims 1-38 of U.S. Patent No.

8,560,046, claims 1-25 of U.S. Patent No. 9,241,649, claims 1-19 of U.S. Patent No. 10,405,799,

and claims 1-13 of U.S. Patent No. 10,517,500. Although the claims at issue are not identical,

they are not patentably distinct from each other because they represent obvious changes in scope

of the various patented devices either alone or in combination.

It should be noted that if applicant should overcome the 35 U.S.C. 112 (pre-AIA), first

paragraph rejection set forth supra with respect to claims 30-36, double patenting rejections of

these claims, as recited in the prior Office action, would be reinstituted.

### *Response to Arguments*

Applicant's arguments with respect to the claim(s) have been considered but are moot

because the new ground of rejection does not rely on any reference applied in the prior rejection

of record for any teaching or matter specifically challenged in the argument.

### *Conclusion*

Applicant's amendment necessitated the new ground(s) of rejection presented in this

Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP § 706.07(a).

Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO

Application/Control Number: 16/723,208                                                Page 6
Art Unit: 3794

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event,

however, will the statutory period for reply expire later than SIX MONTHS from the date of this

final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to LEE S COHEN whose telephone number is (571)272-4763.  The

examiner can normally be reached on Monday - Friday 8:30-5:00.

Examiner interviews are available via telephone, in-person, and video conferencing using

a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is

encouraged to use the USPTO Automated Interview Request (AIR) at

http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, **Linda Dvorak** can be reached on **571-272-4764**.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see https://ppair-my.uspto.gov/pair/PrivatePair. Should you have questions on access to

the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-

free). If you would like assistance from a USPTO Customer Service Representative or access to

Application/Control Number: 16/723,208                                                          Page 7
Art Unit: 3794

the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-

1000.

/LEE S COHEN/
Primary Examiner, Art Unit 3794

Ｕｎｉｔｅｄ Ｓｔａｔｅｓ Ｐａｔｅｎｔ ａｎｄ Ｔｒａｄｅｍａｒｋ Ｏｆｆｉｃｅ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/304,811 | 06/25/2021 | Uday N. Kumar | IRHYM.002C6 | 1158 |

20995        7590        01/23/2024
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| ANTISKAY, BRIAN MICHAEL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3794 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/23/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

Atty.AdminCoordinator@knobbe.com
efiling@knobbe.com

| *Office Action Summary* | Application No.<br>17/304,811 | Applicant(s)<br>Kumar et al. | |
|---|---|---|---|
| | Examiner<br>Brian M Antiskay | Art Unit<br>3794 | AIA (FITF) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING
DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) months from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on 06/29/2021.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**    2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) 46-54 is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) 46-54 is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☑ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on 06/25/2021 is/are: a) ☑ accepted or  b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All    b) ☐ Some**    c) ☐ None of the:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____.
       3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 17/304,811                                           Page 2
Art Unit: 3794

## DETAILED ACTION

### Notice of Pre-AIA or AIA Status

The present application is being examined under the pre-AIA first to invent

provisions. Claims 46-54 are currently pending.

### Specification

The lengthy specification has not been checked to the extent necessary to

determine the presence of all possible minor errors. Applicant's cooperation is

requested in correcting any errors of which applicant may become aware in the

specification.

### Claim Rejections - 35 USC § 112

The following is a quotation of 35 U.S.C. 112(d):

(d) REFERENCE IN DEPENDENT FORMS.—Subject to subsection (e), a claim in dependent
form shall contain a reference to a claim previously set forth and then specify a further
limitation of the subject matter claimed. A claim in dependent form shall be construed to
incorporate by reference all the limitations of the claim to which it refers.

The following is a quotation of pre-AIA 35 U.S.C. 112, fourth paragraph:

Subject to the following paragraph [i.e., the fifth paragraph of pre-AIA 35 U.S.C. 112], a claim
in dependent form shall contain a reference to a claim previously set forth and then specify a
further limitation of the subject matter claimed. A claim in dependent form shall be construed
to incorporate by reference all the limitations of the claim to which it refers.

Claim 47 is rejected under 35 U.S.C. 112(d) or pre-AIA 35 U.S.C. 112, 4th

paragraph, as being of improper dependent form for failing to further limit the subject

matter of the claim upon which it depends, or for failing to include all the limitations of

the claim upon which it depends. The adhesive is already mentioned as partially

extending below the housing in claim 46. Applicant may cancel the claim(s), amend the

claim(s) to place the claim(s) in proper dependent form, rewrite the claim(s) in

Application/Control Number: 17/304,811                                              Page 3
Art Unit: 3794

independent form, or present a sufficient showing that the dependent claim(s) complies

with the statutory requirements.

### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis (i.e., changing from AIA to pre-AIA) for the rejection will

not be considered a new ground of rejection if the prior art relied upon, and the rationale

supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of pre-AIA 35 U.S.C.

102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country
or in public use or on sale in this country, more than one year prior to the date of application
for patent in the United States.

**Claims 46-48, 50-51, and 54 are rejected under pre-AIA 35 U.S.C. 102(b) as**

**being anticipated by Nissila US Publication 2002/0082491 (hereinafter Nissila).**

Regarding claim 46, Nissila discloses an electronic device for long-term adhesion

to a user (Figures 2-8), the device comprising: a housing (casing 203) comprising a

physiologic data collection circuit (Figure 12 shows the included circuity, see also 202

within casing 203), the housing positioned over a flexible layer extending from the

housing (Figure 3 housing 203 and flexible layer 101), the flexible layer comprising an

electrode positioned on the bottom of the flexible layer at a position distal from the

housing (Figure 4, electrode 122 under 116 which is the top portion of 101); an

adhesive layer positioned on the flexible layer (127) and configured to adhere the

Application/Control Number: 17/304,811                                    Page 4
Art Unit: 3794

electronic device to a user ([0034]), the adhesive layer extending at least partially below the housing (Figure 4a and 7 with housing 203 extending away from the skin contacting adhesive 127); and wherein the housing is configured to tilt at an angle relative to the adhesive layer in response to movement of the user (Figures 3-4 and 6-8 where when the device is placed over the chest as shown in Figure 2 or in other areas such as over the manubrium, the curvature of the individual would inherently have the conformable flexible layer 101 as per [0033] be offset at a different angle than the housing during regular usage).

