**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BARDY DIAGNOSTICS, INC., | ) | |
| | ) | |
| Plaintiff and Counter Defendant, | ) ) | |
| | ) | |
| v. | ) | C.A. No. 24-1355-JDW |
| | ) | |
| IRHYTHM TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant and Counter Plaintiff. | ) ) | |

**PLAINTIFF BARDY DIAGNOSTICS, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO STAY DEFENDANT IRHYTHM TECHNOLOGIES, INC.'S
COUNTERCLAIMS OR, IN THE ALTERNATIVE, FOR
<u>LEAVE TO FILE FIRST AMENDED ANSWER</u>**

OF COUNSEL:

Jeffrey R. Gargano
Melissa M. Haulcomb
Jared R. Lund
Rebekah Hill
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
(312) 372-1121

Erik J. Halverson
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
(415) 882-8200

Dated: December 19, 2025

Philip A. Rovner (#3215)
Andrew M. Moshos (#6685)
P. Andrew Smith (#7117)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com
amoshos@potteranderson.com
asmith@potteranderson.com

*Attorneys for Plaintiff
Bardy Diagnostics, Inc.*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDINGS .......................................... 3

III.   SUMMARY OF THE ARGUMENT .................................................................. 4

IV.    STATEMENT OF FACTS ................................................................................... 5

V.     LEGAL STANDARD ........................................................................................... 6

     A.     Motion to Stay.......................................................................................... 6

     B.     Motion for Leave to Amend..................................................................... 6

VI.    ARGUMENT ........................................................................................................ 8

     A.     The Court Should Stay iRhythm's Counterclaims................................. 8

           1.     A stay will simplify the issues for trial ...................................... 8

           2.     The case is in the early stages and weighs in favor of a stay....................11

           3.     A stay will not unduly prejudice iRhythm ................................. 13

     B.     Alternatively, Should the Court Deny Bardy's Request to Stay iRhythm's Counterclaims, the Court Should Grant Bardy Leave to File Its First Amended Answer ................................................................................................... 15

           1.     Good Cause Exists because Bardy Acted Diligently ................................. 17

           2.     Bardy's First Amended Answer Would Not Prejudice iRhythm.............. 18

           3.     Bardy's Proposed Amendment Is Not Futile ............................................ 20

VII.   CONCLUSION...................................................................................................... 25

**TABLE OF AUTHORITIES**

Cases

*454 Life Sciences Corp. v. Ion Torrent Sys., Inc.*,
   No. 15-595, 2016 WL 6594083 (D. Del. Nov. 7, 2016) ............................................11

*Arthur v. Maersk, Inc.*,
   434 F.3d 196 (3d Cir. 2006) ....................................................................... 7

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
   Civ. A. No. 18-1679, Dkt. 123 (D. Del. Jun. 2, 2020) ............................. 12

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*,
   No. CV 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020) ........................ 8

*British Telecomms. PLC v. IAC/InterActiveCorp*,
   No. 18-366, 2019 WL 4740156 (D. Del. Sept. 27, 2019)..................................... 6, 8

*Butamax Adv. Biofuels LLC v. Gevo, Inc.*,
   No. 11-cv-54, 2013 WL 571801 (D. Del. Feb. 13, 2013) ........................ 18

*Cornell University v. Illumina, Inc.*,
   No. 10-cv-433, 2016 WL 3046258 (D. Del. May 27, 2016) ............................. 17, 18

*Cost Bros. v. Travelers Indem. Co.*,
   760 F.2d 58 (3d Cir. 1985) .......................................................... 6

*EMC Corp. v. Zerto, Inc.*,
   C.A. No. 12-956-GMS, 2014 WL 3809365 (D. Del. Jul. 31, 2014)....................... 18

*Ethicon LLC v. Intuitive Surgical, Inc.*,
   No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ...........................11, 12

*Ever Win Int'l Corp. v. Radioshack Corp.*,
   902 F. Supp. 2d 503 (D. Del. 2012) ................................................ 14, 15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ............................................... 16, 21, 23

*Finjan, Inc. v. Symantec Corp.*,
   139 F. Supp. 3d 1032 (N.D. Cal. 2015) ..............................................11

*Grayson v. Mayview State Hosp.*,
   293 F.3d 103 (3d Cir. 2002) ........................................................7

*Heritage Handoff Holdings, LLC v. Fontanella*,
   No. CV 16-691-RGA, 2018 WL 3580288 (D. Del. July 25, 2018)..........................7

*Intell. Ventures I LLC v. Toshiba Corp.*,
   No. 13-cv-453, 2016 WL 4690384 (D. Del. Sept. 7, 2016)................................. 17

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
 No. 18-452, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ..............................................11, 12, 14

*Long v. Wilson*,
 393 F.3d 390 (3d Cir. 2004) ................................................................................................ 7, 18

*NFC Tech. LLC v. HTC Am., Inc.*,
 No. 2:13-cv-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ............................................ 6

*Novartis AG v. HEC Pharm Co.*,
 183 F. Supp. 3d 560 (D. Del. 2016) ...................................................................................... 13

*PACT XPP Schweiz AG v. Intel Corp.*,
 No. 1:19-cv-01006-JDW, 2020 WL 13119705 (D. Del. Nov. 5, 2020) ........................ 1, 10, 12

*PACT XPP Schweiz AG v. Intel Corp.*,
 No. 1:19-cv-01006-JDW, 2020 WL 14027924 (D. Del. Sept. 9, 2020) .................................. 15

*Premier Comp Sols., LLC v. UPMC*,
 970 F.3d 316 (3d Cir. 2020) ...................................................................................................... 7

*Procter & Gamble Co. v. Kraft Foods Glob., Inc.*,
 549 F.3d 842 (Fed. Cir. 2008) ............................................................................................... 4, 8

*Prolitec Inc. v. Scentair Techs., LLC*,
 No. CV 20-984-WCB, 2023 WL 5037173 (D. Del. Aug. 8, 2023) ....................................... 6, 9

*Roquette Freres v. SPI Pharma, Inc.*,
 No. 06-cv-540, 2009 WL 1444835 (D. Del. 2009) .............................................................. 7, 18

*Round Rock Rsch. LLC v. Dole Food Co. Inc.*,
 No. CIV.A. 11-1239-RGA, 2012 WL 1185022 (D. Del. Apr. 6, 2012) .................................. 10

*Rovi Guides Inc. v. Comcast Cable Commc'ns LLC*, 19-1188 (Fed. Cir. Oct. 3, 2019) ............... 25

*SenoRx, Inc. v. Hologic, Inc.*,
 No. CIV.A. 12-173-LPS, 2013 WL 144255, (D. Del. Jan. 11, 2013) ...........................11, 14, 15

*Stryker Corp. et al, v. Microvention, Inc.*,
 No. CV 21-836-CFC, D.I. 73 (D. Del. Dec. 13, 2021) ........................................................... 13

