# Exhibit 2



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

K&L Gates LLP - Chicago
Baxter
P.O. Box 1135
Chicago, IL 60690-1135

MAILED

OCT 1 7 2025

CENTRAL REEXAMINATION UNIT

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,504* .

PATENT UNDER REEXAMINATION *12274554* .

ART UNIT *3993* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | **Control No.** 90/015,504 | **Patent Under Reexamination** 12274554 | |
|---|---|---|---|
| | **Examiner** CATHERINE S WILLIAMS | **Art Unit** 3993 | **AIA (FITF) Status** No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>09/08/2025</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐    PTO-892,    b)☑  PTO/SB/08,    c)☐  Other: _____

1. ☑    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| | | |
|---|---|---|
| | | |

cc:Requester ( if third party requester )

Application/Control Number: 90/015,504                                              Page 2
Art Unit: 3993

## DECISION ON REQUEST FOR REEXAMINATION

A substantial new question (hereinafter "SNQ") of patentability affecting claims 1-12 of United States Patent Number 12,274,554 (hereinafter "the '554 patent") is raised by the request for *ex parte* reexamination.

### *Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

### *Service of Papers*

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c). See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

### *Submissions*

In order to insure full consideration of any amendments, affidavits or declarations or other documents as evidence of patentability, such documents must be submitted in response to the first office action on the merits (which does not result in a close of prosecution). Submissions after the second office action on the merits, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33 after appeal, which will be strictly enforced.

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '554 patent throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

### *Waiver of Right to File Patent Owner Statement*

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third party requester, see 37 C.F.R. 1.550(f). The Patent Owner may consider using the following statement in a document waiving the right to file a Patent Owner Statement:

---

**WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT**

Patent Owner waives the right under 37 C.F.R. § 1.530 to file a Patent Owner Statement.

---

Application/Control Number: 90/015,504                                         Page 4
Art Unit: 3993

### Substantial New Question

The SNQ is based on:

1.  US Pub. No. 2009/0076363 to Bly et al. (hereinafter "Bly '363");
2.  US Pat. No. 8,214,007 to Baker et al. (hereinafter "Baker '007"); and
3.  JP2004/121360 to Matsumura (hereinafter "Matsumura").

A discussion of the specifics now follows:

### Requester's Position

1.  Claims 1-12 are unpatentable over Bly '363 alone.

2.  Claims 1-12 are unpatentable over Bly '363 taken with Baker '007.

3.  Claim 1 is unpatentable over Matsumura alone.

### Prosecution History – 18/936,888

The '554 patent resulted from US Pat. Application 18/936,888 (hereinafter "the '888 application") and was filed on 11/04/2024 with claim 1. A preliminary amendment to the claims was then filed 12/11/2024 cancelling claim 1 and adding new independent claim 2 and claims 3-16 depending therefrom. A Non-Final Rejection was mailed 12/20/2024 rejecting claim 1 which had already been cancelled and did not address newly added claims 2-16. Applicant filed a response on 02/06/2025 indicating that a preliminary amendment had been filed 12/11/2024 cancelling claim 1 and adding claims 2-16. Subsequent to the response, a Notice of Allowance ("NOA") was mailed 03/05/2025 with an examiner's amendment including,

> 2. (Currently Amended) An electronic device for long-term adhesion to a user,
> the device comprising:
>
> a housing comprising a physiologic data collection circuit, the housing positioned
> over a flexible layer extending <u>from beneath</u> ~~beyond~~ the housing, the flexible layer
> comprising an electrode positioned on the bottom of the flexible layer at a position distal
> from the housing, wherein the flexible layer comprises [[an]] <u>a polymer</u> upper layer

overlying an electrical connection, the electrical connection extending linearly from the physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection;

a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer; and

a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user.

