# Exhibit 3

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

K&L Gates LLP - Chicago
Baxter
P.O. Box 1135
Chicago, IL 60690-1135

MAILED

OCT 1 7 2025

CENTRAL REEXAMINATION UNIT

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,505* .

PATENT UNDER REEXAMINATION *12303277* .

ART UNIT *3993* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,505 | 09/08/2025 | 12303277 | 3726071.00381 | 1615 |

20995          7590          10/17/2025
Knobbe, Martens, Olson & Bear, LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| WILLIAMS, CATHERINE SERKE |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/17/2025 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| *Order Granting Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
| | 90/015,505 | 12303277 |
| | Examiner | Art Unit | AIA (FITF) Status |
| | CATHERINE S WILLIAMS | 3993 | No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>09/08/2025</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐  PTO-892,     b)☑  PTO/SB/08,     c)☐  Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

　　　RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| | | |
| --- | --- | --- |
| | | |

cc:Requester ( if third party requester )

## DECISION ON REQUEST FOR REEXAMINATION

A substantial new question (hereinafter "SNQ") of patentability affecting claims 1-10 of United States Patent Number 12,303,277 (hereinafter "the '277 patent") is raised by the request for *ex parte* reexamination.

### *Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

### *Service of Papers*

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248.  See 37 CFR 1.550(f).

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c). See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

Application/Control Number: 90/015,505                                          Page 3
Art Unit: 3993

### *Submissions*

In order to insure full consideration of any amendments, affidavits or declarations or other documents as evidence of patentability, such documents must be submitted in response to the first office action on the merits (which does not result in a close of prosecution). Submissions after the second office action on the merits, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33 after appeal, which will be strictly enforced.

### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '277 patent throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

### *Waiver of Right to File Patent Owner Statement*

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third party requester, see 37 C.F.R. 1.550(f). The Patent Owner may consider using the following statement in a document waiving the right to file a Patent Owner Statement:

---

**WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT**

Patent Owner waives the right under 37 C.F.R. § 1.530 to file a Patent Owner Statement.

---

### *Substantial New Question*

The SNQ is based on:

1. US Pub. No. 2009/0076363 to Bly et al. (hereinafter "Bly '363"); and
2. JP2004/121360 to Matsumura (hereinafter "Matsumura").

A discussion of the specifics now follows:

### *Requester's Position*

1. Claims 1-10 are unpatentable over Bly '363 alone.

2. Claim 1 is unpatentable over Matsumura alone.

### *Prosecution History – 18/806,584*

The '277 patent resulted from US Pat. Application 18/806,584 (hereinafter "the '584 application") and was filed on 08/15/2024 with claim 1. A preliminary amendment to the claims was then filed 09/26/2024 cancelling claim 1 and adding new independent claims 2 and 10 and claims 3-9 and 11-19 depending respectively therefrom. A Non-Final Rejection was mailed 10/24/2024 rejecting:

- claims 2-7 and 9 as being unpatentable over US Pub. No. 2002/0082491 to Nissila (hereinafter "Nissila") in view of US Pub. No. 2007/0285868 to Lindberg (hereinafter "Lindberg");

- claims 8 and 18 as being obvious over Nissila in view of Lindberg and in further view of US Pub. No. 2008/0288026 to Cross.

Applicant filed a response on 01/24/2025 cancelling claims 1-9 and amending independent claim 10 replacing "extending horizontally away from the housing" to "extends" and other minor amendments. Applicant argued the patentability of the claims stating,

### *Claim 10 is Patentable*

Applicant amended Claim 10 to further clarify the subject matter of the claim. Further, to reach the subject matter of Claim 10, the Office Action combined Lindberg with Nissila "as predictable results would have ensued (affording a non-stretchable, breathable flexible layer for attachment to a user)." *Office Action*, page 6. However, amended Claim 10 recites, *inter alia*, "wherein the **second** substrate layer is positioned over the first substrate layer and extends beyond <u>a</u> boundary of the first substrate layer." **(emphasis added)**. Applicant respectfully notes that Nissila

already provides a flexible breathable adhesive band (101) for adhering to a user. *Nissila*, para. [0033]. Therefore, there is no motivation or rationale for one of ordinary skill in the art to combine Lindberg with Nissila to solve a problem that does not exist in Nissila and/or make an un-needed improvement in Nissila. Further, as shown in Figure 2a of Lindberg below, the upper substrate of Lindberg (16) does not extend beyond a boundary of the lower substrate layer (12). *Lindberg*, Figure 2a. For at least these reasons, Applicant respectfully requests that the present rejections be withdrawn.

