# Exhibit G

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re U.S. Patent No.:    12,274,554    )
                                        )
Date of Issue:    April 15, 2025        )
                                        )
Name of Patentee: Kumar et al.          )
                                        )
Serial No.:    18/936,888               )
                                        )    Group Art Unit:  Not yet assigned
                                        )
Filed:    Nov. 4, 2024                  )    Examiner:  Not yet assigned
                                        )
Title:    Device features              )    Box: *Ex Parte* Reexam
          and design                    )
          elements for                  )
          long-term                     )
          adhesion                      )
_____)

## REQUEST FOR *EX PARTE* REEXAMINATION OF U.S. PATENT NO. 12,274,554

Mail Stop *Ex Parte* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Examiner:

Reexamination under 35 U.S.C. § 302 and 37 C.F.R. § 1.510 is hereby requested for claims 1 to 12 of U.S. Patent No. 12,274,554 (the "'554 patent"), which issued on April 15, 2024, to iRhythm Technologies, Inc., the applicant and assignee of record.

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

## TABLE OF CONTENTS

I.   CLAIMS FOR WHICH REEXAMINATION IS REQUIRED ........................1

II.   OTHER PROCEEDINGS.........................................................1

III.   PAYMENT OF FEES ............................................................1

IV.   TECHNOLOGY OF THE '554 PATENT ......................................2

   A.   Technological Overview ...................................................2

   B.   The '554 Patent ............................................................3

   C.   Prosecution History .......................................................5

V.   LEVEL OF ORDINARY SKILL ................................................7

VI.   CLAIM CONSTRUCTION .......................................................7

VII.   IDENTIFICATION OF PATENTS AND PRINTED PUBLICATIONS THAT PROVIDE SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY ..8

   A.   Substantial New Questions of Patentability.............................9

VIII.   GROUND I ........................................................................12

   A.   Overview of *Bly* ...........................................................12

   B.   *Bly* Renders Claims 1–12 Obvious ....................................15

IX.   GROUND II........................................................................38

   A.   Overview of *Baker* ........................................................38

   B.   *Bly* in View of *Baker* Renders Claims 1–12 Obvious................39

X.   GROUND III........................................................................61

   A.   Overview of *Matsumura* ..................................................61

   B.   *Matsumura* Anticipates or Renders Obvious Claim 1 ................63

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

XI.    CONCLUSION.................................................................................71

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| Ex. 1001 | The '554 patent |
| Ex. 1002 | U.S. Patent Application 18/936,888 |
| Ex. 1003 | U.S. Pub. No. 2009/0076363 to Bly et al. ("*Bly*") |
| Ex. 1004 | U.S. Patent No. 8,214,007 to Baker et al. ("*Baker*") |
| Ex. 1005 | Japanese Patent Publication No. JP2004-121360 to Matsumura ("*Matsumura*") |
| Ex. 1006 | English Translation of Japanese Patent Publication No. JP2004/121360 to Matsumura ("*Matsumura*") |
| Ex. 1007 | U.S. Pub. No. 2003/0069510 to Semler ("*Semler*") |

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

## I.    CLAIMS FOR WHICH REEXAMINATION IS REQUIRED

Reexamination is requested for claims 1 to 12 of the '554 patent (the "Challenged Claims") of the '554 patent.  A copy of the '554 patent is enclosed as Ex. 1001.  Requestor is not aware of any certificate of correction or reexamination certificate for the '554 patent.  The Challenged Claims are anticipated or at least rendered obvious by prior art not relied upon during examination of the '554 patent, including the references in this request, U.S. Patent Publication No. 2009/0076363 to Bly et al. ("*Bly*"), U.S. Patent No. 8,214,007 to Baker et al. ("*Baker*"), and Japanese Patent Publication No. JP2004-121360 to Matsumura ("*Matsumura*").

## II.    OTHER PROCEEDINGS

The '554 patent is presently asserted in *Bardy Diagnostics, Inc. v. iRhythm Technologies, Inc.*, 1:24-cv-01355 (D. Del.  Dec. 10, 2024).

## III.    PAYMENT OF FEES

The appropriate fee for this Request for *ex parte* reexamination is included herewith.  Requestor does not believe that any additional fees are required. However, if any additional charges are due, Requestor hereby authorizes the fees be charged to Deposit Account 02-1818.

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

## IV.    TECHNOLOGY OF THE '554 PATENT

### A.    Technological Overview

The '554 patent provides an electronic device for long-term adhesion to a mammal.    Ex. 1001, Abstract.    Specifically, the device records signals from electrodes located on the device.    *Id.*, 2:12-11-13.    These signals are converted to digital signals and stored.    *Id.*, 2:18-24.    Such patient monitoring devices were known well before the priority of the '554 patent.

For example, adherent patient devices that collect patient data, such as electrocardiogram signals, and include exterior structures having a protective cover were well-known before May of 2010.    *See* Ex. 1003, ¶12.    Such patches commonly include an adhesive to adhere the device to the patient's skin.    *Id.*, ¶84.    Additionally, electrodes disposed on the bottom of the device sense patient data.    *Id.*, ¶57.

And, because the electrode-skin contacts are critical for proper signal acquisition, devices often include features to promote patient compliance and decrease stress forces on the adhesive.    For example, patient devices are configured to move with the skin of the patient in relation to the electronics.    *See, e.g., id.*, ¶84 (explaining that the patient device includes a gap, which allows to the device to "conform to the skin and not be restricted by structures supported with the tape, for example rigid structures such as the printed circuitry board"), *see also id.*, ¶101 (detailing an air gap between the adhesive portion and the electronic module "to

2

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

provide patient comfort"). Accordingly, device electronics within a housing can move, or tilt, in relation to the adhesive layer that conforms to the patient's skin.

In the same example, the patient device includes a protective cover that supports the electrodes on the bottom surface and protects the electrical components. *Id.*, ¶72. To allow for long term monitoring, the device and the corresponding cover, adhesive, and electrical components, are specifically designed for long-term wear. *Id.*, ¶48. The devices further include various layers to provide additional support or enhance breathability to the skin. *Id.*, ¶¶76, 84-86, Figure 1J1.



*Id.*, Figure 1I1 (annotated).

### B.    The '554 Patent

The '554 patent issued from U.S. App. No. 18/936,888 on April 15, 2025. Ex. 1001 at Title Page. The '554 patent states that its technical field includes "devices worn on a body for monitoring, recording, reporting and/or treating the

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

person wearing the device." *Id.*, 1:39-43.  Structurally, the '554 patent describes a device with an external housing, external patch strip, internal electrical circuit, and various adhesive and polymeric layers.  *Id.*, 7:31-33, 13:66-14:14.  The patch includes an adhesive to adhere the device to the user's skin and electrodes "positioned on a bottom surface of the patch" to obtain physiological data.  *Id.*, 3:60-62, 8:1-2.  Additionally, an external layer (i.e., the housing) surrounds the internal contents of the device and the patch.  *Id.*, 7:31-46.  The device is designed with "various flexible portions and/or hinged portions can compensate for stress[] caused as the skin stretches or bends" such that the device "can provide long-term adhesion to the skin."  *Id.*, 13:23-31.



Ex. 1001, Figure 1C (annotated).

4

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

### C.    Prosecution History

The '554 Patent was filed on November 4, 2024 with claim 1.  Ex. 1002, 347.

On December 11, 2024, Applicant filed a preliminary amendment cancelling claim

1 and adding new claims 2 to 16.  Preliminary Amendment (Dec. 11, 2024), 2-3.

The preliminary amendment mooted the non-final Office Action rejection that the

examiner issued on December 20, 2024 regarding claim 1 only.  Non-Final Office

Action (Dec. 20, 2024).  Applicant filed a terminal disclaimer on February 19, 2025,

with respect to U.S. Patent No. 11,141,091.  Terminal Disclaimer (Feb. 19, 2025).

Then, on March 9, 2025, the Patent Office issued a Notice of Allowance including

an examiner's amendment, noting that Applicant approved the examiner's

amendment during an interview.  Notice of Allowance (Mar. 9, 2025), 6.  The

examiner's amendment amended the sole independent claim as follows:

> "An electronic device for long-term adhesion to a user, the
> device comprising:
>
> a housing comprising a physiologic data collection circuit, the
> housing positioned over a flexible layer extending <u>from beneath</u> ~~beyond~~
> the housing, the flexible layer comprising an electrode positioned on
> the bottom of the flexible layer at a position distal from the housing,
> wherein the flexible layer comprises [[an]] <u>a polymer</u> upper layer
> overlying an electrical connection, the electrical connection extending
> <u>linearly</u> from the physiologic data collection circuit to the electrode
> <u>when viewed from above the electronic device</u>, the <u>polymer</u> upper layer
> adhered to a <u>polymer</u> lower layer underlying the electrical connection;

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

> a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer; and

> a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user."

Notice of Allowance (Mar. 9, 2025), 6-7.  The Patent Office stated that "[t]he closest prior art of record does not disclose nor render obvious the presently claimed invention.  The prior art of record is silent on the flexible layer being made of two layers (upper and lower layers), its composition (polymers), and where everything is located on the overall electronic device with respect to the other components.  Each of the layers and components were well-known individually at the time of invention, however, the total combination of elements would not have been assembled as claimed (above) without the express use of the Applicant's original disclosure as a blueprint for doing so."  Notice of Allowance (Mar. 9, 2025), 8.

However, as set forth herein, the polymer upper and polymer lower layers with the electrical connection between the adhesive layers, and the claimed patch as a whole, are nothing more than routine and well-understood structural components that have been used in patient-adhesive devices.  The references relied upon in this paper present evidence that further confirm that the claimed electronic device for long-term adhesion to a user configuration is well-known in the art.

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

## V.    LEVEL OF ORDINARY SKILL

A person of ordinary skill in the art ("POSITA") is a hypothetical person who is presumed to know the relevant prior art and has ordinary creativity when interpreting and combining prior art. *In re Coutts*, 726 F. App'x 791, 796 (Fed. Cir. 2018); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-21 (2007).

With respect to the '554 patent, a POSITA, as of May 2010, had, among other attributes, a bachelor's degree in electrical engineering, electrophysiology, biomedical engineering, or an equivalent degree, and at least two to three years of experience designing wearable monitors that detect physiological signals with mechanical and/or electrical elements. Additional experience may substitute for education and vice versa. Such a POSITA would have had knowledge of design considerations known in the industry and would have been familiar with then-existing products and solutions.

## VI.    CLAIM CONSTRUCTION

During a reexamination proceeding, claims must be interpreted according to the "broadest reasonable interpretation" standard (the "BRI standard"). *In re NTP, Inc.*, 654 F.3d 1268, 1374-75, 99 U.S.P.Q.2d 1500 (Fed. Cir. 2011). The Federal Circuit explains that "[t]he broadest reasonable interpretation of a claim term may be the same as or broader than the construction of a term under the *Phillips*

7

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

standard." *Facebook, Inc. v. Pragmatus AV, LLC*, 582 F. App'x 864, 869 (Fed. Cir. 2014) (non-precedential).

