# EXHIBIT B



Planet Depos®
We Make It *Happen*™

**HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

# Transcript of David R. Schmidt

**Date:** September 12, 2025
**Case:** Bardy Diagnostics, Inc. -v- iRhythm Technologies, Inc.

Planet Depos
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


BARDY DIAGNOSTICS, INC.,   |

                     |

         Plaintiff,  |

                     |

        vs.          |  Case No.: 24-1355 (JDW)

                     |

IRHYTHM TECHNOLOGIES, INC., |

                     |

        Defendant.  |

                     |

_____|

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF DAVID R. SCHMIDT

Irvine, California

Friday, September 12, 2025


Job No. 599958

Reported by:

Cathy A. Wood, RDR, RMR, CRR

CSR No. 2825

(Also licensed in Nevada, Washington,

 Texas and Illinois)

| | | |
|---|---|---|
| 1 | biomedical engineering, also from Wisconsin, and then a | 09:37:16 |
| 2 | JD from Notre Dame. | 09:37:17 |
| 3 | Q.   You received the masters' degrees in 2007 and | 09:37:21 |
| 4 | 2009? | 09:37:23 |
| 5 | A.   Yeah, I think that's about right. | 09:37:24 |
| 6 | Q.   And your Ph.D. was also in 2009? | 09:37:26 |
| 7 | A.   2009, yeah.  Actually, I think my bachelor's | 09:37:29 |
| 8 | was December of 2003. | 09:37:33 |
| 9 | Q.   Okay. | 09:37:34 |
| 10 | A.   Yeah. | 09:37:35 |
| 11 | Q.   You might have to update your LinkedIn. | 09:37:35 |
| 12 | Okay.  And then did you join Knobbe Martens | 09:37:42 |
| 13 | right after you graduated from law school? | 09:37:44 |
| 14 | A.   I did. | 09:37:49 |
| 15 | Q.   And when you joined Knobbe, did you start in | 09:37:50 |
| 16 | this Irvine office? | 09:37:55 |
| 17 | A.   I did, yeah.  And I was also a summer associate | 09:37:56 |
| 18 | here in 2011. | 09:37:59 |
| 19 | Q.   When you started, had you already passed the | 09:38:01 |
| 20 | Patent Bar? | 09:38:04 |
| 21 | A.   No, I hadn't. | 09:38:05 |
| 22 | Q.   Okay.  When did you take the Patent Bar exam? | 09:38:06 |
| 23 | A.   Just before the end of my second year.  So | 09:38:09 |
| 24 | right around August, September of 2014. | 09:38:12 |
| 25 | Q.   And how long have you worked in patent | 09:38:22 |

