# Exhibit N

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,505 | 09/08/2025 | 12303277 | 3726071.00381 | 1615 |

| | | |
|---|---|---|
| 20995  7590  10/17/2025 | EXAMINER | |
| Knobbe, Martens, Olson & Bear, LLP | WILLIAMS, CATHERINE SERKE | |
| 2040 MAIN STREET | | |
| FOURTEENTH FLOOR | ART UNIT | PAPER NUMBER |
| IRVINE, CA 92614 | 3993 | |
| | MAIL DATE | DELIVERY MODE |
| | 10/17/2025 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

K&L Gates LLP - Chicago
Baxter
P.O. Box 1135
Chicago, IL 60690-1135

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. <u>90/015,505</u> .

PATENT UNDER REEXAMINATION <u>12303277</u> .

ART UNIT <u>3993</u> .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No. 90/015,505 | Patent Under Reexamination 12303277 |
|---|---|---|
| | Examiner CATHERINE S WILLIAMS | Art Unit 3993 / AIA (FITF) Status No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 09/08/2025 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:   a)☐  PTO-892,   b)☒  PTO/SB/08,   c)☐  Other: ____

1. ☒  The request for *ex parte* reexamination is GRANTED.

   RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471G(Rev. 01-13)                Office Action in *Ex Parte* Reexamination                Part of Paper No. 20251006

# DECISION ON REQUEST FOR REEXAMINATION

A substantial new question (hereinafter "SNQ") of patentability affecting claims 1-10 of United States Patent Number 12,303,277 (hereinafter "the '277 patent") is raised by the request for *ex parte* reexamination.

## *Notice of Pre-AIA or AIA Status*

The present application is being examined under the pre-AIA first to invent provisions.

## *Service of Papers*

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. See 37 CFR 1.550(f).

## *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

## *Amendment in Reexamination Proceedings*

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c). See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

Application/Control Number: 90/015,505　　　　　　　　　　　　　　　　　　　Page 3
Art Unit: 3993

## *Submissions*

In order to insure full consideration of any amendments, affidavits or declarations or other documents as evidence of patentability, such documents must be submitted in response to the first office action on the merits (which does not result in a close of prosecution). Submissions after the second office action on the merits, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33 after appeal, which will be strictly enforced.

## *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '277 patent throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

## *Waiver of Right to File Patent Owner Statement*

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third party requester, see 37 C.F.R. 1.550(f). The Patent Owner may consider using the following statement in a document waiving the right to file a Patent Owner Statement:

---

**WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT**

Patent Owner waives the right under 37 C.F.R. § 1.530 to file a Patent Owner Statement.

---

## Substantial New Question

The SNQ is based on:

1. US Pub. No. 2009/0076363 to Bly et al. (hereinafter "Bly '363"); and
2. JP2004/121360 to Matsumura (hereinafter "Matsumura").

A discussion of the specifics now follows:

## Requester's Position

1. Claims 1-10 are unpatentable over Bly '363 alone.

2. Claim 1 is unpatentable over Matsumura alone.

## Prosecution History – 18/806,584

The '277 patent resulted from US Pat. Application 18/806,584 (hereinafter "the '584 application") and was filed on 08/15/2024 with claim 1. A preliminary amendment to the claims was then filed 09/26/2024 cancelling claim 1 and adding new independent claims 2 and 10 and claims 3-9 and 11-19 depending respectively therefrom. A Non-Final Rejection was mailed 10/24/2024 rejecting:

- claims 2-7 and 9 as being unpatentable over US Pub. No. 2002/0082491 to Nissila (hereinafter "Nissila") in view of US Pub. No. 2007/0285868 to Lindberg (hereinafter "Lindberg");

- claims 8 and 18 as being obvious over Nissila in view of Lindberg and in further view of US Pub. No. 2008/0288026 to Cross.