Regarding claim 47, Nissila discloses the adhesive layer extends at least partially below the housing (Figure 4a and 7 with housing 203 extending away from the skin contacting adhesive 127).

Regarding claim 48, Nissila discloses a flap extending beneath the housing (125 as per Figure 4).

Regarding claim 50, Nissila discloses the housing is configured to remain connected to the flexible layer when the housing is tilted at an angle relative the adhesive layer in response to movement of the user (Figures 3-4 and 6-8 where when the device is placed over the chest as shown in Figure 2 or in other areas such as over the manubrium, the curvature of the individual would inherently have the conformable flexible layer 101 as per [0033] be offset at a different angle than the housing during regular usage).

Regarding claim 51, Nissila discloses a hinge portion adjacent the housing (the portion along 101 that connects to the housing at 203 is considered the hinge portion).

Application/Control Number: 17/304,811                                           Page 5
Art Unit: 3794

Regarding claim 54, Nissila discloses the physiologic data collection circuit is configured to collect cardiac rhythm data from the user (abstract).

### Claim Rejections - 35 USC § 103

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negated by the manner in which the invention was made.

The factual inquiries for establishing a background for determining obviousness under pre-AIA 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.

2. Ascertaining the differences between the prior art and the claims at issue.

3. Resolving the level of ordinary skill in the pertinent art.

4. Considering objective evidence present in the application indicating obviousness or non-obviousness.

**Claim 49 is rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Nissila.**

Regarding claim 49, Nissila discloses a housing (casing 203), but does not explicitly mention it is rigid. Given that "rigid" is a relative term, and that the casing would need some level of rigidity to protect the sensitive electronics and circuits within it (202), it would have been obvious to ensure that there is enough rigidity to the housing to prevent damage to the circuits and allow the device to be utilized as intended as is well-known in the art.

Application/Control Number: 17/304,811                                        Page 6
Art Unit: 3794

     **Claim 52 is rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Nissila in view of Cross et al. US Publication 2008/0288026 (hereinafter Cross).**

     Regarding claim 52, Nissila is silent on the adhesive being a hydrocolloid. Cross teaches an ECG monitoring patch that includes that the adhesive layer comprises a hydrocolloid adhesive ([0002][0048] and element 28). Therefore, it would have been obvious to the skilled artisan before the effective filing date to utilize the hydrocolloid adhesive as taught by Cross in lieu of the adhesive of Nissila in order to improve long term skin comfort.

     **Claim 53 is rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Nissila in view of Lindberg et al. US Publication 2007/0285868 (hereinafter Lindberg).**

     Regarding claim 53, Nissila is silent on the synthetic material as claimed. Libbus teaches an ECG monitoring patch that includes a synthetic material layer positioned above the adhesive layer (flexible layer 18, synthetic material layer 16 as per 0028]-[0030] and [0036] which details that any number of layers can be utilized for either reinforcement or additional insulating properties). Therefore, it would have been obvious to the skilled artisan before the effective filing date to utilize the additional layer as taught by Lindberg with the device of Nissila for the same predictable results (above).

*Conclusion*

     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Brian M Antiskay whose telephone number is (571)270-5179. The examiner can normally be reached M-F 10am-6pm EST.

Application/Control Number: 17/304,811                                    Page 7
Art Unit: 3794

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Joseph Stoklosa can be reached on 571-272-1213. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/BRIAN M ANTISKAY/
Examiner, Art Unit 3794

/JOSEPH A STOKLOSA/
Supervisory Patent Examiner, Art Unit 3794

Docket No.: IRHYM.002C6

---

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| First Inventor | : | Uday N. Kumar |
| App. No. | : | 17/304811 |
| Filed | : | June 25, 2021 |
| For | : | DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION |
| Examiner | : | Unknown |
| Art Unit | : | Unknown |
| Conf. No. | : | 1158 |

## PRELIMINARY AMENDMENT

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Commissioner:

Prior to examination, please amend the above-captioned patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 3 of this paper.

Application No.:    17/304811
Filing Date:       June 25, 2021

## AMENDMENTS TO THE CLAIMS

A complete listing of all claims is presented below with insertions underlined (e.g., insertion), and deletions struck through or in double brackets (e.g., ~~deletion~~ or [[deletion]]).

1-45. (**Canceled**)

46. (**New**) An electronic device for long-term adhesion to a user, the device comprising:

a housing comprising a physiologic data collection circuit, the housing positioned over a flexible layer extending from the housing, the flexible layer comprising an electrode positioned on the bottom of the flexible layer at a position distal from the housing;

an adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user, the adhesive layer extending at least partially below the housing; and

wherein the housing is configured to tilt at an angle relative to the adhesive layer in response to movement of the user.

47. (**New**) The electronic device of Claim 46, wherein the adhesive layer extends at least partially below the housing.

48. (**New**) The electronic device of Claim 46, further comprising a flap extending beneath the housing.

49. (**New**) The electronic device of Claim 46, wherein the housing is rigid.

50. (**New**) The electronic device of Claim 46, wherein the housing is configured to remain connected to the flexible layer when the housing is tilted at an angle relative the adhesive layer in response to movement of the user.

51. (**New**) The electronic device of Claim 46, further comprising a hinge portion adjacent the housing.

52. (**New**) The electronic device of Claim 46, wherein the adhesive layer comprises a hydrocolloid adhesive.

53. (**New**) The electronic device of Claim 46, further comprising a synthetic material layer positioned above the adhesive layer.

54. (**New**) The electronic device of Claim 46, wherein the physiologic data collection circuit is configured to collect cardiac rhythm data from the user.

**Application No.:**    17/304811
**Filing Date:**    June 25, 2021

## REMARKS

Applicant canceled claims and added new claims as shown above. No new matter has been added. Please enter the new claims prior to examination on the merits.