*Targus Int'l LLC v. Victorinox Swiss Army, Inc.*,
 Civ. A. No. 20-cv-464-RGA, 2021 WL 2291978 (D. Del. June 4, 2021) ........................ 4, 6, 7

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
 193 F. Supp. 3d 345 (D. Del. 2016) ........................................................................................ 6

*TTI Consumer Power Tools*, 2022 WL 16739812, at *1 ............................................................ 10

*TTI Consumer Power Tools, Inc. v. Lowe's Home Centers LLC*,
 No. 22-673, 2022 WL 16739812 (D. Del. Nov. 7, 2022) ........................................................ 9

*Versata Software, Inc. v. Callidus Software, Inc.*,
 771 F.3d 1368 (Fed. Cir. 2014) ................................................................................................ 9

*Virtual Agility, Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) .................................................................................. 9

*Wildcat Licensing Wi LLC v. Bayerische Motoren Werke AG*,
   No. CV 19-834-MN, 2020 WL 6940038 (D. Del. Nov. 25, 2020) .......................... 13

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
   No. 1:17-cv-00770-JDW (D. Del. Aug. 7, 2024) ...................................................... 8

## I.      INTRODUCTION

Every one of iRhythm's seventy-eight asserted claims is under reexamination and the United States Patent and Trademark Office ("USPTO") has found there to be a substantial new question of patentability of all seventy-eight asserted claims.  To save resources and minimize duplicative litigation, the Court should exercise its discretion and stay iRhythm's counterclaims of infringement.  This Court typically considers three factors when determining whether to grant a stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage.  *See PACT XPP Schweiz AG v. Intel Corp.*, No. 1:19-cv-01006-JDW, 2020 WL 13119705 at *1 (D. Del. Nov. 5, 2020).  Each factor weighs in favor of a stay.

The first factor strongly favors a stay because reexamination applies to all iRhythm's claims.  Here, the USPTO ordered reexamination on each of iRhythm's five asserted patents, which includes every one of iRhythm's seventy-eight asserted patent claims.  A stay would simplify the issues for trial and save resources.  Specifically, a stay would prevent the parties from litigating claims—through claim construction, expert reports, and dispositive motions—that are highly likely to be modified or cancelled.  *See Ex Parte* Reexamination Filing Data - September 30, 2024 (Ex. 10) (showing that around 80% of the time an EPR will result in a cancelled or amended patent claim).  Thus, the first factor, which is the most important factor, decidedly favors a stay.

The second factor also favors a stay because this case is in the early stages.  To promote judicial efficiency and prevent parties from wasting resources, courts routinely stay cases in the early stages.  The most burdensome parts of the case, including the close of discovery, expert

reports, dispositive motions, pretrial preparations, and trial, are many months away.[1]  Thus, the second factor, like the first factor, favors granting a stay of iRhythm's infringement counterclaims.

The third factor favors a stay because a stay would not cause undue prejudice to iRhythm. Bardy was diligent in both requesting reexamination and moving to stay.  And, regarding the status of the review proceedings, the USPTO has already ordered reexamination on all claims.  Finally, the relationship of the parties is less relevant to this inquiry in view of the strength of the other factors.  For these reasons, iRhythm would not suffer undue prejudice, and thus the third factor, favors granting a stay of iRhythm's counterclaims.

Should the Court decline to stay iRhythm's counterclaims, Bardy alternatively respectfully requests leave to file its First Amended Answer and Counterclaims ("First Amended Answer"), attached as Exhibit 11.  More specifically, Bardy seeks leave to amend to add affirmative defenses and counterclaims alleging inequitable conduct.  Preliminary discovery uncovered evidence of withholding but-for material information from the USPTO during prosecution of the applications that issued as iRhythm's U.S. Patent Nos. 12,274,554 (the "'554 patent") and 12,303,277 (the "'277 patent"), asserted against Bardy in iRhythm's counterclaims numbers four and five.  The newly pleaded facts of the First Amended Answer bear directly on inequitable conduct and go to the foundation of the '554 and '277 patents' enforceability.

Good cause exists to allow Bardy's proposed amendment because it has diligently sought discovery supporting its inequitable conduct defense.  Specifically, the key individuals, Mr. Theodore Lopez and Dr. David Schmidt, were both substantively involved in the prosecution of

---

[1]    Although this case is well into the discovery phase, it remains in the early stages overall.  This is unlike iRhythm's motion for leave to file its fourth amended answer to assert two additional patents (D.I. 85).  By comparison, Bardy's requests in this Motion do not necessitate, for example, re-doing invalidity contentions, infringement contentions, or revisiting claim construction.

the relevant iRhythm applications, yet failed to disclose the Expert Declaration of Jason Heikenfeld and the English translation of Japanese Patent Application Publication No. JP 2004-121360 ("JP '360") to the USPTO during the prosecution of both the '554 and '277 patents. Both materials were directly relevant to the patentability of the then-pending claims and would have materially influenced the examiner's analysis.

By withholding these two pieces of material information, Mr. Lopez and Dr. Schmidt deprived the USPTO of information that would have narrowed or prevented the issuance of the claims now asserted. Thus, the newly pleaded facts support that the single most likely, and strongest, inference of a specific intent to deceive, including that, based on Dr. Schmidt's own testimony, Mr. Lopez and Dr. Schmidt knew of these materials, appreciated their significance, and chose not to submit them to the USPTO. Accordingly, should Bardy's request to stay iRhythm's infringement counterclaims not be granted, leave to amend should be granted so that the Court can address these issues on the merits without prejudice to any party.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On December 10, 2024, Bardy filed a Complaint against iRhythm, which asserted infringement of U.S. Patent Nos. 12,161,473 (the "'473 Patent"). D.I. 1. Bardy then filed a First Amended Complaint ("FAC") on December 26, 2024, to assert an additional patent, U.S. Patent No. 12,171,562 (the "'562 Patent"). D.I. 9. In response, iRhythm filed its Counterclaims and Answer to the FAC ("Answer") on March 3, 2025, which asserted infringement of U.S. Patent No. 12,133,734 (the "'734 patent"). D.I. 12. On March 24, 2025, iRhythm filed its Amended Counterclaims and Answer ("Amend. Answer") to assert infringement of two additional patents, U.S. Patent Nos. 12,245,859 (the "'859 patent") and 12,245,860 ("'860 patent"). iRhythm filed a Second Amended Answer ("Second Amend. Answer") on April 25, 2025.