Additionally, the NOA included a reasons for allowance stating,

### *Reasons for Allowance*

*The following is an examiner's statement of reasons for allowance:*

The closest prior art of record does not disclose nor render obvious the presently claimed invention. The prior art of record is silent on the flexible layer being made of two layers (upper and lower layers), its composition (polymers), and where everything is located on the overall electronic device with respect to the other components. Each of the layers and components were well-known individually at the time of invention, however, the total combination of elements would not have been assembled as claimed (above) without the express use of the Applicant's original disclosure as a blueprint for doing so.

See the '888 Application, NOA mailed 03/05/2025, pages 2-4.

Therefore, it is understood that the '554 patent was allowed since the prior art did not teach, among all the limitations, "the flexible layer comprises a polymer upper layer overlying an electrical connection and adhered to a polymer lower layer underlying the electrical connection and a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer."

Application/Control Number: 90/015,504                                          Page 6
Art Unit: 3993

### *Analysis of the Prior Art Provided in the Request*

On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

> The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, both Bly '363, Baker '007 and Matsumura qualify as old art since each were previously cited, applied and/or relied upon in rejections of the claims in the original examination of the '888 application.

However, being "old art" does not necessarily preclude these references from establishing a SNQ. A SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation in in the request. See MPEP § 2242. These references are now being presented and viewed in a new light, or in a different way, as compared with their use in the earlier examinations as discussed in detail in this order. Accordingly, the use of these references in this reexamination is proper. Below is a detailed analysis for each of the references requester asserts raise an SNQ.

Bly '363 is considered "old art" to the reexamination of the '554 patent since USPN 8,116,841 to Bly (hereinafter "Bly '841"), the issued patent resulting from Bly '363, was provided in an IDS in the '888 application.

However, neither Bly '363 nor Bly '841 were relied upon in a rejection of the claims in the '888 application and/or any preceding applications to the '888 application. Now, requester is presenting Bly '363 in a new light as teaching a flexible layer including a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the physiologic data collection circuit to the electrode, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection where the adhesive layer is positioned under the polymer upper layer, connecting the polymer upper layer to the polymer lower layer. See Request filed 09/08/2025, pages 20-24. Therefore, Bly '363 is being applied in a new light than its earlier use in the '888 application.

Baker '007 is considered "old art" to the reexamination of the '554 patent since the US Publication of Baker '007 was relied upon in a rejection of the claims in US Application 13/106,750 (hereinafter "the '750 application"). US Pub. No. 2008/0139953 (hereinafter "Baker '953") was used in rejections of claims 1-6, 11, 20, 22-25, 26-29, 31-33 and 38-41 in the Non-Final Office Action mailed 10/02/2012, pages 5 and 7. These rejections were maintained but modified in the Final Rejection mailed 12/28/2012, pages 6-7. Additionally, Baker '007 is considered "old art" to the reexamination of the '554 patent since Baker '007 was provided in an IDS in the '888 application.

In the '750 application, Baker '007 was relied upon for its teachings of "a housing (102) containing electronics (101) and two wings (Figs. 1A, 1D and 2) with electrodes (404). An adhesive (para. [0045]-[0046]) covers the bottom of the wings (on the barrier 105), but not the

electrodes (Fig. 2; para. [0046]).  The wings have flaps surrounding them, and the flaps are

connected together underneath the housing (Figs. 1D and 2), but they do not touch the housing

(held in cradle 104).  When assembled, the device is monolithic (Figs. 1A and 1C)."  Further,

Baker '007 is indicated to teach the "use of a barrier (105) between the wings and the adhesive

(Fig. 2).  Baker suggests using foam adhesive from Scapa Medical (para. [0046])…"  See the

'750 application, Non-Final Office Action mailed 10/02/2012, pages 5 and 7.[1]

However, now Baker '007 is being presented in a different way.  Baker '007 is now

being presented as a secondary reference to Bly '363.   In the request, Baker '007 is relied upon

to specifically teach that the electrodes are positioned distal from the housing.  See Request for

Reexamination filed 09/08/2025, page 43.  Therefore, Baker '007 is being applied in a different

way than its earlier use in both the '888 and '750 applications.