See the '584 Application, Remarks filed 07/23/2024, pages 4-5. Subsequent to the amendment, a

Notice of Allowance ("NOA") was mailed 03/21/2025 with a reasons for allowance stating,

## Reasons for Allowance

*The following is an examiner's statement of reasons for allowance:*

The closest prior art Gehman US Patent Application 2008/0214901 discloses an
electronic device (10, Figure 2) with a housing (12) that contains a physiologic data
collection circuit ([0024]), an electrode supporting section (the edges of the patch; see
Figure 2) extend from the housing, an electrode (14) is positioned on a bottom surface
the supporting section (Fig. 2, to make the wing), the electrode being connected to the
collection circuit (via 13). Each wing has a second layer (20) over a top of the wing, and
extending horizontally beyond the boundary of each wing. The electrode elements (14)
can be conductive adhesives for adhering to skin ([0031]). If the adhesive electrode
elements (14) are the electrodes, then Gehman fails to further disclose a first layer. If
the adhesive electrode elements (14) are the first adhesive layer, then the electrode
(13) is not on a bottom surface of the electrode supporting section. There is insufficient
teaching, suggestion, or motivation to replace the conductive adhesive electrode with a
separate conductive electrode and adhesive (both on the bottom surface of the
electrode supporting section). Similar designs were known in the art. Libbus (US

2010/0056881) discloses a device with a center housing (160) and extended wings
(Figures 1H, 1G, etc.) with electrodes (112A) and a first adhesive (116A) on the bottom
surface. A second adhesive (164 on cover 162) extends over the top of the wings.
However, the second layer does not extend horizontally beyond a boundary of the wing
(see Figs. 11-1J), and there is insufficient teaching, suggestion, or motivation to modify
the second adhesive layer. Gehman teaches that the top layer (adhesive) is useful for
securing the device to the user, but the device of Libbus is already secured with the first
layer/adhesive.

Oakley (US 2004/0077954), Durand (2009/0048556), and Axelgaard (US
6,038,464) also teach many of the recited features. The second adhesive (layer) of
Durand functions as an adhesion guard and protects the first adhesive while extending
horizontally beyond the first substrate layer/adhesive. However, the second layer is not
positioned over the top of the wing, and there is insufficient teaching, suggestion, or
motivation to move it from the bottom surface of the device. Similarly, the second layer
of Axelgaard also functions as an adhesive guard and is over the first adhesive/layer.
However, this second layer does not extend horizontally outward beyond the boundary
of the wing or first layer. Moreover, there is insufficient motivation to modify the second
layer of Axelgaard to extend beyond the wing because such a modification would
negate the advantages of the design (particularly controlling the strength of adhesion to
the skin).

See the '584 Application, NOA mailed 03/21/2025, pages 3-4.

Therefore, it is understood that the '277 patent was allowed since the prior art did not
teach, among all the limitations, the combination of, "a first substrate layer…an electrode
positioned on the bottom surface of the electrode-supporting section…the second substrate layer
is positioned over the first substrate layer and extends horizontally beyond a boundary of the first
substrate layer."

Application/Control Number: 90/015,505                                              Page 8
Art Unit: 3993

### Analysis of the Prior Art Provided in the Request

On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

> The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, both Bly '363, and Matsumura qualify as old art since each were previously cited, applied and/or relied upon in rejections of the claims in the original examination of the '584 application.

However, being "old art" does not necessarily preclude these references from establishing a SNQ. A SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation in in the request. See MPEP § 2242. These references are now being presented and viewed in a new light, or in a different way, as compared with their use in the earlier examinations as discussed in detail in this order. Accordingly, the use of these references in this reexamination is proper. Below is a detailed analysis for each of the references requester asserts raise an SNQ.