The analysis presented below renders the Challenged Claims anticipated or at least obvious under ***any*** claim construction that might be applied as the broadest reasonable interpretation of the claim terms.

## VII.   IDENTIFICATION OF PATENTS AND PRINTED PUBLICATIONS THAT PROVIDE SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

This Request for Reexamination of claims 1 to 12 of the '554 patent is based on substantial new questions of patentability as summarized above and set forth below in detail.  The prior art cited herein was not relied upon to reject the claims of the '554 patent during prosecution.

Under 35 U.S.C. § 303, the director determines whether a request for reexamination raises a "substantial new question of patentability."  "The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office."  *Id.*; *see also In re Swanson*, 540 F.3d 1368, 1380 (Fed. Cir. 2008) ("[A] reference may present a substantial new question even if the examiner considered or cited a reference for one purpose in earlier proceedings.").

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

Requestor submits that Grounds I, II, and III, identified below, based on the relied-on references as identified in the chart, raise substantial new questions of patentability of the '554 patent.

| Ground | Challenged Claims | Basis | Prior Art |
|--------|-------------------|-------|-----------|
| I | 1 to 12 | §103 | *Bly* |
| II | 1 to 12 | §103 | *Bly* in view of *Baker* |
| III | 1 | §102/§103 | *Matsumura* |

### A.    Substantial New Questions of Patentability

A substantial new question of patentability exists when the prior art "presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the patent for which reexamination is requested."  M.P.E.P.  § 2216.  As shown below, the prior art relied upon by Requestor teaches each element of the challenged claims.

Additionally, the law requires a "common sense" approach to examining whether the claimed invention is obvious to a person skilled in the art.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 419-22 (2007).  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *Id.*, 416.  For example, when "there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

solutions," those circumstances tend to support the conclusion that a person of ordinary skill will have "good reason to pursue the known options within his or her technical grasp." *Id.*, 421. Finally, claims of a patent are obvious if they are a rearrangement of known features that perform as expected. *Id.*, 420-21.

While certain family members of the *Bly* reference used herein were submitted to the USPTO during prosecution of the '554 patent, neither *Bly* nor any family members of *Bly* were used in an actual rejection. Moreover, the family members were submitted in Information Disclosure Statements with over one thousand other references. *See, e.g.*, Ex. 1002, 1546 (submitting a family member of *Bly*, U.S. Patent No. 8,795,174, within a list of 1,100 references, Cite No. 319). Given the volume of references submitted, it is not surprising that the relevance of *Bly* to the patentability was overlooked. Indeed, it is proper to rely on references cited during prosecution when, as here, there is a demonstrated applicability of the reference to the patentability of the claims, thereby establishing a substantial new question of patentability. *See In re Swanson*, 540 F.3d 1368, 1375-76 (2008); *see also Ecto World, LLC v. RAI Strategic Holdings, Inc*, IPR2024-01280, Paper 13 at *7 (P.T.A.B. May 19, 2025) (precedential) (indicating that 325(d) may not apply where "the IDS that includes the asserted prior art contains over 1,000 references, which is over 40 times the size of a typical IDS").

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

During prosecution of the '554 Patent, Applicant submitted *Baker*; however, neither *Baker* nor any family members were used in an actual rejection. Also, *Baker* (like *Bly*) was submitted in a thirty-five page Information Disclosure Statements with over 1,000 other references. *See, e.g.*, Ex. 1002 at 1544 (submitting *Baker* within a list of 1,110 references, Cite No. 253). Again, given the volume of references submitted, it is not surprising that the relevance of *Baker* to the patentability of the '554 patent was overlooked. It is proper to rely on references cited during prosecution when there is a demonstrated applicability of the reference to the patentability of the claims, thereby establishing a substantial new question of patentability. *See In re Swanson*, 540 F.3d at 1375-76.

The English translation of *Matsumura* was not cited, and therefore not relied on, during prosecution of the '554 patent. Only the Japanese language version was cited in an IDS of over 1,000 other references, and never used in an actual rejection. *See, e.g.*, Ex. 1002 at 1569 (submitting *Baker* within a list of 1,110 references, Cite No. 956). Like with *Bly* and *Baker* above, it is not surprising that the relevance of *Matsumura* to the patentability of the '554 patent was overlooked given the large volume of references submitted, and given that the applicant never submitted a certified English translation of *Matsumura* to the USPTO. It is proper to rely on references cited during prosecution when there is a demonstrated applicability of the

11

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

reference to the patentability of the claims, thereby establishing a substantial new question of patentability. *See In re Swanson*, 540 F.3d at 1375-76.

## VIII.  GROUND I

### A.    Overview of *Bly*

*Bly* was filed as a non-provisional application on September 12, 2008, which stemmed from two provisional applications filed September 14, 2007, and May 23, 2008.  Ex. 1003 at Title Page.  *Bly* published as U.S. Patent Application Publication No. 2009/0076363 on March 19, 2009.  *Id.*  Thus, the publication of *Bly* is prior art to the '554 patent, which has a claimed priority date of May 12, 2010, under 35 U.S.C. § 102(b).  Ex. 1001 at page 2 (noting the priority date for the '554 patent).

References within the statutory terms of 35 U.S.C.A. § 102 qualify as prior art for an obviousness determination only when analogous to the claimed invention. *See In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004).  Two separate tests define the scope of analogous prior art: (1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference is reasonably pertinent to the particular problem with which the inventor is involved.  *Id.*

*Bly* is from the same field of endeavor as the '554 patent:  extended-wear, body-worn monitoring devices. Ex. 1001 at 1:40-46; Ex. 1003, ¶5.  Both references

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

describe devices that adhere to a patient for long term patient monitoring. Ex. 1001 at Title Page; Ex. 1003 at Title Page.

*Bly* is also directed to a problem facing the inventors of the '554 patent. Specifically, *Bly* describes an adherent monitoring device, which provides enhanced comfort to the patient. *Id.*, ¶8 ("In at least some instances, devices that are worn by the patient may be somewhat uncomfortable, which may lead to patients not wearing the devices and not complying with direction from the health care provider, such that data collection may be less than ideal."). Similarly, the '554 patent provides a device to "withstand longer-term adhesion[,] [recognizing] there is a need to implement device features and design elements that have the ability to enhance the likelihood of adhesion of a device to a human body for 24 hours or more." Ex. 1001 at 1:64-2:5. *Bly's* patient monitoring system is shown in Figure 1A below.



13

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

Exhibit 1003, Figure 1A.

The device includes adherent patch 110 with breathable tape 110T and gel cover 180.  Ex. 1003, ¶¶12-22, Figure 1J1.  Moreover, *Bly's* system includes cover 162, which serves to "protect the electronic components, and … the electronics housing 160."  *Id.*, ¶172.  The "[p]atient side 110A comprises adhesive 116A to adhere the patch 110 and adherent device 100 to patient P.  Electrodes 112A, 112B, 112C and 112D are affixed to adherent patch 110."  *Id.*, ¶57.



Ex. 1003, Figure 1J1 (annotated).

To ensure a proper connection between the adhesive layer and the skin of the patient, *Bly's* device includes a gap that extends between the breathable tape (i.e., the polymer lower layer in annotated Figure 1J1) and printed circuit board 120.  *Id.*, ¶15.  This gap "allow[s] the tape to adhered to the body to conform to the skin and

14

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

not be restricted by structures supported with the tape, for example rigid structures such as the printed circuitry board." *Id.* Additionally, the gap allows the rigid structure to move in relation to the adhesive portion, which increases patient comfort. *Id.*, ¶101. In reference to Figure 1I1, *Bly* explains that "[a]ir gap 169 allows adherent patch 110 and breathable tape 110T to remain supple and move, for example bend, with the skin of the patient with minimal flexing and/or bending of printed circuit board 120 and electronic components 130." *Id.*, Figure 1I1, reproduced below, identifies air gap 169 as the yellow layer.



Ex. 1003, Figure 1I1 (annotated).

### B. *Bly* Renders Claims 1–12 Obvious

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| **1[pre].** An electronic device for long-term adhesion to a user, the device comprising: | *Bly* discloses an electronic device for long-term adhesion to a user.<br><br>For example, *Bly's* disclosure "may be applicable to many applications in which physiological monitoring and/or therapy is used for ***extended periods***, for example wireless ***physiological monitoring for extended periods***." Ex. 1003, ¶5.<br><br>In particular, *Bly* discloses a "patch configured for patient comfort, such that the patch can be ***worn and/or tolerated by*** |

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
|  | *the patient for extended periods, for example 90 days or more*. The patch may be *worn continuously for at least seven days, for example 14 days*, and then replaced with another patch." *Id.*, ¶48.<br><br>Figure 1A shows that "[a]dherent device 100 can be *adhered to a patient* P at many locations, for example thorax T of patient P." *Id.*, ¶49.<br><br><br><br>Ex. 1003, Figure 1A (annotated). |
| **1[a].** a housing comprising a physiologic data collection circuit, | *Bly* discloses an electronic device for long-term adhesion that includes a housing comprising a physiologic data collection circuit.<br><br>For example, *Bly* discloses "the adherent device comprises an *electronics housing* adhered to at least one of the electronics components or the printed circuit board, such that the electronics housing is disposed between the cover and electronics components. The electronics housing may comprise a waterproof encapsulant to protect the printed circuit board and the electronic components from moisture and/or mechanical forces." Ex. 1003, ¶21.<br><br>The "electronics housing 160 may comprise a water proof material, for example a sealant adhesive such as epoxy or silicone coated over the electronics components and/or PCB." *Id.*, ¶72. |

16

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
|  | Specifically, "[i]n many embodiments, an electronics housing 160 may be disposed under cover 162 to protect the electronic components, and in some embodiments electronics housing 160 may comprise an encapsulant over the electronic components and PCB." *Id.*, ¶72. <br><br>  <br><br> *Id.*, Figure 1J (annotated). <br><br> For example, as shown in Figure 1D, "[e]lectronic components 130 can be connected to flex PCB 120 and/or mounted thereon. In some embodiments, electronic components 130 can be mounted on the additional PCB's [120A, 120B, 120C, 120D]. Electronic components 130 comprise components to ***take physiologic measurements***, transmit data to remote center 106 and receive commands from remote center 106." *Id.*, ¶¶59-60. <br><br>  <br><br> *Id.*, Figure 1D (annotated). <br><br> *Bly* discloses the electronics housing 160 comprising the electronic components 130 and further discloses "the electrodes are connected to the PCB with a flex connection, for |