1    prosecution?                                          09:38:25

2        A.    Counting being a summer associate, I guess  09:38:27

3    about 15 years, 14.                                   09:38:29

4        Q.    When you started at Knobbe, I guess -- does 09:38:35

5    Knobbe have a patent prosecution-specific practice area? 09:38:39

6        A.    Yeah.  And we do patent litigation and patent 09:38:45

7    prosecution.  Our associates typically will pick one or 09:38:47

8    the other, but they can also work in both.            09:38:50

9        Q.    And what did you choose?                     09:38:52

10       A.    At the beginning, I did both litigation and  09:38:53

11   prosecution.                                           09:38:55

12       Q.    About how much of your time, percentage-wise, 09:38:57

13   was spent on prosecution versus litigation?           09:39:01

14       A.    Initially, probably more like 75, 80 percent 09:39:04

15   prosecution, and then I did litigation for a number of 09:39:07

16   years and eventually just went more so on the          09:39:11

17   prosecution side.                                      09:39:14

18       Q.    And today, what does your practice mix look  09:39:15

19   like?                                                  09:39:19

20       A.    It's primarily in the area of patent         09:39:20

21   prosecution and strategic portfolio management.  I also 09:39:22

22   do a fair amount of due diligence work and then also   09:39:25

23   sort of enforcement activity, so what we would call    09:39:29

24   pre-litigation type work.                              09:39:32

25       Q.    Has your patent prosecution work focused on any 09:39:38

1    as Exhibit 1 to your deposition which is US Patent          09:51:18

2    12,133,734.  Do you recognize the '734 patent?             09:51:21

3        A.   I do.                                              09:51:29

4        Q.   Okay.  Is the '734 patent one that you helped      09:51:30

5    prosecute on behalf of iRhythm?                            09:51:35

6        A.   Now, in defining prosecution, do you mean just     09:51:38

7    handle it with the USPTO or are you also inclusive of       09:51:42

8    drafting the application?                                  09:51:49

9        Q.   We'll start with whether or not you drafted the    09:51:50

10   application.                                               09:51:54

11       A.   Okay.  I did not draft the application, but I      09:51:55

12   did prosecute it before the USPTO.                          09:51:58

13       Q.   Okay.  And by prosecuting it before the USPTO,     09:52:01

14   do you mean that you were involved in the Office Action     09:52:06

15   responses?                                                 09:52:10

16       A.   Correct.                                          09:52:12

17       Q.   Do you remember how many Office Action             09:52:13

18   responses you were involved with drafting with respect      09:52:16

19   to the '734 patent?                                        09:52:20

20       A.   I don't think there were any, I don't -- if I      09:52:29

21   recall correctly.                                          09:52:32

22       Q.   So what was your involvement in the prosecution    09:52:39

23   of the '734 patent?                                        09:52:44

24       A.   I interacted with the patent examiner to push      09:52:47

25   the case forward.                                          09:52:50

1    Q.   Okay.  Who drafted the claims, if you recall,    09:52:51

2  that were involved in the application that led to the    09:52:58

3  '734 patent?                                             09:53:00

4    A.   I drafted those claims.                           09:53:02

5    Q.   And who was your contact at iRhythm that you      09:53:09

6  were sending drafts to of claims?                        09:53:14

7        MR. BUNKER:  Again, I don't think counsel's        09:53:17

8  question is asking for this and you may answer that      09:53:19

9  question, but I'll just caution you not to reveal any    09:53:21

10  communications that you might have had with any people  09:53:25

11  at iRhythm regarding the prosecution.                   09:53:28

12       THE WITNESS:  I can reveal the people?             09:53:31

13       MR. BUNKER:  Correct.                              09:53:33

14       THE WITNESS:  I interacted with Mark Day at        09:53:34

15  iRhythm and then also Ted Lopez.                        09:53:37

16  BY MS. BEANE:                                           09:53:41

17    Q.   Okay.  During the prosecution, I guess before    09:53:42

18  the '734 patent issued on November 5th of 2024, did you 09:53:54

19  have any communication with any attorney at Fenwick &   09:54:00

20  West?                                                   09:54:04

21       MR. BUNKER:  You can answer that yes or no.        09:54:06

22       THE WITNESS:  2024, no.                            09:54:12

23  BY MS. BEANE:                                           09:54:22

24    Q.   Have you had communications with attorneys at    09:54:23

25  Fenwick & West?                                         09:54:25

| | | |
|---|---|---|
| 1 | MR. BUNKER: Why don't we go off the record and | 09:55:56 |
| 2 | discuss that question and we'll be back very briefly, | 09:56:00 |
| 3 | very quickly. | 09:56:04 |
| 4 | MS. BEANE: That's fine. | 09:56:05 |
| 5 | THE VIDEOGRAPHER: We are going off the record, | 09:56:06 |
| 6 | the time is 9:56 a.m. | 09:56:07 |
| 7 | (Brief recess was taken.) | 09:56:14 |
| 8 | THE VIDEOGRAPHER: We are back on the record at | 09:58:14 |
| 9 | 9:58 a.m. | 09:58:15 |
| 10 | BY MS. BEANE: | 09:58:18 |
| 11 | Q. Was the general subject matter of the email | 09:58:20 |
| 12 | that you had with Fenwick & West attorneys about patent | 09:58:23 |
| 13 | prosecution or the litigation matter? | 09:58:28 |
| 14 | A. Patent prosecution. | 09:58:32 |
| 15 | Q. And was the general subject matter of the phone | 09:58:38 |
| 16 | call also patent prosecution? | 09:58:41 |
| 17 | MR. BUNKER: You may answer that. | 09:58:44 |
| 18 | THE WITNESS: Yes. | 09:58:46 |
| 19 | BY MS. BEANE: | 09:58:52 |
| 20 | Q. All right. Turning back to the '734 patent | 09:58:58 |
| 21 | which is Exhibit 1 to your deposition, do you recall who | 09:59:00 |
| 22 | at iRhythm approved the claims for filing? | 09:59:07 |
| 23 | A. For filing, I believe it was Mark Day, but | 09:59:14 |
| 24 | given the timing here, also probably Ted Lopez, so | 09:59:20 |
| 25 | probably both of them. | 09:59:25 |

| | | |
|---|---|---|
| 1 | MS. BEANE:  We're going to come back to some of | 10:02:46 |
| 2 | the patents.  You can put the patents aside, but we'll | 10:02:48 |
| 3 | come back to them. | 10:02:53 |
| 4 | BY MS. BEANE: | 10:02:56 |
| 5 | Q.   Okay.  We're marking as Exhibit 2 to your | 10:02:56 |
| 6 | deposition what's been marked as -- or Exhibit 2 to your | 10:02:58 |
| 7 | deposition which is US Patent 12,245,859.  Do you | 10:03:04 |
| 8 | recognize this patent? | 10:03:09 |
| 9 | A.   I do. | 10:03:13 |
| 10 | (Exhibit No. 2 was marked for | 10:03:14 |
| 11 | identification.) | 10:03:14 |
| 12 | BY MS. BEANE: | 10:03:14 |
| 13 | Q.   Were you involved in the prosecution of the | 10:03:21 |
| 14 | application that led to the '859 patent? | 10:03:24 |
| 15 | A.   Yes. | 10:03:33 |
| 16 | Q.   Did you draft the claims of the '859 patent? | 10:03:33 |
| 17 | A.   I would need to double-check.  I have | 10:03:39 |
| 18 | collaborated on that claim. | 10:04:04 |
| 19 | Q.   When you say "that claim," do you mean all of | 10:04:06 |
| 20 | the claims? | 10:04:08 |
| 21 | A.   Yes, all the claims. | 10:04:10 |
| 22 | Q.   And who did you collaborate with? | 10:04:12 |
| 23 | MR. BUNKER:  You can answer that question. | 10:04:18 |
| 24 | THE WITNESS:  Damien Howard. | 10:04:20 |
| 25 | /// | |

| | | |
|---|---|---|
| 1 | BY MS. BEANE: | 10:04:26 |
| 2 | Q. What is Damien Howard's technical background? | 10:04:26 |
| 3 | A. Electrical engineering. | 10:04:31 |
| 4 | Q. Who approved the claim set to be filed? | 10:04:44 |
| 5 | A. Ted Lopez. | 10:04:49 |
| 6 | Q. Do you recall whether you received any office | 10:04:53 |
| 7 | actions as part of the '859 patent prosecution? | 10:04:56 |
| 8 | A. I think that Damien handled these. I think | 10:05:05 |
| 9 | there was an Office Action, but I'm not sure. | 10:05:08 |
| 10 | We typically go by our matter codes, so I don't | 10:05:11 |
| 11 | know all the patent numbers offhand. | 10:05:15 |
| 12 | Q. Okay. But your recollection, at least as you | 10:05:17 |
| 13 | sit here today, is that if there was an Office Action, | 10:05:25 |
| 14 | that Mr. Howard would have handled that? | 10:05:30 |
| 15 | A. I'm not sure. I'm not sure who this one was | 10:05:35 |
| 16 | assigned to. | 10:05:38 |
| 17 | MS. BEANE: All right. You've been handed | 10:06:07 |
| 18 | what's been marked Exhibit 3 to your deposition which is | 10:06:09 |
| 19 | US Patent 12,245,860. | 10:06:12 |
| 20 | (Exhibit No. 3 was marked for | 10:06:16 |
| 21 | identification.) | 10:06:16 |
| 22 | BY MS. BEANE: | 10:06:16 |
| 23 | Q. Do you recognize this document? | 10:06:17 |
| 24 | A. I do. | 10:06:18 |
| 25 | Q. And were you involved in the prosecution of the | 10:06:22 |