Applicant filed a response on 01/24/2025 cancelling claims 1-9 and amending independent claim 10 replacing "extending horizontally away from the housing" to "extends" and other minor amendments. Applicant argued the patentability of the claims stating,

> *Claim 10 is Patentable*
>
> Applicant amended Claim 10 to further clarify the subject matter of the claim. Further, to reach the subject matter of Claim 10, the Office Action combined Lindberg with Nissila "as predictable results would have ensued (affording a non-stretchable, breathable flexible layer for attachment to a user)." *Office Action*, page 6. However, amended Claim 10 recites, *inter alia*, "**wherein the second** substrate layer is positioned over the first substrate layer and extends beyond **a** boundary of the first substrate layer." **(emphasis** added). Applicant respectfully notes that Nissila already provides a flexible breathable adhesive band (101) for adhering to a user. *Nissila*, para. [0033]. Therefore, there is no motivation or rationale for one of ordinary skill in the art to combine Lindberg with Nissila to solve a problem that does not exist in Nissila and/or make an un-needed improvement in Nissila. Further, as shown in Figure 2a of Lindberg below, the upper substrate of Lindberg (16) does not extend beyond a boundary of the lower substrate layer (12). *Lindberg*, Figure 2a. For at least these reasons, Applicant respectfully requests that the present rejections be withdrawn.

See the '584 Application, Remarks filed 07/23/2024, pages 4-5. Subsequent to the amendment, a Notice of Allowance ("NOA") was mailed 03/21/2025 with a reasons for allowance stating,

Application/Control Number: 90/015,505 Page 6
Art Unit: 3993

## *Reasons for Allowance*

*The following is an examiner's statement of reasons for allowance:*

The closest prior art Gehman US Patent Application 2008/0214901 discloses an electronic device (10, Figure 2) with a housing (12) that contains a physiologic data collection circuit ([0024]), an electrode supporting section (the edges of the patch; see Figure 2) extend from the housing, an electrode (14) is positioned on a bottom surface the supporting section (Fig. 2, to make the wing), the electrode being connected to the collection circuit (via 13). Each wing has a second layer (20) over a top of the wing, and extending horizontally beyond the boundary of each wing. The electrode elements (14) can be conductive adhesives for adhering to skin ([0031]). If the adhesive electrode elements (14) are the electrodes, then Gehman fails to further disclose a first layer. If the adhesive electrode elements (14) are the first adhesive layer, then the electrode (13) is not on a bottom surface of the electrode supporting section. There is insufficient teaching, suggestion, or motivation to replace the conductive adhesive electrode with a separate conductive electrode and adhesive (both on the bottom surface of the electrode supporting section). Similar designs were known in the art. Libbus (US

2010/0056881) discloses a device with a center housing (160) and extended wings (Figures 1H, 1G, etc.) with electrodes (112A) and a first adhesive (116A) on the bottom surface. A second adhesive (164 on cover 162) extends over the top of the wings. However, the second layer does not extend horizontally beyond a boundary of the wing (see Figs. 1I-1J), and there is insufficient teaching, suggestion, or motivation to modify the second adhesive layer. Gehman teaches that the top layer (adhesive) is useful for securing the device to the user, but the device of Libbus is already secured with the first layer/adhesive.

Oakley (US 2004/0077954), Durand (2009/0048556), and Axelgaard (US 6,038,464) also teach many of the recited features. The second adhesive (layer) of Durand functions as an adhesion guard and protects the first adhesive while extending horizontally beyond the first substrate layer/adhesive. However, the second layer is not positioned over the top of the wing, and there is insufficient teaching, suggestion, or motivation to move it from the bottom surface of the device. Similarly, the second layer of Axelgaard also functions as an adhesive guard and is over the first adhesive/layer. However, this second layer does not extend horizontally outward beyond the boundary of the wing or first layer. Moreover, there is insufficient motivation to modify the second layer of Axelgaard to extend beyond the wing because such a modification would negate the advantages of the design (particularly controlling the strength of adhesion to the skin).

See the '584 Application, NOA mailed 03/21/2025, pages 3-4.

Therefore, it is understood that the '277 patent was allowed since the prior art did not teach, among all the limitations, the combination of, "a first substrate layer…an electrode positioned on the bottom surface of the electrode-supporting section…the second substrate layer is positioned over the first substrate layer and extends horizontally beyond a boundary of the first substrate layer."

Application/Control Number: 90/015,505 Page 8
Art Unit: 3993

### Analysis of the Prior Art Provided in the Request

On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

> The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, both Bly '363, and Matsumura qualify as old art since each were previously cited, applied and/or relied upon in rejections of the claims in the original examination of the '584 application.