### *No Disclaimers or Disavowals*

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application.  Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: June 29, 2021                By: /David R. Schmidt/
David R. Schmidt
Registration No. 73,126
Registered Practitioner
(949) 760-0404

35047641

-3-

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

20995          7590          03/05/2025
Knobbe, Martens, Olson & Bear, LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| ANTISKAY, BRIAN MICHAEL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3794 | |

DATE MAILED: 03/05/2025

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/936,888 | 11/04/2024 | Uday N. Kumar | IRHYM.002C9 | 6165 |

TITLE OF INVENTION: DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1290 | $0.00 | $0.00 | $1290 | 06/05/2025 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. <u>PROSECUTION ON THE MERITS IS CLOSED.</u> THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

PTOL-85 (Rev. 11/23)

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via the USPTO patent electronic filing system.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

20995        7590        03/05/2025

Knobbe, Martens, Olson & Bear, LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/936,888 | 11/04/2024 | Uday N. Kumar | IRHYM.002C9 | 6165 |

TITLE OF INVENTION: DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1290 | $0.00 | $0.00 | $1290 | 06/05/2025 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ANTISKAY, BRIAN MICHAEL | 3794 | 600-391000 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363). | 2. For printing on the patent front page, list |
|---|---|
| ☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached. | (1) The names of up to 3 registered patent attorneys or agents OR, alternatively, (2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. |
| ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.** | 1_____  2_____  3_____ |

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

| 4a. Fees submitted: | ☐ Issue Fee | ☐ Publication Fee (if required) |
|---|---|---|

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via the USPTO patent electronic filing system     ☐ Enclosed check     ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

PTOL-85 Part B (11/23) Approved for use through 03/31/2026          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/936,888 | 11/04/2024 | Uday N. Kumar | IRHYM.002C9 | 6165 |

| | EXAMINER |
|---|---|
| 20995      7590      03/05/2025 | ANTISKAY, BRIAN MICHAEL |
| Knobbe, Martens, Olson & Bear, LLP | |

| | ART UNIT | PAPER NUMBER |
|---|---|---|
| 2040 MAIN STREET | 3794 | |
| FOURTEENTH FLOOR | | |
| IRVINE, CA 92614 | | |

DATE MAILED: 03/05/2025

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 11/23)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013).

https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to:

1) law enforcement, in the event that the system of records indicates a violation or potential violation of law;

2) a federal, state, local, or international agency, in response to its request;

3) a contractor of the USPTO having need for the information in order to perform a contract;

4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record;

5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record;

6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations;

7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals;

8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c));

9) the Office of Personnel Management (OPM) for personnel research purposes; and

10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

| *Notice of Allowability* | Application No. 18/936,888 | Applicant(s) Kumar et al. | |
|---|---|---|---|
| | Examiner Brian M Antiskay | Art Unit 3794 | AIA (FITF) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>Terminal Disclaimer (02/19/20250</u>.
   - ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>2-7,9-13 and 15-16</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All       b) ☐ Some*       c) ☐ None of the:
   - 1. ☐ Certified copies of the priority documents have been received.
   - 2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   - 3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   - ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail _____
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)
1. ☐ Notice of References Cited (PTO-892)
2. ☑ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____
4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. _____

5. ☑ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____

| /BRIAN M ANTISKAY/ Examiner, Art Unit 3794 | /JOSEPH A STOKLOSA/ Supervisory Patent Examiner, Art Unit 3794 |
|---|---|

Application/Control Number: 18/936,888                                    Page 2
Art Unit: 3794

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions. Claims 2-7, 9-13, and 15-16 are currently pending.

### *Terminal Disclaimer*

The terminal disclaimer filed on 02/19/2025 disclaiming the terminal portion of any patent granted on this application which would extend beyond the expiration date of 11,141,091 has been reviewed and is accepted. The terminal disclaimer has been recorded.

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in an interview with David Schmidt on 02/19/2025.

*The application has been amended as follows*:

2. (Currently Amended) An electronic device for long-term adhesion to a user, the device comprising:

a housing comprising a physiologic data collection circuit, the housing positioned over a flexible layer extending <u>from beneath</u> ~~beyond~~ the housing, the flexible layer comprising an electrode positioned on the bottom of the flexible layer at a position distal from the housing, wherein the flexible layer comprises [[an]] <u>a polymer</u> upper layer

Application/Control Number: 18/936,888                                      Page 3
Art Unit: 3794

overlying an electrical connection, the electrical connection extending linearly from the

physiologic data collection circuit to the electrode when viewed from above the

electronic device, the polymer upper layer adhered to a polymer lower layer underlying

the electrical connection;

a connecting adhesive layer positioned under the polymer upper layer, the

connecting adhesive layer adhering the polymer upper layer to the polymer lower layer;

and

a lower adhesive layer positioned on the flexible layer and configured to adhere

the electronic device to a user.

8. (Canceled)

9. (Currently Amended)  The electronic device of claim 2, wherein the physiologic

data collection circuit is configured to collect cardiac rhythm data from the user.

10. (Currently Amended) The electronic device of claim 2, wherein the polymer

upper layer extends horizontally away from the housing beyond a boundary of the

electrode.

11. (Currently Amended) The electronic device of claim 2, further comprising an

upper adhesive layer positioned over the polymer upper layer.

13. (Currently Amended) The electronic device of claim 12, wherein the upper

adhesive layer extends horizontally away from the housing beyond a boundary of the

polymer upper layer.

14. (Canceled)

16. (Currently Amended) The electronic device of claim 2, wherein the lower

adhesive layer does not extend below the housing.

Application/Control Number: 18/936,888                                     Page 4
Art Unit: 3794

### *Reasons for Allowance*

*The following is an examiner's statement of reasons for allowance*:

The closest prior art of record does not disclose nor render obvious the presently claimed invention. The prior art of record is silent on the flexible layer being made of two layers (upper and lower layers), its composition (polymers), and where everything is located on the overall electronic device with respect to the other components. Each of the layers and components were well-known individually at the time of invention, however, the total combination of elements would not have been assembled as claimed (above) without the express use of the Applicant's original disclosure as a blueprint for doing so.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Brian M Antiskay whose telephone number is (571)270-5179. The examiner can normally be reached M-F 10am-6pm EST.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

Application/Control Number: 18/936,888                                    Page 5
Art Unit: 3794

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Joseph Stoklosa can be reached on 571-272-1213. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

    Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


    /BRIAN M ANTISKAY/
    Examiner, Art Unit 3794

    /JOSEPH A STOKLOSA/
    Supervisory Patent Examiner, Art Unit 3794

IRHYM.002C5                                                              PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| First Inventor | : | Uday N. Kumar |
| App. No. | : | 16/723208 |
| Filed | : | December 20, 2019 |
| For | : | DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION |
| Examiner | : | Cohen, Lee S. |
| Art Unit | : | 3794 |
| Conf. No. | : | 2835 |

### AMENDMENT SUBMITTED IN CONJUNCTION WITH AFTER FINAL CONSIDERATION PROGRAM REQUEST AND TERMINAL DISCLAIMER

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Commissioner:

Please reconsider the above-referenced application in view of the following amendments and remarks and accompanying After Final Consideration Program Request.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 4 of this paper.