3

The deadline to amend the pleadings absent good cause was June 2, 2025.  The parties agreed to amend their respective pleadings to assert additional patents.  D.I. 48.  Bardy filed its Second Amended Complaint on June 6, 2025 ("SAC"), asserting the '473 Patent, '562 Patent, and U.S. Patent Nos. 12,285,261 (the "'261 Patent") and 12,310,735 (the "'735 Patent") (collectively, the "Bardy Asserted Patents").  D.I. 52.  iRhythm filed its Answer to the SAC on June 25, 2025, which asserted the '734 patent, '859 patent, '860 patent, '554 patent and further added U.S. Patent No. 12,303,277 (the "'277 patent"), which was newly issued.  D.I. 56.

The parties filed their Joint Claim Construction Brief on November 26, 2025, and the Claim Construction Hearing is scheduled for January 15, 2026.  Opening expert reports are due May 15, 2026, with the close of discovery on July 17, 2026.  D.I. 29 at 3, 8.

## III.  SUMMARY OF THE ARGUMENT

1.     The Court should exercise its discretion to stay iRhythm's counterclaims during the ongoing reexamination of all asserted claims.  *See, e.g.*, *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008).  A stay will prevent the parties and the Court from expending resources on claims that may be ultimately amended or cancelled.  Additionally, the Court will benefit from the Patent Office's guidance and/or iRhythm's positions on relevant issues, such as claim construction.

2.     Alternatively, should the Court decide not to stay iRhythm's counterclaims, the Court should grant Bardy leave to file the First Amended Answer.  "The court should freely give leave when justice so requires."  *Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, Civ. A. No. 20-cv-464-RGA, 2021 WL 2291978, at *1 (D. Del. June 4, 2021).  First, Bardy has shown that good cause exists under Federal Rule of Civil Procedure 16 because Bardy has obtained discovery and has uncovered additional facts to support its unenforceability defense and counterclaim for the

'554 patent and the '277 patent due to inequitable conduct in this case. Bardy's First Amended Answer also satisfies Rule 15 because the proposed Answer will not prejudice iRhythm. The facts supporting Bardy's unenforceability defense and counterclaims are primarily within iRhythm's control. Moreover, the patents impacted by the alleged inequitable conduct were first asserted in this case on May 2, 2025 and June 25, 2025—just prior to and after the deadline to amend the pleadings. Regardless, the close of discovery is seven months away and there is no scheduled trial date, and iRhythm, therefore, has ample opportunity to conduct any necessary discovery related to Bardy's unenforceability defense.

## IV. STATEMENT OF FACTS

iRhythm's initial infringement contentions assert seventy-eight claims across five patents. On September 8, 2025, Bardy filed reexamination requests on the '734 patent, '554 patent, and the '277 patent. One month later, on October 8, 2025, Bardy filed reexamination requests on the '859 patent and the '860 patent. On October 17, 2025, the USPTO found a substantial new question of patentability and ordered reexamination on all claims of the '734, '554, and '277 patents. *See* Order Granting Request for *Ex Parte* Reexamination of the '734 Patent (Ex. 1); Order Granting Request for *Ex Parte* Reexamination of the '554 Patent (Ex. 2); Order Granting Request for *Ex Parte* Reexamination of the '277 Patent (Ex. 3). Notably, for the '554 patent and '277 patent, the USPTO found that the full English Translation of JP '360 served as one of the bases for the USPTO's substantial new question of patentability.

On November 17, 2025, the USPTO found a substantial new question of patentability and ordered reexamination on all claims of the '859 and '860 patents. *See* Order Granting Request for *Ex Parte* Reexamination of the '859 Patent (Ex. 4); Order Granting Request for *Ex Parte* Reexamination of the '860 Patent (Ex. 5). Four days after the USPTO granted reexamination on the '859 and '860 patents, Bardy reached out to iRhythm regarding its forthcoming motion to stay

or, in the alternative, motion for leave to file its First Amended Answer. *See* Correspondence Regarding Motion to Stay (Ex. 6). On a meet and confer on November 25, 2025, iRhythm represented that it would oppose Bardy's motion.

## V.    LEGAL STANDARD

### A.    Motion to Stay

The Court has discretionary authority to grant a motion to stay "since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket." *Cost Bros. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This Court typically considers three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g.*, *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 348 (D. Del. 2016).

The court has recognized that a stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *Prolitec Inc. v. Scentair Techs., LLC*, No. CV 20-984-WCB, 2023 WL 5037173, at *7 (D. Del. Aug. 8, 2023) (quoting *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015)) (collecting cases). Thus, the benefits conferred in a granting a stay have led courts to apply a "liberal policy" in favor of staying cases pending post-grant proceedings. *Id.* (citing *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366, 2019 WL 4740156, at *4 (D. Del. Sept. 27, 2019)).

### B.    Motion for Leave to Amend

Leave to amend is liberally granted. Under Rule 15, a "court should freely give leave when justice so requires." *Targus Int'l*, 2021 WL 2291978, at *1. After the deadline to amend the

pleadings has passed, both Federal Rules of Civil Procedure 15 and 16 apply. *Id.* Courts first consider the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4), and if shown, next consider Federal Rule of Civil Procedure 15's "more liberal" standard. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

Courts routinely modify scheduling orders under Federal Rule of Civil Procedure 16(b)(4) to allow parties to amend their pleadings, even after the amendment deadline, upon a showing that the controlling scheduling order could not "reasonably be met despite the diligence of the party seeking the extension." *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009); *see, e.g.*, *Roquette Freres v. SPI Pharma, Inc.*, No. 06-cv-540, 2009 WL 1444835, at *3-6 (D. Del. 2009) (finding good cause for leave to amend under Rule 16(b)(4) in view of recently discovered deposition testimony where scheduling order had already been modified several times to serve the interests of the parties); *Heritage Handoff Holdings, LLC v. Fontanella*, No. CV 16-691-RGA, 2018 WL 3580288, at *1-2 (D. Del. July 25, 2018) (finding that the moving party was sufficiently diligent under Rule 16(b)(4), despite the moving party's possession of relevant facts prior to the expiration of the deadline to amend).

"Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). The Third Circuit "generously" construes Rule 15, instructing that unless evidence of undue and unexplained delay, bad faith, dilatory motive, or futility of the amendment exists, "an amendment should be allowed." *Id.* (quoting *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)). Indeed, the Third Circuit has recognized that absent these reasons, denying a motion for leave to amend would be an abuse of the Court's discretion. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Good cause exists here, and iRhythm will not be prejudiced.

## VI.    ARGUMENT

### A.    The Court Should Stay iRhythm's Infringement Counterclaims

This case is a prime example where the Court should exercise its inherent authority to stay iRhythm's counterclaims pending reexamination.  *See, e.g.*, *Procter*, 549 F.3d at 849 (The court has "consistently recognized the inherent power of the district courts to grant a stay pending reexamination.").  Granting a stay would prevent the parties and the Court from wasting resources by litigating claims that are likely to be cancelled, or at least rejected and amended.  Further, each factor that the Court considers when deciding a motion to stay weighs in favor of granting a stay.