Matsumura is considered "old art" to the reexamination of the '554 patent since

Matsumura was provided in an IDS in the '888 application.  However, Matsumura was not relied

upon in a rejection of the claims in the '888 application and/or any preceding applications to the

'888 application.  Now, requester is presenting Matsumura in a new light as teaching a flexible

layer comprising a polymer upper layer overlying an electrical connection, the electrical

connection extending linearly from the physiologic data collection circuit to the electrode when

viewed from above the electronic device, the polymer upper layer adhered to a polymer lower

layer underlying the electrical connection and a connecting adhesive layer positioned under the

polymer layer upper layer and connecting the upper layer to the lower layer.  See Request filed

09/08/2025, pages 67-69.  Therefore, Matsumura is being applied in a new light than its earlier

use in the '888 application.

---

[1] It is noted that the rejection was maintained in the '750 application, Final Rejection, pages 6-7 and Baker was
additionally relied upon to teach "The adhesive is also separated from the housing (by barrier 105 and cradle 104)."

### *Proposed SNQ 1: Bly '363*

The consideration of Bly '363 raises an SNQ as to claims 1-12 of the '554 patent. As detailed above, during the prosecution of the '888 application the allowance of the claims resulted from the prior art failing to teach the claim limitation of "the flexible layer comprises a polymer upper layer overlying an electrical connection and adhered to a polymer lower layer underlying the electrical connection and a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer."

The request filed 09/08/2025 asserts that Bly '363 teaches this limitation resulting in the allowance of the '554 patent. Requester presents on pages 21-23 of their request that Bly '363 teaches,

> First, *Bly* discloses that get cover 180 is a polymer upper layer. "A gel cover 180, or gel cover layer, for example a polyurethane on-woven tape, can be positioned over patch 110 comprising the breathable tape." *Id.*, ¶85.

> "Gel cover 180 may comprise at least one of a polyurethane, polyethylene, polyolefin, rayon, PVC, silicone, non-woven material, foam, or a film. In many embodiments gel cover 180 may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110. In specific embodiments gel cover 180 may comprise a polyurethane film with acrylate pressure sensitive adhesive." *Id.*, ¶87.

The gel cover (i.e., the polymer upper layer) adheres to a breathable tape. "[G]el cover 180 may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110." *Id.*, ¶87. *Bly's* breathable tape is a polymer lower layer that underlies the electrical connection. "In many embodiments, adherent patch 110 may comprise a layer of breathable tape 110T, for example a known breathable tape, such as tricot-knit polyester fabric. In many embodiments, breathable tape 110T comprises a backing material, or backing 111, with an adhesive." *Id.*, ¶81. As

Further, gel cover 180, annotated in blue, "*may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110*" (adherent patch 110 which may comprise breathable tape 110T are annotated in orange). *Id.*, ¶87.

Turning to Bly '363, the patent is directed to an adherent device to monitor a patient for an extended period comprising a breathable tape. The appliance includes as outlined in para. [0072], "FIG. 1F shows a top view of **a cover 162 over the batteries, electronic components and flex printed circuit board** as in FIGS. 1A to 1E. In many embodiments, an electronics housing 160 may be disposed under cover 162 to protect the electronic components, and in some embodiments electronics housing 160 may comprise an encapsulant over the electronic components and PCB. In some embodiments, **cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162.**" (emphasis added) Para. [0073] states, "In some embodiments, **cover 162 may comprise** many known breathable materials, for example **polyester, polyamide, nylon and/or elastane** (Spandex.TM.). The breathable fabric may be coated to make it water resistant, waterproof, and/or to aid in wicking moisture away from the patch." (emphasis added) Para. [0078] states, "The adherent device comprises electrodes 112A1, 112B1, 112C1 and 112D1 configured to couple to tissue through apertures in the breathable tape 110T. Electrodes 112A1, 112B1, 112C1 and 112D1 can be fabricated in many ways. For example, electrodes 112A1, 112B1, 112C1 and 112D1 can be printed on a

flexible connector 112F, such as silver ink on polyurethane. Breathable tape 110T comprise

apertures 180A1, 180B1, 180C1 and 180D1. Electrodes 112A1, 112B1, 112C1 and 112D1 are

exposed to the gel through apertures 180A1, 180B1, 180C1 and 180D1 of breathable tape 110T.