Application/Control Number: 90/015,505                                   Page 9
Art Unit: 3993

Bly '363 is considered "old art" to the reexamination of the '277 patent since USPN

8,116,841 to Bly (hereinafter "Bly '841"), the issued patent resulting from Bly '363, was

provided in an IDS in the '584 application.

However, neither Bly '363 nor Bly '841 were relied upon in a rejection of the claims in

the '584 application and/or any preceding applications to the '584 application. Now, requester is

presenting Bly '363 in a new light as teaching a first substrate layer, an electrode positioned on

the bottom surface of the electrode-supporting section and the second layer being positioned over

the first substrate layer and extending beyond its boundary. See Request filed 09/08/2025, pages

16-23. Therefore, Bly '363 is being applied in a new light than its earlier use in the '584

application.

Matsumura is considered "old art" to the reexamination of the '277 patent since

Matsumura was provided in an IDS in the '584 application. However, Matsumura was not relied

upon in a rejection of the claims in the '584 application and/or any preceding applications to the

'584 application. Now, requester is presenting Matsumura in a new light as teaching a first

substrate layer, an electrode positioned on the bottom surface of the electrode-supporting section

and the second layer being positioned over the first substrate layer and extending beyond its

boundary. See Request filed 09/08/2025, pages 35-42. Therefore, Matsumura is being applied

in a new light than its earlier use in the '584 application.

### *Proposed SNQ 1: Bly '363*

The consideration of Bly '363 raises an SNQ as to claims 1-10 of the '277 patent. As

detailed above, during the prosecution of the '584 application the allowance of the claims

resulted from the prior art failing to teach the claim limitation of "a first substrate layer...an

electrode positioned on the bottom surface of the electrode-supporting section...the second

substrate layer is positioned over the first substrate layer and extends horizontally beyond a

boundary of the first substrate layer."

The request filed 09/08/2025 asserts that Bly '363 teaches this limitation resulting in the

allowance of the '277 patent. Requester presents on pages 18- of their request that Bly '363

teaches,

> Figure 1J of *Bly* is disclosed below, which includes the cover 162
> and the adherent patch 110 comprising breathable tape 110T and gel
> cover 180. *Id.*, ¶96. These components form the electrode-
> supporting section, as annotated in yellow.



When the adherent device 100 is constructed, electrodes 112A-D are located in the apertures 180A and the cover 162 and the adherent patch 110 (both annotated in yellow) are connected, as reflected in the annotated Figure 1I below.

FIG. 1J

*Id.*, Figure 1J (annotated).

> Figure 1I of *Bly* includes the electrode supporting section as
> constructed in the adherent device 100.



FIG. 1I

*Id.*, Figure 1I (annotated).

> Moreover, *Bly* discloses that "[i]n many embodiments, electrodes
> 112A, 112B, 112C and 112D extend from lower side 110A through
> adherent patch 110 to upper side 110B." *Id.*, ¶58. Thus, *Bly*'s Figure
> 1B (below) discloses the electrode-supporting section, supporting
> electrodes 112A, 112B, 112C and 112D.

First, *Bly* discloses that *gel cover 180 is a first substrate layer.*
"[T]he adherent device comprises a gel cover [180] positioned over
the breathable tape to inhibit a flow of the gel through the breathable
tape, and the printed circuit board is located over the gel cover such
that the gel cover is disposed between the breathable tape and the
printed circuit board." *Id.*, ¶22. The gel cover (e.g., first substrate
layer) is annotated in below in green.



*Id.*, Figure 1J1 (annotated).

Second, *Bly* discloses that *cover 162 is a second substrate layer.*
"[C]over 162 can encase the flex PCB and/or electronics and can be
adhered to at least one of the electronics, the flex PCB or adherent
patch 110, so as to protect at least the electronics components and
the PCB. Cover 162 can attach to adherent patch 110 with adhesive
116B." *Id.*, ¶92. The cover (e.g., second substrate layer) is
annotated below in yellow.

Further, "*electrodes 112A, 112B, 112C and 112D extend from
lower side 110A* through adherent patch 110 to upper side 110B."
*Id.*, ¶58.

Further, as also disclosed in Figure 1J1, the cover 162 (e.g., the
second substrate layer), annotated in yellow, extends horizontally

beyond a boundary of the gel cover 180 (e.g., the first substrate layer).