17

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | example trace 123A of flex PCB 120, so as to provide strain relive between the electrodes 112A, 112B, 112C and 112D and the PCB." *Id.*, ¶91; *see also id.*, Figure 1D.<br><br>*Bly* also discloses "ECG circuitry 138 can generate electrocardiogram signals and data from two or more of electrodes 112A, 112B, 112C and 112D in many ways." *Id.*, ¶70; *see also id.*, Figure 1D.<br><br>Accordingly, *Bly* discloses a housing 160 comprising electronic components 130, as well as various circuits for collecting physiological data.<br><br><br><br>*Id.*, Figure 1I. |
| **1[b].** the housing positioned over a flexible layer extending from beneath the housing, the flexible layer comprising an electrode positioned on the bottom of the flexible layer at a position distal from the housing, | *Bly* discloses the housing positioned over a flexible layer extending from beneath the housing.<br><br>For example, Figure 1J illustrates housing 160 positioned over patch 110. Patch 110 is a flexible layer extending from beneath the housing.<br><br><br><br>Ex. 1003, Figure 1J (annotated). |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | *Bly* explains that "adhesive 116B is configured such that adherent patch 110 and cover 162 can be breathable from the skin to above cover 162 and so as to allow moisture vapor and air to travel from the skin to outside cover 162. In many embodiments, adhesive 116B is applied in a pattern on adherent patch 110 such that ***the patch and cover can be flexible*** so as to avoid detachment with body movement." *Id.*, ¶106. Furthermore, *Bly* discloses that patch 110 extends from beneath the housing 160. *See, e.g.*, *id.*, Figure 1G.  Ex. 1003, Figure 1G. *Bly* further discloses that the flexible layer comprises an electrode positioned on the bottom of the flexible layer. "FIG. 1B shows a bottom view of adherent device 100 as in FIG. 1A comprising an adherent patch 110. Adherent patch 110 comprises a first side, or a lower side 110A, that is oriented toward the skin of the patient when placed on the patient. In many embodiments, adherent patch 110 comprises a tape 110T which is a material, preferably breathable, with an adhesive 116A. Patient side 110A comprises adhesive 116A to adhere the patch 110 and adherent device 100 to patient P. Electrodes 112A, 112B, 112C and 112D are affixed to adherent patch 110. In many embodiments, at least four electrodes are attached to the patch, for example six electrodes." *Id.*, ¶57.  |

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | *Id.*, Figure 1B. |
| | Finally, *Bly* includes electrodes positioned on the bottom of the flexible layer at a position distal from the housing. For example, *Bly* explains that "ECG circuitry 138 can be connected to electrodes 112A and 112D so as to ***increase spacing*** of the electrodes. The inner electrodes may be positioned near the outer electrodes to increase the voltage of the ECG signal measured by ECG circuitry 138." *Id.*, ¶70. |
| | Moreover, "the two inside electrodes [112B, 112C] may comprise force, or current electrodes, with a center to center spacing [of] about 50 mm," and "the two outside electrodes may comprise measurement electrodes, for example voltage electrodes, and a center-center spacing between adjacent voltage and current electrodes is … about 35 mm." *Id.*, ¶80. |
| | *Bly* discloses that cover 162 may be 4 inches in length. *Id.*, ¶99. As a result, electronics housing 160 may have a length shorter than 4 inches because the "electronics housing 160 may be disposed under cover 162." *Id.*, ¶72. Based on the spacing measurements and dimensions disclosed in *Bly*, the two outer electrodes (112A, 112D) must be located distal to electronics housing 162. In such embodiment, the outer electrodes of *Bly* would be positioned on the bottom of the flexible layer distal from the housing. |
| | To the extent not expressly disclosed by *Bly*, the measurements provided by *Bly* would at least render obvious the distal limitation under the broadest reasonable interpretation of the electrode being located "distal from the housing." For example, a POSITA would understand that the goal to "increase the voltage of the ECG signal measured by ECG circuitry 138" (*Id.*, ¶70) would motivate a POSITA to position the electrodes away from the housing, confirmed by the stated goal of "increase[ing the] spacing of the electrodes." *Id.* |
| **1[c].** wherein the flexible layer comprises a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the | *Bly* discloses a flexible layer comprising a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection. |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection; | As introduced regarding claim element 1[b], *Bly* provides a housing positioned over a flexible layer, which extends from the housing. In reference to Figure 1J1, the patch is the flexible layer and gel cover 180 is the polymer upper layer overlying an electrical connection.<br><br>First, *Bly* discloses that get cover 180 is a polymer upper layer. "A gel cover 180, or gel cover layer, for example a polyurethane non-woven tape, can be positioned over patch 110 comprising the breathable tape." *Id.*, ¶85.<br><br>"Gel cover 180 may comprise at least one of a polyurethane, polyethylene, polyolefin, rayon, PVC, silicone, non-woven material, foam, or a film. In many embodiments gel cover 180 may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110. In specific embodiments gel cover 180 may comprise a polyurethane film with acrylate pressure sensitive adhesive." *Id.,* ¶87.<br><br><br>Ex. 1003, Figure 1J1 (annotated).<br><br>The gel cover (i.e., the polymer upper layer) adheres to a breathable tape. "[G]el cover 180 may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110." *Id.*, ¶87. *Bly's* breathable tape is a polymer lower layer that underlies the electrical connection. "In many embodiments, adherent patch 110 may comprise a layer of breathable tape 110T, for example a known breathable tape, such as tricot-knit polyester fabric. In many embodiments, breathable tape 110T comprises a backing material, or backing 111, with an adhesive." *Id.*, ¶81. As |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | shown in Figure 1J1 above, connector 122A is positioned below gel cover 180 but above breathable tape 111. *Id.*, Figure 1J1 (annotated). |

Additionally, *Bly* discloses that "printed circuit board (PCB), for example flex printed circuit board 120, may be connected to electrodes 112A, 112B, 112C and 112D with connectors 122A, 122B, 122C and 122D. Flex printed circuit board 120 can include traces 123A, 123B, 123C and 123D that extend to connectors 122A, 122B, 122C and 122D, respectively, on the flex printed circuit board." *Id.*, ¶59; *see id.*, Figure 1J1 (annotated below).

As an example, *Bly* discloses that "electrodes 112A1, 112B1, 112C1 and 112D1 can be printed on a flexible connector 112F, such as silver ink on polyurethane…. ***The flexible connector 112F comprising the electrodes can extend from under the gel cover [180] to the printed circuit board to connect to the printed circuit boards and/or components supported thereon.***" *Id.*, ¶78.



*Id.*, Figure 1J1 (annotated).

| **1[d].** a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer; and | *Bly* discloses a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer.

For example, *Bly* discloses an adherent device comprising "a gel cover positioned over the breathable tape[.]" Ex. 1003, ¶22. |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | Gel cover 180 may be made of "at least one of a polyurethane, polyethylene, polyolefin, rayon, PVC, silicone, non-woven material, foam, or a film." *Id.*, ¶87.<br><br>Further, gel cover 180, annotated in blue, "***may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110***" (adherent patch 110 which may comprise breathable tape 110T are annotated in orange). *Id.*, ¶87.<br><br><br>*Id.*, Figure 1J1 (annotated).<br><br>Accordingly, in this example, gel cover's 180 adhesive coating that connects gel cover 180 to adherent patch 110 is the connecting adhesive layer.<br><br>As another example, "[a]dherent patch 100 comprises a second side, or upper side 110B," and "[a]n adhesive 116B can be applied to upper side 110B to adhere structures, for example a breathable cover, to the patch such that the patch can support the electronics and other structures when the patch is adhered to the patient." *Id.*, ¶58. |

23

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| |  *Id.*, Figure 1I (annotated). <br><br> *Bly* discloses "adhesive 116B is coated on upper side 110A of adherent patch 110B, such that the electronics module can be adhered to and/or separated from the adhesive component." *Id.*, ¶109. <br><br> *Id.*, Figure 1C (annotated). <br><br> Accordingly, in this second example, adhesive 116B (yellow) is the connecting adhesive layer positioned under gel cover 180 (blue) (i.e., polymer upper layer) and on top of a lower layer of the adherent patch 110 (i.e., polymer lower layer) and adhering gel cover 180 to adherent patch 110. |

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| |  *Id.*, Figure 1J1 (annotated). |
| **1[e].** a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user. | *Bly* discloses a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user.<br><br>For example, *Bly* discloses "an adhesive 116A, for example breathable tape adhesive comprising a layer of acrylate pressure sensitive adhesive, can be disposed on underside 110A of patch 110." Ex. 1003, ¶84.<br><br>*Id.*, Figure 1B (annotated).<br><br>The "adhesive 116A adheres adherent patch 110 comprising backing 111 to the skin of the patient[.]" *Id.*<br><br>Specifically, "[a]dherent patch 110 comprises a first side, or a lower side 110A, that is oriented toward the skin of the patient when placed on the patient. In many embodiments, adherent |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
|  | patch 110 comprises a tape 110T which is a material, preferably breathable, with an adhesive 116A. ***Patient side 110A comprises adhesive 116A to adhere the patch 110 and adherent device 100 to patient P*.**" *Id.,* ¶57.<br><br><br><br>*Id.*, Figure 1I (annotated).<br><br><br><br>*Id.*, Figure 1A (annotated). |
| **2.** The electronic device of claim 1, further comprising a flap extending beneath the housing. | *Bly* discloses a flap extending beneath the housing.<br><br>For example, *Bly* discloses that "adherent patch 110 stretches and/or retracts with the skin of the patient." Ex. 1003, ¶95.<br><br>*Bly* specifies that "[e]lectronics components 130, printed circuit board 120, and electronics housing 160 are disposed between the stretchable breathable material of adherent patch 110 and the stretchable breathable material of cover 160 so as to allow the adherent patch 110 and cover 160 to stretch together while electronics components 130, printed circuit |

26

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | board 120, and electronics housing 160 do not stretch substantially, if at all." *Id.*, ¶100.<br><br>As shown in Figures 1G, 1I, for example, adherent patch 110 extends beneath the electronics housing 160 and forms flaps (annotated in red) that are integral with the lateral edges of adherent patch 110.<br><br><br><br>*Id.*, Figure 1G (annotated).<br><br><br><br>*Id.*, Figure 1I (annotated).<br><br>*Bly* discloses that the patch is made of a thin, flexible material. For example, the "adhesive patch may comprise a ***thin, flexible, breathable*** patch[.]" *Id.*, ¶111.<br><br>Further, "[t]he breathable cover 162 and adherent patch 110 comprise breathable tape.…  The breathable tape may comprise the ***stretchable breathable material*** with the adhesive …, such that both the adherent patch and cover can stretch with the skin of the patient." *Id.*, ¶94. |