| | | |
|---|---|---|
| 1 | '860 patent? | 10:06:24 |
| 2 | A.   Yes. | 10:06:26 |
| 3 | Q.   What was your involvement? | 10:06:28 |
| 4 | A.   I collaborated on the claim strategy with | 10:06:39 |
| 5 | Damien Howard. | 10:06:41 |
| 6 | Q.   And do you recall who approved the claims to be | 10:06:49 |
| 7 | filed? | 10:06:52 |
| 8 | A.   Ted Lopez. | 10:06:59 |
| 9 | Q.   Did you prepare the IDS that was submitted with | 10:07:06 |
| 10 | the application for the '860 patent? | 10:07:13 |
| 11 | A.   I think if Damien was handling this, Damien | 10:07:18 |
| 12 | would have prepared the IDS. | 10:07:22 |
| 13 | Q.   Do you recall whether you signed the IDS or | 10:07:38 |
| 14 | whether Damien signed it? | 10:07:41 |
| 15 | A.   I don't recall. | 10:07:43 |
| 16 | Q.   Do you typically sign the documents that are | 10:07:46 |
| 17 | being filed on behalf of iRhythm at the Patent Office? | 10:07:48 |
| 18 | A.   I signed for the cases that I am handling and | 10:07:52 |
| 19 | then my colleagues will sign for the cases that they are | 10:07:56 |
| 20 | handling. | 10:07:59 |
| 21 | Q.   Okay.  So if you signed the IDS that was | 10:08:01 |
| 22 | submitted as part of the '860 patent application, is it | 10:08:05 |
| 23 | fair for me to assume that you prepared the IDS? | 10:08:10 |
| 24 | A.   If I signed the IDS, I was involved in | 10:08:14 |
| 25 | preparation of the IDS, but there may be other people | 10:08:19 |

| | | |
|---|---|---|
| 1 | who helped prepare the IDS. | 10:08:22 |
| 2 | Q.   Okay.  Fair enough. | 10:08:25 |
| 3 | MS. BEANE:  All right. | 10:08:29 |
| 4 | THE WITNESS:  Thank you. | 10:08:38 |
| 5 | BY MS. BEANE: | 10:08:40 |
| 6 | Q.   All right.  You've been handed a document | 10:08:41 |
| 7 | that's marked Exhibit 4 to your deposition which is US | 10:08:42 |
| 8 | Patent 12,274,554.  Do you recognize this document? | 10:08:45 |
| 9 | A.   I do. | 10:08:53 |
| 10 | (Exhibit No. 4 was marked for | 10:08:54 |
| 11 | identification.) | 10:08:54 |
| 12 | BY MS. BEANE: | 10:08:55 |
| 13 | Q.   And were you involved in the prosecution of the | 10:08:56 |
| 14 | '554 patent? | 10:09:00 |
| 15 | A.   Yes. | 10:09:16 |
| 16 | Q.   Was anybody else involved? | 10:09:29 |
| 17 | A.   I don't know for sure, but I think Damien | 10:09:33 |
| 18 | Howard may have also been involved. | 10:09:37 |
| 19 | Q.   Who approved the claims to be filed of the '554 | 10:09:45 |
| 20 | patent? | 10:09:48 |
| 21 | A.   Ted Lopez. | 10:09:53 |
| 22 | Q.   Do you recall when you first received | 10:10:11 |
| 23 | instructions with respect to filing the application that | 10:10:12 |
| 24 | led to the '554 patent? | 10:10:17 |
| 25 | MR. BUNKER:  You may answer that yes or no. | 10:10:20 |

| | | |
|---|---|---|
| 1 | THE WITNESS:  No, I don't recall a specific | 10:10:27 |
| 2 | date. | 10:10:28 |
| 3 | BY MS. BEANE: | 10:10:28 |
| 4 | Q.   Would it have been close to the time that it | 10:10:29 |
| 5 | was filed? | 10:10:32 |
| 6 | A.   I don't know for certain, but likely, yes. | 10:10:38 |
| 7 | Q.   And why do you think that's likely? | 10:10:43 |
| 8 | A.   Once we have instructions to file a patent | 10:10:45 |
| 9 | application, we typically don't delay for very long. | 10:10:48 |
| 10 | Q.   Do you know who prepared the IDS that was | 10:11:05 |
| 11 | submitted with the '554 patent application? | 10:11:08 |
| 12 | A.   I'm not sure who signed the IDS, but whoever | 10:11:11 |
| 13 | signed the IDS would have been involved in the | 10:11:15 |
| 14 | preparation of the IDS, so -- and that would be in | 10:11:17 |
| 15 | combination with assistants -- patent assistants at our | 10:11:21 |
| 16 | firm. | 10:11:26 |
| 17 | Q.   Is it fair to say that that answer is true for | 10:11:33 |
| 18 | all of the iRhythm patents that you've been involved | 10:11:37 |
| 19 | with prosecuting? | 10:11:41 |
| 20 | A.   Can you please clarify the question? | 10:11:44 |
| 21 | Q.   I'll just strike it.  I'll just ask again when | 10:11:45 |
| 22 | we get to the next patent. | 10:11:48 |
| 23 | A.   Okay. | 10:11:50 |
| 24 | Q.   It's no problem. | 10:11:51 |
| 25 | All right, handing you a document that's been | 10:12:07 |