However, being "old art" does not necessarily preclude these references from establishing a SNQ. A SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation in in the request. See MPEP § 2242. These references are now being presented and viewed in a new light, or in a different way, as compared with their use in the earlier examinations as discussed in detail in this order. Accordingly, the use of these references in this reexamination is proper. Below is a detailed analysis for each of the references requester asserts raise an SNQ.

Bly '363 is considered "old art" to the reexamination of the '277 patent since USPN 8,116,841 to Bly (hereinafter "Bly '841"), the issued patent resulting from Bly '363, was provided in an IDS in the '584 application.

However, neither Bly '363 nor Bly '841 were relied upon in a rejection of the claims in the '584 application and/or any preceding applications to the '584 application. Now, requester is presenting Bly '363 in a new light as teaching a first substrate layer, an electrode positioned on the bottom surface of the electrode-supporting section and the second layer being positioned over the first substrate layer and extending beyond its boundary. See Request filed 09/08/2025, pages 16-23. Therefore, Bly '363 is being applied in a new light than its earlier use in the '584 application.

Matsumura is considered "old art" to the reexamination of the '277 patent since Matsumura was provided in an IDS in the '584 application. However, Matsumura was not relied upon in a rejection of the claims in the '584 application and/or any preceding applications to the '584 application. Now, requester is presenting Matsumura in a new light as teaching a first substrate layer, an electrode positioned on the bottom surface of the electrode-supporting section and the second layer being positioned over the first substrate layer and extending beyond its boundary. See Request filed 09/08/2025, pages 35-42. Therefore, Matsumura is being applied in a new light than its earlier use in the '584 application.

*Proposed SNQ 1: Bly '363*

The consideration of Bly '363 raises an SNQ as to claims 1-10 of the '277 patent. As detailed above, during the prosecution of the '584 application the allowance of the claims resulted from the prior art failing to teach the claim limitation of "a first substrate layer…an electrode positioned on the bottom surface of the electrode-supporting section…the second

Application/Control Number: 90/015,505  Page 10
Art Unit: 3993

substrate layer is positioned over the first substrate layer and extends horizontally beyond a boundary of the first substrate layer."

The request filed 09/08/2025 asserts that Bly '363 teaches this limitation resulting in the allowance of the '277 patent. Requester presents on pages 18- of their request that Bly '363 teaches,

Figure 1J of *Bly* is disclosed below, which includes the cover 162 and the adherent patch 110 comprising breathable tape 110T and gel cover 180. *Id.*, ¶96. These components form the electrode-supporting section, as annotated in yellow.



*Id.*, Figure 1J (annotated).

Figure 1I of *Bly* includes the electrode supporting section as constructed in the adherent device 100.



*Id.*, Figure 1I (annotated).

Moreover, *Bly* discloses that "[i]n many embodiments, electrodes 112A, 112B, 112C and 112D extend from lower side 110A through adherent patch 110 to upper side 110B." *Id.*, ¶58. Thus, *Bly*'s Figure 1B (below) discloses the electrode-supporting section, supporting electrodes 112A, 112B, 112C and 112D.

Application/Control Number: 90/015,505 Page 11
Art Unit: 3993

First, *Bly* discloses that **gel cover 180 is a first substrate layer**. "[T]he adherent device comprises a gel cover [180] positioned over the breathable tape to inhibit a flow of the gel through the breathable tape, and the printed circuit board is located over the gel cover such that the gel cover is disposed between the breathable tape and the printed circuit board." *Id.*, ¶22. The gel cover (e.g., first substrate layer) is annotated in below in green.



*Id.*, Figure 1J1 (annotated).

Second, *Bly* discloses that **cover 162 is a second substrate layer**. "[C]over 162 can encase the flex PCB and/or electronics and can be adhered to at least one of the electronics, the flex PCB or adherent patch 110, so as to protect at least the electronics components and the PCB. Cover 162 can attach to adherent patch 110 with adhesive 116B." *Id.*, ¶92. The cover (e.g., second substrate layer) is annotated below in yellow.