Application No.:    16/723208
Filing Date:        December 20, 2019

## AMENDMENTS TO THE CLAIMS

1-20. (Canceled)

21. (**Currently Amended**) An electronic device for long-term adhesion to a mammal, the device comprising:

a housing comprising a physiologic data collection circuit, the housing positioned over a flexible layer comprising synthetic fibers, the flexible layer extending from beneath the housing and comprising an electrode positioned on [[the]] an underside of the flexible layer distal from the housing, wherein the flexible layer comprises:

a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the data collection circuit to the electrode when viewed from above the electronic device,

an upper adhesive layer positioned under the polymer upper layer, the upper adhesive layer adhering the polymer upper layer to a polymer lower layer underlying the electrical connection,

and

a lower adhesive layer positioned on the underside of the flexible layer and extending from beneath the housing to the electrode, the lower adhesive layer configured to provide adhesion to the skin of the mammal

22. (Previously Presented) The electronic device of Claim 21, wherein the flexible layer comprises a plurality of wings, each wing extending from the housing.

23. (Previously Presented) The electronic device of Claim 21, wherein the polymer upper layer and the housing are constructed from different materials.

24. (Previously Presented) The electronic device of Claim 21, wherein the flexible layer is configured to be more flexible than the housing.

25. (Previously Presented) The electronic device of Claim 21, wherein the lower adhesive layer comprises an adhesive configured to absorb fluids.

26. (Previously Presented) The electronic device of Claim 21, wherein the lower adhesive layer comprises a pressure-sensitive adhesive.

27. (Previously Presented) The electronic device of Claim 21, wherein the physiologic data collection circuit is configured to collect cardiac rhythm data from the mammal.

**Application No.:**    **16/723208**
**Filing Date:**        **December 20, 2019**

28. (Previously Presented) The electronic device of Claim 21, wherein the polymer lower layer comprises a polyester.

29. (Canceled)

30. (**Currently Amended**) An electronic device for long-term adhesion to a mammal, the device comprising:

a housing comprising a physiologic data collection circuit;

a plurality of wings extending from the housing, [[the]] each wing comprising a first adhesive layer positioned on a bottom surface of the wing, the first adhesive layer providing adhesion to the skin of the mammal;

an electrode positioned on the bottom surface of [[the]] each wing, the electrode electrically connected to the physiologic data collection circuit; and

wherein [[the]] each wing comprises a second adhesive layer positioned over and adhered to the wing; the second adhesive layer extending horizontally outward beyond a boundary of the wing.

31. (Previously Presented) The electronic device of Claim 30, further comprising a hinge portion adjacent the housing.

32. (Previously Presented) The electronic device of Claim 30, wherein the second adhesive layer adds adhesive surface area to the first adhesive layer to distribute forces over a larger area.

33. (Previously Presented) The electronic device of Claim 30, wherein the first adhesive layer comprises an adhesive that can absorb fluids

34. (Previously Presented) The electronic device of Claim 30, wherein the first adhesive layer comprises a hydrocolloid adhesive.

35. (Previously Presented) The electronic device of Claim 30, wherein the first adhesive layer comprises a pressure-sensitive adhesive.

36. (Previously Presented) The electronic device of claim 30, further comprising a synthetic material layer positioned above the first adhesive layer.

37. (**Canceled**)

38. (**Canceled**)

39. (**Canceled**)

40. (**Canceled**)

-3-

**Application No.:**     16/723208
**Filing Date:**     December 20, 2019

# REMARKS

The foregoing amendments and the following remarks are responsive to the December 11, 2021 Office Action (the "Office Action"). Applicant amended the claims as shown above. Applicant submits that the amendments are supported by the originally filed claims, the specification, and the figures as filed. Accordingly, no new matter is being introduced by these amendments and new claims. Entry of these amendments and new claims is respectfully requested.

In view of the foregoing amendments, the following remarks, and the terminal disclaimer filed herewith, Applicant respectfully submits that the present application is in condition for allowance.

*Request for Consideration under the After Final Consideration Pilot Program 2.0*

In view of the terminal disclaimer filed herewith, the amendment to Claim 30, and the cancelation of Claim 37, Applicant respectfully requests that the present amendment be considered under the After Final Consideration Pilot Program 2.0. Along with this response, Applicant submits herewith the Certificate and Request for Consideration Under the After Final Consideration Pilot Program 2.0.

*Claim Rejections – 35 U.S.C. §112*

Claims 30-36 were rejected under 35 U.S.C 112(a), first paragraph, as allegedly failing to comply with the enablement requirement. Claims 37-40 were rejected under 35 U.S.C 112(a), first paragraph, as allegedly failing to comply with the enablement requirement. Claims 21-28 and 37-40 were rejected under 35 U.S.C 112(b), second paragraph, as allegedly being indefinite or failing to particularly point out and distinctly claim the subject matter which the inventor regards as the invention. Applicant respectfully disagrees.

In the interest of advancing prosecution and without prejudice or disclaimer, Applicant canceled Claims 37-40. Claim 21 has been amended to provide antecedent basis as noted by the Examiner. Claim 30 was rejected for lack of enablement, because "the claims recite a device with only a single wing; however, the disclosure only details devices with two wings." *Office Action*, page 3. Applicant respectfully disagrees with this characterization of the disclosure; however, in the interests of advancing prosecution, Claim 30 has been amended to now recite,

**Application No.:**    16/723208
**Filing Date:**        December 20, 2019

*inter alia*, "a plurality of wings extending from the housing, each wing comprising a first adhesive layer positioned on a bottom surface of the wing, the first adhesive layer providing adhesion to the skin of the mammal." For at least these reasons, Applicant respectfully requests that the rejections be withdrawn.