*First*, a stay is likely to simplify the issues because reexamination applies to all iRhythm asserted patent claims.  *Second*, the case is in its early stages—close of discovery is months away and a trial date has not been set.  *Third*, a stay will not cause undue prejudice or allow Bardy to gain a clear advantage.  Bardy was diligent in both requesting reexamination and seeking a stay after the USPTO found a substantial new question of patentability.  Thus, the Court should exercise its "liberal policy" in favor of a granting a stay.  *British Telecomms.*, 2019 WL 4740156, at *4.

#### 1.    A stay will simplify the issues for trial

The simplification of the issues, which is the most important factor, weighs strongly in favor of a stay.  *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2020 WL 5517283, at *9 (D. Del. Sept. 11, 2020) ("The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial.").  "When a reexamination applies to all claims asserted in litigation, the PTO's decision will necessarily streamline litigation." *Wirtgen Am., Inc. v. Caterpillar, Inc.*, No. 1:17-cv-00770-JDW, Dkt. 442 at 2 (D. Del. Aug. 7, 2024) (Ex. 7).  Here, the USPTO has found a substantial new question of patentability and granted reexamination on every one of iRhythm's seventy-eight asserted claims.  Thus, as this Court articulated, the USPTO's determination will necessarily streamline litigation.

Further, in past cases where every asserted claim was subject to reexamination, courts weighed this factor in favor of a stay. For example, in *British Telecommunications*, the court issued a stay after the USPTO granted reexamination on the asserted claim. 2020 WL 5517283, at *2. Because the only asserted claim was under reexamination, it was a "prime example of a case in which a reexamination decision has the greatest likelihood of simplifying issues at trial." *Id.* at *9. The court explained that every outcome would simplify the issues. *Id.* With a high likelihood that the reexamination would simplify the issues, the court granted a stay. *Id.*

In another example, the simplification of issues weighed "strongly in favor" of staying the defendant's counterclaims. *Prolitec Inc.*, 2023 WL 5037173, at *7. In *Prolitec Inc.*, the simplification factor was at its "apex" because the USPTO granted reexamination on *all* claims. *Id.* at *5. The court relied heavily on Federal Circuit case law that highlighted "the significance of the simplification factor when post-grant proceedings are instituted on all the claims at issue in the district court litigation." *Id.* (citing *Virtual Agility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014)); *see also Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1372 (Fed. Cir. 2014) ("Certainly [the] simplification factor weighs more strongly in favor of a stay when all of the litigated claims" are under review.).

The same is true here. The reexaminations may entirely dispose of iRhythm's counterclaims for patent infringement, which would be the "ultimate simplification." *Virtual Agility*, 759 F.3d at 1314. But even if all claims are not cancelled, a stay would ***still*** simplify the issues and save the parties and the Court resources. *See TTI Consumer Power Tools, Inc. v. Lowe's Home Centers LLC*, No. 22-673, 2022 WL 16739812, at *1 (D. Del. Nov. 7, 2022) (An "*ex parte* reexamination is highly likely to result in at least some cancelled or modified claims."). *See* Ex. 10 (showing that claims are amended 62.9% of the time and entirely canceled 16.9% of the time

when a third party requests *ex parte* reexamination). A stay would prevent the parties from litigating claims that ultimately may be cancelled.

A stay would also prevent the parties and the Court from wasting resources on claims that have a greater than 60% chance of being amended, necessitating re-doing claim construction and expert reports upon the issuance of the new claim language. *Id.* This is especially important at this stage of the case as the Court has yet to construe any disputed terms and the claim constructing hearing is not until January 15, 2026. D.I. 29 at 7. Without a stay, the Court may "construe[] claim terms that are subsequently eliminated by amendment in the reexamination." *TTI Consumer Power Tools*, 2022 WL 16739812, at *1. Furthermore, with every one of iRhythm's seventy-eight asserted claims under reexamination "the law of probabilities makes it *almost certain* that some of the claims will be rejected or modified, and others of them, even if neither rejected nor modified, will garner additional prosecution history that may be relevant to claim construction." *Round Rock Rsch. LLC v. Dole Food Co. Inc.*, No. CIV.A. 11-1239-RGA, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012) (emphasis added).

These efficiencies would not only apply to claim construction but to the entire case. The parties' opening expert reports and dispositive motions are months away. D.I. 29 at 8–9 (scheduling the opening expert reports for May 15, 2026, and dispositive motions for September 11, 2026). If all or some of the iRhythm's claims are canceled or amended, the parties would waste resources by providing expert opinions or preparing dispositive motions on claims that are no longer in the case. Dkt. No. 187 at 4–5. And, conducting a trial on subsequently amended claims "is an invitation to a waste of resources." *British Telecomms.*, 2020 WL 5517283, at *9.

Finally, this factor has favored a stay even when a subset of the asserted claims were subject to post-grant proceedings. *PACT XPP Schweiz*, 2020 WL 13119705, at *1. In *PACT XPP Schweiz*,

the USPTO "instituted IPR proceedings on every asserted claim for 10 of the 12 patents." *Id.* A finding of invalidity by the USPTO on some or all claims "will eliminate them from this case, thereby making it simpler." *Id.* But "even if the PTAB does not eliminate some or any of the claims, its analysis might clarify or narrow issues to be litigated in this case." *Id.* (citing *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2019 WL 3943058, at *9 (D. Del. Aug. 21, 2019); *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019); *British Telecomms.*, 2019 WL 4740156, at *7 ("[I]t is highly likely that the IPR will result in simplification of the district court proceedings.")). This reasoning applies even more to the instant litigation because all iRhythm asserted claims are under reexamination.

In sum, the facts and case law decidedly support a stay of iRhythm's counterclaims. For every single claim that iRhythm asserts, the USPTO found a substantial new question of patentability. Accordingly, the most important factor—the simplification of the case—weighs strongly in favor of a stay as the USPTO's decision "will necessarily streamline litigation." *Wirtgen*, No. 1:17-cv-00770-JDW, Dkt. 442 at 2; *see also 454 Life Sciences Corp. v. Ion Torrent Sys., Inc.*, No. 15-595, 2016 WL 6594083, at *3 (D. Del. Nov. 7, 2016) (finding a "very strong likelihood that the IPR proceedings will simplify the issues for trial" because the USPTO granted review with respect to every claim); *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015) (holding that a stay "is particularly likely to simplify the case when a party has obtained PTO review of each of the asserted claims in the patents-in-suit").