Gel 114A, gel 114B, gel 114C and gel 114D can be positioned over electrodes 112A1, 112B1,

112C1 and 112D1 and the respective portions of breathable tape 11 OT proximate apertures

180A1, 180B1, 180C1 and 180D1, so as to couple electrodes 112A1, 112B1, 112C1 and 112D1

to the skin of the patient. The flexible connector 112F comprising the electrodes can extend from

under the gel cover to the printed circuit board to connect to the printed circuit boards and/or

components supported thereon. For example, flexible connector 112F may comprise flexible

connector 122A to provide strain relief, as described above." (emphasis added)  Para. [0081]

states, "In many embodiments, **adherent patch 110 may comprise a layer of breathable**

**tape 110T,** for example a known breathable tape, such as tricot-knit polyester fabric. In many

embodiments, breathable tape 110T comprises a backing material, or backing 111, **with an**

**adhesive**. **In many embodiments, the patch adheres to the skin of the patient's body**, and

comprises a breathable material to allow moisture vapor and air to circulate to and from the skin

of the patient through the tape." (emphasis added)

     There is a substantial likelihood that a reasonable examiner would consider the above

teachings, i.e., cover 162, adherent patch 110 with an adhesive 164 on an underside of cover 162,

and adhesive adhering the patch to the patient's skin as taught by Bly'363 important in

determining the patentability of the claims.  Accordingly, requester has raised a substantial new

question of patentability in consideration of Bly'363, which question has not been decided in a

previous examination of the '554 patent.

Application/Control Number: 90/015,504                                    Page 12
Art Unit: 3993

Therefore, requester has raised a substantial new question of patentability in regards to claims 1-12 in consideration of Bly'363, which question has not been decided in a previous examination of the '554 patent.


### *Proposed SNQ 2: Bly '363 in view of Baker '007*

The consideration of Bly '363 raises an SNQ as to claims 1-12 of the '554 patent. As detailed above, during the prosecution of the '888 application the allowance of the claims resulted from the prior art failing to teach the claim limitation of "the flexible layer comprises a polymer upper layer overlying an electrical connection and adhered to a polymer lower layer underlying the electrical connection and a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer."

The request filed 09/08/2025 asserts that Bly '363 teaches this limitation resulting in the allowance of the '554 patent. See Request for Reexamination, pages 20-23. Baker '007 is used as a secondary reference. In the request, Baker '007 is relied upon to specifically teach that the electrodes are positioned distal from the housing. See Request for Reexamination filed 09/08/2025, page 43.

Therefore, the same new question of patentability with regards to claims 1-12 in consideration of Bly'363 is also the basis for Bly '363 taken with Baker '007, which question has not been decided in a previous examination of the '554 patent. Therefore, requester has raised a substantial new question of patentability in regards to claims 1-12 in consideration of Bly'363 and Baker '007, which question has not been decided in a previous examination of the '554 patent.

Application/Control Number: 90/015,504                                    Page 13
Art Unit: 3993

### *Proposed SNQ 3: Matsumura*

The consideration of Matsumura raises an SNQ as to claim 1 of the '554 patent. As detailed above, during the prosecution of the '888 application the allowance of the claims resulted from the prior art failing to teach the claim limitation of "the flexible layer comprises a polymer upper layer overlying an electrical connection and adhered to a polymer lower layer underlying the electrical connection and a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer."