Further, "the edge of the cover [162] may be adhered at the edge of the adherent patch [110.]" *Id.*, ¶107. Thus, the cover 162 extends as far as the edge of the adherent patch 110.



Edge of adherent patch 110.

FIG. 1J1

*Id.*, Figure 1J1 (annotated).

Turning to Bly '363, the patent is directed to an adherent device to monitor a patient for an extended period comprising a breathable tape. The appliance includes as outlined in para. [0072], "FIG. 1F shows a top view of **a cover 162 over the batteries, electronic components and flex printed circuit board** as in FIGS. 1A to 1E. In many embodiments, an electronics housing 160 may be disposed under cover 162 to protect the electronic components, and in some embodiments electronics housing 160 may comprise an encapsulant over the electronic components and PCB. In some embodiments, **cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162.**" (emphasis added) Para. [0073] states, "In some embodiments, **cover 162 may comprise** many known breathable materials, for example **polyester, polyamide, nylon and/or elastane** (Spandex.TM.). The breathable fabric may be coated to make it water resistant, waterproof, and/or to aid in wicking moisture away from the patch." (emphasis added) Para. [0078] states, "The adherent device comprises electrodes 112A1, 112B1, 112C1 and 112D1 configured to couple to tissue through apertures in

the breathable tape 110T. Electrodes 112A1, 112B1, 112C1 and 112D1 can be fabricated in

many ways. For example, electrodes 112A1, 112B1, 112C1 and 112D1 can be printed on a

flexible connector 112F, such as silver ink on polyurethane. Breathable tape 110T comprise

apertures 180A1, 180B1, 180C1 and 180D1. Electrodes 112A1, 112B1, 112C1 and 112D1 are

exposed to the gel through apertures 180A1, 180B1, 180C1 and 180D1 of breathable tape 110T.

Gel 114A, gel 114B, gel 114C and gel 114D can be positioned over electrodes 112A1, 112B1,

112C1 and 112D1 and the respective portions of breathable tape 11 OT proximate apertures

180A1, 180B1, 180C1 and 180D1, so as to couple electrodes 112A1, 112B1, 112C1 and 112D1

to the skin of the patient. The flexible connector 112F comprising the electrodes can extend from

under the gel cover to the printed circuit board to connect to the printed circuit boards and/or

components supported thereon. For example, flexible connector 112F may comprise flexible

connector 122A to provide strain relief, as described above." (emphasis added) Para. [0081]

states, "In many embodiments, **adherent patch 110 may comprise a layer of breathable**

**tape 110T**, for example a known breathable tape, such as tricot-knit polyester fabric. In many

embodiments, breathable tape 110T comprises a backing material, or backing 111, **with an**

**adhesive**. **In many embodiments, the patch adheres to the skin of the patient's body**, and

comprises a breathable material to allow moisture vapor and air to circulate to and from the skin

of the patient through the tape." (emphasis added)

There is a substantial likelihood that a reasonable examiner would consider the above

teachings, i.e., cover 162, adherent patch 110 with an adhesive 164 on an underside of cover 162,

and adhesive adhering the patch to the patient's skin as taught by Bly'363 important in

determining the patentability of the claims. Accordingly, requester has raised a substantial new

question of patentability in consideration of Bly'363, which question has not been decided in a

previous examination of the '277 patent.

Therefore, requester has raised a substantial new question of patentability in regards to

claims 1-12 in consideration of Bly'363, which question has not been decided in a previous

examination of the '277 patent.

### *Proposed SNQ 2: Matsumura*

The consideration of Matsumura raises an SNQ as to claim 1 of the '277 patent. As

detailed above, during the prosecution of the '584 application the allowance of the claims

resulted from the prior art failing to teach the claim limitation of "a first substrate layer…an

electrode positioned on the bottom surface of the electrode-supporting section…the second

substrate layer is positioned over the first substrate layer and extends horizontally beyond a

boundary of the first substrate layer."

The request filed 09/08/2025 asserts that Matsumura teaches this limitation resulting in

the allowance of the '277 patent. Requester presents on pages 35-41 of their request that

Matsumura teaches,

> Further, *Matsumura* discloses that the "bioelectrode pad 7 includes
> *a first sheet 1 [e.g., second substrate layer]*, a conductive material
> 2, a hook 3, *a second sheet 4 [e.g., first substrate layer]*, a
> conductive gel 5 [e.g., electrodes] , a third sheet 6, and a double-
> sided adhesive tape 9." *Id.*, ¶16.