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | The portion(s) of the adherent patch that extend wider and below the housing is a "flap" as recited in claim 2. The adherent patch is a thin material with freedom to stretch and flex. The patch is also connected to a larger body, which allows it to serve as an extension of the device with the ability to bend and flex due to the material. Thus, *Bly* discloses a flap under the broadest reasonable interpretation of this claim element. <br><br> In another example, *Bly* states that "the patch comprises two electrodes, for example two electrodes to measure the electrocardiogram (ECG) of the patient. Gel 114A, gel 114B, gel 114C and gel 114D can each be positioned over electrodes 112A, 112B, 112C and 112D, respectively, to provide electrical conductivity between the electrodes and the skin of the patient." Ex. 1003, ¶57. In this example embodiment, the gel is a flap that extends beneath the housing. *See id.*, Figure 1J. <br><br>  <br> FIG. 1J <br> Ex. 1003, Figure 1J. <br><br>  <br> Ex. 1003, Figure 1I. |
| **3.** The electronic device of claim 1, wherein the housing is rigid. | *Bly* discloses a rigid housing. <br><br> Additionally, *Bly* states that "the electronics layer may be encapsulated in electronics housing 160. Electronics housing |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | 160 may comprise an encapsulant, such as a dip coating, which may comprise a waterproof material, for example silicone and/or epoxy. In many embodiments, the PCB encapsulant protects the PCB and/or electronic components from moisture and/or mechanical forces. The encapsulant may comprise silicone, epoxy, other adhesives and/or sealants. In some embodiments, the electronics housing may comprising ***metal and/or plastic housing*** and potted with aforementioned sealants and/or adhesives." Ex. 1003, ¶90.  In the disclosed embodiment of *Bly*, the plastic and metal materials used to construct the housing "to protect the printed circuit board and the electronic components from … mechanical forces" would be understood to be a rigid material in order to accomplish the stated protection. *Id.*, ¶21.  This is confirmed by the fact it was well known to rely on rigid housings to protect components in long-term monitors.  *See, e.g.* Ex. 1005, ¶2 (disclosing "a "HEARTCARD™ monitor [that] is intended for long-term use, and thus is enclosed in a durable ***rigid housing***, []provided with long-life batteries...").  In yet another example, figure 4B of *Matsumura* discloses the housing of the signal processor 10 sinking into the first sheet 1 (*see* reference numeral 10b).  Ex. 1005, Figure 4b.  To allow for such function, *Matsumura*'s housing is more rigid than the insulating material of the first sheet 1 into which the housing is pressed.  *See id.*, ¶17-18.<br><br>Specifically, "FIG. 1F shows a top view of a cover 162 over the batteries, electronic components and flex printed circuit board as in FIGS. 1A to 1E. In many embodiments, an electronics housing 160 may be disposed under cover 162 to protect the electronic components, and in some embodiments electronics housing 160 may comprise an encapsulant over the electronic components and PCB. In some embodiments, cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162. In many embodiments, electronics housing 160 may comprise a water proof material, for example a sealant adhesive such as epoxy or silicone coated over the electronics components and/or PCB. In some embodiments electronics housing 160 ***may comprise metal and/or plastic***.  Metal or plastic may be potted with a material such as epoxy or silicone." Ex. 1003, ¶72. |
| **4.**  The electronic device of claim 1, wherein the housing | *Bly* discloses a housing configured to remain connected to the flexible layer when the housing is tilted at an angle relative the lower adhesive layer in response to movement of the user. |

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| is configured to remain connected to the flexible layer when the housing is tilted at an angle relative the lower adhesive layer in response to movement of the user. | For example, *Bly* states that "the electrodes can be connected to the PCB and/or electronics module with a flex PCB 120, such that the electrodes and adherent patch can move independently from the PCB module." Ex. 1003, ¶91.<br><br>Further, *Bly* discloses "cover 162 can attach the PCB module to adherent patch 110 with cover 162, so as to avoid interaction of adherent patch 110C with the PCB having the electronics mounted therein." *Id.*, ¶105.<br><br>A POSITA would have understood that air gap 169 allows housing 160 to tilt at an angle relative to the lower adhesive layer 116A in response to movement of the user. For example, device 100 adheres to a patient via adhesive layer 116A. If the patient's skin moves in an upward direction (e.g., in the upward direction of arrow 186 in the below figure), the height of air gap 169 decreases because printed circuit board 120 tilts. Thus, air gap 169 allows the printed circuit board 120 and electronic components 130 to move independently of adherent patch 110 (and adhesive layer 116). As *Bly* explains, this allows the patch to move with the patient's skin for patient comfort. For added clarity, an additionally zoomed in view of annotated Figure 1I is provided below.<br><br>Specifically, *Bly* explains that "[a]ir gap 169 may extend from adherent patch 110 to the electronics module and/or PCB, so as to provide patient comfort. Air gap 169 allows adherent patch 110 and breathable tape 110T to remain supple and move, for example bend, with the skin of the patient with minimal flexing and/or bending of printed circuit board 120 and electronic components 130, as indicated by arrows 186" in Figure 1I. Ex. 1003, ¶101.<br><br><br>FIG. 1I |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | *Id.*, Figure 1I (annotated). |
| | In reference to Figure 1I, as indicated by red arrows in Figure 1I above, electronics housing 160 is configured to remain connected to the adherent patch 110 (e.g., flexible layer) when the electronic housing (e.g., housing) and adhesive 116A (e.g., lower adhesive layer) are flexed or bent (e.g., tilted) relative to each other.<br><br>The electronics housing 160 (e.g., housing) is "adhered to at least one of the electronics components or the printed circuit board, such that the electronics housing is disposed between the cover and electronics components." *Id.*, ¶21. "Cover 162 [e.g., electrode-supporting section] can be attached to [] electronics housing 160 comprising over the encapsulated [printed circuit board]." *Id.*, ¶105. Moreover, the device includes "[c]onnectors 122A, 122B, 122C and 122D [] positioned on flex printed circuit board 120[.]" *Id.*, ¶59.<br><br>Figure 1I discloses the configuration of these elements and the air gap (annotated in green).<br><br><br>FIG. 1I<br><br>*Id.*, Figure 1I (annotated). |

31

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| |  *Id.*, Figure 1I (annotated). <br><br> In reference to Figure 1I, movement of the user may cause 116A to move upward, decreasing the space of air gap 169, while the printed circuit board 120 and electronic components 130 independently move, which a POSITA would understand to render obvious the claimed "tilting" limitation. <br><br> Thus, the housing, electronics, and PCB are balanced on the connector 122A, which acts as a central balancing point. The air gap below allows the housing, electronics, and PCB freedom to move because nothing is blocking or resisting the motion. Thus, when a user wearing the device moves, the adherent device's center of mass will also shift and cause housing to tilt at an angle. In other words, the configuration of the device causes the housing to behave like a seesaw and tilt at an angle relative to the adhesive 116A (e.g., lower adhesive layer) in response to movement of the user. <br><br> Thus, when the device is moved based on a user's movement, the air gap 169 allows the housing and electronic components to "remain supple and move, for example bend, with the skin of the patient." *Id.*, ¶101. Movement of the patient will create slight shifts in the center of mass of the device, which will cause the housing to adjust at various angles as allowed by the air gap 169. |
| **5.** The electronic device of claim 1, further comprising a | *Bly* discloses the electronic device of claim 1, further comprising a hinge portion adjacent the housing. |

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| hinge portion adjacent the housing. | *See* claim 4, which is incorporated by reference herein.  As described in reference to claim element 4, *Bly's* device includes an air gap, which allows the housing to tilt at an angle relative to the lower adhesive layer in response to movement of the user.  To provide such function, *Bly* further discloses a "hinge portion adjacent the housing" under the broadest reasonable interpretation of this claim element. <br><br> For example, as shown in Figure 1I1, *Bly* discloses a flexible connector 122A to provide strain relief.  Ex. 1003, ¶78, Figure 1I1 (annotated), Figure 1I. <br><br>  <br> Ex. 1003, Figure 1I1 (annotated). <br><br> A POSITA would have understood that the housing, printed circuit board, and electronic components pivot via connector 122A when the described motion occurs.  As described in reference to claim element 1[e], air gap 169 disposed below these elements allow the same to tilt in response to the lower to adhesive layer 116A moving with the skin of the patient.  *See, e.g., id.*, ¶101 ("Air gap 169 allows adherent patch 110 and breathable tape 110T to remain supple and move, for example bend, with the skin of the patient with minimal flexing and/or bending of printed circuit board 120 and electronic components 130, as indicated by arrows 186."). |
| **6.**  The electronic device of claim 1, wherein the lower adhesive layer comprises a hydrocolloid adhesive. | *Bly* discloses the lower adhesive layer comprising a hydrocolloid adhesive. <br><br> Specifically, *Bly* discloses "In many embodiments, ***adhesive 116A comprises*** at least one of acrylate, silicone, synthetic rubber, synthetic resin, ***hydrocolloid adhesive***, pressure sensitive adhesive (PSA), or acrylate pressure sensitive adhesive." <br><br> Further, adhesive 116A "can be disposed on underside 110A of patch 110."  Thus, *Bly* discloses that the lower adhesive layer (adhesive 116A) comprises a hydrocolloid adhesive. |

33

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | |
| **7.** The electronic device of claim 1, wherein the physiologic data collection circuit is configured to collect cardiac rhythm data from the user. | *Bly* discloses the physiologic data collection circuit configured to collect cardiac rhythm data from the user.<br><br>Specifically, *Bly* discloses that "[e]lectronic components 130 comprise components to take physiologic measurements, transmit data to remote center 106 and receive commands from remote center 106." Ex. 1003, ¶60.<br><br>Further, "[e]lectronics components 130 comprise an activity sensor and activity circuitry 134, impedance circuitry 136 and ***electrocardiogram circuitry, for example ECG circuitry 136***." Ex. 1003, ¶60.<br><br>"System 10 can perform the following functions: initiation, programming, measuring, storing, analyzing, communicating, predicting, and displaying.  The adherent device may contain a subset of the following physiological sensors: bioimpedance, respiration, respiration rate variability, heart rate (ave, min, max), ***heart rhythm***, hear rate variability (hereinafter "HRV"), heart rate turbulence (hereinafter "HRT"), heart sounds (e.g. S3), respiratory sounds, blood pressure, activity, posture, wake/sleep, orthopnea, temperature/heat flux, and weight." *Id.*, ¶54. |
| **8.** The electronic device of claim 1, wherein the polymer upper layer extends horizontally away from the housing beyond a boundary of the electrode. | *Bly* discloses the polymer upper layer extending horizontally away from the housing beyond a boundary of the electrode. *See* claim limitation 1[c].<br><br>*Bly* discloses "[a]n edge of the gel cover may extend from about 5 to about 15 mm beyond an edge of a gel over the at least one electrode." Ex. 1003, ¶22.<br><br>As shown in Figure 1J1, *Bly's* gel cover 180 (blue) (e.g., polymer upper layer) extends horizontally away from the electronics housing 160 (red) and beyond a boundary of the electrodes 112A1, 112A2, 112A3, 112A4. |

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| |  *Id.*, Figure 1J1 (annotated). |
| **9.** The electronic device of claim 1, further comprising an upper adhesive layer positioned over the polymer upper layer. | *Bly* discloses an upper adhesive layer positioned over the polymer upper layer.

For example, *Bly* discloses "cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162." Ex. 1003, ¶72.

As shown in Figure 1J, cover 162 (green) is positioned over gel cover 180 (blue) (e.g., polymer upper layer), and therefore adhesive 164 (not shown) on the underside of cover 162 is also positioned over gel cover 180.