| | | |
|---|---|---|
| 1 | marked Exhibit 5 to your deposition which is US Patent | 10:12:10 |
| 2 | 12,303,277.  Do you recognize this document? | 10:12:13 |
| 3 | A.   Yes. | 10:12:21 |
| 4 | (Exhibit No. 5 was marked for | 10:12:21 |
| 5 | identification.) | 10:12:21 |
| 6 | BY MS. BEANE: | 10:12:21 |
| 7 | Q.   Were you involved in the prosecution of this | 10:12:22 |
| 8 | patent application? | 10:12:25 |
| 9 | A.   Yes. | 10:12:37 |
| 10 | Q.   Did you draft the claims? | 10:12:38 |
| 11 | A.   I think they were drafted in collaboration with | 10:12:46 |
| 12 | Damien Howard, but I don't know for sure. | 10:12:49 |
| 13 | Q.   Who at iRhythm approved the filing of the | 10:12:56 |
| 14 | claims? | 10:12:59 |
| 15 | A.   Ted Lopez. | 10:13:04 |
| 16 | Q.   And who prepared the IDS with respect to the | 10:13:12 |
| 17 | '277 patent? | 10:13:15 |
| 18 | A.   Whoever signed the IDS, it's same answer as | 10:13:17 |
| 19 | before. | 10:13:21 |
| 20 | Q.   Okay.  Great.  I'm handing you a document | 10:13:21 |
| 21 | that's been marked Exhibit 6 to your deposition which is | 10:13:54 |
| 22 | US Patent 12,408,856.  Do you recognize this document? | 10:13:58 |
| 23 | A.   I do. | 10:14:06 |
| 24 | Q.   Were you involved in the prosecution of the 856 | 10:14:08 |
| 25 | patent? | 10:14:11 |

| | | |
|---|---|---|
| 1 | A. Yes. | 10:14:15 |
| 2 | (Exhibit No. 6 was marked for | 10:14:15 |
| 3 | identification.) | 10:14:15 |
| 4 | BY MS. BEANE: | 10:14:16 |
| 5 | Q. You mentioned earlier that you had | 10:14:23 |
| 6 | correspondence with Fenwick & West with respect to | 10:14:25 |
| 7 | patent prosecution over the summer, was it with respect | 10:14:29 |
| 8 | to the '856 patent prosecution? | 10:14:33 |
| 9 | MR. BUNKER: I'm going to object and instruct | 10:14:38 |
| 10 | you not to answer that as it reveals the substance of | 10:14:41 |
| 11 | attorney-work product information. | 10:14:45 |
| 12 | THE WITNESS: Okay. | 10:14:47 |
| 13 | BY MS. BEANE: | 10:14:48 |
| 14 | Q. And are you going to follow your attorney's | 10:14:48 |
| 15 | instruction? | 10:14:51 |
| 16 | A. I will. | 10:14:52 |
| 17 | Q. Okay. Who -- sorry, I don't remember if I | 10:14:53 |
| 18 | asked these questions yet. | 10:15:12 |
| 19 | Who prepared the claims with respect to the | 10:15:15 |
| 20 | '856 patent? | 10:15:17 |
| 21 | MR. BUNKER: Again, I'm gonna instruct you not | 10:15:21 |
| 22 | to answer that based on the substance would reveal work | 10:15:24 |
| 23 | product privileged information. | 10:15:28 |
| 24 | BY MS. BEANE: | 10:15:34 |
| 25 | Q. Did you prepare the claims of the '856 patent? | 10:15:35 |

| | | |
|---|---|---|
| 1 | MR. BUNKER: You may answer to the extent | 10:15:38 |
| 2 | yourself. | 10:15:40 |
| 3 | THE WITNESS: Sorry, outside for a second? | 10:15:41 |
| 4 | MR. BUNKER: You got it. Let's take a break. | 10:15:43 |
| 5 | THE VIDEOGRAPHER: We are going off the record, | 10:15:47 |
| 6 | the time is 10:15 a.m. | 10:15:49 |
| 7 | (Brief recess was taken.) | 10:15:52 |
| 8 | THE VIDEOGRAPHER: We are back on the record at | 10:18:12 |
| 9 | 10:18 a.m. | 10:18:14 |
| 10 | MR. BUNKER: And, Counsel, if you could repeat | 10:18:17 |
| 11 | your question. | 10:18:18 |
| 12 | BY MS. BEANE: | 10:18:18 |
| 13 | Q. Did you prepare the claims of the '856 patent? | 10:18:19 |
| 14 | A. I did. | 10:18:23 |
| 15 | Q. By yourself? | 10:18:24 |
| 16 | MR. BUNKER: You may answer that yes or no. | 10:18:27 |
| 17 | THE WITNESS: No. | 10:18:32 |
| 18 | BY MS. BEANE: | 10:18:32 |
| 19 | Q. Who else was involved? | 10:18:33 |
| 20 | MR. BUNKER: I'm gonna instruct you not to | 10:18:34 |
| 21 | answer since substance would reveal attorney-work | 10:18:36 |
| 22 | product information. | 10:18:38 |
| 23 | BY MS. BEANE: | 10:18:39 |
| 24 | Q. Were there attorneys at Fenwick & West involved | 10:18:40 |
| 25 | in the drafting of the '856 patent claims? | 10:18:42 |