Further, "**electrodes 112A, 112B, 112C and 112D extend from lower side 110A** through adherent patch 110 to upper side 110B." *Id.*, ¶58.

Further, as also disclosed in Figure 1J1, the cover 162 (e.g., the second substrate layer), annotated in yellow, extends horizontally

beyond a boundary of the gel cover 180 (e.g., the first substrate layer).

Further, "the edge of the cover [162] may be adhered at the edge of the adherent patch [110.]" *Id.*, ¶107. Thus, the cover 162 extends as far as the edge of the adherent patch 110.



*Id.*, Figure 1J1 (annotated).

Turning to Bly '363, the patent is directed to an adherent device to monitor a patient for an extended period comprising a breathable tape. The appliance includes as outlined in para. [0072], "FIG. 1F shows a top view of **a cover 162 over the batteries, electronic components and flex printed circuit board** as in FIGS. 1A to 1E. In many embodiments, an electronics housing 160 may be disposed under cover 162 to protect the electronic components, and in some embodiments electronics housing 160 may comprise an encapsulant over the electronic components and PCB. In some embodiments, **cover 162 can be adhered to adherent patch 110 with an adhesive 164 on an underside of cover 162**." (emphasis added) Para. [0073] states, "In some embodiments, **cover 162 may comprise** many known breathable materials, for example **polyester, polyamide, nylon and/or elastane** (Spandex.TM.). The breathable fabric may be coated to make it water resistant, waterproof, and/or to aid in wicking moisture away from the patch." (emphasis added) Para. [0078] states, "The adherent device comprises electrodes 112A1, 112B1, 112C1 and 112D1 configured to couple to tissue through apertures in

the breathable tape 110T. Electrodes 112A1, 112B1, 112C1 and 112D1 can be fabricated in many ways. For example, electrodes 112A1, 112B1, 112C1 and 112D1 can be printed on a flexible connector 112F, such as silver ink on polyurethane. Breathable tape 110T comprise apertures 180A1, 180B1, 180C1 and 180D1. Electrodes 112A1, 112B1, 112C1 and 112D1 are exposed to the gel through apertures 180A1, 180B1, 180C1 and 180D1 of breathable tape 110T. Gel 114A, gel 114B, gel 114C and gel 114D can be positioned over electrodes 112A1, 112B1, 112C1 and 112D1 and the respective portions of breathable tape 11 OT proximate apertures 180A1, 180B1, 180C1 and 180D1, so as to couple electrodes 112A1, 112B1, 112C1 and 112D1 to the skin of the patient. The flexible connector 112F comprising the electrodes can extend from under the gel cover to the printed circuit board to connect to the printed circuit boards and/or components supported thereon. For example, flexible connector 112F may comprise flexible connector 122A to provide strain relief, as described above." (emphasis added) Para. [0081] states, "In many embodiments, **adherent patch 110 may comprise a layer of breathable tape 110T**, for example a known breathable tape, such as tricot-knit polyester fabric. In many embodiments, breathable tape 110T comprises a backing material, or backing 111, **with an adhesive**. **In many embodiments, the patch adheres to the skin of the patient's body**, and comprises a breathable material to allow moisture vapor and air to circulate to and from the skin of the patient through the tape." (emphasis added)

There is a substantial likelihood that a reasonable examiner would consider the above teachings, i.e., cover 162, adherent patch 110 with an adhesive 164 on an underside of cover 162, and adhesive adhering the patch to the patient's skin as taught by Bly'363 important in determining the patentability of the claims. Accordingly, requester has raised a substantial new

Application/Control Number: 90/015,505 Page 14
Art Unit: 3993

question of patentability in consideration of Bly'363, which question has not been decided in a previous examination of the '277 patent.

Therefore, requester has raised a substantial new question of patentability in regards to claims 1-12 in consideration of Bly'363, which question has not been decided in a previous examination of the '277 patent.

*Proposed SNQ 2: Matsumura*

The consideration of Matsumura raises an SNQ as to claim 1 of the '277 patent. As detailed above, during the prosecution of the '584 application the allowance of the claims resulted from the prior art failing to teach the claim limitation of "a first substrate layer…an electrode positioned on the bottom surface of the electrode-supporting section…the second substrate layer is positioned over the first substrate layer and extends horizontally beyond a boundary of the first substrate layer."