*Double Patenting*

Claims 21-28 were rejected on the ground of nonstatutory double patenting as being unpatentable over various claims of U.S. Pat. Nos. 8,538,503, 8,560,046, 9,241,649, 10,405,799, and 10,517,500. Applicant submits that Claims 21-28 are patentably distinct from the claims of the cited patents; however, to advance prosecution, Applicant has filed herewith a terminal disclaimer for all 5 patents and respectfully requests that the double patenting rejection be withdrawn. The Office Action noted that the double patenting rejections of Claims 30-36 would be reinstated once the 35 U.S.C §112 rejections are overcome. Applicant respectfully notes that the terminal disclaimer filed herewith would pre-emptively overcome such double patenting rejections.

Applicant further notes that "[t]he filing of a terminal disclaimer to obviate a rejection based on nonstatutory double patenting is not an admission of the propriety of the rejection. *Quad Environmental Technologies Corp. v. Union Sanitary District*, 946 F.2d 870, 20 USPQ2d 1392 (Fed. Cir. 1991). The court indicated that the 'filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither a presumption nor estoppel on the merits of the rejection.'" (MPEP 804.02).


*No Disclaimers or Disavowals*

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application. Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not

**Application No.:**    **16/723208**
**Filing Date:**    **December 20, 2019**

reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 3, 2021                    By: /David R. Schmidt/
                                           David R. Schmidt
                                           Registration No. 73,126
                                           Registered Practitioner
                                           (949) 760-0404

34289212

# EXHIBIT D

Response to Office Action
Docket No. 127.1961.US.CON

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| *In re* Application of | ) |
|     Felix et al. | ) Group Art Unit: 3792 |
| 5 | ) |
| Serial No. 16/241,929 | ) Examiner: |
| | )    George C. Manuel |
| Filed: January 7, 2019 | ) |
| | ) |
| 10  For:  Remote Interfacing Electrocardiography Patch | ) |

### RESPONSE TO OFFICE ACTION

Commissioner for Patents
15  P.O. Box 1450
Alexandria, VA  22313-1450

Examiner Manuel:

      In response to the Office Action mailed on February 26, 2020, for the
20  above-referenced patent application, please enter the following amendments and
remarks.  This response is being timely filed within three months of the mailing
date of the Office action.

**Amendments to the Claims** begin on page 2.

**Remarks** begin on page 6.

- 1 -

OA2 Resp

Response to Office Action
Docket No. 127.1961.US.CON

**Amendments to the Claims**

This listing of claims will replace all prior versions, and listings, of claims in the application:

1    1.    (currently amended) A remotely-interfaceable electrocardiography
2    patch, comprising:
3        a backing formed of a strip of material;
4        an electrocardiographic electrode on each end of the backing to capture
5    electrocardiographic signals;
6        a flexible circuit comprising a pair of circuit traces electrically coupled to
7    the electrocardiographic electrodes; and
8        a wireless transceiver on the strip of material of the backing to
9    ~~communicate~~ transmit at least one of the electrocardiographic signals and other
10    physiological measures directly [[with]] to one or more of a physiology and
11    activity sensor, server, and personal computer.

1    2.    (original) A remotely-interfaceable electrocardiography patch
2    according to Claim 1, further comprising:
3        a receptacle provided on a surface of the backing opposite the
4    electrocardiographic electrodes to receive a monitor recorder.

1    3.    (original) A remotely-interfaceable electrocardiography patch
2    according to Claim 2, further comprising:
3        a cavity formed within the non-conductive receptacle to house a battery.

1    4.    (previously presented) A remotely-interfaceable
2    electrocardiography patch according to Claim 1, wherein the monitor recorder
3    records the electrocardiographic signals.

1    5.    (previously presented) A remotely-interfaceable
2    electrocardiography patch according to Claim 1, further comprising:

- 2 -

OA2 Resp

3         a cryptographic circuit to authenticate the backing for use with the monitor

4    recorder.

1         6.      (original) A remotely-interfaceable electrocardiography patch

2    according to Claim 1, wherein the electrocardiographic signals are converted to a

3    different format and processed.

1         7.      (original) A remotely-interfaceable electrocardiography patch

2    according to Claim 1, wherein the formatted electrocardiographic signals are

3    retrieved by one of a server, a client computer and a mobile device via the

4    wireless transceiver.

1         8.      (original) A remotely-interfaceable electrocardiography patch

2    according to Claim 1, wherein the physiology and activity sensor measures one or

3    more of heart rate, temperature, blood pressure, movement, sleep, footsteps,

4    calories burned and estimated blood glucose level.

1         9.      (original) A remotely-interfaceable electrocardiography patch

2    according to Claim 8, wherein the communication device evaluates the measures

3    of the physiology and activity sensor to generate feedback.

1         10.     (original) A remotely-interfaceable electrocardiography patch

2    according to Claim 1, wherein the measures of the physiology and activity sensor

3    are merged with the electrocardiographic signals in an electronic medical record.

1         11.     (currently amended) A remotely-interfaceable electrocardiography

2    and physiological sensor monitor, comprising:

3        a patch, comprising:

4             a backing formed of a strip of material;

5             an electrocardiographic electrode on each end of the backing to

6    capture electrocardiographic signals;

- 3 -

Response to Office Action
Docket No. 127.1961.US.CON

7         a flexible circuit comprising a pair of circuit traces electrically

8 coupled to the electrocardiographic electrodes; and

9         a wireless transceiver on  the <u>strip of material of the</u> backing to

10 directly ~~communicate~~ <u>transmit</u> at least one of the electrocardiographic signals and

11 other physiological measures [[with]] <u>to</u> one or more of a physiology and activity

12 sensor, server, and personal computer; and

13         a monitor recorder paired with the patch to record the electrocardiographic

14 signals.

1       12.     (original) A remotely-interfaceable electrocardiography and

2 physiological sensor monitor according to Claim 11, further comprising:

3         a receptacle provided on a surface of the backing opposite the

4 electrocardiographic electrodes to receive the monitor recorder.

1       13.     (original) A remotely-interfaceable electrocardiography and

2 physiological sensor monitor according to Claim 12, further comprising:

3         a cavity formed within the non-conductive receptacle to house a battery.