### 2.    The case is in the early stages and weighs in favor of a stay

The status of the instant litigation weighs in favor of a stay because the case is in the early stages. Courts routinely stay cases in the early stages to promote judicial efficiency and prevent parties from expending resources on claims that may be rendered invalid. *SenoRx, Inc. v. Hologic, Inc.*, No. CIV.A. 12-173-LPS, 2013 WL 144255, at *5-6 (D. Del. Jan. 11, 2013) ("Motions to stay

pending reexamination are most often granted when the case is in the early stages of litigation."). Indeed, "stays are favored when the most burdensome stages of the case—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, Civ. A. No. 18-1679, Dkt. 123 at *2 (D. Del. Jun. 2, 2020). Here, the most burdensome parts of the case are months away and thus this factor favors a stay.

*First*, the close of discovery is over seven months away. D.I. 29 at 3 (scheduling the close of discovery for July 17, 2026). *Second*, opening expert reports are not due for another five months—and iRhythm has yet to even disclose a single expert. D.I. 29 at 8 (scheduling the opening expert reports for May 15, 2026). *Third*, case dispositive motions are not due until September 11, 2026. D.I. 29 at 8–9. *Fourth*, preparation for trial is far removed as the Court has not yet set a trial date. These facts weigh heavily in favor of a stay and fall squarely within the Court's past rulings in which the early stages of the litigation weighed in favor of a stay.

For example, the Court granted a stay because the "Parties still need[ed] to prepare expert reports, file and respond to pretrial motions, prepare for trial, and try the case." *PACT XPP*, 2020 WL 13119705, at *2. "[D]enying a stay would impose significant expenses on the parties that they might avoid if the IPR proceedings simplify the case." *Id.* (citing *IOENGINE*, 2019 WL 3943058, at *5 (staying the case because "the most burdensome stages of the cases—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future"); *Ethicon*, 2019 WL 1276029, at *2 (although "fact discovery [was] complete, and expert discovery [was] nearly concluded," the court stayed the case)). The same reasoning applies here.

In a factually similar case, this Court found that the status of litigation weighed in favor of a stay because fact discovery was not complete, expert discovery had not yet started, and the court had not yet construed any disputed terms. *Stryker Corp. et al, v. Microvention, Inc.*, No. CV 21-836-CFC, D.I. 73 at 3 (D. Del. Dec. 13, 2021) (Ex. 8). The same facts apply here—the close of fact and expert discovery is months away and the Court has not construed any disputed terms. Also, iRhythm has not yet taken a single deposition. *See Wildcat Licensing Wi LLC v. Bayerische Motoren Werke AG*, No. CV 19-834-MN, 2020 WL 6940038, at *1 (D. Del. Nov. 25, 2020) (holding that the status of the litigation favored a stay because the Markman hearing was scheduled two months away, "[f]ew depositions have been taken, and expert discovery has not yet begun"); *see also Novartis AG v. HEC Pharm Co.*, 183 F. Supp. 3d 560, 562 (D. Del. 2016) (holding that the status of the litigation weighed in favor of a stay because the Markman hearing was scheduled "fact discovery has not closed and expert reports are not due for another six months").

Applying the facts of this case to the District's previous holdings, the conclusion is clear. The status of the litigation weighs in favor of staying iRhythm's counterclaims—the case has no trial date and the close of discovery is over seven months away. As such, the most burdensome parts of the case for the Court and the parties lie in the future. *See, e.g.*, *British Telecomms.*, 2020 WL 5517283, at *6 (recognizing that "the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future"). Accordingly, a stay would save significant resources.

### 3. A stay will not unduly prejudice iRhythm

The last factor weighs in favor of a stay because a stay will not unduly prejudice iRhythm, nor will it provide a clear tactical advantage for Bardy. To evaluate this factor, courts consider four sub-factors: (1) the timing of the request for USPTO review; (2) the timing of the request for

a stay; (3) the status of the USPTO review proceedings; and (4) the relationship of the parties. *IOENGINE*, 2019 WL 3943058, at *5 (collecting cases). All four sub-factors favor granting a stay.

First, Bardy was diligent in requesting USPTO review on all five of iRhythm's asserted patents. Bardy requested reexamination on average within ***five months*** of iRhythm asserting each patent (*see* chart below). *See SenoRx*, 2013 WL 144255, at *6-7 (holding that a timing of six months between the asserted patent and the reexamination request weighed in favor of a stay).

| Patent | Asserted | Reexamination Requested |
|---|---|---|
| '734 Patent | March 3, 2025 | September 8, 2025 |
| '554 Patent | May 2, 2025 | September 8, 2025 |
| '277 Patent | June 25, 2025 | September 8, 2025 |
| '859 Patent | March 24, 2025 | October 8, 2025 |
| '860 Patent | March 24, 2025 | October 8, 2025 |

Second, Bardy was diligent in requesting a stay. The USPTO ordered reexamination for the '554, '277, and '734 patents on October 17, 2025. *See* Exs. 1–3. The USPTO ordered reexamination on the remaining two asserted patents, the '859 and '860 patents, on November 17, 2025. *See* Exs. 4, 5. That same week, on November 21, 2025, Bardy reached out to iRhythm regarding its forthcoming motion to stay. *See* Ex. 6. This Motion is being presented within one month after reexamination was granted on the '859 and '860 patents, and just over two weeks after Bardy was able to meet and confer with iRhythm.

Third, the USPTO ordered reexamination on every iRhythm asserted claim. Courts routinely grant a stay after the USPTO grants reexamination. *See, e.g.*, *British Telecomms.*, 2020 WL 5517283, at *2; *Goldfinch Design Studio LLC v. Collector's Universe, Inc.*, No. 20-2542, 2020 WL 5017351, at *1 (D.N.J. Aug. 25, 2020); *BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-cv-133, 2013 WL 2462105, at *1 n.1 (D. Del. June 6, 2013); *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 504-05 (D. Del. 2012). Additionally, the status of the reexaminations has a

high likelihood of affecting this litigation because the reexamination will proceed at the same time the Court is construing disputed claim terms within iRhythm's asserted patents.

Fourth, when "there are a number of active firms [(*e.g.*, companies)] in the relevant market," the fact that the parties are competitors carries less weight. *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662, 2013 WL 424754, at *2–3 (D. Del. Jan. 31, 2013); *see also SenoRx*, 2013 WL 144255, at *8 ("[T]he parties are direct competitors, but that does not go far enough."). While Bardy and iRhythm are competitors, there are several parties in the relevant market of cardiac monitoring devices. An Ambulatory Cardiac Monitoring Device Market Report identified ten key companies marketing commercial devices. *See* D.I. 1–1 at 26-27. Moreover, iRhythm has not requested preliminary relief, which further demonstrates that any delay would not cause prejudice. *See Ever Win Int'l*, 902 F. Supp. at 511 ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."). For these reasons, the third factor favors a stay.

In sum, the Court's three-factor test decidedly supports granting a stay of iRhythm's counterclaims. A stay is likely to simplify the issues because reexamination applies to all iRhythm asserted claims. With the close of discovery months away and no trial date, the case is in its early stages. And a stay will not cause undue prejudice or allow Bardy to gain a clear advantage.