The request filed 09/08/2025 asserts that Matsumura teaches this limitation resulting in the allowance of the '554 patent. Requester presents on pages 67 of their request that Matsumura teaches,

**First**, *Matsumura* discloses a flexible layer comprising a polymer upper layer overlying an electrical connection. *Matsumura* discloses a "bioelectrode pad 7 [] composed of a first sheet 1, a conductive material 2, a hook 3, a second sheet 4, a conductive gel 5, a third sheet 6, and double-sided adhesive tape 9." Ex. 1006, ¶16.

First sheet 1 and second sheet 4 "should be made of an insulating material that does not allow moisture to penetrate, for example, *polyethylene foam, polyurethane foam, or polyurethane sheet*." *Id.*, ¶¶17-18.

**Second**, *Matsumura* discloses the electrical connection extending linearly from the physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection.

As shown in Figure 1 below, first sheet 1 (e.g., upper polymer layer) overlays electrode gel 5, conductive material 2, and hooks 3 (e.g., electronic connection), and these three components extend linearly from the signal processor (e.g., housing). For example, *Matsumura* discloses "The pieces of *conductive material 2 are rod-shaped*, one end of which has two holes 2a for contacting the conductive gel 5 and the other end of which has two holes 2a through which the protruding

For example, *Matsumura* explains that "an adhesive or glue, such as an acrylic adhesive for example, is applied to the back surface of the first sheet 1" and "adhesive or glue, such as acrylic adhesive for example, is applied to the surface of the

second sheet 4. The adhesive, such as acrylic adhesive for example, is applied to the back surface of the second sheet 4." Ex. 1006, ¶18. As shown in Figure 4, for example, the adhesive applied to the back surface of the first sheet 1 and the adhesive applied to the surface of second sheet 4 make up the connecting adhesive layer (indicated by red boxes) that adhere first sheet 1 (e.g., polymer upper layer) to second sheet 4 (e.g., polymer lower layer).



*Id.*, Figure 4(b) (annotated green indicating first sheet, blue indicating second sheet, and red boxes indicating connecting adhesive layer).

Turning to Matsumura[2], the patent is directed to a bioelectric potential detector and biometric information system. The system includes a bioelectric disposable water proof electrode pad that can be worn by the patient. See para. [0006]. Specifically, the pad 7 includes a first sheet 1 and a second sheet 4. The first and second sheets can be made from a polyethylene or polyurethane. See para. [0017-0018]. Conductive material 2 is between the first and second sheets. Additionally, the second sheet 4 has an acrylic adhesive applied to the surface. See para. [0018].

There is a substantial likelihood that a reasonable examiner would consider at least the above teachings, i.e., first and second sheets and acrylic adhesive as taught by Matsumura

---

[2] It is noted that all citations to Matsumura are to the English Translation presented as exhibit 1006 with the Request for Reexamination filed 09/08/2025.

important in determining the patentability of the claims.  Accordingly, requester has raised a

substantial new question of patentability in consideration of Matsumura, which question has not

been decided in a previous examination of the '554 patent.

Therefore, requester has raised a substantial new question of patentability in regards to

claim 1 in consideration of Matsumura, which question has not been decided in a previous

examination of the '554 patent.

### *35 USC 325(d)*

A review of the post grant history for the instant patent indicates that there have been no

other Office post grant challenges made to the patent (Reexamination Proceedings or *Inter*

*Partes* Review, Post Grant Review, Covered Business Method trials).  Accordingly, a

discretionary denial of reexamination pursuant to 35 USC 325(d) is not applicable.

### *Scope of Reexamination*

Since requester did not request reexamination of claim 13 and did not assert the existence

of a SNQ for such claims (see 35 U.S.C. § 311(b)(2); see also 37 CFR 1.915b and 1.923), such

claims will not be reexamined.  This matter was squarely addressed in *Sony Computer*

*Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May

22, 2006), Slip Copy, 2006 WL 1472462.  (Not Reported in F.Supp.2d.)  The District Court

upheld the Office's discretion to not reexamine claims in an *inter partes* reexamination

proceeding other than those claims for which reexamination had specifically been requested. The

Court stated:

> To be sure, a party may seek, and the PTO may grant, *inter*
> *partes* review of each and every claim of a patent.  Moreover,
> while the PTO in its discretion may review claims for which *inter*
> *partes* review was not requested, nothing in the statute compels it
> to do so.  To ensure that the PTO considers a claim for *inter*
> *partes* review, § 311(b)(2) requires that the party seeking

> reexamination demonstrate why the PTO should reexamine each
> and every claim for which it seeks review. Here, it is undisputed
> that Sony did not seek review of every claim under the '213 and
> '333 patents. Accordingly, Sony cannot now claim that the PTO
> wrongly failed to reexamine claims for which Sony
> never requested review, and its argument that AIPA compels a
> contrary result is unpersuasive.

(Slip copy at page 9.)

The *Sony* decision's reasoning and statutory interpretation apply analogously to *ex parte* reexamination, as the same relevant statutory language applies to both *inter partes* and *ex parte* reexamination. 35 U.S.C. § 302 provides that the *ex parte* reexamination "request must set forth the pertinency and manner of applying cited prior art <u>to every claim for which reexamination is requested</u>" (emphasis added), and 35 U.S.C. § 303 provides that "the Director will determine whether a substantial new question of patentability affecting <u>any claim of the patent</u> concerned is <u>raised by the request</u>..." (Emphasis added). These provisions are analogous to the language of 35 U.S.C. § 311(b)(2) and 35 U.S.C. § 312 applied and construed in *Sony*, and would be construed in the same manner. As the Director can decline to reexamine non-requested claims in an *inter partes* reexamination proceeding, the Director can likewise do so in *ex parte* reexamination proceeding. <u>See</u> *Notice of Clarification of Office Policy To Exercise Discretion in Reexamining Fewer Than All the Patent Claims* (signed Oct. 5, 2006) 1311 OG 197 (Oct. 31, 2006). <u>See also</u> MPEP § 2240, Rev. 5, Aug. 2006.

Therefore, claim 13 will not be reexamined in this *ex parte* reexamination proceeding.

Application/Control Number: 90/015,504                                          Page 18
Art Unit: 3993

### *Correspondence*

A shortened statutory period of two months will generally be set for filing a response to

an Office action in an *ex parte* reexamination. An extension of time may be requested under 37

CFR 1.550(c).

All correspondence relating to this *ex parte* reexamination should be directed as follows:

By Patent Center:    Registered users may submit via the electronic filing system, Patent Center,
                     at: https://patentcenter.uspto.gov/

By Mail:    Mail Stop *Ex Parte* Reexam
            ATTN: Central Reexamination Unit
            Commissioner for Patents
            U.S. Patent & Trademark Office
            P.O. Box 1450
            Alexandria, VA 22313-1450

By FAX:    (571)273-9900
           Central Reexamination Unit

By hand:    Customer Service Window
            Attn: Central Reexamination Unit
            Knox Building, Lobby Level
            501 Dulany Street
            Alexandria, VA 22314

For <u>Patent Center transmissions,</u> 37 CFR 1.8(a)(1) (i)(C) and (ii) states that

correspondence (except for a request for reexamination and a corrected or replacement request

for reexamination) will be considered timely filed if: (a) it is transmitted via the Office's

electronic filing system in accordance with 37 CFR 1.6(a)(4); and, (b) includes a certificate of

transmission for each piece of correspondence stating the date of transmission, which is prior to

the expiration of the set period of time in the Office action.

Application/Control Number: 90/015,504                                    Page 19
Art Unit: 3993

     Any inquiry concerning this communication or earlier communications from the

Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination

Unit (CRU) at telephone number: 571.272.7705. The CRU's fax number is: 571.273.9900.