> *Matsumura* discloses conductive gel 5 (e.g., electrode) is positioned
> on the bottom surface of the bioelectrode pad 7 (e.g., electrode-
> supporting section). For example, Figure 1 discloses the conductive
> gel 5 (e.g., electrode) positioned on the bottom surface of the
> bioelectrode pad 7 (e.g., electrode-supporting section).      The
> electrodes are annotated in yellow.

> *Matsumura* discloses that the "second sheet 4 [e.g., first substrate
> layer] has the same outer shape as the first sheet 1 [e.g., second
> substrate layer][.]" *Id.*, ¶18. Figure 3 disclose the configuration of
> the first and second substrate layers. While sheets 1 and 4 have the
> same shape, there is no corresponding disclosure about the relative
> size of the two layers.

Turning to Matsumura[1], the patent is directed to a bioelectric potential detector and

biometric information system. The system includes a bioelectric disposable water proof

electrode pad that can be worn by the patient. See para. [0006]. Specifically, the pad 7 includes

a first sheet 1 and a second sheet 4. The first and second sheets can be made from a polyethylene

or polyurethane. See para. [0017-0018]. Conductive material 2 is between the first and second

sheets. Additionally, the second sheet 4 has an acrylic adhesive applied to the surface. See para.

[0018].

There is a substantial likelihood that a reasonable examiner would consider at least the

above teachings, i.e., first and second sheets and acrylic adhesive as taught by Matsumura

important in determining the patentability of the claims. Accordingly, requester has raised a

substantial new question of patentability in consideration of Matsumura, which question has not

been decided in a previous examination of the '277 patent.

Therefore, requester has raised a substantial new question of patentability in regards to

claim 1 in consideration of Matsumura, which question has not been decided in a previous

examination of the '277 patent.

### *35 USC 325(d)*

A review of the post grant history for the instant patent indicates that there have been no

other Office post grant challenges made to the patent (Reexamination Proceedings or *Inter*

---

[1] It is noted that all citations to Matsumura are to the English Translation presented as exhibit 1006 with the Request for Reexamination filed 09/08/2025.

Application/Control Number: 90/015,505                                   Page 16
Art Unit: 3993

*Partes* Review, Post Grant Review, Covered Business Method trials). Accordingly, a

discretionary denial of reexamination pursuant to 35 USC 325(d) is not applicable.

### *Correspondence*

A shortened statutory period of two months will generally be set for filing a response to

an Office action in an *ex parte* reexamination. An extension of time may be requested under 37

CFR 1.550(c).

All correspondence relating to this *ex parte* reexamination should be directed as follows:

By Patent Center:     Registered users may submit via the electronic filing system, Patent Center,
                      at: https://patentcenter.uspto.gov/

By Mail:      Mail Stop *Ex Parte* Reexam
              ATTN: Central Reexamination Unit
              Commissioner for Patents
              U.S. Patent & Trademark Office
              P.O. Box 1450
              Alexandria, VA 22313-1450

By FAX:       (571)273-9900
              Central Reexamination Unit

By hand:      Customer Service Window
              Attn: Central Reexamination Unit
              Knox Building, Lobby Level
              501 Dulany Street
              Alexandria, VA 22314

For Patent Center transmissions, 37 CFR 1.8(a)(1) (i)(C) and (ii) states that

correspondence (except for a request for reexamination and a corrected or replacement request

for reexamination) will be considered timely filed if: (a) it is transmitted via the Office's

electronic filing system in accordance with 37 CFR 1.6(a)(4); and, (b) includes a certificate of

transmission for each piece of correspondence stating the date of transmission, which is prior to

the expiration of the set period of time in the Office action.

Application/Control Number: 90/015,505                                          Page 17
Art Unit: 3993

      Any inquiry concerning this communication or earlier communications from the

Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination

Unit (CRU) at telephone number: 571.272.7705. The CRU's fax number is: 571.273.9900.