*Id.*, Figure 1J1 (annotated). |

35

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | |
| **10.** The electronic device of claim 9, wherein the upper adhesive layer is positioned above the electrode. | *Bly* discloses the upper adhesive layer positioned above the electrode.<br><br>For example, *Bly* discloses "cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162." Ex. 1003, ¶72.<br><br>As shown in Figure 1J, cover 162 (green) is positioned above electrodes 112A1, 112A2, 112A3, 112A4, and therefore adhesive 164 (not shown) on the underside of cover 162 is also positioned above gel cover 180.<br><br><br><br>*Id.*, Figure 1J1 (annotated). |
| **11.** The electronic device of claim 10, wherein the upper adhesive layer extends horizontally away from the housing beyond a boundary of the polymer upper layer. | *Bly* discloses the upper adhesive layer extending horizontally away from the housing beyond a boundary of the polymer upper layer.<br><br>For example, *Bly* discloses "cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162." Ex. 1003, ¶72.<br><br>As shown in Figure 1J, cover 162 (green) is positioned over gel cover 180 (blue) (e.g., polymer upper layer) and extends horizontally away from a boundary of gel cover 180. Therefore, adhesive 164 (not shown) on the underside of cover |

36

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | 162 also extends horizontally beyond a boundary of gel cover 180.  *Id.*, Figure 1J1 (annotated). Further, "the edge of the cover [162] may be adhered at the edge of the adherent patch [110]." *Id.*, ¶107. Thus, the cover 162 extends as far as the edge of the adherent patch 110, which means it extends beyond a boundary of gel cover 180 (e.g., polymer upper layer). |
| **12.** The electronic device of claim 1, wherein the lower adhesive layer extends at least partially below the housing. | *Bly* discloses the lower adhesive layer extending at least partially below the housing. For example, *Bly's* adherent patch 110 includes a "lower side 110A" further including tape 110T, or adhesive 116A (e.g., lower adhesive layer). Ex. 1003, ¶57. As shown in Figure 1I, adhesive 116A (green) extends at least partially below the housing (red).  |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | *Id.*, Figure 1I (annotated). |

## IX.    GROUND II

To the extent the claims 1 to 12 of the '554 patent are not rendered obvious by *Bly* alone, the combination of *Baker* with the above identified teachings of *Bly* render obvious claims 1 to 12.  As set forth below, a POSITA would have been motivated to modify *Bly* in view of *Baker* to accomplish the goals of *Bly* as it relates to increased spacing and enhanced voltage pickup, and to adopt a structure such as that of *Baker*, which accomplishes those goals.  A POSITA would have been able to make this combination with an expectation of success.

### A.    Overview of *Baker*

*Baker* was filed as U.S. Application No. 11/591,619 on November 1, 2006. Ex. 1004 at Title Page.  *Baker* is prior art to the '554 patent, which has a claimed priority date of May 12, 2010, under 35 U.S.C. § 102(a).  Ex. 1001 at page 2 (noting the claimed priority date for the '554 patent).  *Baker* provides a body-worn patient monitoring device that adhesively attaches to a patient's skin for measuring physiological signals.  Ex. 1004, Abstract, Cl. 1.  The body-worn patient monitoring device includes computation-communication module 102 that attaches to disposable electrode module 110.  *Id.*, Cl. 1, 4:58-5:4, Figure 2.  In Figure 2, the disposable

38

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

electrode module 110 includes electrode gels 103 for ECG monitoring. *Id.*, 5:17-24.

Figure 2 further shows the electrodes disposed on the two sides of disposable electrode module 110. *Id.*, 5:17-24, Figure 2.



Ex. 1004, Figure 2 (annotated).

### B. *Bly* in View of *Baker* Renders Claims 1–12 Obvious

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| **1[pre].** An electronic device for long-term adhesion to a user, the device comprising: | *Bly* discloses an electronic device for long-term adhesion to a user.<br><br>For example, *Bly's* disclosure "may be applicable to many applications in which physiological monitoring and/or therapy is used for ***extended periods***, for example wireless ***physiological monitoring for extended periods***." Ex. 1003, ¶5.<br><br>In particular, *Bly* discloses a "patch configured for patient comfort, such that the patch can be ***worn and/or tolerated by*** |

39

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | *the patient for extended periods, for example 90 days or more*. The patch may be *worn continuously for at least seven days, for example 14 days*, and then replaced with another patch." *Id.*, ¶48.<br><br>Figure 1A shows that "[a]dherent device 100 can be *adhered to a patient* P at many locations, for example thorax T of patient P." *Id.*, ¶49.<br><br><br><br>Ex. 1003, Figure 1A (annotated). |
| **1[a].** a housing comprising a physiologic data collection circuit, | *Bly* discloses an electronic device for long-term adhesion that includes a housing comprising a physiologic data collection circuit.<br><br>For example, *Bly* discloses "the adherent device comprises an *electronics housing* adhered to at least one of the electronics components or the printed circuit board, such that the electronics housing is disposed between the cover and electronics components. The electronics housing may comprise a waterproof encapsulant to protect the printed circuit board and the electronic components from moisture and/or mechanical forces." Ex. 1003, ¶21.<br><br>The "electronics housing 160 may comprise a water proof material, for example a sealant adhesive such as epoxy or silicone coated over the electronic components and/or PCB." *Id.*, ¶72. |

40

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | Specifically, "[i]n many embodiments, an electronics housing 160 may be disposed under cover 162 to protect the electronic components, and in some embodiments electronics housing 160 may comprise an encapsulant over the electronic components and PCB." *Id.*, ¶72.<br><br><br>*Id.*, Figure 1J (annotated).<br><br>For example, as shown in Figure 1D, "[e]lectronic components 130 can be connected to flex PCB 120 and/or mounted thereon. In some embodiments, electronic components 130 can be mounted on the additional PCB's [120A, 120B, 120C, 120D]. Electronic components 130 comprise components to ***take physiologic measurements***, transmit data to remote center 106 and receive commands from remote center 106." *Id.*, ¶¶59-60.<br><br><br>*Id.*, Figure 1D (annotated).<br><br>*Bly* discloses the electronics housing 160 comprising the electronic components 130 and further discloses "the electrodes are connected to the PCB with a flex connection, for example |

41

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | trace 123A of flex PCB 120, so as to provide strain relive between the electrodes 112A, 112B, 112C and 112D and the PCB." *Id.*, ¶91; *see also id.*, Figure 1D.<br><br>*Bly* also discloses "ECG circuitry 138 can generate electrocardiogram signals and data from two or more of electrodes 112A, 112B, 112C and 112D in many ways." *Id.*, ¶70; *see also id.*, Figure 1D.<br><br>Accordingly, *Bly* discloses a housing 160 comprising electronic components 130, as well as various circuits for collecting physiological data.<br><br><br>FIG. 1I<br><br>*Id.*, Figure 1I. |
| **1[b].** the housing positioned over a flexible layer extending from beneath the housing, the flexible layer comprising an electrode positioned on the bottom of the flexible layer at a position distal from the housing, | *Bly* discloses a housing positioned over a flexible layer extending from the housing.<br><br>For the same reasons as in Ground 1, *Bly* discloses a housing positioned over a flexible layer extending from the housing. Namely, *Bly* explains that "the two inside electrodes [112B, 112C] may comprise force, or current electrodes, with a center to center spacing [of] about 50 mm," and "the two outside electrodes may comprise measurement electrodes, for example voltage electrodes, and a center-center spacing between adjacent voltage and current electrodes is … about 35 mm." Ex. 1003, ¶80. Moreover, *Bly* discloses that cover 162, which is disposed over the housing, may be 4 inches in length. *Id.*, ¶¶72, 99. Based on this spacing, the two outer electrodes (112A, 112D) must be located distal to electronics housing 162.<br><br>To the extent that *Bly* alone does not disclose or render obvious claim element 1[b], the combination of *Bly* in view of *Baker* renders obvious claim element 1[b]. |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | *Bly* explains that the outer electrodes (112A and 112B) may be sense electrodes to "measure the impedance of the patient to determine respiration rate and/or the hydration of the patient." *Id.*, ¶67.  A POSITA would have understood that the necessary separation distance between electrodes to maintain proper inter-electrode distances for effective signal acquisition would require at least a spacing of 4.5 inches (around 115 to 120 mm). *Bly's* disclosure further confirms the importance of such spacing, explaining that "ECG circuitry 138 can be connected to electrodes 112A and 112D ***so as to increase spacing of the electrodes***." *Id.*, ¶70.<br><br>To achieve proper signal acquisition (voltage reading), a POSITA would have understood that *Bly's* embodiments include outer electrodes that are distal from the housing or would have been motivated to ensure those outer electrodes are distal from the housing, which is further confirmed by *Baker's* disclosure.  To achieve the maximum spacing goals (as stated by *Bly*), while minimizing the volume of material in the patch and the size of the patch, a POSITA would have been motivated to position the electrodes distal from the housing, as demonstrated in *Baker*.<br><br>For example, *Baker* discloses computation module 102.  Ex. 1004, Figure 1C (reproduced below).  Additionally, electrodes 103, which adhere to the patient's skin, are positioned distal from the module.  *Id.*, 5:33-37.  Accordingly, consistent with both *Baker* and *Bly*, providing an electrode on the adhesive patch at a position distal from the housing (if not already disclosed in *Bly*), would have been obvious in view of *Bly* and *Baker*.<br><br><br><br>Ex. 1004, Figure 1. |
| **1[c].**  wherein the flexible layer comprises a polymer upper layer overlying an | *Bly* discloses a flexible layer comprising a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the physiologic data collection circuit |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| electrical connection, the electrical connection extending linearly from the physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection; | to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection.<br><br>As introduced regarding claim element 1[b], *Bly* provides a housing positioned over a flexible layer, which extends from the housing. In reference to Figure 1J1, the patch is the flexible layer and gel cover 180 is the polymer upper layer overlying an electrical connection.<br><br>First, *Bly* discloses that get cover 180 is a polymer upper layer. "A gel cover 180, or gel cover layer, for example a polyurethane non-woven tape, can be positioned over patch 110 comprising the breathable tape." *Id.*, ¶85.<br><br>"Gel cover 180 may comprise at least one of a polyurethane, polyethylene, polyolefin, rayon, PVC, silicone, non-woven material, foam, or a film. In many embodiments gel cover 180 may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110. In specific embodiments gel cover 180 may comprise a polyurethane film with acrylate pressure sensitive adhesive." *Id.*, ¶87.<br><br><br><br>Ex. 1003, Figure 1J1 (annotated).<br><br>The gel cover (i.e., the polymer upper layer) adheres to a breathable tape. "[G]el cover 180 may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110." *Id.*, ¶87. *Bly's* breathable tape is a polymer lower layer that underlies the electrical connection. "In many embodiments, adherent patch 110 may |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | comprise a layer of breathable tape 110T, for example a known breathable tape, such as tricot-knit polyester fabric. In many embodiments, breathable tape 110T comprises a backing material, or backing 111, with an adhesive." *Id.*, ¶81. As shown in Figure 1J1 above, connector 122A is positioned below gel cover 180 but above breathable tape 111. *Id.*, Figure 1J1 (annotated).<br><br>Additionally, *Bly* discloses that "printed circuit board (PCB), for example flex printed circuit board 120, may be connected to electrodes 112A, 112B, 112C and 112D with connectors 122A, 122B, 122C and 122D. Flex printed circuit board 120 can include traces 123A, 123B, 123C and 123D that extend to connectors 122A, 122B, 122C and 122D, respectively, on the flex printed circuit board." *Id.*, ¶59; *see id.*, Figure 1J1 (annotated below).<br><br>As an example, *Bly* discloses that "electrodes 112A1, 112B1, 112C1 and 112D1 can be printed on a flexible connector 112F, such as silver ink on polyurethane…. ***The flexible connector 112F comprising the electrodes can extend from under the gel cover [180] to the printed circuit board to connect to the printed circuit boards and/or components supported thereon***." *Id.*, ¶78.<br><br><br><br>*Id.*, Figure 1J1 (annotated). |
| **1[d].** a connecting adhesive layer positioned under the polymer upper layer, the | *Bly* discloses a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer. |