| | | |
|---|---|---|
| 1 | instruction. | 10:19:43 |
| 2 | BY MS. BEANE: | 10:19:44 |
| 3 | Q.   And are you going to follow your counsel's | 10:19:45 |
| 4 | instruction? | 10:19:47 |
| 5 | A.   I will. | 10:19:48 |
| 6 | Q.   Okay.  Do you recall when you received | 10:19:48 |
| 7 | instructions to file the application that led to the | 10:19:59 |
| 8 | '856 patent? | 10:20:01 |
| 9 | MR. BUNKER:  You may answer that yes or no. | 10:20:03 |
| 10 | THE WITNESS:  Not specifically. | 10:20:08 |
| 11 | BY MS. BEANE: | 10:20:10 |
| 12 | Q.   Generally? | 10:20:10 |
| 13 | A.   Probably in early summer or late spring. | 10:20:13 |
| 14 | (Discussion off the record.) | 10:20:18 |
| 15 | MS. BEANE:  Sorry. | 10:20:26 |
| 16 | THE WITNESS:  Sorry, let me clarify that.  It | 10:20:27 |
| 17 | would have been in the spring. | 10:20:29 |
| 18 | BY MS. BEANE: | 10:20:31 |
| 19 | Q.   And that's because it was filed in May? | 10:20:31 |
| 20 | A.   I just double-checked the date, yeah. | 10:20:33 |
| 21 | Q.   Great.  Did you receive instructions to file | 10:20:37 |
| 22 | the '856 patent application from Mr. Lopez? | 10:20:45 |
| 23 | MR. BUNKER:  Uh, you may answer that. | 10:20:55 |
| 24 | THE WITNESS:  Yes. | 10:20:57 |
| 25 | /// | |

| | | |
|---|---|---|
| 1 | BY MS. BEANE: | 10:20:58 |
| 2 | Q.   Do you recall whether that instruction came in | 10:21:04 |
| 3 | email or a phone communication? | 10:21:05 |
| 4 | MR. BUNKER:  You can answer that yes or no. | 10:21:09 |
| 5 | THE WITNESS:  I'd say both.  We communicated | 10:21:14 |
| 6 | over the phone and via email. | 10:21:17 |
| 7 | BY MS. BEANE: | 10:21:19 |
| 8 | Q.   Did you prepare the IDS that was filed with the | 10:21:27 |
| 9 | '856 patent? | 10:21:31 |
| 10 | A.   If I signed it, then yes. | 10:21:35 |
| 11 | Q.   I am handing you a document that's been marked | 10:22:05 |
| 12 | as Exhibit 7 to your deposition, US Patent 12,402,819. | 10:22:07 |
| 13 | Do you recognize this document? | 10:22:16 |
| 14 | A.   I do. | 10:22:20 |
| 15 | (Exhibit No. 7 was marked for | 10:22:20 |
| 16 | identification.) | 10:22:20 |
| 17 | BY MS. BEANE: | 10:22:20 |
| 18 | Q.   Did you draft the claims of the '819 patent? | 10:22:22 |
| 19 | A.   In collaboration, yes. | 10:22:36 |
| 20 | Q.   In collaboration with who? | 10:22:38 |
| 21 | MR. BUNKER:  I will instruct you not to answer | 10:22:40 |
| 22 | as the answer may reveal the substance of attorney-work | 10:22:43 |
| 23 | product information. | 10:22:47 |
| 24 | BY MS. BEANE: | 10:22:49 |
| 25 | Q.   Are you going to follow your counsel's | 10:22:50 |

| | | |
|---|---|---|
| 1 | BY MS. BEANE: | 10:41:19 |
| 2 | Q.   Do you recall communicating with Mr. Lopez | 10:41:20 |
| 3 | about iRhythm patent prosecution before Mr. Lopez was | 10:41:22 |
| 4 | employed with iRhythm? | 10:41:26 |
| 5 | MR. BUNKER:  You can answer that yes or no. | 10:41:28 |
| 6 | THE WITNESS:  No. | 10:41:30 |
| 7 | BY MS. BEANE: | 10:41:30 |
| 8 | Q.   Does Mr. Lopez supervise the prosecution of | 10:41:45 |
| 9 | iRhythm's patent portfolio? | 10:41:48 |
| 10 | MR. BUNKER:  Objection to form.  Objection, | 10:41:51 |
| 11 | lacks foundation. | 10:41:53 |
| 12 | THE WITNESS:  Yes. | 10:41:55 |
| 13 | BY MS. BEANE: | 10:41:55 |
| 14 | Q.   Sorry, if you could take out the '554 patent | 10:42:22 |
| 15 | which is Exhibit 4. | 10:42:43 |
| 16 | A.   (Witness complies). | 10:43:03 |
| 17 | Q.   All right.  You've been handed a document | 10:43:03 |
| 18 | marked Exhibit 9 which I will represent to you is the | 10:43:05 |
| 19 | printout of the file wrapper documents and transaction | 10:43:11 |
| 20 | history for US application 18/936,888. | 10:43:21 |
| 21 | Is application 18,936,888 the application | 10:43:27 |
| 22 | number that corresponds to the '554 patent? | 10:43:32 |
| 23 | A.   Yes, I see that on the face of the patent, | 10:43:39 |
| 24 | yeah. | 10:43:41 |
| 25 | /// | |