The request filed 09/08/2025 asserts that Matsumura teaches this limitation resulting in the allowance of the '277 patent. Requester presents on pages 35-41 of their request that Matsumura teaches,

> Further, *Matsumura* discloses that the "bioelectrode pad 7 includes *a first sheet 1 [e.g., second substrate layer]*, a conductive material 2, a hook 3, *a second sheet 4 [e.g., first substrate layer]*, a conductive gel 5 [e.g., electrodes], a third sheet 6, and a double-sided adhesive tape 9." *Id.*, ¶16.

> *Matsumura* discloses conductive gel 5 (e.g., electrode) is positioned on the bottom surface of the bioelectrode pad 7 (e.g., electrode-supporting section). For example, Figure 1 discloses the conductive gel 5 (e.g., electrode) positioned on the bottom surface of the bioelectrode pad 7 (e.g., electrode-supporting section). The electrodes are annotated in yellow.

> *Matsumura* discloses that the "second sheet 4 [e.g., first substrate layer] has the same outer shape as the first sheet 1 [e.g., second substrate layer][.]" *Id.*, ¶18. Figure 3 disclose the configuration of the first and second substrate layers. While sheets 1 and 4 have the same shape, there is no corresponding disclosure about the relative size of the two layers.

Turning to Matsumura[1], the patent is directed to a bioelectric potential detector and biometric information system. The system includes a bioelectric disposable water proof electrode pad that can be worn by the patient. See para. [0006]. Specifically, the pad 7 includes a first sheet 1 and a second sheet 4. The first and second sheets can be made from a polyethylene or polyurethane. See para. [0017-0018]. Conductive material 2 is between the first and second sheets. Additionally, the second sheet 4 has an acrylic adhesive applied to the surface. See para. [0018].

There is a substantial likelihood that a reasonable examiner would consider at least the above teachings, i.e., first and second sheets and acrylic adhesive as taught by Matsumura important in determining the patentability of the claims. Accordingly, requester has raised a substantial new question of patentability in consideration of Matsumura, which question has not been decided in a previous examination of the '277 patent.

Therefore, requester has raised a substantial new question of patentability in regards to claim 1 in consideration of Matsumura, which question has not been decided in a previous examination of the '277 patent.

### 35 USC 325(d)

A review of the post grant history for the instant patent indicates that there have been no other Office post grant challenges made to the patent (Reexamination Proceedings or *Inter*

---

[1] It is noted that all citations to Matsumura are to the English Translation presented as exhibit 1006 with the Request for Reexamination filed 09/08/2025.

*Partes* Review, Post Grant Review, Covered Business Method trials). Accordingly, a discretionary denial of reexamination pursuant to 35 USC 325(d) is not applicable.

### *Correspondence*

A shortened statutory period of two months will generally be set for filing a response to an Office action in an *ex parte* reexamination. An extension of time may be requested under 37 CFR 1.550(c).

All correspondence relating to this *ex parte* reexamination should be directed as follows:

By Patent Center:   Registered users may submit via the electronic filing system, Patent Center, at: https://patentcenter.uspto.gov/

By Mail:   Mail Stop *Ex Parte* Reexam
ATTN: Central Reexamination Unit
Commissioner for Patents
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

By FAX:   (571)273-9900
Central Reexamination Unit

By hand:   Customer Service Window
Attn: Central Reexamination Unit
Knox Building, Lobby Level
501 Dulany Street
Alexandria, VA 22314

For Patent Center transmissions, 37 CFR 1.8(a)(1) (i)(C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if: (a) it is transmitted via the Office's electronic filing system in accordance with 37 CFR 1.6(a)(4); and, (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

| | |
|---|---|
| Application/Control Number: 90/015,505 | Page 17 |
| Art Unit: 3993 | |

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit (CRU) at telephone number: 571.272.7705. The CRU's fax number is: 571.273.9900.

/CATHERINE S WILLIAMS/
Reexamination Specialist, Art Unit 3993

Conferees:

/SARAH B MCPARTLIN/
Reexamination Specialist, Art Unit 3993

/EILEEN D LILLIS/
SPRS, Art Unit 3993