1       14.     (previously presented) A remotely-interfaceable

2 electrocardiography and physiological sensor monitor according to Claim 11,

3 wherein the monitor recorder comprises a housing with a front end circuit to sense

4 the electrocardiographic signals through the electrocardiographic electrodes and a

5 flash memory to store the electrocardiographic signals.

1       15.     (previously presented) A remotely-interfaceable

2 electrocardiography and physiological sensor monitor according to Claim 11,

3 further comprising:

4         a cryptographic circuit to authenticate the backing for use with the monitor

5 recorder.

- 4 -

Response to Office Action
Docket No. 127.1961.US.CON

1      16.    (original) A remotely-interfaceable electrocardiography and
2    physiological sensor monitor according to Claim 11, wherein the
3    electrocardiographic signals are converted to a different format and processed.

1      17.    (original) A remotely-interfaceable electrocardiography and
2    physiological sensor monitor according to Claim 11, wherein the formatted
3    electrocardiographic signals are retrieved by one of a server, a client computer
4    and a mobile device via the wireless transceiver.

1      18.    (original) A remotely-interfaceable electrocardiography and
2    physiological sensor monitor according to Claim 11, wherein the physiology and
3    activity sensor measures one or more of heart rate, temperature, blood pressure,
4    movement, sleep, footsteps, calories burned and estimated blood glucose level.

1      19.    (original) A remotely-interfaceable electrocardiography and
2    physiological sensor monitor according to Claim 18, wherein the communication
3    device evaluates the measures of the physiology and activity sensor to generate
4    feedback.

1      20.    (original) A remotely-interfaceable electrocardiography and
2    physiological sensor monitor according to Claim 11, wherein the measures of the
3    physiology and activity sensor are merged with the electrocardiographic signals in
4    an electronic medical record.

Response to Office Action
Docket No. 127.1961.US.CON

## REMARKS

Claims 1-20 are pending and remain.  Claims 1 and 11 have been amended.

### Double patenting:

5    Claims 1-20 stand rejected on the ground of nonstatutory double patenting as unpatentable over Claims 1-20 of U.S. Patent No. 10,172,534 and Claims 1-26 of U.S. Patent No. 9,730,593.  Applicant traverses.

Independent Claims 1 and 11 recite a wireless transceiver on the strip of material of the backing.  However, the claims of Patent Nos. 10,172,534 and

10   9,730,593 fail to include such subject matter.  Thus, a *prima facie* showing of double patenting has not been shown with respect to Claims 1 and 11.  Claims 2-10 are dependent on Claim 1 and are patentable for the above-stated reasons, and as further distinguished by the limitations therein.  Claims 12-20 are dependent on Claim 11 and are patentable for the above-stated reasons, and as further

15   distinguished by the limitations therein.  Accordingly, withdrawal of the rejection is respectfully requested.

### Rejections Under 35 U.S.C. § 102(a)(1) over Paquet:

Claims 1-4, 6-14, and 16-20 stand rejected under 35 U.S.C. § 102(a)(1) as anticipated by U.S. Patent Application Publication No. 2012/0029306, to Paquet

20   et al. ("Paquet").  A claim is anticipated under 35 U.S.C. 102(a) only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference.  MPEP 2131.  Applicant traverses.

Claim 1 has been amended to recite a wireless transceiver on the strip of material of the backing to transmit at least one of the electrocardiographic signals

25   and other physiological measures directly to one or more of a physiology and activity sensor, server, and personal computer.  Claim 11 has been amended to recite a wireless transceiver on  the strip of material of the backing to directly transmit at least one of the electrocardiographic signals and other physiological measures to one or more of a physiology and activity sensor, server, and personal

30   computer.  The amendments are supported by the application as filed.  No new

- 6 -

matter has been entered.

In contrast, Paquet discloses a vital signs monitoring device with a patch that communicates with a bridge to link the monitor to a central server (Abstract and paragraph [0027]).  The patch is attached to the patient and worn for a period of time (paragraph [0028]).  The bridge is a device that connects the monitor patch and server, and communicates with the patch over a communication link operating at approximately 915 MHz and at a power level that enables the communication link to function up to a distance of approximately 10 meters (paragraph [0033]).  A bridge is placed in each room and at regular intervals along hallways of a healthcare facility (*Id.*).  Also, the bridge separately communicates with the server over a network link using any of a variety of computer systems, including hardwired and wireless Ethernet (*Id.*).  Therefore, Paquet teaches communicating data from a vital signs monitoring patch to a bridge, and then from the bridge to a server, rather than a wireless transceiver on a backing that directly transmits electrocardiographic signals and other physiological measures to a physiology and activity sensor, server, or personal computer.

Further, the Office Action of February 25, 2020, on page 8, provides :

"the word 'directly' does not distinguish over a wireless transceiver from communicating data from a vital signs monitoring patch to a bridge, and then from the bridge to a server and personal computer.  Data does not change direction or stop due to the bridge and server.  The bridge and server merely provide a linking path for the data to flow directly from the monitoring patch to the personal computer.  Links 30, 50, and network 70 provide a path for the data to flow directly from the monitoring patch to the personal computer 100.  The skilled artisan recognizes when data flows directly from one device to another device, the data travels via a path. Similarly, when one says, a man went directly from one house to the store, it is understood the man followed a path or route from the house to the store."

Applicant disagrees.  The adjective "directly" is defined as "a proceeding from one point to another in time or space without deviation or interruption." Merriam-Webster Dictionary: https://www.merriam-webster.com/dictionary/direct.  Returning to the example above, the man goes directly from one house to the store, which means that the man does not make any

5

10

15

20

25

30

35

stops, such as at the library, along the path or route from the house to the store.  If
stops are made by the man, then the man does not go directly from the house to
the store.  Similarly, data that goes from a transceiver to a server without any
other stops is direct, while data that goes from a monitor patch to a bridge and

5    from a bridge to a server, is not following a direct path.  Accordingly, in contrast
with the above paragraph in the Office action, the term "directly" absolutely does
distinguish between data directly transmitted from a wireless transceiver to
another device, such as a physiology and activity sensor, server, or personal
computer and the transmission of data from a monitoring patch to a bridge, and

10   then from the bridge to a server and personal computer since the definition of
directly means without interruption or deviation.  Accordingly, Paquet fails to
teach a wireless transceiver that communicates electrocardiographic signals and
other physiological measures <u>directly</u> with a physiology and activity sensor,
server, or personal computer.