**B.    Alternatively, Should the Court Deny Bardy's Request to Stay iRhythm's Infringement Counterclaims, the Court Should Grant Bardy Leave to File Its First Amended Answer**

If the Court declines to stay iRhythm's counterclaims, Bardy respectfully requests that the Court grant leave for Bardy to file its First Amended Answer asserting its defenses and counterclaims of unenforceability based on inequitable conduct. The Court has discretion to grant or deny a motion to amend. *See, e.g., PACT XPP Schweiz AG v. Intel Corp.*, No. 1:19-cv-01006-JDW, 2020 WL 14027924, at *1 (D. Del. Sept. 9, 2020). Rule 15 "embodies the liberal pleading

15

philosophy of the federal rules" and thus "limits the district court's discretion to deny leave to amend." *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). "The liberal right to amend extends to an answer to the complaint." *Long*, 393 F.3d at 400. Bardy seeks leave to amend its answer to add defenses of unenforceability for inequitable conduct, as well as inequitable conduct counterclaims. Bardy's First Amended Answer satisfies the heightened pleading standard of Federal Rule of Civil Procedure 9(b) as it pleads its inequitable conduct defenses and counterclaims with sufficient specificity. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).

The facts alleged in Bardy's First Amended Answer do not describe garden-variety omissions as the basis for its inequitable conduct defense; rather, the First Amended Answer details iRhythm's deliberate scheme to rush its patents into issuance while concealing the very prior art known to iRhythm's attorneys that would have prevented it. During prosecution of the applications leading to the '554 and '277 patents, Mr. Lopez and Dr. Schmidt knowingly withheld the full English translation of Matsumura and the Expert Declaration of Jason Heikenfeld ("Heikenfeld Declaration"), information that iRhythm had already relied on extensively in multiple IPRs and that Mr. Lopez and Dr. Schmidt had reviewed. Instead of disclosing this material information, and to obtain the '554 and '277 patents in an expedited manner to assert against Bardy, Mr. Lopez and Dr. Schmidt both individually and collectively violated their respective duties of candor to the Patent Office by withholding iRhythm's own litigation and IPR materials from the USPTO. These same materials which the USPTO has determined raise a substantial new question of patentability of claim 1 of the '554 patent and claim 1 of the '277 patent. "The single most reasonable inference is that Mr. Lopez and Dr. Schmidt knew that the iRhythm IPRs, the Heikenfeld Declaration, and the full English translation of Matsumura were material to the patentability of the then-pending

16

claims of the [] application[s] [leading to the '554 and '277 patents] and intended to deceive the USPTO by withholding such materials." Ex. 11 at 37, 48, 70, 81.

### 1.    Good Cause Exists because Bardy Acted Diligently

Bardy's First Amended Answer alleges unenforceability of the '554 and '277 patents due to inequitable conduct.  Bardy could not have amended its answer prior to the June 2, 2025 deadline because iRhythm's counterclaims of infringement of the '554 and '277 patents were not filed until May 2, 2025 (D.I. 43) and June 25, 2025 (D.I. 66).  It was several months later that:  (i) Bardy uncovered facts during Dr. Schmidt's deposition on September 12, 2025; (ii) iRhythm produced a privilege log showing Mr. Lopez's substantive involvement in prosecution of the '554 and '277 patents; and (iii) the USPTO granted *ex parte* reexamination of the '554 and '277 patents based on Matsumura—a prior art reference intimately familiar to Dr. Schmidt and Mr. Lopez (but never disclosed to the USPTO during prosecution of the '554 and '277 patents).  None of this was known to Bardy, let alone amenable to a heightened fact pleading standard, when Bardy filed its original answer.

Courts routinely allow parties to amend their pleading after the amendment deadline when information is newly uncovered during discovery.  *See, e.g.*, *Intell. Ventures I LLC v. Toshiba Corp.*, No. 13-cv-453, 2016 WL 4690384, at *1 (D. Del. Sept. 7, 2016) (granting motion for leave to amend three months after close of fact discovery because relevant information was discovered in a recent deposition); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489-490 (D. Del 2003) (allowing defendant to amend pleading to add affirmative defenses and counterclaims of inequitable conduct six months after deadline and after close of fact discovery, when delay was sufficiently explained and justified).  For example, in *Cornell University v. Illumina, Inc.*, the Court granted leave to amend to add an inequitable conduct defense even though fact discovery closed over seven weeks earlier.  No. 10-cv-433, 2016 WL 3046258, at *5 (D. Del. May 27, 2016).  In

reaching its decision, the Court noted that the defendant learned the facts underlying its inequitable conduct defense only through depositions taken after the deadline to amend (though several months before the close of discovery), and explained that the defendant "worked diligently to obtain and confirm facts to support its inequitable conduct affirmative defense" and "filed its amendment soon after it was able to satisfy the pleading requirements." *Id.*  Like the defendant in *Cornell University*, Bardy learned the facts underlying its inequitable conduct defense and counterclaims after the June 2, 2025 deadline to amend the pleadings and has since worked diligently to develop its inequitable conduct defense and counterclaims.

### 2.    Bardy's First Amended Answer Would Not Prejudice iRhythm

Permitting Bardy to amend its pleading and add the defense of unenforceability due to inequitable conduct will not prejudice iRhythm.  "To demonstrate prejudice, the nonmoving party must show that the amendment would: (1) require it to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent a party from bringing a timely action in another jurisdiction." *EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956-GMS, 2014 WL 3809365, at *4 n.2 (D. Del. Jul. 31, 2014) (citing *Long*, 393 F.3d at 400).  iRhythm is unable to establish any of those circumstances.

First, Bardy's inequitable conduct defense turns on information exclusively within the possession and control of iRhythm or iRhythm's counsel, including at least Mr. Lopez and Dr. Schmidt.  Courts have explained that there is no prejudice in allowing a party to amend under these circumstances because the non-moving party would not have to conduct copious additional discovery preparing its response.  *See Roquette Freres*, 2009 WL 1444835, at *5 (finding insufficient prejudice to deny leave to amend in part because relevant information "would primarily be within the control of [non-movant]"); *Butamax Adv. Biofuels LLC v. Gevo, Inc.*, No. 11-cv-54, 2013 WL 571801, at *3 (D. Del. Feb. 13, 2013) (finding insufficient prejudice to deny

late amendment because "[i]nformation regarding its own inequitable conduct lies largely with plaintiff").