/CATHERINE S WILLIAMS/
Reexamination Specialist, Art Unit 3993


Conferees:

/SARAH B MCPARTLIN/
Reexamination Specialist, Art Unit 3993


/EILEEN D LILLIS/
SPRS, Art Unit 3993

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.S.W/

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-25)
Approved for use through 11/30/2027. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| Application Number | | |
| Filing Date | 2024-11-04 | |
| First Named Inventor | Uday N. Kumar | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket Number | 3726071.00380 | |

| U.S. PATENTS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Inventor of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 8214007 | B2 | 2012-07-03 | Baker et al. | [Exhibit 1004] |
| | 2 | 12274554 | B2 | 2025-04-15 | Kumar et al. | [Exhibit 1001] |

If you wish to add additional U.S. Patent citation information, please click the Add button.    Add

| U.S. PATENT APPLICATION PUBLICATIONS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Inventor or Applicant of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 20090076363 | A1 | 2009-03-19 | Bly et al. | [Exhibit 1003] |
| | 2 | 20030069510 | A1 | 2003-04-10 | Semler | [Exhibit 1007] |

If you wish to add additional U.S. Published Application citation information, please click the Add button    Add

| FOREIGN PATENT DOCUMENTS | | | | | | | Remove |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| | 1 | 2004-121360 | JP | A | 2004-04-22 | Nihon Kohden Corporation | [Exhibit 1005] | ☒ |

PC.1.19.25

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.S.W/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application Number | |
|---|---|---|
| | Filing Date | 2024-11-04 |
| | First Named Inventor | Uday N. Kumar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 3726071.00380 |

| If you wish to add additional Foreign Patent Document citation information, please click the Add button | Add |
|---|---|

### NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | Prosecution History of U.S. Patent Application No. 18/936,888 filed November 4, 2024, "DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION" - 2,513 pages. [Exhibit 1002] | ☐ |
| | 2 | English Translation of Japanese Patent Publication No. JP2004/121360 to Matsumura ("Matsumura"). [Exhibit 1006] | ☐ |

| If you wish to add additional non-patent literature document citation information, please click the Add button | Add |
|---|---|

### EXAMINER SIGNATURE

| Examiner Signature | /CATHERINE S WILLIAMS/ | Date Considered | 10/06/2025 |
|---|---|---|---|

*EXAMINER: Initial if reference considered and whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application Number | |
| --- | --- | --- |
| | Filing Date | 2024-11-04 |
| | First Named Inventor | Uday N. Kumar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 3726071.00380 |

## TIMING STATEMENT

Please see 37 CFR 1.97(e) to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached timing statement under 37 CFR 1.97(e).

☒ A timing statement under 37 CFR 1.97(e) is not submitted herewith.

### TIMING FEE

☐ The fee set forth in 37 CFR 1.17(p) has been submitted herewith.

### COPIES

☐ An identification of an earlier application pursuant to 37 CFR 1.98(d)(1) is attached.

### SIZE FEE ASSERTION

Please see 37 CFR 1.17(v) and the IDS Auto-Load Instructions for completing this form to make the appropriate selection of an assertion under 37 CFR 1.98. For the information disclosure statement (IDS) submitted herewith, the applicant or patent owner certifies the following with respect to the cumulative number of applicant-provided or patent-owner provided items of information submitted to date including those in the accompanying IDS (select only one):

☒ No IDS size fee is required under 37 CFR 1.17(v) at this time.

☐ The IDS is accompanied by the IDS size fee under 37 CFR 1.17(v)(1).

☐ The IDS is accompanied by the IDS size fee under 37 CFR 1.17(v)(2).

☐ The IDS is accompanied by the IDS size fee under 37 CFR 1.17(v)(3).

### SIGNATURE

A signature of the applicant or representative is required in accordance with 37 CFR 1.33 and 11.18. Please see 37 CFR 1.4(d) for the form of the signature.

| Signature | /Erik J. Halverson/ | Date (YYYY-MM-DD) | 2025-09-08 |
| --- | --- | --- | --- |
| Name/Print | Erik J. Halverson | Registration Number | 73,552 |

PC.1.19.25

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | |
| | Filing Date | 2024-11-04 |
| | First Named Inventor | Uday N. Kumar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 3726071.00380 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

PC.1.19.25

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/ her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.