/CATHERINE S WILLIAMS/
Reexamination Specialist, Art Unit 3993


Conferees:

/SARAH B MCPARTLIN/
Reexamination Specialist, Art Unit 3993

/EILEEN D LILLIS/
SPRS, Art Unit 3993

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.S.W/

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-25)
Approved for use through 11/30/2027. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| Application Number | | |
| Filing Date | 2024-08-15 | |
| First Named Inventor | Uday N. Kumar | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket  Number | 3726071.00381 | |

### U.S. PATENTS    [Remove]

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Inventor of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 12303277 | B2 | 2025-05-20 | Kumar et al. | [Exhibit 1001] |

If you wish to add additional U.S. Patent citation information, please click the Add button.    [Add]

### U.S. PATENT APPLICATION PUBLICATIONS    [Remove]

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Inventor or Applicant of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20090076363 | A1 | 2009-03-19 | Bly et al. | [Exhibit 1003] |
| | 2 | 20030069510 | A1 | 2003-04-10 | Semler | [Exhibit 1006] |

If you wish to add additional U.S. Published Application citation information, please click the Add button    [Add]

### FOREIGN PATENT DOCUMENTS    [Remove]

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2004-121360 | JP | A | 2004-04-22 | Nihon Kohden Corporation | [Exhibit 1004] | ☒ |

If you wish to add additional Foreign Patent Document citation information, please click the Add button    [Add]

### NON-PATENT LITERATURE DOCUMENTS    [Remove]

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application Number | |
|---|---|---|
| | Filing Date | 2024-08-15 |
| | First Named Inventor | Uday N. Kumar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 3726071.00381 |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | Prosecution History of U.S. Patent Application No. 18/806,584 filed August 15, 2024, "DEVICE FEATURES AND DESIGN ELEMENTS FOR LONG-TERM ADHESION" - 1,893 pages. [Exhibit 1002] | ☐ |
| | 2 | English Translation of Japanese Patent Publication No. JP2004/121360 to Matsumura ("Matsumura"). [Exhibit 1005] | ☐ |

If you wish to add additional non-patent literature document citation information, please click the Add button. Add

**EXAMINER SIGNATURE**

| Examiner Signature | /CATHERINE S WILLIAMS/ | Date Considered | 10/06/2025 |
|---|---|---|---|

*EXAMINER: Initial if reference considered and whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

PC.1.19.25

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application Number | |
|---|---|---|
| | Filing Date | 2024-08-15 |
| | First Named Inventor | Uday N. Kumar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 3726071.00381 |

## TIMING STATEMENT

Please see 37 CFR 1.97(e) to make the appropriate selection(s):

☐      That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐      That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐      See attached timing statement under 37 CFR 1.97(e).

☒      A timing statement under 37 CFR 1.97(e) is not submitted herewith.

### TIMING FEE

☐      The fee set forth in 37 CFR 1.17(p) has been submitted herewith.

## COPIES

☐      An identification of an earlier application pursuant to 37 CFR 1.98(d)(1) is attached.

## SIZE FEE ASSERTION

Please see 37 CFR 1.17(v) and the IDS Auto-Load Instructions for completing this form to make the appropriate selection of an assertion under 37 CFR 1.98. For the information disclosure statement (IDS) submitted herewith, the applicant or patent owner certifies the following with respect to the cumulative number of applicant-provided or patent-owner provided items of information submitted to date including those in the accompanying IDS (select only one):

☒ No IDS size fee is required under 37 CFR 1.17(v) at this time.

☐ The IDS is accompanied by the IDS size fee under 37 CFR 1.17(v)(1).

☐ The IDS is accompanied by the IDS size fee under 37 CFR 1.17(v)(2).

☐ The IDS is accompanied by the IDS size fee under 37 CFR 1.17(v)(3).

## SIGNATURE

A signature of the applicant or representative is required in accordance with 37 CFR 1.33 and 11.18. Please see 37 CFR 1.4(d) for the form of the signature.

| Signature | /Erik J. Halverson/ | Date (YYYY-MM-DD) | 2025-09-08 |
|---|---|---|---|
| Name/Print | Erik J. Halverson | Registration Number | 73,552 |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application Number | 9103 |
| | Filing Date | 2024-08-15 |
| | First Named Inventor | Uday N. Kumar |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 3726071.00381 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.