45

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| connecting adhesive layer adhering the polymer upper layer to the polymer lower layer; and | For example, *Bly* discloses an adherent device comprising "a gel cover positioned over the breathable tape[.]" Ex. 1003, ¶22.<br><br>Gel cover 180 may be made of "at least one of a polyurethane, polyethylene, polyolefin, rayon, PVC, silicone, non-woven material, foam, or a film." *Id.*, ¶87.<br><br>Further, gel cover 180, annotated in blue, "***may comprise an adhesive, for example a acrylate pressure sensitive adhesive, to adhere the gel cover to adherent patch 110***" (adherent patch 110 which may comprise breathable tape 110T are annotated in orange). *Id.*, ¶87.<br><br><br><br>*Id.*, Figure 1J1 (annotated).<br><br>Accordingly, in this example, gel cover's 180 adhesive coating that connects gel cover 180 to adherent patch 110 is the connecting adhesive layer.<br><br>As another example, "[a]dherent patch 100 comprises a second side, or upper side 110B," and "[a]n adhesive 116B can be applied to upper side 110B to adhere structures, for example a breathable cover, to the patch such that the patch can support the electronics and other structures when the patch is adhered to the patient." *Id.*, ¶58. |

46

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| |  *Id.*, Figure 1I (annotated). *Bly* discloses "adhesive 116B is coated on upper side 110A of adherent patch 110B, such that the electronics module can be adhered to and/or separated from the adhesive component." *Id.*, ¶109. *Id.*, Figure 1C (annotated). Accordingly, in this second example, adhesive 116B (yellow) is the connecting adhesive layer positioned under gel cover 180 (blue) (i.e., polymer upper layer) and on top of a lower layer of the adherent patch 110 (i.e., polymer lower layer) and adhering gel cover 180 to adherent patch 110. |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**



| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | *Id.*, Figure 1J1 (annotated). |
| **1[e].** a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user. | *Bly* discloses a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user.<br><br>For example, *Bly* discloses "an adhesive 116A, for example breathable tape adhesive comprising a layer of acrylate pressure sensitive adhesive, can be disposed on underside 110A of patch 110." Ex. 1003, ¶84.<br><br>*Id.*, Figure 1B (annotated).<br><br>The "adhesive 116A adheres adherent patch 110 comprising backing 111 to the skin of the patient[.]" *Id.*<br><br>Specifically, "[a]dherent patch 110 comprises a first side, or a lower side 110A, that is oriented toward the skin of the patient when placed on the patient. In many embodiments, adherent |

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | patch 110 comprises a tape 110T which is a material, preferably breathable, with an adhesive 116A. ***Patient side 110A comprises adhesive 116A to adhere the patch 110 and adherent device 100 to patient P***." *Id.,* ¶57.<br><br><br><br>*Id.*, Figure 1I (annotated).<br><br><br><br>*Id.*, Figure 1A (annotated). |
| **2.** The electronic device of claim 1, further comprising a flap extending beneath the housing. | *Bly* discloses a flap extending beneath the housing.<br><br>For example, *Bly* discloses that "adherent patch 110 stretches and/or retracts with the skin of the patient." Ex. 1003, ¶95.<br><br>*Bly* specifies that "[e]lectronics components 130, printed circuit board 120, and electronics housing 160 are disposed between the stretchable breathable material of adherent patch 110 and the stretchable breathable material of cover 160 so as to allow the adherent patch 110 and cover 160 to stretch together while electronics components 130, printed circuit board 120, and |

49

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | electronics housing 160 do not stretch substantially, if at all." *Id.*, ¶100.<br><br>As shown in Figures 1G, 1I, for example, adherent patch 110 extends beneath the electronics housing 160 and forms flaps (annotated in red) that are integral with the lateral edges of adherent patch 110.<br><br><br><br>*Id.*, Figure 1G (annotated).<br><br><br><br>*Id.*, Figure 1I (annotated).<br><br>*Bly* discloses that the patch is made of a thin, flexible material. For example, the "adhesive patch may comprise a ***thin, flexible, breathable*** patch[.]" *Id.*, ¶111.<br><br>Further, "[t]he breathable cover 162 and adherent patch 110 comprise breathable tape…. The breathable tape may comprise the ***stretchable breathable material*** with the adhesive …, such that both the adherent patch and cover can stretch with the skin of the patient." *Id.*, ¶94. |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | The portion(s) of the adherent patch that extend wider and below the housing is a "flap" as recited in claim 2. The adherent patch is a thin material with freedom to stretch and flex. The patch is also connected to a larger body, which allows it to serve as an extension of the device with the ability to bend and flex due to the material. Thus, *Bly* discloses a flap under the broadest reasonable interpretation of this claim element. |
| | In another example, *Bly* states that "the patch comprises two electrodes, for example two electrodes to measure the electrocardiogram (ECG) of the patient. Gel 114A, gel 114B, gel 114C and gel 114D can each be positioned over electrodes 112A, 112B, 112C and 112D, respectively, to provide electrical conductivity between the electrodes and the skin of the patient." Ex. 1003, ¶57. In this example embodiment, the gel is a flap that extends beneath the housing. *See id.*, Figure 1J. |
| |  |
| | Ex. 1003, Figure 1J. |
| |  |
| | Ex. 1003, Figure 1I. |
| **3.** The electronic device of claim 1, wherein the housing is rigid. | *Bly* discloses a rigid housing. |
| | Specifically, *Bly* states that "the electronics layer may be encapsulated in electronics housing 160. Electronics housing |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | 160 may comprise an encapsulant, such as a dip coating, which may comprise a waterproof material, for example silicone and/or epoxy. In many embodiments, the PCB encapsulant protects the PCB and/or electronic components from moisture and/or mechanical forces. The encapsulant may comprise silicone, epoxy, other adhesives and/or sealants. In some embodiments, electronics housing 160 ***may comprise metal and/or plastic***. Metal or plastic may be potted with a material such as epoxy or silicone." Ex. 1003, ¶90. Metal and plastic are rigid materials. In the disclosed embodiment of *Bly*, the plastic and metal materials used to construct the housing "to protect the printed circuit board and the electronic components from … mechanical forces" would be understood to be a rigid material in order to accomplish the stated protection. *Id.*, ¶21. This is confirmed by the fact it was well known to rely on rigid housings to protect components in long-term monitors. *See e.g.* Ex. 1005, ¶2 (disclosing "a "HEARTCARD™ monitor [that] is intended for long-term use, and thus is enclosed in a durable ***rigid housing***, []provided with long-life batteries..."). In yet another example, figure 4B of *Matsumura* discloses the housing of the signal processor 10 sinking into the first sheet 1 (*see* reference numeral 10b). Ex. 1005, Figure 4b. To allow for such function, *Matsumura*'s housing is more rigid than the insulating material of the first sheet 1 into which the housing is pressed. *See id.*, ¶17-18.<br><br>Moreover, "FIG. 1F shows a top view of a cover 162 over the batteries, electronic components and flex printed circuit board as in FIGS. 1A to 1E. In many embodiments, an electronics housing 160 may be disposed under cover 162 to protect the electronic components, and in some embodiments electronics housing 160 may comprise an encapsulant over the electronic components and PCB. In some embodiments, cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162. In many embodiments, electronics housing 160 may comprise a water proof material, for example a sealant adhesive such as epoxy or silicone coated over the electronics components and/or PCB. In some embodiments, electronics housing 160 ***may comprise metal and/or plastic***. Metal or plastic may be potted with a material such as epoxy or silicone." *Id.*, ¶72. |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| **4.** The electronic device of claim 1, wherein the housing is configured to remain connected to the flexible layer when the housing is tilted at an angle relative to the lower adhesive layer in response to movement of the user. | *Bly* discloses a housing configured to remain connected to the flexible layer when the housing is tilted at an angle relative the lower adhesive layer in response to movement of the user.<br><br>For example, *Bly* states that "the electrodes can be connected to the PCB and/or electronics module with a flex PCB 120, such that the electrodes and adherent patch can move independently from the PCB module." Ex. 1003, ¶91.<br><br>Further, *Bly* discloses "cover 162 can attach the PCB module to adherent patch 110 with cover 162, so as to avoid interaction of adherent patch 110C with the PCB having the electronics mounted therein." *Id.*, ¶105.<br><br>A POSITA would have understood that air gap 169 allows housing 160 to tilt at an angle relative to the lower adhesive layer 116A in response to movement of the user. For example, device 100 adheres to a patient via adhesive layer 116A. If the patient's skin moves in an upward direction (e.g., in the upward direction of arrow 186 in the below figure), the height of air gap 169 decreases because printed circuit board 120 tilts. Thus, air gap 169 allows the printed circuit board 120 and electronic components 130 to move independently of adherent patch 110 (and adhesive layer 116). As *Bly* explains, this allows the patch to move with the patient's skin for patient comfort. For added clarity, an additionally zoomed in view of annotated Figure 1I is provided below.<br><br>Specifically, *Bly* explains that "[a]ir gap 169 may extend from adherent patch 110 to the electronics module and/or PCB, so as to provide patient comfort. Air gap 169 allows adherent patch 110 and breathable tape 110T to remain supple and move, for example bend, with the skin of the patient with minimal flexing and/or bending of printed circuit board 120 and electronic components 130, as indicated by arrows 186" in Figure 1I. *Id.*, ¶101. |