| | | |
|---|---|---|
| 1 | language? | 10:59:47 |
| 2 | A. I believe so, yes. That's a Japanese patent | 10:59:48 |
| 3 | application. | 10:59:52 |
| 4 | Q. When this IDS was submitted, did you have the | 10:59:58 |
| 5 | English translation of this Japanese reference? | 11:00:05 |
| 6 | A. I don't know. | 11:00:14 |
| 7 | Q. Have you ever heard of a reference referred to | 11:00:18 |
| 8 | as Matsumura? | 11:00:20 |
| 9 | A. I can't recall. | 11:00:30 |
| 10 | Q. At any point during the prosecution of the '888 | 11:00:33 |
| 11 | patent, are you aware of having an English translation | 11:00:35 |
| 12 | of Cite No. 956, which is JP2004-121360? | 11:00:42 |
| 13 | MR. BUNKER: Objection to form. | 11:00:49 |
| 14 | Did you mean '888 application, Counsel? | 11:00:50 |
| 15 | MS. BEANE: Yes, I did. Let me ask it again. | 11:00:54 |
| 16 | BY MS. BEANE: | 11:00:57 |
| 17 | Q. At any point during the prosecution of the '888 | 11:00:58 |
| 18 | application, are you aware of having an English | 11:01:02 |
| 19 | translation of Cite No. 956 which is JP2004-121360? | 11:01:04 |
| 20 | A. No. | 11:01:17 |
| 21 | Q. If you had an English translation of that | 11:01:20 |
| 22 | document, would you have submitted it to the patent | 11:01:23 |
| 23 | office? | 11:01:27 |
| 24 | MR. BUNKER: Objection to form. | 11:01:28 |
| 25 | THE WITNESS: I don't know. | 11:01:34 |

| | | |
|---|---|---|
| 1 | THE WITNESS:  I am. | 11:03:39 |
| 2 | BY MS. BEANE: | 11:03:39 |
| 3 | Q.   And are you aware that iRhythm filed Inter | 11:03:40 |
| 4 | Partes Reviews against patents asserted in the Welch | 11:03:43 |
| 5 | Allyn case? | 11:03:43 |
| 6 | MR. BUNKER:  You can answer that yes or no. | 11:03:51 |
| 7 | THE WITNESS:  Yes. | 11:03:53 |
| 8 | BY MS. BEANE: | 11:03:53 |
| 9 | Q.   When did you become aware of IPR? | 11:03:53 |
| 10 | MR. BUNKER:  Counsel, I'm gonna stop the | 11:03:56 |
| 11 | deposition here.  You're asking questions about the | 11:03:59 |
| 12 | Welch Allyn litigation which is not the litigation for | 11:04:01 |
| 13 | which the subpoena was served on Mr. Schmidt. | 11:04:03 |
| 14 | Further, my understanding is there is no | 11:04:05 |
| 15 | cross-use between those two cases.  So if we're gonna | 11:04:07 |
| 16 | continue down this path asking about the Welch Allyn | 11:04:10 |
| 17 | litigation, we'll have to pause so I can seek a | 11:04:14 |
| 18 | protective order, and we will.  Or you can move on to | 11:04:15 |
| 19 | other areas. | 11:04:15 |
| 20 | MS. BEANE:  It has to do with the Matsumura | 11:04:16 |
| 21 | reference and the art and the knowledge of the Matsumura | 11:04:16 |
| 22 | reference so it is relevant to this deposition. | 11:04:25 |
| 23 | MR. BUNKER:  And how is that relevant to the | 11:04:28 |
| 24 | issues that are pending in the case for which you served | 11:04:30 |
| 25 | your subpoena? | 11:04:32 |

| | | |
|---|---|---|
| 1 | (Discussion off the record.) | 11:05:37 |
| 2 | THE VIDEOGRAPHER: We are back on the record. | 11:08:10 |
| 3 | The time is 11:08 a.m. | 11:08:12 |
| 4 | MR. BUNKER: My apologies, Counsel, if you | 11:08:14 |
| 5 | could reask your question. | 11:08:16 |
| 6 | MS. BEANE: Not a problem. | 11:08:18 |
| 7 | BY MS. BEANE: | 11:08:19 |
| 8 | Q. When did you become aware of the IPRs iRhythm | 11:08:19 |
| 9 | filed against the Welch Allyn patent? | 11:08:25 |
| 10 | A. I don't remember a specific date. | 11:08:28 |
| 11 | Q. Do you know whether it was around the time they | 11:08:32 |
| 12 | were filed? | 11:08:34 |
| 13 | A. I think it was sometime after the time they | 11:08:36 |
| 14 | were filed. | 11:08:38 |
| 15 | Q. Have you reviewed those IPRS? | 11:08:44 |
| 16 | MR. BUNKER: Objection to form. | 11:08:47 |
| 17 | You can answer that yes or no, if you | 11:08:48 |
| 18 | understand. | 11:08:50 |
| 19 | THE WITNESS: Yes, very briefly. | 11:08:51 |
| 20 | BY MS. BEANE: | 11:08:56 |
| 21 | Q. And are you aware that iRhythm relied in those | 11:08:56 |
| 22 | IPRs against the Welch Allyn patents on a reference | 11:09:01 |
| 23 | called Matsumura? | 11:09:05 |
| 24 | MR. BUNKER: Objection to form. | 11:09:08 |
| 25 | You can answer that yes or no. | 11:09:09 |

```
1            THE WITNESS:  I don't recall.              11:09:11
2   BY MS. BEANE:                                       11:09:12
3       Q.   Did you know that iRhythm submitted an English   11:09:12
4   translation of JP2004-121360 in its IPRs against Welch    11:09:15
5   Allyn?                                              11:09:25
6            MR. BUNKER:  You can answer that yes or no.   11:09:26
7            THE WITNESS:  Not that I can recall.       11:09:28
8   BY MS. BEANE:                                       11:09:34
9       Q.   Were you aware that iRhythm also submitted an   11:09:34
10  expert declaration as part of its IPRs against Welch    11:09:37
11  Allyn?                                              11:09:41
12           MR. BUNKER:  You can answer that yes or no.   11:09:42
13           THE WITNESS:  Yes.                         11:09:45
14  BY MS. BEANE:                                       11:09:47
15      Q.   Did you review that declaration?           11:09:48
16           MR. BUNKER:  Objection to form.            11:09:51
17           You can answer that yes or no.             11:09:52
18           THE WITNESS:  Not in any great detail.     11:09:55
19  BY MS. BEANE:                                       11:09:58
20      Q.   Are you aware the expert declaration       11:09:58
21  characterized the reference JP2004-121360?          11:10:00
22           MR. BUNKER:  Objection to form.            11:10:09
23           You can answer that.                       11:10:10
24           THE WITNESS:  No.                          11:10:12
25  ///
```