15         Further, Paquet fails to teach where the transceiver is located on the
monitor patch.  Instead, Paquet teaches a processing and interface module as a
component of the monitor patch that includes a wireless transceiver with a
receiver and transmitter, but fails to provide where the processing and interface
module is affixed within or on the monitor patch (paragraph [0039]).

20   Accordingly, Paquet fails to teach a wireless transceiver <u>on a strip of material of a
backing</u>.

           Accordingly, *a prima facie case* of anticipation under 35 U.S.C. § 102(a)
has not been shown with respect to independent Claims 1 and 11.  Claims 2-4 and
6-10 are dependent on Claim 1 and are patentable for the above-stated reasons,

25   and as further distinguished by the limitations recited therein.  Claims 12-14 and
16-20 are dependent on Claim 11 and are patentable for the above-stated reasons,
and as further distinguished by the limitations recited therein. Withdrawal of the
rejection under 35 U.S.C. § 102(a) is respectfully requested.

## **Rejections Under 35 U.S.C. § 103(a) over Paquet, in view of Magar:**

30         Claims 5 and 15 stand rejected under 35 U.S.C. § 103(a) as obvious over
Paquet, in view of U.S. Patent Application Publication No. 2009/0054737, to

Magar et al. ("Magar").  Applicant traverses.

The examiner bears the initial burden of factually supporting any *prima facie* conclusion of obviousness, which includes a clear articulation of the reasons or rationale why the claimed invention would have been obvious.  MPEP 2142.

5    The rationale based on combining prior art elements according to known methods to yield predictable results appears to have been applied.  MPEP 2143(A).  Therefore, to establish a *prima facie* case of obviousness under this rationale, the examiner has the burden of articulating the following (1) a finding that the prior art included each element claimed, although not necessarily in a single prior art

10    reference, with the only difference between the claimed invention and the prior art being the lack of actual combination of the elements in a single prior art reference; (2) a finding that one of ordinary skill in the art could have combined the elements as claimed by known methods, and that in combination, each element merely performs the same function as it does separately; (3) a finding that

15    one of ordinary skill in the art would have recognized that the results of the combination were predictable; and (4) whatever additional findings based on the *Graham* factual inquiries may be necessary, in view of the facts of the case under consideration.  MPEP 2143(A).  A *prima facie* case of obviousness has not been shown.

20    Adding the teachings of Magar to the Paquet reference introduces further functionality.  However, the addition of Magar does no more to support an obviousness rejection of Claims 5 and 15.  Claim 5 is dependent on Claim 1 and is patentable for the above-stated reasons, and as further distinguished by the limitations therein.  Claim 15 is dependent on Claim 11 and is patentable for the

25    above-stated reasons, and as further distinguished by the limitations therein.  Accordingly, withdrawal of the rejection is requested.

The prior art made of record and not relied upon has been reviewed by the applicant and is considered to be no more pertinent than the prior art references already applied.

30    Claims 1-20 are believed to be in condition for allowance.  Entry of the foregoing amendments is respectfully requested.  Reconsideration of the claims

Response to Office Action
Docket No. 127.1961.US.CON

and a Notice of Allowance are earnestly solicited.  Please contact the undersigned at (206) 381-3900 regarding any questions or concerns associated with the present matter.

5

Respectfully submitted,


Dated:    May 26, 2020                    By:/Krista A. Wittman/ _____
                                                        Krista A. Wittman
10                                                    Reg. No. 59,594


Cascadia Intellectual Property
12360 Lake City Way NE, Suite 501        Telephone: (206) 381-3900
Seattle, WA 98125                                  Facsimile: (206) 381-3999
15


OA2 Resp

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/821,409 | 08/30/2024 | Jason Felix | 3726071.00309 | 5918 |

194170        7590        10/11/2024

K&L Gates LLP - BDX
P.O. Box 1135
Chicago, IL 60690

| EXAMINER |
|---|
| MANUEL, GEORGE C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3792 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/11/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

USpatentmail@klgates.com

| *Office Action Summary* | Application No. 18/821,409 | Applicant(s) Felix et al. |
|---|---|---|
| | Examiner GEORGE MANUEL | Art Unit 3792 | AIA (FITF) Status Yes |

| Examiner | Art Unit | AIA (FITF) Status |
|---|---|---|
| GEORGE MANUEL | 3792 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>09 September 2024</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**  2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-30</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-30</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on <u>30 August 2024</u> is/are: a) ☑ accepted or b) ☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
  a) ☐ All  b) ☐ Some**  c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### DETAILED ACTION

### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. A nonstatutory double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to

examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159.

See MPEP § 2146 *et seq.* for applications not subject to examination under the first inventor to

file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR

1.321(b).

The filing of a terminal disclaimer by itself is not a complete reply to a nonstatutory

double patenting (NSDP) rejection. A complete reply requires that the terminal disclaimer be

accompanied by a reply requesting reconsideration of the prior Office action. Even where the

NSDP rejection is provisional the reply must be complete. See MPEP § 804, subsection I.B.1. For

a reply to a non-final Office action, see 37 CFR 1.111(a). For a reply to final Office action, see 37

CFR 1.113(c). A request for reconsideration while not provided for in 37 CFR 1.113(c) may be

filed after final for consideration. See MPEP §§ 706.07(e) and 714.13.

The USPTO Internet website contains terminal disclaimer forms which may be used.

Please visit www.uspto.gov/patent/patents-forms. The actual filing date of the application in

which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or

PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may be filled out completely

online using web-screens. An eTerminal Disclaimer that meets all requirements is auto-

processed and approved immediately upon submission. For more information about eTerminal

Disclaimers, refer to www.uspto.gov/patents/apply/applying-online/eterminal-disclaimer.

Claims 1, 2, 4-9, 11-15 and 17-21 are rejected on the ground of nonstatutory double

patenting as being unpatentable over claims 1-18 of U.S. Patent No. 9,820,665. Although the

claims at issue are not identical, they are not patentably distinct from each other because the

present claims are directed to obvious variations of a wearable electrocardiography monitoring

device comprising a flexible circuit, adhesive, electrocardiographic electrodes, battery wireless transceiver, button, and sealed housing in combination with the claimed features as claimed in claims 1-18 of U.S. Patent No. 9,820,665.