Second, fact discovery does not close for at least seven more months. D.I. 29. If iRhythm believes it needs additional information from Bardy or any third parties regarding Bardy's inequitable conduct defense, iRhythm has ample time to pursue such discovery during the discovery timeframe that this Court originally entered in this case. D.I. 29. Additionally, iRhythm has had notice of Bardy's plans to pursue the defense of unenforceability due to inequitable conduct since at least October 21, 2025, when Bardy provided a redlined copy of its proposed amendments.[2] As such, Bardy's First Amended Answer will not significantly delay the resolution of the dispute and does not prejudice iRhythm. *See W. R. Grace & Co.-Conn*, 2023 WL 6200280, at *3 (finding no prejudice when non-movant "was on notice of the inequitable conduct claim").

Notably, the facts here are closely analogous to those in *ICU Medical, Inc. v. RyMed Technologies, Inc.*, 674 F. Supp. 2d 574 (D. Del. 2009). In *ICU Medical*, the parties were competitors in the medical device field, and defendants sought to amend their answer to plead a new legal theory of inequitable conduct after the deadline for filing amended pleadings had passed. *Id.* at 578. The Court reasoned that the defendants "could not have gathered sufficient information from the[] sources to plead an inequitable conduct claim with particularity" before the deadline to amend the pleadings passed. *Id.* Thus, the Court found that the defendants acted diligently by issuing subpoenas to, and subsequently deposing, the parties relevant to their inequitable conduct claim, and filing the motion to amend shortly thereafter. *Id.* The *ICU Medical* Court also explained that the plaintiff would not be unduly prejudiced by allowing defendants' proposed amendments

---

[2]    On November 20, 2025, Bardy provided an updated redline of its proposed amended answer, which reflects the current First Amended Answer.

because the "Plaintiff was previously aware of the issues surrounding the alleg[ations]" relevant to the inequitable conduct claim. *Id.* at 579. Similar facts are present here. Bardy and iRhythm are competitors in the cardiac monitor field. D.I. 1–1 at 26-27. Bardy seeks to amend its answer to add a "new set of facts obtained and confirmed during discovery which took place after the Scheduling Order's deadline for amended pleadings." *ICU Med.*, 674 F. Supp. 2d at 578. Further, iRhythm has known of Bardy's intent to pursue inequitable conduct claims since October 21, 2025. Ex. 9, Lund Email to Locke. Accordingly, Bardy has acted diligently in pursuing its amendment.

Third, Bardy's First Amended Answer does not impose any jurisdictional or timing bar that would prevent iRhythm from pursuing claims in another forum. Because the third prejudice consideration concerns only procedural obstacles, not the substantive consequences of a defense, it is inapplicable.

Finally, iRhythm cannot claim that it will suffer prejudice based on the timing of Bardy's Amended Answer. iRhythm itself recently moved to amend its counterclaims to assert two additional patents (D.I. 85, 86), which is a far more disruptive modification to the scope of the case than Bardy's proposed amendment to add inequitable conduct defenses and counterclaims. Bardy's First Amended Answer simply adds a defense to two already-asserted patents (the '554 and '277 patents) and does not otherwise alter the issues the parties were already litigating. For example, any incremental discovery regarding the defense overlaps with issues already central to the case (prosecution history and prior art), minimizing any prejudice to iRhythm. Having sought permission to inject new patents into this litigation, iRhythm cannot credibly argue that Bardy's comparatively modest amendment imposes any prejudice.

### 3.    Bardy's Proposed Amendment Is Not Futile

Bardy's First Amended Answer would not be futile. It states a clear defense of inequitable conduct and sufficiently alleges inequitable conduct counterclaims because it "identif[ies] the

specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO," and therefore satisfies Fed. R. Civ. P. 9(b). *Exergen*, 575 F.3d at 1326.

### i.    The "Who" and "When"

Bardy's First Amended Answer specifically identifies Theodore Lopez and David Schmidt as the individuals who committed inequitable conduct. *See, e.g.*, Ex. 11 at 27 ("Theodore Lopez and David Schmidt committed inequitable conduct during prosecution of the '554 patent with a specific intent to deceive the USPTO."); *id.* at 39 ("Mr. Lopez and Dr. Schmidt committed inequitable conduct during prosecution of the '277 patent with a specific intent to deceive the USPTO."). Both Mr. Lopez and Dr. Schmidt owed a duty of candor and disclosure to the USPTO under 37 C.F.R. § 1.56 because each was associated with the filing and prosecution and substantively involved in the preparation and prosecution of the applications. *Id.* at 30 ("Mr. Lopez, as iRhythm's Director of Global Intellectual Property, owed a duty of disclosure because he was substantively involved in the preparation and prosecution of the '888 application, stemming from his role in the company, the applicant of the '888 application."), 41 (same for '584 application, which issued as the '277 patent).

As alleged, "The duty of disclosure applied to Dr. Schmidt because he was the prosecuting attorney for the '888 application." *Id.* at 29, 74 (same for '584 application, which issued as the '277 patent). Dr. Schmidt's own testimony confirms his involvement:

> Q.    And were you involved in the prosecution of the '554 patent?
> A.    Yes.

Ex. 11 at 29-30 (citing Schmidt Tr., 30:13-15). Dr. Schmidt's testimony also corroborates "Mr. Lopez's substantial involvement in the preparation and prosecution of each patent that iRhythm now asserts." *Id.* at 31. For example, "Dr. Schmidt testified that he regularly communicates with Mr. Lopez regarding iRhythm patent prosecution." *Id.* Notably, "Dr. Schmidt also testified that

Mr. Lopez approved the claims in the '554 patent (*i.e.*, the '888 application) for filing with the USPTO." *Id.* at 30 (citing Schmidt Tr., 30:19-21 ("Q. Who approved the claims to be filed of the '554 patent?  A. Ted Lopez."))  Further, the First Amended Answer alleges, "Mr. Lopez and Dr. Schmidt collaborated to obtain patents to assert against Bardy in this litigation[,]" and withheld certain material information from the USPTO during prosecution of the applications leading to the '554 and '277 patents.  Accordingly, Bardy's First Amended Answer identifies Mr. Lopez and Dr. Schmidt as individuals who owed a duty of candor to the USPTO but failed to abide by that duty during prosecution of the '888 and the '584 applications, thereby committing inequitable conduct.

### ii. The "What" and "Where" (But-For Materiality)

Bardy's First Amended Answer identifies with specificity *what* material information Mr. Lopez and Dr. Schmidt withheld from the USPTO and *where* that information is located in the underlying references.  As alleged, Mr. Lopez and Dr. Schmidt failed to disclose two specific material references during prosecution of the '888 application and the '584 application:  (1) the Heikenfeld Declaration, and (2) the full English translation of Matsumura.  Ex. 11 at 31–34.  Notably, the USPTO found that the full English translation of Matsumura, which is discussed in detail in the Heikenfeld Declaration, raised a substantial new question of patentability of claim 1 of the '554 patent and claim 1 of the '277 patent.  *See, e.g.*, Ex. 11 at 36, 47.