53

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| |  *Id.*, Figure 1I (annotated). In reference to Figure 1I, as indicated by red arrows in Figure 1I above, electronics housing 160 is configured to remain connected to the adherent patch 110 (e.g., flexible layer) when the electronic housing (e.g., housing) and adhesive 116A (e.g., lower adhesive layer) are flexed or bent (e.g., tilted) relative to each other. The electronics housing 160 (e.g., housing) is "adhered to at least one of the electronics components or the printed circuit board, such that the electronics housing is disposed between the cover and electronics components." *Id.*, ¶21. "Cover 162 [e.g., electrode-supporting section] can be attached to [] electronics housing 160 comprising over the encapsulated [printed circuit board]." *Id.*, ¶105. Moreover, the device includes "[c]onnectors 122A, 122B, 122C and 122D [] positioned on flex printed circuit board 120[.]" *Id.*, ¶59. Figure 1I discloses the configuration of these elements and the air gap (annotated in green).  *Id.*, Figure 1I (annotated). |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | <br>*Id.*, Figure 1I (annotated).<br><br>In reference to Figure 1I, movement of the user may cause 116A to move upward, decreasing the space of air gap 169, while the printed circuit board 120 and electronic components 130 independently move, which a POSITA would understand to render obvious the claimed "tilting" limitation.<br><br>Thus, the housing, electronics, and PCB are balanced on the connector 122A, which acts as a central balancing point. The air gap below allows the housing, electronics, and PCB freedom to move because nothing is blocking or resisting the motion. Thus, when a user wearing the device moves, the adherent device's center of mass will also shift and cause housing to tilt at an angle. In other words, the configuration of the device causes the housing to behave like a seesaw and tilt at an angle relative to the adhesive 116A (e.g., lower adhesive layer) in response to movement of the user.<br><br>Thus, when the device is moved based on a user's movement, the air gap 169 allows the housing and electronic components to "remain supple and move, for example bend, with the skin of the patient." *Id.*, ¶101. Movement of the patient will create slight shifts in the center of mass of the device, which will cause the housing to adjust at various angles as allowed by the air gap 169. |
| **5.** The electronic device of claim 1, further comprising a | *Bly* discloses the electronic device of claim 1, further comprising a hinge portion adjacent the housing. |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| hinge portion adjacent the housing. | *See* claim 4, which is incorporated by reference herein. As described in reference to claim element 4, *Bly's* device includes an air gap, which allows the housing to tilt at an angle relative to the lower adhesive layer in response to movement of the user. To provide such function, *Bly* further discloses a "hinge portion adjacent the housing" under the broadest reasonable interpretation of this claim element. <br><br> For example, as shown in Figure 1I1, *Bly* discloses a flexible connector 122A to provide strain relief. Ex. 1003, ¶78, Figure 1I1 (annotated), Figure 1I. <br><br>  <br><br> Ex. 1003, Figure 1I1 (annotated). <br><br> A POSITA would have understood that the housing, printed circuit board, and electronic components pivot via connector 122A when the described motion occurs. As described in reference to claim element 1[e], air gap 169 disposed below these elements allow the same to tilt in response to the lower to adhesive layer 116A moving with the skin of the patient. *See, e.g., id.*, ¶101 ("Air gap 169 allows adherent patch 110 and breathable tape 110T to remain supple and move, for example bend, with the skin of the patient with minimal flexing and/or bending of printed circuit board 120 and electronic components 130, as indicated by arrows 186."). |
| **6.** The electronic device of claim 1, wherein the lower adhesive layer comprises a hydrocolloid adhesive. | *Bly* discloses the lower adhesive layer comprising a hydrocolloid adhesive. <br><br> Specifically, *Bly* discloses "In many embodiments, **adhesive 116A comprises** at least one of acrylate, silicone, synthetic rubber, synthetic resin, **hydrocolloid adhesive**, pressure sensitive adhesive (PSA), or acrylate pressure sensitive adhesive." <br><br> Further, adhesive 116A "can be disposed on underside 110A of patch 110." Thus, *Bly* discloses that the lower adhesive layer (adhesive 116A) comprises a hydrocolloid adhesive. |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| **7.** The electronic device of claim 1, wherein the physiologic data collection circuit is configured to collect cardiac rhythm data from the user. | *Bly* discloses the physiologic data collection circuit configured to collect cardiac rhythm data from the user.<br><br>Specifically, *Bly* discloses that "[e]lectronic components 130 comprise components to take physiologic measurements, transmit data to remote center 106 and receive commands from remote center 106." Ex. 1003, ¶60.<br><br>Further, "[e]lectronics components 130 comprise an activity sensor and activity circuitry 134, impedance circuitry 136 and *electrocardiogram circuitry, for example ECG circuitry 136*." Ex. 1003, ¶60.<br><br>"System 10 can perform the following functions: initiation, programming, measuring, storing, analyzing, communicating, predicting, and displaying.  The adherent device may contain a subset of the following physiological sensors: bioimpedance, respiration, respiration rate variability, heart rate (ave, min, max), *heart rhythm*, hear rate variability (hereinafter "HRV"), heart rate turbulence (hereinafter "HRT"), heart sounds (e.g. S3), respiratory sounds, blood pressure, activity, posture, wake/sleep, orthopnea, temperature/heat flux, and weight." *Id.*, ¶54. |
| **8.** The electronic device of claim 1, wherein the polymer upper layer extends horizontally away from the housing beyond a boundary of the electrode. | *Bly* discloses the polymer upper layer extending horizontally away from the housing beyond a boundary of the electrode. *See* claim limitation 1[c].<br><br>*Bly* discloses "[a]n edge of the gel cover may extend from about 5 to about 15 mm beyond an edge of a gel over the at least one electrode." Ex. 1003, ¶22.<br><br>As shown in Figure 1J1, *Bly's* gel cover 180 (blue) (e.g., polymer upper layer) extends horizontally away from the electronics housing 160 (red) and beyond a boundary of the electrodes 112A1, 112A2, 112A3, 112A4. |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| |  *Id.*, Figure 1J1 (annotated). |
| **9.** The electronic device of claim 1, further comprising an upper adhesive layer positioned over the polymer upper layer. | *Bly* discloses an upper adhesive layer positioned over the polymer upper layer.<br><br>For example, *Bly* discloses "cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162." Ex. 1003, ¶72.<br><br>As shown in Figure 1J, cover 162 (green) is positioned over gel cover 180 (blue) (e.g., polymer upper layer), and therefore adhesive 164 (not shown) on the underside of cover 162 is also positioned over gel cover 180.<br><br>*Id.*, Figure 1J1 (annotated). |

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| **10.** The electronic device of claim 9, wherein the upper adhesive layer is positioned above the electrode. | *Bly* discloses the upper adhesive layer positioned above the electrode.<br><br>For example, *Bly* discloses "cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162." Ex. 1003, ¶72.<br><br>As shown in Figure 1J, cover 162 (green) is positioned above electrodes 112A1, 112A2, 112A3, 112A4, and therefore adhesive 164 (not shown) on the underside of cover 162 is also positioned above gel cover 180.<br><br><br><br>*Id.*, Figure 1J1 (annotated). |
| **11.** The electronic device of claim 10, wherein the upper adhesive layer extends horizontally away from the housing beyond a boundary of the polymer upper layer. | *Bly* discloses the upper adhesive layer extending horizontally away from the housing beyond a boundary of the polymer upper layer.<br><br>For example, *Bly* discloses "cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162." Ex. 1003, ¶72.<br><br>As shown in Figure 1J, cover 162 (green) is positioned over gel cover 180 (blue) (e.g., polymer upper layer) and extends horizontally away from a boundary of gel cover 180. Therefore, adhesive 164 (not shown) on the underside of cover |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Bly* |
|---|---|
| | 162 also extends horizontally beyond a boundary of gel cover 180.<br><br><br><br>*Id.*, Figure 1J1 (annotated). |
| **12.** The electronic device of claim 1, wherein the lower adhesive layer extends at least partially below the housing. | *Bly* discloses the lower adhesive layer extending at least partially below the housing.<br><br>For example, *Bly's* adherent patch 110 includes a "lower side 110A" further including tape 110T, or adhesive 116A (e.g., lower adhesive layer). Ex. 1003, ¶57.<br><br>As shown in Figure 1I, adhesive 116A (green) extends at least partially below the housing (red).<br><br><br><br>*Id.*, Figure 1I (annotated). |

60

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

## X.    GROUND III

### A.    Overview of *Matsumura*

*Matsumura* published on April 22, 2004, as Japanese Patent Publication 2004-

121360.  Thus, the publication of *Matsumura* is prior art to the '554 patent, which

has a claimed priority date of May 12, 2010, under 35 U.S.C. § 102(a) and (b).  Ex.

1001 at page 2 (noting the priority date for the '554 patent).

*Matsumura* describes a multi-layer wearable monitor for detecting bioelectric

potential.  Ex. 1006, Abstract.  *Matsumura* further discloses that the device is for

long-term wear, including that the "subject (patient) wears the bioelectric potential

detector 11 on his/her chest at all times to detect electrocardiogram signals[,]" even

while "tak[ing] a shower or a bath."  *Id.*, ¶¶36-37.  In reference to Figure 1,

*Matsumura* provides a bioelectric potential detector 11 comprised of disposable pad

7 and reusable signal processor 10 (red).  Ex. 1006, ¶16.  Disposable pad 7 further

comprises first sheet 1 (green), second sheet 4 (blue), electrical components (i.e.,

conductive material 2, hooks 3) (orange) located between first sheet 1 and second

sheet 4, conductive gels 5 (purple), and double-sided adhesive tape 9.  Ex. 1006, ¶16,

Figure 1 (annotated below).  Conductive material 2 creates a conductive path

between conductive gel 5 and hooks 3, and hooks 3 provide a conductive path

upwards through first sheet 1 and double-sided adhesive tape 9 to processor 10.  Ex.

1012, ¶19.  The device may be adhered to the user by removing release tape 8

61

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

(yellow) to expose an adhesive layer that has been applied to the bottom surface of

second sheet 4 (blue), which is then applied directly to the user.  Ex. 1006, ¶16; *see,*

*e.g.*, Figure 3.



Ex. 1006, Figure 1 (annotated).