| | | |
|---|---|---|
| 1 | BY MS. BEANE: | 11:10:15 |
| 2 | Q.   And just to confirm, you don't recall informing | 11:10:37 |
| 3 | the Patent Office as part of the '888 application about | 11:11:01 |
| 4 | the English translation of JP2004-121360, correct? | 11:11:08 |
| 5 | MR. BUNKER:  Objection to form. | 11:11:17 |
| 6 | THE WITNESS:  No, I don't recall that. | 11:11:19 |
| 7 | BY MS. BEANE: | 11:11:24 |
| 8 | Q.   And as you sit here today, knowing that iRhythm | 11:11:24 |
| 9 | has an English translation of that document, are you | 11:11:30 |
| 10 | planning to submit it as part of future IDSs for iRhythm | 11:11:35 |
| 11 | prosecution? | 11:11:40 |
| 12 | MR. BUNKER:  Objection to form.  Objection, | 11:11:41 |
| 13 | lacks foundation. | 11:11:42 |
| 14 | THE WITNESS:  I will have to consult with the | 11:11:46 |
| 15 | clients, so I don't know at this point, but probably. | 11:11:48 |
| 16 | BY MS. BEANE: | 11:11:55 |
| 17 | Q.   Why do you say probably? | 11:11:55 |
| 18 | MR. BUNKER:  Objection to form.  And calls for | 11:11:56 |
| 19 | speculation. | 11:12:01 |
| 20 | I'm gonna instruct you not to answer as the | 11:12:01 |
| 21 | substance may reveal attorney-client privileged | 11:12:04 |
| 22 | communications. | 11:12:09 |
| 23 | MS. BEANE:  Okay.  I don't think it does, but | 11:12:28 |
| 24 | okay. | 11:12:46 |
| 25 | /// | |

| | |
|---|---|
| 1 | BY MS. BEANE: | 11:12:52 |
| 2 | Q. Are you gonna follow your attorney's | 11:12:53 |
| 3 | instruction not to answer what you meant by "probably" | 11:12:54 |
| 4 | in your previous statement? | 11:12:58 |
| 5 | A. I will. | 11:13:01 |
| 6 | MS. BEANE: On what basis is that privileged? | 11:13:07 |
| 7 | MR. BUNKER: Because you're asking him about a | 11:13:10 |
| 8 | hypothetical, what me might do in the future, which can | 11:13:12 |
| 9 | only be based on what he's done with the past. You're | 11:13:14 |
| 10 | asking about past patterns and practices with his | 11:13:18 |
| 11 | clients; therefore, likely to reveal substance of the | 11:13:22 |
| 12 | communications with his client. | 11:13:26 |
| 13 | BY MS. BEANE: | 11:13:56 |
| 14 | Q. Are you familiar with Bardy Diagnostics? | 11:13:56 |
| 15 | A. Yes. | 11:13:58 |
| 16 | Q. Do you monitor Bardy Diagnostics' patent | 11:14:03 |
| 17 | portfolio? | 11:14:08 |
| 18 | MR. BUNKER: Objection to form. | 11:14:09 |
| 19 | You can answer that yes or no. | 11:14:09 |
| 20 | THE WITNESS: Yes. | 11:14:11 |
| 21 | BY MS. BEANE: | 11:14:11 |
| 22 | Q. Do you do that at the direction of your client | 11:14:27 |
| 23 | iRhythm? | 11:14:29 |
| 24 | MR. BUNKER: I'm gonna instruct you not to | 11:14:35 |
| 25 | answer as the answer may reveal the substance of | 11:14:36 |

| | | |
|---|---|---|
| 1 | Q.   Okay.  And it was filed, according to | 11:22:26 |
| 2 | Exhibit 12, on June 29th, 2021, correct? | 11:22:35 |
| 3 | A.   That's right.  And that's also the same date by | 11:22:46 |
| 4 | my signature on Exhibit 14. | 11:22:49 |
| 5 | Q.   On page 3 of the preliminary amendment, it | 11:23:07 |
| 6 | indicates that no new matter has been added, correct? | 11:23:11 |
| 7 | A.   Correct. | 11:23:15 |
| 8 | Q.   Before you add claims, do you review the | 11:23:19 |
| 9 | specification to ensure that the claims have proper 112 | 11:23:22 |
| 10 | support? | 11:23:27 |
| 11 | A.   Yes. | 11:23:27 |
| 12 | Q.   And new -- sorry -- New Claim 45 on page 2 | 11:23:31 |
| 13 | recites, "Wherein the housing is configured to tilt at | 11:23:50 |
| 14 | an angle relative to the adhesive layer in response to | 11:23:53 |
| 15 | movement of the user." | 11:23:57 |
| 16 | A.   So you meant Claim 46, right? | 11:24:02 |
| 17 | Q.   Yes, I did, sorry. | 11:24:05 |
| 18 | A.   Okay.  Yes, that is -- what you have recited is | 11:24:15 |
| 19 | the last limitation of New Claim 46. | 11:24:18 |
| 20 | Q.   Do you recall why that limitation was added? | 11:24:22 |
| 21 | A.   Yes. | 11:24:29 |
| 22 | Q.   Why? | 11:24:31 |
| 23 | MR. BUNKER:  You can answer that to the extent | 11:24:33 |
| 24 | you can do so without revealing the substance of any | 11:24:34 |
| 25 | privileged communications you may have had with iRhythm. | 11:24:37 |