Claims 3, 10, 16 and 22-30 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-18 of U.S. Patent No. 9,820,665 in view of Hopman et al (US 2002/0072682).

The features of claims 3, 10, 16 and 22-30 are rendered obvious over claims 1-18 of U.S. Patent No. 9,820,665 except for the wireless transceiver being configured to communicate with an external device via Bluetooth.

Hopman teaches a transmitter **24** receives signals from electrodes **30**. The transmitter **24** comprises a wireless transmitter or transceiver, such as a radio, ultrasound, infrared or other transmitter. The transceiver is operable according to Bluetooth specifications (i.e. a Bluetooth transceiver) is used. The transmitter **24** comprises an application specific integrated circuit, a processor or other circuit. See paragraph [**0042**].

One of ordinary skill in the art would have found it obvious to configure the wireless transceiver in claims 1-18 of U.S. Patent No. 9,820,665, based on the teaching of Hopman, to communicate with an external device via Bluetooth because the wireless transceiver in claims 1-18 of U.S. Patent No. 9,820,665 has the same functionality of transmitting electrocardiographic signals as the transmitter **24** in Hopman. In addition, the skilled artisan would have found it desirable to configure the transceiver with Bluetooth because Hopman teaches it provides two-way communication between the external device and the wireless transceiver. See paragraph [**0051**] in Hopman.

Application/Control Number: 18/821,409                                          Page 5
Art Unit: 3792

### *Allowable Subject Matter*

Claims 1-30 are rejected, but would be allowable subject to filing an acceptable Terminal Disclaimer.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to George Manuel whose telephone number is (571) 272-4952.

The examiner can normally be reached on regular business days.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Niketa Patel can be reached on (571) 272-4156.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).  If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 18/821,409                                              Page 6
Art Unit: 3792

/George Manuel/
Primary Examiner
Art Unit: 3792

10/8/2024

# EXHIBIT E

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

194170        7590        01/02/2025

K&L Gates LLP - BDX
P.O. Box 1135
Chicago, IL 60690

| EXAMINER |
|---|
| ANTISKAY, BRIAN MICHAEL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3794 | |

DATE MAILED: 01/02/2025

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/318,641 | 05/16/2023 | Jon Mikalson Bishay | 3726071.00280 | 2130 |

TITLE OF INVENTION: MOISTURE-RESISTANT ELECTROCARDIOGRAPHY MONITOR

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 04/02/2025 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

PTOL-85 (Rev. 11/23)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via the USPTO patent electronic filing system.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |
|---|---|---|---|

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

194170      7590      01/02/2025

K&L Gates LLP - BDX
P.O. Box 1135
Chicago, IL 60690

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/318,641 | 05/16/2023 | Jon Mikalson Bishay | 3726071.00280 | 2130 |

TITLE OF INVENTION: MOISTURE-RESISTANT ELECTROCARDIOGRAPHY MONITOR

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 04/02/2025 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ANTISKAY, BRIAN MICHAEL | 3794 | 600-382000 |

**1.** Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2.** For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3.** ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

**4a.** Fees submitted: ☐ Issue Fee ☐ Publication Fee (if required)

**4b.** Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via the USPTO patent electronic filing system ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

**5.** Change in Entity Status (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature _____ | Date _____ |
|---|---|
| Typed or printed name _____ | Registration No. _____ |

PTOL-85 Part B (11/23) Approved for use through 03/31/2026      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/318,641 | 05/16/2023 | Jon Mikalson Bishay | 3726071.00280 | 2130 |

194170        7590        01/02/2025
K&L Gates LLP - BDX
P.O. Box 1135
Chicago, IL 60690

| EXAMINER |
|---|
| ANTISKAY, BRIAN MICHAEL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3794 | |

DATE MAILED: 01/02/2025

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 11/23)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013).
https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to:

1) law enforcement, in the event that the system of records indicates a violation or potential violation of law;

2) a federal, state, local, or international agency, in response to its request;

3) a contractor of the USPTO having need for the information in order to perform a contract;

4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record;

5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record;

6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations;

7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals;

8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c));

9) the Office of Personnel Management (OPM) for personnel research purposes; and

10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

| *Notice of Allowability* | Application No. 18/318,641 | Applicant(s) Bishay et al. | |
|---|---|---|---|
| | Examiner Brian M Antiskay | Art Unit 3794 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>Terminal Disclaimer on 12/12/2024</u>.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>1-7 and 9-20</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

    a) ☐All      b) ☐ Some*      c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

        * Certified copies not received: _____ .

    Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| /BRIAN M ANTISKAY/ Examiner, Art Unit 3794 | /JOSEPH A STOKLOSA/ Supervisory Patent Examiner, Art Unit 3794 |
|---|---|

Application/Control Number: 18/318,641                                    Page 2
Art Unit: 3794

## DETAILED ACTION

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA. Claims 1-7 and 9-20 are currently pending.

### Terminal Disclaimer

The terminal disclaimer filed on 12/12/2024 disclaiming the terminal portion of any patent granted on this application which would extend beyond the expiration date of 9,730,593 has been reviewed and is accepted. The terminal disclaimer has been recorded.

### Reasons for Allowance

*The following is an examiner's statement of reasons for allowance*:

The closest prior art of record does not disclose nor render obvious the presently claimed invention, specifically the receptacle including a compartment within which a battery is interfaced to the electronic circuitry, while the housing containing the claimed electronic processing components is able to be removably secured within it. Bay, Baker, and Cross (as previously presented in the Non-Final Office Action on 09/12/2024) teach a receptacle, a battery, and processing components, however not in the claimed configuration. The skilled artisan before the effective filing date would not have been inclined to arrange the claimed elements as disclosed without the use of the Applicant's original disclosure as a blueprint for doing so.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably

Application/Control Number: 18/318,641                                    Page 3
Art Unit: 3794

accompany the issue fee. Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Brian M Antiskay whose telephone number is (571)270-

5179. The examiner can normally be reached M-F 10am-6pm EST.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Joseph Stoklosa can be reached on 571-272-1213. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 18/318,641                                        Page 4
Art Unit: 3794


/BRIAN M ANTISKAY/
Examiner, Art Unit 3794

/JOSEPH A STOKLOSA/
Supervisory Patent Examiner, Art Unit 3794