These materials are specifically identified in the First Amended Answer and attached as exhibits to the amended pleading.  Bardy's First Amended Answer also includes claim charts illustrating the "but-for" materiality of the Heikenfeld Declaration (Ex. 11 at 35 (citing Ex. E (Heikenfeld Declaration Chart))) and the full English translation of Matsumura.  Ex. 11 at 36 (citing Ex. F ('554 Matsumura Chart)), 47 (citing Ex. L ('277 Matsumura Chart)).

The First Amended Answer, including the claim charts, explains where the material disclosures appear within those references.  For example, the Heikenfeld Declaration (spanning

more than 500 pages) contains detailed analysis of Matsumura, including explicit descriptions of conductive gels, ECG electrodes, polymer sheet structures, and reasons a person of ordinary skill would have combined these teachings.  *See* Ex. 11 at 33, 45 (citing Ex. C ¶¶ 482, 560, 865). Similarly, the full English translation of Matsumura includes direct disclosure of the very structural and material features recited in claim 1 of the '554 patent.  For example, the First Amended Answer explains:

> The USPTO states that "[t]here is a substantial likelihood that a reasonable examiner would consider at least the above teachings, i.e., first and second sheets and acrylic adhesive as taught by Matsumura important in determining the patentability of the claims."  Ex. H at 15-16.  The USPTO's findings confirm the but-for materiality of the entire disclosure of Matsumura and its English translation, the very disclosure and the English translation that Mr. Lopez withheld from the USPTO, despite being aware of the reference, as evidenced by his prior familiarity with it from iRhythm's IPRs.

*See, e.g.*, Ex. 11 at 36-37 (citing Order Granting Request for *Ex Parte* Reexamination of the '554 Patent (Ex. H) at 13); *id.* at 47-50 (same for '277 patent).

Additionally, Bardy's claim charts attached to the First Amended Answer as Exhibits E, F, and L provide line-by-line identification of the withheld information and the portions of the references where that information is found, thus supplying the "what" and "where" that Rule 9(b) requires.  *See Exergen*, 575 F.3d at 1329 ("[The] claims, and which limitations of those claims, the withheld references are relevant to, and where in those references the material information is found [comprise] the 'what' and 'where' of the material omissions.").  Together, the First Amended Answer identifies the specific information withheld, the exact claim limitations to which the information pertains, and the precise locations within the withheld materials where that information appears, easily satisfying Rule 9(b).

### iii.    The "How" and "Why"

Bardy's First Amended Answer satisfies Rule 9(b)'s requirement to plead with particularity *why* the withheld information was material to patentability and *how* a reasonable examiner would have used it in evaluating the claims.  First, the First Amended Answer alleges that the Heikenfeld Declaration and the full translation of Matsumura directly contradict that USPTO's stated basis for allowing the '554 patent and '277 patent.  Exs. 10, 35, 68.  The Notice of Allowance "stated that the prior art allegedly was silent on 'the flexible layer being made of two layers (upper and lower layers), its composition (polymers), and where everything is located on the overall electronic device with respect to the other components.'"  Exs. 12 at 35, 68 (citing Notice of Allowance (March 5, 2025) (Ex. D) at 8).  As described in the First Amended Answer and its accompanying exhibits, the Heikenfeld Declaration and the full English translation of Matsumura describe the allegedly missing features in detail.

The First Amended Answer alleges that the USPTO itself currently supports the but-for materiality of this withheld information.  This allegation is based on the USPTO's recent grant of *ex parte* reexamination of the '554 patent and the '277 patent on October 17, 2025 based on the Matsumura reference.   Exs. 12 at 36 (citing Ex. 2, Order Granting Request for *Ex Parte* Reexamination of the '554 patent, 13, and Ex. 3, 14 (same for '277 patent)).  The USPTO expressly found "[t]here is a substantial likelihood that a reasonable examiner would consider at least the above teachings, i.e., first and second sheets and acrylic adhesive as taught by Matsumura important in determining the patentability of the claims."  Exs. 10, 36.  The First Amended Answer alleges that "[t]he USPTO's findings confirm the but-for materiality of the entire disclosure of Matsumura and its English translation."  Exs. 47-48.

Moreover, throughout prosecution of the '888 application and the '584 application, thousands of references were disclosed in IDSs, including IDSs signed by Dr. Schmidt, "but not

the iRhythm IPRs, Heikenfeld Declaration, or the English translation of Matsumura." Ex. 11 at 37, 48. The IDSs show that iRhythm knew how to disclose information to the Patent Office, but somehow omitted core materials directly relevant to patentability. As alleged, this is probative of deceptive intent, and the single most reasonable inference resulting from this conduct is that the decision was intentionally made, given the presentation of some, but not all, of this information. Some courts have recognized that such selective disclosure supports an inference of intent to mislead the examiner. In *Rovi Guides Inc. v. Comcast Cable Commc'ns LLC*, the court addressed a patent with twenty-two columns of cited references and explained that "[i]t's very difficult to escape the conclusion that the applicant was trying to bury—it didn't even cite [the reference used in the IPR]. What can be the sound purpose in citing 1,500–2,000 references other than to bury the examiner?" 19-1188, oral argument at 11:58-14:39 (Fed. Cir. Oct. 3, 2019) (Lourie, J.) available at https://www.cafc.uscourts.gov/home/oral-argument/listen-to-oral-arguments/.

That principle applies here: Mr. Lopez and Dr. Schmidt's conduct was not a wholesale failure to submit prior art, but a targeted omission of the most pertinent information amid affirmative disclosure of less relevant materials. Taken together, the First Amended Answer establishes "how" the misconduct occurred, including by selectively disclosing non-material references while withholding the most relevant ones, and "why" the Court may reasonably infer specific intent to deceive. Bardy's First Amended Answer therefore meets the Rule 9(b) particularity requirement for pleading inequitable conduct.

## VII.    CONCLUSION

This Court should grant Bardy's motion to stay iRhythm's counterclaims in view of the reexamination of all five asserted iRhythm patents. Alternatively, should the Court decline to stay iRhythm's counterclaims, Bardy should be granted leave to file its First Amended Answer.

25

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Jeffrey R. Gargano
Melissa M. Haulcomb
Jared R. Lund
Rebekah Hill
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
(312) 372-1121

By:  /s/ *Philip A. Rovner*
      Philip A. Rovner (#3215)
      Andrew M. Moshos (#6685)
      P. Andrew Smith (#7117)
      Hercules Plaza
      P.O. Box 951
      Wilmington, DE  19899
      (302) 984-6000
      provner@potteranderson.com
      amoshos@potteranderson.com
      asmith@potteranderson.com

Erik J. Halverson
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
(415) 882-8200

*Attorneys for Plaintiff*
*Bardy Diagnostics, Inc.*

Dated: December 19, 2025
12599910

26