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

### B.    *Matsumura* Anticipates or Renders Obvious Claim 1

| U.S. Patent No. 12,274,554 | *Matsumura* |
|---|---|
| **1[pre].** An electronic device for long-term adhesion to a user, the device comprising: | *Matsumura* discloses an electronic device for long-term adhesin to a user.<br><br>Specifically, *Matsumura* discloses a "a bioelectric potential detector that can measure bioelectric potential (electrocardiograms)." Ex. 1006, Abstract. Further, "[t]he bioelectric potential detector 11 can be used as an electrocardiogram detector that is worn on the subject's chest to detect electrocardiogram signals." *Id.*, ¶24.<br><br>*Matsumura* explains that the "subject (patient) ***wears the bioelectric potential detector 11 on his/her chest at all times*** to detect electrocardiogram signals." *Id.*, ¶36. In this way, "the subject can take a shower or a bath 21 while wearing the waterproof bioelectric potential detector 11." *Id.*, ¶38.<br><br>*Matsumura* explains that an "adhesive, such as acrylic adhesive for example, is applied to the back surface of the second sheet 4." *Id.*, ¶18. Release sheet 8 is "peeled off" to expose the adhesive back surface of the second sheet 4, which is applied to directly to the patient's skin. *Id.*, ¶16; *see also id.* Figure 2 (below). |

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Matsumura* |
|---|---|
| |  Ex. 1006, Fig. 2 (annotated yellow indicating release sheet 8, and blue indicating the adhesive back). |
| **1[a].** a housing comprising a physiologic data collection circuit, | *Matsumura* discloses a housing comprising a physiologic data collection circuit.<br><br>Specifically, *Matsumura* explains that "the housing of signal processor 10[,]" is "the part that transmits bioelectric potential from the bioelectrode pad 7 to the signal processor 10" contained within the housing.  Ex. 1006, ¶27.<br><br>Figure 4 shows "housing 10c" (annotated in red below).  *Id.*, Figure 4. |

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

| U.S. Patent No. 12,274,554 | *Matsumura* |
|---|---|
| |  |

| | *Id.*, Figure 4 (annotated). |
|---|---|

*Matsumura* discloses that "[t]he signal processor 10 incorporates a processing circuit for filtering and amplifying detected bioelectric potential signals, a memory for storing the processed bioelectric potential signal, a circuit for modulating the processed bioelectric potential signal and transmitting it wirelessly, and a loop antenna. Furthermore, the housing of the signal processor 10 is waterproof." Ex. 1006, ¶25.

| **1[b].** the housing positioned over a flexible layer extending from beneath the housing, the flexible layer comprising an electrode positioned on the bottom of the flexible layer at a position distal from the housing, | *Matsumura* discloses the housing positioned over a flexible layer extending from beneath the housing, the flexible layer comprising an electrode positioned on the bottom of the flexible layer at a position distal from the housing.

As discussed above with respect to claim 1[a], *Matsumura* discloses that signal processor 10ch includes housing 10c. *See* cl. 1[a].

*Matsumura* further discloses a "bioelectrode pad 7 [] composed of a first sheet 1, a conductive material 2, a hook 3, a second sheet 4, a conductive gel 5, a third sheet 6, and double-sided adhesive tape 9." Ex. 1006, ¶16. |
|---|---|

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Matsumura* |
|---|---|
| | First sheet 1 and second sheet 4 "should be made of an insulating material that does not allow moisture to penetrate, for example, polyethylene foam, polyurethane foam, or polyurethane sheet." *Id.*, ¶¶17-18.  Insulating materials such as polyethylene foam, polyurethane foam, or polyurethane sheet are flexible materials.<br><br>"Between the first sheet 1 and the second sheet 4, two pieces of conductive material 2 and two hooks 3 are arranged to transmit the ***bioelectric potential detected by the conductive gel 5***, which is placed in the openings 4a of the second sheet 4." *Id.*, ¶19.  Accordingly, conductive gel 5 (annotated in purple) is an electrode.<br><br><br>[FIGURE 1] |

66

REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554

| U.S. Patent No. 12,274,554 | *Matsumura* |
|---|---|
|  | *Id.*, Figure 1 (annotated red indicating housing, and purple indicating conductive gel).<br><br>Accordingly, *Matsumura* discloses housing 10c (e.g., a housing) positioned over the bioelectrode pad (e.g., flexible layer), which extends from beneath the housing.  Further, *Matsumura* discloses electrode gel 5 (e.g., electrodes) that are positioned on the bottom of the bioelectrode pad and towards an outer edge of bioelectrode pad 7, not underneath the housing (e.g., at a position distal to the housing). |
| **1[c].** wherein the flexible layer comprises a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection; | *Matsumura* discloses a flexible layer comprising a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection.<br><br>**First**, *Matsumura* discloses a flexible layer comprising a polymer upper layer overlying an electrical connection. *Matsumura* discloses a "bioelectrode pad 7 [] composed of a first sheet 1, a conductive material 2, a hook 3, a second sheet 4, a conductive gel 5, a third sheet 6, and double-sided adhesive tape 9." Ex. 1006, ¶16.<br><br>First sheet 1 and second sheet 4 "should be made of an insulating material that does not allow moisture to penetrate, for example, ***polyethylene foam, polyurethane foam, or polyurethane sheet***." *Id.*, ¶¶17-18.<br><br>**Second**, *Matsumura* discloses the electrical connection extending linearly from the physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection.<br><br>As shown in Figure 1 below, first sheet 1 (e.g., upper polymer layer) overlays electrode gel 5, conductive material 2, and hooks 3 (e.g., electronic connection), and these three components extend linearly from the signal processor (e.g., housing).  For example, *Matsumura* discloses "The pieces of ***conductive material 2 are rod-shaped***, one end of which has two holes 2a for contacting the conductive gel 5 and the other end of which has two holes 2a through which the protruding |

67

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Matsumura* |
|---|---|
| | portions of the hook 3 are inserted.  The two hooks 3 are arranged so that the protruding portions of the hook 3 can be inserted through the holes 2a and 1a from the back side of the conductive material 2. With this configuration, the ***bioelectric potential detected by the conductive gel 5 are transmitted through the conductive material 2 and the hooks 3***." *Id.*, ¶19.<br><br>Each of these components are disclosed in Figure 1, as shown below.<br><br><br>*Id.*, Figure 1 (annotated). |
| **1[d].**  a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer; and | *Matsumura* discloses a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer.<br><br>For example, *Matsumura* explains that "an adhesive or glue, such as an acrylic adhesive for example, is applied to the back surface of the first sheet 1" and "adhesive or glue, such as acrylic adhesive for example, is applied to the surface of the |

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Matsumura* |
|---|---|
| | second sheet 4. The adhesive, such as acrylic adhesive for example, is applied to the back surface of the second sheet 4." Ex. 1006, ¶18. As shown in Figure 4, for example, the adhesive applied to the back surface of the first sheet 1 and the adhesive applied to the surface of second sheet 4 make up the connecting adhesive layer (indicated by red boxes) that adhere first sheet 1 (e.g., polymer upper layer) to second sheet 4 (e.g., polymer lower layer). <br><br>  <br> *Id.*, Figure 4(b) (annotated green indicating first sheet, blue indicating second sheet, and red boxes indicating connecting adhesive layer). |
| **1[e].** a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user. | *Matsumura* discloses a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user. <br><br> For example, the "adhesive, such as acrylic adhesive, for example, [that] is applied to the back surface of the second sheet 4" is a lower adhesive layer that adheres the electronic device to a user. <br><br> Specifically, *Matsumura* explains that release sheet 8 is a sheet of material that is attached to the back surface of second sheet 4 and removed before use. *Id.*, ¶16. Release sheet 8 is "peeled off" to expose the adhesive back surface of the second sheet 4, which is applied to directly to the patient's skin. *Id.*, ¶16; *see also id.* Figure 2 (below). |

69

**REQUEST FOR EX PARTE REEXAMINATION OF
U.S. PATENT NO. 12,274,554**

| U.S. Patent No. 12,274,554 | *Matsumura* |
|---|---|
| | <br><br>Ex. 1006, Figure 2 (annotated yellow indicating release sheet 8, and blue indicating the adhesive back).<br><br>Accordingly, *Matsumura* discloses a lower adhesive layer (e.g., adhesive, such as acrylic adhesive) positioned on second sheet 4 (e.g., the polymer lower layer portion of the flexible layer), that adheres the device to a user. |

70

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

## XI.    CONCLUSION

As discussed above, the prior art references anticipate or at least render obvious the elements of claims 1 to 12 of the '554 patent.  Namely, *Bly*, *Baker*, and *Matsumura* are all prior art to the '554 patent.  Moreover, the Patent Office did not rely on *Bly*, *Baker*, or *Matsumura* during prosecution of the '554 patent and, while the disclosure of a family member of *Bly*, the Japanese-language version of *Matsumura*, and *Baker* were before the Patent Office, there is no evidence that these references were properly considered by the Patent Office during prosecution.  For at least the above reasons, the foregoing Request for Reexamination presents one or more Substantial New Questions of Patentability and should therefore be granted.


Dated: September 8, 2025                     Respectfully submitted,


                                    By:     */s/ Erik J. Halverson*
                                            Erik J. Halverson
                                            Reg. No. 73,552
                                            **K&L GATES LLP**
                                            Four Embarcadero Center, Suite 1200
                                            San Francisco, CA 94111
                                            T: (415) 882-8238
                                            F: (415) 882-8220

**REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 12,274,554**

## CLAIMS APPENDIX

1[pre]    An electronic device for long-term adhesion to a user, the device comprising:

1[a]    a housing comprising a physiologic data collection circuit,

1[b]    the housing positioned over a flexible layer extending from beneath the housing, the flexible layer comprising an electrode positioned on the bottom of the flexible layer at a position distal from the housing,

1[c]    wherein the flexible layer comprises a polymer upper layer overlying an electrical connection, the electrical connection extending linearly from the physiologic data collection circuit to the electrode when viewed from above the electronic device, the polymer upper layer adhered to a polymer lower layer underlying the electrical connection;

1[d]    a connecting adhesive layer positioned under the polymer upper layer, the connecting adhesive layer adhering the polymer upper layer to the polymer lower layer; and

1[e]    a lower adhesive layer positioned on the flexible layer and configured to adhere the electronic device to a user.

[2]    The electronic device of claim 1, further comprising a flap extending beneath the housing.

[3]    The electronic device of claim 1, wherein the housing is rigid.

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

[4]     The electronic device of claim 1, wherein the housing is configured to remain connected to the flexible layer when the housing is tilted at an angle relative the lower adhesive layer in response to movement of the user.

[5]     The electronic device of claim 1, further comprising a hinge portion adjacent the housing.

[6]     The electronic device of claim 1, wherein the lower adhesive layer comprises a hydrocolloid adhesive.

[7]     The electronic device of claim 1, wherein the physiologic data collection circuit is configured to collect cardiac rhythm data from the user.

[8]     The electronic device of claim 1, wherein the polymer upper layer extends horizontally away from the housing beyond a boundary of the electrode.

[9]     The electronic device of claim 1, further comprising an upper adhesive layer positioned over the polymer upper layer.

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

[10]     The electronic device of claim 9, wherein the upper adhesive layer is positioned above the electrode.

[11]     The electronic device of claim 10, wherein the upper adhesive layer extends horizontally away from the housing beyond a boundary of the polymer upper layer.

[12]     The electronic device of claim 1, wherein the lower adhesive layer extends at least partially below the housing.

**REQUEST FOR EX PARTE REEXAMINATION OF**
**U.S. PATENT NO. 12,274,554**

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, a true and correct copy of the foregoing and supporting materials has been served at the following correspondence address of record for the subject patent via US Postal Service Certified Mail/Return Receipt Requested Mail at the following address:

> Knobbe, Martens, Olson & Bear, LLP
> 2040 Main Street
> Fourteeth Floor
> Irvine, California
> United States

By:    */s/ Erik J. Halverson*
Erik J. Halverson
Reg. No. 73,552