| | | |
|---|---|---|
| 1 | Do you want to take a break? | 11:24:45 |
| 2 | THE WITNESS:  Yeah. | 11:24:47 |
| 3 | THE VIDEOGRAPHER:  We are going off the record | 11:24:48 |
| 4 | at 11:24 a.m. | 11:24:50 |
| 5 | (Brief recess was taken.) | 11:25:36 |
| 6 | THE VIDEOGRAPHER:  We are back on the record at | 11:30:37 |
| 7 | 11:31 a.m. | 11:31:12 |
| 8 | MR. BUNKER:  Counsel, if you could just repeat | 11:31:16 |
| 9 | the question so it's clear in the transcript. | 11:31:17 |
| 10 | BY MS. BEANE: | 11:31:20 |
| 11 | Q.   Yes.  So I said, Do you recall why that | 11:31:21 |
| 12 | limitation was added, referring to the last limitation | 11:31:23 |
| 13 | of Claim 46, and you said yes and I said why? | 11:31:26 |
| 14 | MR. BUNKER:  And you can answer that to the | 11:31:31 |
| 15 | extent you can do so without revealing the substance of | 11:31:33 |
| 16 | any attorney-client communications you had with iRhythm. | 11:31:36 |
| 17 | THE WITNESS:  Right.  So the motivation behind | 11:31:40 |
| 18 | the claim was to get additional claim scope that we | 11:31:41 |
| 19 | don't already have in the portfolio and then also to | 11:31:45 |
| 20 | cover the iRhythm Zio, which I believe it does. | 11:31:48 |
| 21 | (Reporter clarification.) | 11:31:55 |
| 22 | THE WITNESS:  The product is called the Zio, | 11:31:55 |
| 23 | Z-I-O. | 11:31:55 |
| 24 | BY MS. BEANE: | 11:32:09 |
| 25 | Q.   Is that the Zio monitor? | 11:32:10 |

| | | |
|---|---|---|
| 1 | A.   Uh, I think this would cover that. | 11:32:14 |
| 2 | MR. BUNKER:  Uh, you may reveal -- you may | 11:32:21 |
| 3 | answer that to the extent that you're talking about your | 11:32:26 |
| 4 | opinions at that time. | 11:32:28 |
| 5 | THE WITNESS:  Yeah, my opinion is that this | 11:32:32 |
| 6 | would cover the Zio monitor and I believe other versions | 11:32:34 |
| 7 | of the Zio. | 11:32:40 |
| 8 | BY MS. BEANE: | 11:32:43 |
| 9 | Q.   And by other versions, are you referring to the | 11:32:43 |
| 10 | XT or AT? | 11:32:46 |
| 11 | A.   Correct. | 11:32:50 |
| 12 | Q.   Okay.  So in your answer previously, you | 11:32:50 |
| 13 | testified, in part, that you were trying to get claim | 11:33:04 |
| 14 | scope to cover iRhythm's Zio and when you used Zio in | 11:33:10 |
| 15 | that answer, you mean Zio Monitor, Zio Monitor XT and | 11:33:15 |
| 16 | Zio AT? | 11:33:21 |
| 17 | A.   That's right, iRhythm has multiple products, | 11:33:23 |
| 18 | but they're all related.  So there's overlapping | 11:33:26 |
| 19 | technology in each of the products which is why I think | 11:33:31 |
| 20 | this would cover all three. | 11:33:34 |
| 21 | Q.   Okay, do you know whether the limitation was | 11:33:36 |
| 22 | also added to cover the Bardy cam product? | 11:34:00 |
| 23 | MR. BUNKER:  You can answer that to the extent | 11:34:04 |
| 24 | you can do so without revealing any communications that | 11:34:07 |
| 25 | you had with I or anybody at iRhythm. | 11:34:09 |

| | | |
|---|---|---|
| 1 | THE WITNESS: Yes, it is my personal belief | 11:34:16 |
| 2 | that that does cover the Bardy cam. | 11:34:18 |
| 3 | BY MS. BEANE: | 11:34:31 |
| 4 | Q. What did you mean when you wrote "configured to | 11:34:32 |
| 5 | tilt"? | 11:34:35 |
| 6 | MR. BUNKER: Objection to form. | 11:34:36 |
| 7 | THE WITNESS: It's a limitation directed | 11:34:39 |
| 8 | towards a feature of the device whereby the central | 11:34:41 |
| 9 | portion can move relative to the skin while the user is | 11:34:46 |
| 10 | moving around or flexing their body. | 11:34:50 |
| 11 | BY MS. BEANE: | 11:35:05 |
| 12 | Q. How does the Bardy cam patch do that? | 11:35:07 |
| 13 | MR. BUNKER: Objection to form. | 11:35:10 |
| 14 | THE WITNESS: My understanding is that the | 11:35:14 |
| 15 | Bardy cam has a flexible underlying layer and then a | 11:35:17 |
| 16 | housing that is attached to that layer. And then it | 11:35:23 |
| 17 | can -- as the human, you know, or, I guess, an animal, | 11:35:27 |
| 18 | whatever the user is, moves around, that housing can | 11:35:32 |
| 19 | tilt relative to the underlying surface of the -- of the | 11:35:37 |
| 20 | device. | 11:35:41 |
| 21 | BY MS. BEANE: | 11:35:52 |
| 22 | Q. Have you tried one on to determine whether that | 11:35:53 |
| 23 | happens? | 11:35:56 |
| 24 | MR. BUNKER: Objection to form. | 11:35:57 |
| 25 | THE WITNESS: Are you asking about trying on a | 11:35:59 |